UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

JOHN P. "JACK" FLYNN :
LESLIE A. FLYNN, :  Case: 1:21-cv-02587-GHW-SLC
:
:  Hon. Sarah L. Cave
Plaintiffs, :
:
- against - :
:
CABLE NEWS NETWORK, INC., :
:
Defendant. :

------------------------------------------------------------ x

### MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANT CABLE NEWS NETWORK TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Katherine M. Bolger
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone:    (212) 489-8230
Facsimile:    (212) 489-8340

*Attorney for Defendant Cable News Network*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

FACTS ................................................................................................................................ 2

    A.    The Parties ........................................................................................................ 2

    B.    The "#TakeTheOath" Video and Resulting News Coverage ........................... 3

    C.    QAnon ............................................................................................................... 3

    D.    The Report ........................................................................................................ 4

    E.    The Complaint and Amended Complaint .......................................................... 5

ARGUMENT ....................................................................................................................... 6

    I.    PLAINTIFFS' CLAIMS MUST BE DISMISSED AS A MATTER OF LAW ........... 6

        A.    Plaintiffs Have Failed To State A Claim For Defamation ................................ 7

            1.    The Report Is Not Of And Concerning Plaintiffs ................................. 8

            2.    The Challenged Report Is Not Susceptible Of A Defamatory Meaning ............................................................................................... 9

            3.    Plaintiffs Have Failed To Plausibly Allege Defamation *Per Se* ......... 12

            4.    Even Plaintiffs' Tortured Interpretation Of The Report Is, As A Matter of Law, Substantially True And Not Materially False, And The Complaint Must Be Dismissed ................................................... 14

                a.    Plaintiffs Have Failed To Plead Material Falsity .................... 14

                b.    It Is Substantially True That Plaintiffs Followed And Supported QAnon ................................................................. 16

            5.    Plaintiffs Cannot Plead The Requisite Level Of Fault........................ 19

                a.    Jack Flynn Has Failed To Adequately Plead Actual Malice .. 19

                    (i)    Jack Flynn Is A Limited Purpose Public Figure ......... 21

                    (ii)    Plaintiffs Cannot Show That CNN Acted With Malice ........................................................................ 22

                b.    Leslie Flynn Has Failed To Plausibly Allege Negligence ...... 23

         B.    Plaintiffs Fail To State A Claim For False Light Invasion Of Privacy ........... 24

        C.    This Court Should Award CNN Costs And Fees Associated With This Motion ........................................................................................................... 25

CONCLUSION ................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adelson v. Harris*,
    973 F. Supp. 2d 467 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017) ...............................7

*Alves v. Hometown Newspapers, Inc.*,
    857 A.2d 743 (R.I. 2004) ...........................................................................................................7, 24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).....................................................................................................................6, 20

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................................................................20

*Bichler v. Union Bank & Tr. Co. of Grand Rapids*,
    745 F.2d 1006 (6th Cir. 1984) ........................................................................................................10

*Biro v. Conde Nast*,
    807 F.3d 541 (2d Cir. 2015).............................................................................................................20

*Bose Corp. v. Consumers Union of U.S., Inc.*,
    466 U.S. 485 (1984).........................................................................................................................20

*Bray v. Providence J. Co.*,
    220 A.2d 531 (R.I. 1966) ...........................................................................................................11, 12

*Budget Termite & Pest Control, Inc. v. Bousquet*,
    811 A.2d 1169 (R.I. 2002) ................................................................................................................8

*Burke v. Gregg*,
    55 A.3d 212 (R.I. 2012) ...............................................................................................................9, 10

*Bustos v. A & E Television Networks*,
    646 F.3d 762 (10th Cir. 2011) ...................................................................................................17, 19

*Cabello-Rondon v. Dow Jones & Co., Inc.*,
    16-cv-3346 (KBF), 2017 WL 3531551 (S.D.N.Y. Aug. 16, 2017), *aff'd*, 720
    F. App'x 87 (2d Cir. 2018) ..............................................................................................................16

*Capuano v. Outlet Co.*,
    579 A.2d 469 (R.I. 1990) ...........................................................................................................21, 23

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002).......................................................................................................7, 17

ii

*Church of Scientology Int'l v. Time Warner, Inc.*,
    903 F. Supp. 637 (S.D.N.Y. 1995), *on reconsideration*, 932 F. Supp. 589
    (S.D.N.Y. 1996), *and aff'd sub nom. Church of Scientology Int'l v. Behar*, 238
    F.3d 168 (2d Cir. 2001)..................................................................................................23

*Condit v. Dunne*,
    317 F. Supp. 2d 344 (S.D.N.Y 2004)...............................................................................7, 17

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991)...............................................................................................17

*Crall v. Gannett Satellite Info. Network, Inc.*,
    No. C-2-92-233, 1992 WL 400713 (S.D. Ohio Nov. 6, 1992) ..............................................11

*Cullen v. Auclair*,
    809 A.2d 1107 (R.I. 2002)...............................................................................................24

*Davis v. Costa-Gavras*,
    654 F. Supp. 653 (S.D.N.Y. 1987) ....................................................................................23

*DeCarvalho v. daSilva*,
    414 A.2d 806 (R.I. 1980)..................................................................................................21

*Desnick v. Am. Broad. Companies, Inc.*,
    44 F.3d 1345 (7th Cir. 1995) ...........................................................................................10

*Elias v. Youngken*,
    493 A.2d 158 (R.I. 1985) ..................................................................................................9

*Freeman v. Johnston*,
    192 A.D.2d 250 (1993), *aff'd*, 84 N.Y.2d 52 (1994) ............................................................24

*Ganske v. Mensch*,
    480 F. Supp. 3d 542 (S.D.N.Y. 2020)................................................................................17

*Garrison v. State of La.*,
    379 U.S. 64 (1964)...........................................................................................................22

*Geary v. Goldstein*,
    No. 91 CIV. 6222 (KMW), 1996 WL 447776 (S.D.N.Y. Aug. 8, 1996) ................................10

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974).........................................................................................................20

*Harvey v. Cable News Network, Inc.*,
    No. CV RDB-20-3068, 2021 WL 1215083 (D. Md. Mar. 31, 2021),
    *reconsideration denied*, No. CV RDB-20-3068, 2021 WL 1516009 (D. Md.
    Apr. 16, 2021) ................................................................................................................25

iii

*Haynes v. Alfred A. Knopf, Inc.*,
 8 F.3d 1222 (7th Cir. 1993) ...................................................................................19

*Healey v. New England Newspapers, Inc.*,
 555 A.2d 321 (R.I. 1989) .........................................................................8, 16, 23

*Hohmann v. GTECH Corp.*,
 910 F. Supp. 2d 400 (D. Conn. 2012) ..............................................................15, 16

*Howard v. Antilla*,
 294 F.3d 244 (1st Cir. 2002) ...................................................................................22

*Jackson v. Mayweather*,
 10 Cal. App. 5th 1240 (Cal. 2017), *as modified* (Apr. 19, 2017) ...........................21

*Jankovic v. Int'l Crisis Grp.*,
 494 F.3d 1080 (D.C. Cir. 2007) .................................................................................8

*Koch v. Christie's Int'l PLC*,
 699 F.3d 141 (2d Cir. 2012).......................................................................................6

*Lee v. BankersTrust Co.*,
 166 F.3d 540 (2d Cir. 1999).......................................................................................7

*Lokhova v. Halper*,
 995 F.3d 134 (4th Cir. 2021) ...................................................................................25

*Lovejoy v. Mutual Broadcasting System*,
 220 S.W.2d 308 (Tex. Civ. App. 1948) ..............................................................18, 19

*Lyons v. Rhode Island Public Employees Council 94*,
 516 A.2d 1339 (R.I. 1986) ....................................................................................12, 22

*Major v. Drapeau*,
 507 A.2d 938 (R.I. 1986) ...............................................................................20, 21, 22

*Marcil v. Kells*,
 936 A.2d 208 (R.I. 2007) ...............................................................................11, 12, 13

*Masson v. New Yorker Magazine, Inc.*,
 501 U.S. 496 (1991)...................................................................................................16

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
 674 F.3d 369 (4th Cir. 2012) ...................................................................................20

*McCann v. Shell Oil Co.*,
 551 A.2d 696 (R.I. 1988) ..........................................................................................10

iv

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964)..................................................................................20, 24

*Palin v. New York Times Co.*,
940 F.3d 804 (2d Cir. 2019)....................................................................23

*Pan Am Sys., Inc. v. Atl. Ne. Rails & Ports, Inc.*,
804 F.3d 59 (1st Cir. 2015) ....................................................................14

*Philadelphia Newspapers, Inc. v. Hepps*,
475 U.S. 767 (1986)................................................................................14

*Quantum Elecs. Corp. v. Consumers Union of U.S., Inc.*,
881 F. Supp. 753 (D.R.I. 1995)..............................................................16

*RainSoft v. MacFarland*,
350 F. Supp. 3d 49 (D.R.I. 2018) ...........................................................14

*Schatz v. Republican State Leadership Comm.*,
669 F.3d 50 (1st Cir. 2012)....................................................................20

*Secord v. Cockburn*,
747 F. Supp. 779 (D.D.C. 1990) ............................................................23

*Sequin, LLC v. Renk*,
No. CV 20-62WES, 2021 WL 124250 (D.R.I. Jan. 13, 2021)*, report and recommendation adopted*, No. CV 20-062 WES, 2021 WL 391519 (D.R.I. Feb. 4, 2021) ...................................................................................13, 14

*Shay v. Walters*,
702 F.3d 76 (1st Cir. 2012)....................................................................23

*St. Amant v. Thompson*,
390 U.S. 727 (1968)..........................................................................20, 22

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
547 F.3d 406 (2d Cir. 2008)......................................................................7

*Sweetland v. Bank of Am. Corp.*,
241 F. App'x 92 (4th Cir. 2007) .............................................................25

*Swerdlick v. Koch*,
721 A.2d 849 (R.I. 1998) ..................................................................13, 24

*Tannerite Sports LLC v. Universal News Group*,
864 F.3d 236 (2d Cir. 2017)....................................................................15

v

*Time, Inc. v. Hill,*
   385 U.S. 374 (1967) ....................................................................................................24

*Tracy v. Newsday, Inc.,*
   5 N.Y.2d 134 (1959) .....................................................................................................9

*Veilleux v. Nat'l Broad. Co.,*
   206 F.3d 92 (1st Cir. 2000) ..........................................................................................23

**Statutes**

28 U.S.C. § 1927 ................................................................................................................25

R.I. Gen. Laws § 9-1-28.1(a)(4) ......................................................................................24

**Other Authorities**

Fed. R. Civ. P.
   12(b)(6) ......................................................................................................................1, 6

Restatement (Second) of Torts § 575 cmt. b (1977) .......................................................13

Restatement (Second) of Torts § 580B (1977) ...............................................................23

4835-3161-0863v.1 0026517-000210

Defendants Cable News Network ("CNN"), hereby submit this memorandum of law in support of their motion pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing Plaintiffs Jack and Leslie Flynn's ("Plaintiffs") Amended Complaint with prejudice.

## PRELIMINARY STATEMENT

This defamation lawsuit arises out of a CNN report entitled "CNN Goes Inside A Gathering of QAnon Followers" (the "Report").  Plaintiffs are not the subject of the Report, nor named in the Report, nor discussed in the Report in anyway.  Instead, they appear for less than two seconds in a clip from a video posted to Twitter by Jack Flynn's brother, General Michael Flynn ("General Flynn"), enthusiastically distributed by Jack Flynn himself, and incorporated into the Report.  In that video, General Flynn and Plaintiffs recite the slogan, "Where We Go One, We Go All" (the "QAnon Slogan"), a slogan associated with the QAnon conspiracy theory. From this silent, unnamed, fleeting appearance, Plaintiffs have concocted a defamation claim alleging that CNN called them "violent," "racist" and "anti-semitic," among other things.  Any time spent with the Amended Complaint, however, reveals how meritless this lawsuit is.

This is not the first time CNN has made the arguments in this memorandum to the Plaintiffs.  On the contrary, before the Amended Complaint was filed, CNN wrote a Rule 11 Letter to Plaintiffs' counsel outlining the weakness of Plaintiffs' claim and requesting they withdraw the Complaint.  Rather than do so, Plaintiffs inexplicably incorporated some of the material from that Rule 11 letter into an Amended Complaint they then served on CNN.  But their amendments did not and could not fix the deficiencies in the original complaint.  This matter should never have been brought to this Court and it should be dismissed now.

*First*, Plaintiffs have failed to plead that the Report is "of and concerning" them.  To the extent the Report focuses on anyone, it is General Flynn and not the Plaintiffs.  *Second*, Plaintiffs have failed to sufficiently allege that the Report is susceptible to the defamatory

1

meaning the Plaintiffs ascribe to it.  Simply put, the Report does not accuse Plaintiffs of being

QAnon supporters, or racists, or violent, or anything of the sort.  It simply shows them standing

next to General Flynn while he says the QAnon Slogan.  **Third**, even if the Report could be said

to have a defamatory meaning as to Plaintiffs, it must still be dismissed: Plaintiffs have failed to

plead both that that Report is defamatory *per se* and that they suffered special damages.  **Fourth**,

even if this Court could construe the Report to imply that Plaintiffs support QAnon, the evidence

contained in or referenced by the Amended Complaint establishes the truth of that assertion:

Plaintiffs admit that they spoke the QAnon Slogan, admit that they have repeatedly used QAnon-

related hashtags on their Twitter accounts, and admit that they have retweeted known QAnon

supporters.  Even if CNN *had* labelled Plaintiffs as QAnon supporters, the Report would *still* be

substantially true, and is certainly not materially false.  **Fifth**, Plaintiffs have not pleaded that

CNN acted with the requisite level of fault in making the telecasts.  **Finally**, Plaintiffs' false light

invasion of privacy claim fails for the principal reason their defamation claim fails: the Report is

substantially true.  For these reasons, this case must be dismissed, and this court should reward

CNN costs and fees associated with making this motion.

## FACTS

### A.    The Parties

Jack and Leslie Flynn are residents of Rhode Island.  Am. Compl. ¶ 8.  Jack Flynn is the

brother of General Flynn, who served as former President Trump's National Security Advisor.

Declaration of Katherine M. Bolger, Esq., dated June 18, 2021 ("Bolger Decl."), ¶ 6, Ex. 4 at 1.[1]

Jack Flynn maintained an active presence on Twitter, where he gained 1018,000 followers after

---

[1] Throughout this brief, CNN cites documents that are incorporated by reference into the Amended Complaint, including several news publications and government documents.  CNN respectfully requests that this Court take notice of these documents.  *See infra*, Section I.

re-tweeting a video, originally tweeted by General Flynn, of the Flynn family reading the Federal

oath of office and the QAnon Slogan. *Id.* ¶¶ 11, 14-15, Exs. 9, 10 at 3-4.[2]  Flynn deleted his

Twitter account on January 8, 2021, two days after the Capitol insurrection and a day after

Trump was banned from Twitter, because of what he called "censorship of American values and

truths."  Am. Compl. ¶ 14.   When he left Twitter, he had approximately 226,000 followers.

Bolger Decl. ¶ 15, Ex. 10 at 4.  Leslie Flynn's Twitter account is still active.  *Id.* ¶ 16, Ex. 11.[3]

CNN owns and operates numerous news platforms and services, including the television

network known as CNN and the website www.cnn.com.

## B.    The "#TakeTheOath" Video and Resulting News Coverage

On July 4, 2020, General Flynn took part in a QAnon Twitter movement called

#TakeTheOath by sharing a video of himself leading his family, including Plaintiffs, in reciting

the oath of office given to federal elected officeholders.  When the oath is completed, General

Flynn said the QAnon Slogan, which the other family members, including Plaintiffs,

subsequently repeat.  Am. Compl. ¶ 4.  The Flynns then said "God Bless America."  *Id.*  Jack

Flynn retweeted the video.  Bolger Decl. ¶ 11, Ex. 9.  Several news outlets, including CNN and

the *Washington Examiner*, reported on the video, describing the phrase spoken by the family as a

"QAnon slogan."  Am. Compl. ¶ 4 n.1; Bolger Decl. ¶ 6, Ex. 4 at 1.

## C.    QAnon

As the news and government sources incorporated into Plaintiffs' complaint establish,

---

[2] Throughout this brief, CNN also cites documents that are relied on and are integral to the Amended Complaint, including numerous Tweets.  CNN respectfully requests that this Court take notice of these documents.  *See infra*, note 10.

[3] In the initial complaint, at paragraph 22, Plaintiffs cited to "Jack Flynn's Twitter account (@GoJackFlynn)" and cited to tweets from that account.  But, as discussed below, the account @GoJackFlynn no longer exists.  In addition, Mr. Flynn recently deleted his postings on Parler.  In the Rule 11 letter, CNN has asked counsel for Plaintiffs to preserve these accounts, and that of Leslie, @lflynn1998, in their entirety.

QAnon refers to a movement that promotes a set of unfounded conspiracy theories. *Id*. ¶ 7, Ex. 5 at 1.  It originated in October 2017 on the message board 4chan, where a user named "Q Clearance Patriot" ("Q"), an alleged senior government employee, left messages that followers believed revealed a secret plot orchestrated by the Deep State to control the world. *Id*. ¶ 9, Ex. 7 at 14.  According to QAnon followers, the Deep State is led by a cabal of mostly Democratic politicians and influential members of the entertainment and media industries. *Id*. ¶ 8, Ex. 6 at 2. QAnon followers believe that the Deep State sought to undermine former President Trump, but that Trump would ultimately prevail by bringing about "The Storm," or the mass arrest of members of the Deep State, and "The Great Awakening," or the moment when the public at large would realize the truth of QAnon theories. *Id.*  The QAnon Slogan is centrally important to the QAnon belief system.  It has been incorporated into QAnon "anthems," and is often featured on QAnon merchandise. *Id*. ¶ 10, Ex. 1.  Abbreviated as "WWG1WGA," it is used as a hashtag in tweets expressing support for QAnon. *Id.* ¶¶ 19, 22-23, Exs. 12 at 3, 13 at 1-2.  And its use has been described as "pervasive" in the QAnon community. *Id.* ¶ 6, Ex. 4 at 1.

**D.    The Report**

On February 8, 2021, CNN aired the Report as part of the program "Don Lemon Tonight."  Am. Compl. ¶ 4; Bolger Decl. ¶ 3, Ex. 1.  It was reported by Donie O'Sullivan at a QAnon gathering in Arizona two weeks before the January 6, 2021 attack on the U.S. Capitol. Bolger Decl. ¶ 3, Ex. 1.   A chyron bearing the title of the Report remains at the bottom of the screen during the Report (the "Chyron"). *Id.*

The Report opens with footage of the gathering. *Id.*  O'Sullivan identifies several attendees, including the so-called "QAnon Shaman," who were allegedly involved in the Capitol attack. *Id.*  The Report also shows an individual singing a song that incorporates the phrase "where we go one, we go all," which O'Sullivan explains is an "infamous QAnon slogan that has

4

been promoted by" General Flynn, "Trump's first national security advisor." *Id.* As O'Sullivan speaks these words, the Report displays photos of the phrase abbreviated as "#WWG1WGA" and printed, with the letter "Q," on large flags, followed by a clip of General Flynn with Trump at a campaign rally. *Id.* O'Sullivan's statement is then followed with a portion of General Flynn's July 4 video showing General Flynn speaking the phrase. *Id.* Plaintiffs, who are not named, are also visible in the clip used by CNN for under two seconds, but are not shown speaking. *Id.* The report also includes footage of Trump's refusal to disavow QAnon and concludes with the singer singing the QAnon Slogan. Plaintiffs' claims arise from the portion of the Report containing the clip featuring Plaintiffs. Am. Compl. ¶ 4.

**E.**     **The Complaint and Amended Complaint**

On March 25, 2021, Plaintiffs brought this action, alleging defamation *per se* and false light invasion of privacy based on the use of the clip of General Flynn's 4th of July video in the Report. Dk. No. 1. The Complaint was filed with the court but not served on CNN.

On April 15, 2021, CNN sent counsel for Plaintiffs a letter pursuant to Rule 11 demanding that the Complaint be withdrawn, on the grounds that the Complaint had no basis in fact, and that it asserted frivolous arguments without legal support. Bolger Decl. ¶ 4, Ex. 2. The letter listed numerous Tweets and hashtags posted or liked by Plaintiffs that evidenced Plaintiffs' indisputable support for QAnon. *Id.* Because the Tweets clearly demonstrated that Plaintiffs knew they would be unable to prove falsity, CNN stated that it would raise the issue with the Court if the Complaint was not withdrawn within 21 days. On April 29, 2021, counsel responded, stating that he would file and serve an Amended Complaint that, per counsel, would "address the concerns" raised by CNN. Bolger Decl. ¶ 5, Ex. 3. Plaintiffs served their original Complaint the same day. *Id.* The parties subsequently agreed that CNN's time to respond would be tolled until service of the Amended Complaint. *Id.*

4835-3161-0863v.1 0026517-000210

Plaintiffs filed and served their Amended Complaint on May 7, 2021, again alleging one count of defamation *per se* and one count of false light invasion of privacy.  Dk. No. 7.   The Amended Complaint does nothing to cure the original defects.  On the contrary, it compounds them by including and seeking to explain away some – but notably not all – of the information identified in the CNN letter.  Bolger Decl. ¶ 4, Ex. 2.[4]

## ARGUMENT

This Court must dismiss Plaintiffs' complaint because they have failed to identify a defamatory statement of fact actually made about them in the Report.  And even if the Report did accuse them of being associated with QAnon, which it does not, it would still be substantially true and certainly not materially false.  For these reasons, the claim must be dismissed.

## I.    PLAINTIFFS' CLAIMS MUST BE DISMISSED AS A MATTER OF LAW

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted); *Koch v. Christie's Int'l PLC,* 699 F.3d 141, 145 (2d Cir. 2012).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  While the Court must accept factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Id*.  Because "[speech-based tort claims] may be as chilling to the

---

[4] Plaintiffs also claimed in the Amended Complaint that CNN's letter established that it had reviewed Plaintiffs' Twitter feeds prior to the airing the Report – despite it being clear from CNN's letter that it was based on review of the feeds after receiving a copy of the Complaint. *Id*.

exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself," the Second

Circuit endeavors, "[to] resolve [such] actions at the pleading stage." *Adelson v. Harris*, 973 F.

Supp. 2d 467, 481 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017).

While courts generally may not consider material outside the complaint on a motion to

dismiss, "the complaint is deemed to include any written instrument attached to it as an exhibit

or any statements or documents incorporated in it by reference." *Chambers v. Time Warner,*

*Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (internal quotation marks and citations omitted).

Courts also may rely on a document where the complaint "relies heavily upon its terms and

effect" rendering it "integral to the complaint." *Id.* at 153.  Here, the Complaint relies heavily on

several news articles, transcripts of news broadcasts, a House Resolution, and several Tweets by

Jack Flynn and others (Am. Compl. ¶¶ 1-2, 4 n.1-2, 15, 19 n.5, 21 n.6, 23.a).  *See* Bolger Decl.

¶¶ 6-10, Exs. 4-8.  These documents, attached to or referenced in the Amended Complaint, are

properly considered on this motion to dismiss because they are incorporated by reference into

and are integral to the Complaint.  Judicial notice of documents is also permissible for the

purpose of establishing that the information was publicly available, rather than for their truth.

*See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

## A.      Plaintiffs Have Failed To State A Claim For Defamation

"A plaintiff in a defamation action carries a substantial burden."[5]  *Alves v. Hometown*

---

[5] In defamation cases, "'New York applies the law of the state with the most significant interest in the litigation.'"
*Condit v. Dunne*, 317 F. Supp. 2d 344, 352 (S.D.N.Y 2004) (citations omitted).  Typically, the law of the "locus" of
the tort—or the place where the plaintiff suffered injury—applies.  *See Lee v. BankersTrust Co.*, 166 F.3d 540, 545
(2d Cir. 1999).  However, in multi-state defamation cases, "the tort essentially lacks a locus, but rather injures
plaintiff everywhere at once." *Condit*, 317 F. Supp. 2d at 353.  New York courts therefore weigh several factors to
determine which state has the most "significant relationship" to the litigation.  *Adelson*, 973 F. Supp. 2d at 477.
These factors include "where plaintiff suffered the greatest injury," "where the statements emanated and were
broadcast," "where the activities to which the allegedly defamatory statements refer took place," and "the policy
interests of the states whose law might apply." *Condit*, 317 F. Supp. 2d at 353-54.  In the instant action, Plaintiffs
reside in Rhode Island.  *See* Am. Compl. ¶ 8.  CNN is incorporated in Delaware, and Plaintiffs allege that it has "a"
primary place of business in New York.  *Id.* ¶ 9.  The Report emanated from New York.  *Id.*  The activity at issue –

*Newspapers, Inc.*, 857 A.2d 743, 750 (R.I. 2004).  To prevail, a plaintiff must prove: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) damages, unless the statement is actionable irrespective of special harm."  *Healey v. New England Newspapers, Inc.*, 555 A.2d 321, 324 (R.I. 1989) (internal quotation marks omitted).  Here, Plaintiffs have failed to satisfy even these most basic elements of a defamation claim.

### 1.     The Report Is Not Of And Concerning Plaintiffs

First, Plaintiffs cannot establish that the Report made any statements at all, much less defamatory ones, about the Plaintiffs.  Plaintiffs bear the burden of pleading and proving that the alleged defamation is about or, put differently, "of and concerning" him or her.  *Budget Termite & Pest Control, Inc. v. Bousquet*, 811 A.2d 1169, 1172 (R.I. 2002) ("If the words have no personal application to the plaintiff, they are not actionable by him.")  Critically, "[d]efamation is personal; … Allegations of defamation by an organization and its members are not interchangeable."  *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1089 (D.C. Cir. 2007).

In this case, it is not clear from the Amended Complaint what defamatory statement CNN made about the Plaintiffs for the simple reason that the Report says nothing about the Plaintiffs.  Plaintiffs' primary complaint seems to be that they were "harmed by the mere association with QAnon," Am. Compl. ¶ 19 n.6, which is described by CNN in other telecasts as a "'dangerous', 'violent', 'racist', 'extremist', 'insurrectionist', 'domestic terrorism' movement."  *Id.* ¶ 3.  But the Report includes *none* of this language, which is plainly pulled from *other* news publications, nor does it say Plaintiffs are associated with QAnon.  The Report says <u>General Flynn</u> uses

---

Plaintiffs' recitation of the QAnon Slogan – occurred in Rhode Island.  *Id.* ¶ 4. Though Plaintiffs fail to allege specific injury, the greatest harm they allege they *may* suffer will occur, if at all, in Rhode Island.  *Id.* ¶ 8. Accordingly, CNN has briefed this motion under Rhode Island law.  However, should the Court decide that New York law applies, CNN reserves the right to rebrief under New York law.

QAnon slogans – but Plaintiffs are not General Flynn, and being associated with someone is not, absent more, defamatory.[6]  *See Tracy v. Newsday, Inc.*, 5 N.Y.2d 134, 138 (1959) (statement that plaintiff aided criminal was "false and probably offensive, but … not actionable").  Instead, in the actual Report, Plaintiffs are barely seen, are not identified, and are not heard saying anything. In short, the Report does not associate the Plaintiffs with QAnon.  On the contrary, it says absolutely nothing about the Plaintiffs.  For this reason, the Complaint must be dismissed.

### 2.  The Challenged Report Is Not Susceptible Of A Defamatory Meaning

This Court should also dismiss Plaintiffs' Amended Complaint on the alternate ground that the Report is not susceptible of a defamatory meaning.  The Report simply does not say what Plaintiffs say it does.  Words are defamatory if they are false and "imput[e] conduct which injuriously affects a [person's] reputation, or which tends to degrade him [or her] in society or bring him [or her] into public hatred and contempt." *Elias v. Youngken,* 493 A.2d 158, 161 (R.I. 1985)*.*  Whether a statement is susceptible to a defamatory meaning is a question of law for the court.  *Id.* It is routinely decided at the pleading stage.  *See*, *e.g.*, *Burke v. Gregg*, 55 A.3d 212, 220 (R.I. 2012) ("Even [under] the liberal Rule 12(b)(6) standard, … plaintiffs [have not] stated a claim upon which they could recover because [the] article, as a matter of law, was not defamatory.")  Where, as here, a plaintiff has not adequately pled that a challenged statement contains a defamatory meaning, the complaint must be dismissed.

---

[6] Plaintiffs cite a January 31, 2021 "Special Report" by Anderson Cooper that "spread false narratives about QAnon," including that its theories were based on "racist" beliefs, and it was a "dangerous and violent … insurrectionist [movement]."  Am. Compl. ¶ 2.  Plaintiffs also cite a House Resolution that notes an FBI assessment that "conspiracy theories, including QAnon, very likely motivate some domestic extremists."  Bolger Decl. ¶ 7, Ex. 5 (internal quotations omitted).  And Plaintiffs assert that the FBI and the Department of Homeland Security have classified QAnon as a "'domestic violence extremist' ('DVE') group" and a "'domestic terrorism threat.'"  Am. Compl. ¶ 1.  Finally, Plaintiffs cite to a Twitter thread by General Flynn's attorney Sidney Powell and to a CNN report from July 7, 2020 that reported on the Flynns' video (neither of which assert that #TaketheOath involves pledging allegiance to QAnon).  The Report describes the "insurrection" on the Capitol but takes pains to note that only two of the individuals attending the Arizona gathering were accused of participating.  Bolger Decl. ¶ 3, Ex. 1.

4835-3161-0863v.1 0026517-000210

On a motion to dismiss, "court[s] must consider the allegedly defamatory words in the context of the publication in which they appear, rather than read them in isolation." *Id.* at 218 (internal quotations omitted); *see also Geary v. Goldstein*, No. 91 CIV. 6222 (KMW), 1996 WL 447776, at *2 (S.D.N.Y. Aug. 8, 1996) ("a court deciding whether a statement may reasonably be interpreted as defamatory must take into account the full context in which the statement was promulgated").  "Language is not to be forced or tortured in libel cases in order to make it actionable." *McCann v. Shell Oil Co.*, 551 A.2d 696, 698 (R.I. 1988).

Here, Plaintiffs allege the Report defamed them by calling them supporters of "the 'dangerous', 'violent', 'racist', 'extremist', 'insurrectionist', 'domestic terrorism' movement – QAnon."  Am. Compl. ¶ 3.  But this claim fails for three reasons.  First, in assessing defamatory meaning, this Court must look to the actual words published by CNN.  *Bichler v. Union Bank & Tr. Co. of Grand Rapids*, 745 F.2d 1006, 1009 n.1 (6th Cir. 1984) (declining to consider allegedly defamatory statement that was not included in broadcast at issue); *Desnick v. Am. Broad. Companies, Inc.*, 44 F.3d 1345, 1355 (7th Cir. 1995) ("If the broadcast itself does not contain actionable defamation … then the target has no legal remedy") (citations omitted).  And none of those words are in the Report.  All that is stated in the Report when the Flynns' images are shown is that the QAnon Slogan is promoted by General Flynn.

Second, Plaintiffs allege that they have been defamed by a juxtaposition of the shortened clip, the Chyron, and O'Sullivan's narration, which "insinuates" that Plaintiffs were "involved in or with the violent extremist group QAnon," Am. Compl. ¶¶ 4, 16.  But this claim also fails because courts throughout the country have repeatedly held that the defamatory implication flowing from a headline or banner may be "temper[ed] by the content of a [broadcast]: the article may clarify the headline in such a way that no reader could reasonably believe the defamatory

meaning of the headline." *Crall v. Gannett Satellite Info. Network, Inc.*, No. C-2-92-233, 1992 WL 400713, at *3 (S.D. Ohio Nov. 6, 1992) (headline that intimated that plaintiff faced jail sentence for misdemeanor was not defamatory where article made clear he only had to pay a fine); *see Bray v. Providence J. Co.*, 220 A.2d 531, 534 (R.I. 1966) ("the article, when read in its entirety, is not reasonably capable of conveying to the ordinary mind the defamatory meaning alleged in the headline").  Here, the content of the Report negates any potential implication arising from the juxtaposition at issue.  Plaintiffs fleetingly appear in the Report *only* because they are standing next to General Flynn as he speaks the same QAnon Slogan sung by attendees at the gathering – and because General Flynn and Jack Flynn *actively sought publicity* for the family's oath-taking by posting the video to Twitter.  CNN included the clip of General Flynn speaking the QAnon Slogan to show the degree to which elected officials and political appointees – namely, Trump and General Flynn – gave legitimacy to the beliefs of QAnon supporters for their political gain.  Bolger Decl. ¶ 3, Ex. 1.  The Report's narration drives this point home, noting that "the message to the people in this room was clear: Trump was on their side." *Id.*

Finally, Plaintiffs claim they were defamed by the implication or innuendo that they are racists or terrorists because of what *other* CNN reports in other contexts say about QAnon.  The Flynns appear to try to claim defamation by the transitive property – i.e., because Plaintiffs allege *this* telecast accuses them of being QAnon followers and *other* telecasts describe QAnon as, e.g., "racist," they have somehow been called "racist" in the Report.  And, not surprisingly, it is not supported by the law.  In assessing whether it is defamatory, this Court must focus on actual words contained in the Report, not those from other telecasts that Plaintiffs seek to include. *Marcil v. Kells*, 936 A.2d 208, 215 (R.I. 2007) ("We have said that innuendo may be

11

used to define the defamatory meaning of words that may be equivocal, but it cannot be used to introduce new matter or to enlarge the meaning of words or give to language a construction it will not bear."); *see also Bray*, 220 A.2d at 534 (holding that the word "testimony" could not be enlarged to mean testimony "under oath" because "under oath" did not appear in the publication at issue and there was no extrinsic evidence to demonstrate that the testimony was known to be taken under oath).  And while extrinsic evidence may be considered where there is an affirmative allegation that someone other than a plaintiff understood the alleged defamatory statement in the same way a plaintiff does, there is no such evidence here.  *Marcil* 936 A.2d at 214-15.  In sum, the Report is not susceptible of a defamatory interpretation about Plaintiffs and the Amended Complaint must be dismissed.

### 3.      Plaintiffs Have Failed To Plausibly Allege Defamation *Per Se*

Even if the Report could be said to have some critical meaning about Plaintiffs, in Rhode Island, recovery for defamation requires that the plaintiff plead special damages unless a challenged statement is defamatory *per se*.  *Lyons v. Rhode Island Public Employees Council 94*, 516 A.2d 1339, 1342 (R.I. 1986).  To be actionable as defamatory *per se*, "the false statement must impute to the other: (1) a 'criminal offense,' (2) a 'loathsome disease,' (3) a 'matter incompatible with his business, trade, profession, or office,' or (4) a 'serious sexual misconduct.'"  *Marcil*, 936 A.2d at 212.  Critically, "the disparaging words must affect the plaintiff in some way that is peculiarly harmful to one engaged in his trade or profession; disparagement of a general character, equally discreditable to all persons, is not enough unless the particular quality is peculiarly valuable to the plaintiff[']s business or profession."  *Id.* at 213.

Here, Plaintiffs have not adequately pled *per se* defamation.  They do not assert that being a QAnon follower is a criminal offense, or that it amounts to a loathsome disease or serious sexual misconduct.  Plaintiffs merely state that the Report "accuse[s] and imputes to

12

Plaintiffs an unfitness to perform the duties of an office or employment for profit." Am. Compl. ¶ 19. These conclusory statements are insufficient. Plaintiffs allege no facts suggesting that being a QAnon follower is remotely harmful to be being "a stay-at-home Mom." *Id.* ¶ 8. They are slightly more specific as to Jack Flynn, alleging the Report made him "odious and unfit or less fit to fulfill the duties of General Manager of an international seafood business." *Id.* But being accused of being a member of QAnon has no specific bearing on the qualities of a manager of a seafood business. Courts have held that statements with a much closer connection to a plaintiff's profession were not defamatory *per se*. *See, e.g.*, *Swerdlick v. Koch,* 721 A.2d 849, 861 (R.I. 1998) (allegations that plaintiff did not pay his taxes were not defamatory *per se* because such statements did not, in any way, affect or relate to *his* business); *Marcil*, 936 A.2d at 213 (allegations that plaintiff threatened to prevent defendant from doing business with plaintiff's employer "did not in any way harm plaintiff's business reputation"). Common sense also dictates that there were no special damages here, as Flynn himself chose to distribute the full #TaketheOath video in July 2020 – a video containing him and his wife saying the QAnon Slogan. If that distribution did not cause special damages in 2020, then less than two seconds of the video cannot credibly have caused them harm in 2021.

Nor have the Plaintiffs sufficiently pled special damages. A plaintiff must provide "an adequate factual assertion of actual economic harm that establishes special damages." *Sequin, LLC v. Renk*, No. CV 20-62WES, 2021 WL 124250, at *10 (D.R.I. Jan. 13, 2021)*, report and recommendation adopted*, No. CV 20-062 WES, 2021 WL 391519 (D.R.I. Feb. 4, 2021).[7] But Plaintiffs only state that CNN has caused "special damages, … career damages, loss of future earnings, [and] impaired and diminished earning capacity," and that Jack "is afraid he will be

---

[7] *See also* Restatement (Second) of Torts § 575 cmt. b (1977) ("special harm [is] the loss of something having economic or pecuniary value," not a mere loss of reputation).

terminated" from his job.  Am. Compl. ¶¶ 8, 21.  These boilerplate recitals and allusions to

purely speculative future harm are plainly "not enough for plausibility." *Sequin*, 2021 WL

124250 at *10.  Accordingly, Plaintiffs have pled neither a statement that is defamatory *per se*

nor have they pled special damages, and their claim must be dismissed.

> ### 4. Even Plaintiffs' Tortured Interpretation Of The Report Is, As A Matter of Law, Substantially True And Not Materially False, And The Complaint Must Be Dismissed

In the alternative, even if the Report is susceptible to some version of the defamatory

meaning Plaintiff imputes to it (which it is not), it is clear that, based on Plaintiffs' *own pleaded*

*evidence*, the Report is substantially true, and certainly not false.  Plaintiffs have not only

endorsed QAnon, they have *publicized* their endorsement on Twitter.  Am. Compl. ¶ 23.a;

Bolger Decl. ¶¶ 17-23, Exs. 12-13.

> #### a. Plaintiffs Have Failed To Plead Material Falsity

The United States Supreme Court has held, based on First Amendment principles, that

"where a newspaper publishes speech of public concern, a … plaintiff cannot recover damages

without also showing that the statements at issue are false." *Philadelphia Newspapers, Inc. v.*

*Hepps*, 475 U.S. 767, 768-69 (1986).  *See also RainSoft v. MacFarland*, 350 F. Supp. 3d 49, 59

(D.R.I. 2018) (holding that, in order to establish a defamation claim, a plaintiff must show that a

statement regarding an issue of public concern has a defamatory meaning that is "materially

false.") (citing *Pan Am Sys., Inc. v. Atl. Ne. Rails & Ports, Inc.*, 804 F.3d 59, 68 (1st Cir. 2015)).

Statements of public concern include those "that touch on issues in which the public (even a

small slice of the public) might be interested, as distinct, say, from purely personal squabbles."

*Pan Am Sys.*, 804 F.3d at 66.  It is indisputable that a Report about QAnon is a public

controversy.  *See* Am. Compl. ¶ 1 ("adherents of QAnon were among the most prominent

members of the mob who stormed the … Capitol") (internal quotation marks omitted); Am.

Compl. ¶¶ 1-2, 4 n. 1-2, 15 n.3, 19 n.6 (citing reporting from the *Washington Examiner*, *60 Minutes,* CNN, and *Politico*); Am. Compl. ¶ 5 (noting that House of Representatives passed a resolution condemning QAnon).

Plaintiffs must, therefore, show that the Report is false. *See Tannerite Sports LLC v. Universal News Group*, 864 F.3d 236 (2d Cir. 2017). But Plaintiffs cannot even begin to meet that burden here because they have not even successfully pled material falsity as to the actual statements in the Report. To the extent the Report says anything about Plaintiffs, it is that they stood next to General Flynn when he uttered the QAnon Slogan. Plaintiffs have not pled this is false – i.e., they have not pled they did not speak the QAnon Slogan. Instead, they claim they did not mean it in the QAnon way, Am. Compl. ¶ 23.a., that the QAnon Slogan carries a variety of meanings (such as "acknowledging the unity of humankind" or "support for each other"), *id.* ¶ 4 n.1, and that it originated either as an engraving on a bell owned by John F. Kennedy or that it came from a Ridley Scott film. *Id.* Similarly, they admit they have expressed support for QAnon, but say they do not support all QAnon principles. *Id.* ¶ 23.a. But this is not the kind of pleading of material falsity that is required in defamation claims.

On the contrary, just such evasive pleading has been rejected by other courts. In *Hohmann v. GTECH Corp.*, for example, the court considered defamation claims related to a statement by a defendant that lottery tickets that may have been altered by the plaintiffs to try and claim a large cash prize. 910 F. Supp. 2d 400, 403-04 (D. Conn. 2012). Instead of claiming in the complaint that this statement was false, the plaintiffs merely asserted that the defendant "knew or should have known that he could not be 'certain' that the ticket was a 'fraud' and/or that his [statement] widely diverged from the truth." *Id.* at 408. This, the court held, was plainly insufficient, because "[t]o say that [the defendant] could not be certain that the Ticket was not a

15

fraud is not the same thing as saying that the ticket was not in fact a fraud." *Id.* In an analysis equally applicable to this case, the court made clear that "failure to allege falsity is not a mere formality." *Id. See also Quantum Elecs. Corp. v. Consumers Union of U.S., Inc.*, 881 F. Supp. 753, 767 (D.R.I. 1995) (in dispute over rating in consumer magazine, manufacturer did not show falsity where it merely disputed magazine's testing methodology, choice of machine, and final metrics, but failed to dispute actually reported results); *Cabello-Rondon v. Dow Jones & Co., Inc.*, 16-cv-3346 (KBF), 2017 WL 3531551, at *6 (S.D.N.Y. Aug. 16, 2017), *aff'd*, 720 F. App'x 87 (2d Cir. 2018) (in suit over reporting about plaintiff's criminal activity, plaintiff did not meet his pleading burden where his "convoluted" explanation of falsity did not identify "how the defendant's statement was false") (internal quotations omitted) (emphasis in original). Here, as in *Hohmann*, Plaintiffs have sought "every possible route to avoid pleading the essential fact": that the statement that they promoted the QAnon Slogan is false. *Hohmann*, 910 F. Supp. 2d at 408. Plaintiffs may want us to think that they said the QAnon Slogan because they were feeling poetic or having a great fondness for 1990s sailing movies, but the truth is that they said it and then publicized their having done so on Jack Flynn's Twitter feed. They have not pled material falsity.

### b.       It Is Substantially True That Plaintiffs Followed And Supported QAnon

Even if the Report *does* accuse Plaintiffs of supporting or following QAnon – which it does not – Plaintiffs' claim must be dismissed because that allegation is substantially true. Statements are substantially true even if they admit of "[m]inor inaccuracies[,] ... so long as the substance, the gist, the sting, of the libelous charge be justified." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) (quotation marks omitted); *accord Healey*, 555 A.2d at 325. "To qualify as *material* the alleged misstatement must be likely to cause reasonable people

to think significantly less favorably about the plaintiff than they would if they knew the truth." *Bustos v. A & E Television Networks*, 646 F.3d 762, 765 (10th Cir. 2011) (emphasis in original). The inquiry focuses on the viewpoint of a reasonable person in "mainstream contemporary society," not that of the "insular group" to which the plaintiff may belong. *Id.* at 765.

Not only did Plaintiff promote their use of the QAnon Slogan in the #TaketheOath video, but as the evidence included in the Amended Complaint shows they have actively endorsed QAnon as a movement. For instance, according to Jack Flynn, "there is nothing wrong with QAnon. Just People doing their own research and learning independence of thought to find the truth." Am. Compl. ¶ 23.a. In fact, "most people who seem pretty normal to me who support the idea of Q." *Id.* In fact, Jack Flynn is so comfortable supporting the QAnon movement that he responded to a now-banned Twitter user's tweet by posting the image of "WHERE WE GO ONE WE GO ALL" and "Q" emblazoned on an American flag, with the answer "if this means you believe in the constitution and equal justice under the law then this works for me."[8] *Id.*

But that's not all. Plaintiffs have tweeted or retweeted posts and images that express undeniable support for QAnon that are not included in the Amended Complaint but were provided to Plaintiffs in the Rule 11 letter.[9] For instance, on or around July 5, 2020, Jack Flynn

---

[8] Plaintiffs assert that these tweets and others show that Jack Flynn "embraced the Constitution and equal justice under the law, as he stated in tweet after tweet, not the dangerous, extremist, racist, anti-Semitic and violent beliefs espoused by QAnon." Am. Compl. ¶ 23.a. But these beliefs are, sadly, not mutually exclusive. As reported in the articles Plaintiffs rely on, "QAnon supporters are typically pro-Trump [and] emphasize their patriotism for the U.S." Bolger Decl. ¶ 6, Ex. 4 at 2. Indeed, QAnon supporters have run for Congress, and view #TaketheOath as expressing support for *both* the United States and QAnon. *Id.*

[9] As noted above (*see* Section I), a court may consider documents where a "complaint relies heavily upon [their] terms and effect, which renders the document integral to the complaint." *Chambers*, 282 F.3d at 153; *see Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 46 (2d Cir. 1991). Here, Plaintiffs allege that CNN reviewed Plaintiffs' Twitter feeds prior to the Report, and so knew that Plaintiffs were not supporters or followers of QAnon. Am. Compl. ¶ 23.a. Plaintiffs also include screenshots of numerous Tweets by Jack Flynn in the body of the complaint, reference without quoting several other Tweets, provide their Twitter aliases and, in the case of Jack Flynn, whose account was disabled, the URL at which the feed has been archived. *See* Am. Compl. ¶¶ 14, 23.a and n.7. Plaintiffs clearly knew of and relied on the feeds in drafting their Amended Complaint, and do not dispute their authenticity or relevance. The Court can and should consider the feeds in their entirety. *See Ganske v. Mensch*, 480 F. Supp. 3d 542, 546 (S.D.N.Y. 2020) (in case over allegedly defamatory tweet, court took notice of additional

tweeted a photograph of his brother, wearing a "Q" pin on his lapel, standing in front a cascade of green lettering and beneath the words "The Great Awakening".  Bolger Decl. ¶ 17, Ex. 12 at 1; *see also id.* ¶ 8, Ex. 6 at 2 (describing meaning of "the Great Awakening").  On August 21, 2020, he shared a post stating that "Qanon is not a violent conspiracy.  We are every day [sic] people seeking truth.  I am a family man.  I am educated, and run my own business.  I work hard, and spend my spare time with my family.  I enjoy golf 🏌.  Qanon's [sic], share and tell your story. 👇 👇."  *Id.* ¶ 18, Ex. 12 at 2.  He retweeted an image titled "QAnon vs. Antifa: A Breakdown," according to which, QAnon's mission is "Exposing Corruption[,] … Evil (inc. child trafficking)[,] … Deception[, and] Preserving Freedom."  *Id.* ¶ 19, Ex. 12 at 3.[10]  And Leslie Flynn has at least twice "liked" QAnon related Tweets.  One contains the hashtags #WWG1WGA, #TheGreatAwakening, and #Q.  The other includes an illustration that includes "#WWG1WGA" and what appears to be General Flynn standing next to the letter Q.  *Id.* ¶¶ 22-23, Ex. 13.[11]

It is, therefore, true that Plaintiffs have supported or followed QAnon in the past.  This truth is undeniable even if, as it appears, Plaintiffs now want to distance themselves from the more violent aspects of the movement.  In this way, this case is just like *Lovejoy v. Mutual Broadcasting System* – a case cited by *Plaintiffs*.  There, the court held the defendants had not

---

tweets that were "integral to the allegations in the complaint and necessary to place [defendant's] comments in context"); *Condit*, 317 F. Supp. 2d at 356 (taking into consideration the entirety of "recordings and transcripts [that] are referenced and quoted at length in the complaint … because plaintiff relies on them and they are integral to plaintiff's action.")  Accordingly, CNN has annexed several Tweets appearing in the Flynns' feeds as Exhibits to the Bolger Declaration.

[10] *See also id.* ¶ 20, Ex. 12 at 4 (retweet on September 16, 2019 of post by "QBlueSky" containing images of message board posts signed by "Q," and the hashtag "#QAnon"); *id.* ¶ 21, Ex. 12 at 5-7 (retweets of posts featuring user "whaleswarrior" in "Q" merchandise, including hats bearing the letter "Q").

[11] Moreover, Jack Flynn concedes that he used hashtags like #HoldTheLine and #DigitalSoldiers.  Am. Compl. ¶ 18.  Plaintiffs allege that these hashtags "largely track[]" family and political developments, but do not dispute – indeed, cannot dispute – that they are also routinely used by QAnon supporters.  *Id.* ¶ 21, Ex. 12 at 7.

defamed the plaintiff by calling him "a Nazi and Hitler sympathizer" because the statement was not materially false.  220 S.W.2d 308, 314 (Tex. Civ. App. 1948).  The plaintiff had written letters during the war calling the German people a "great race … who [fight] well and bravely [and] treat[] our prisoners with great consideration" and equating Germany and Japan's actions to the creation of England's empire.  *Id.* at 310, 314.  Because the letters "evidence[d] … sympathetic leaning toward" the Nazi Party and were "susceptible of the interpretation that there was some sympathy for the German people through whom the Nazi party was functioning," the challenged statement was substantially true.  *Id.* at 314.  *See also Bustos*, 646 F.3d at 762-73 (report that plaintiff was a member of the Aryan Brotherhood was truthful where he had been seen with members of the gang and had helped them smuggle drugs, because to a "reasonable member of the (law abiding) contemporary community," the difference between being a member and being an affiliate was minor, and the broadcast not actionable for being substantially true.) *Accord Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1226–29 (7th Cir. 1993) (allegation that father left his children at home alone was nonactionable where evidence showed he was a bad father in other ways).  Here, as in *Lovejoy*, Plaintiffs have expressed considerable sympathy and support for QAnon, and have even defended it, stating that "there is nothing wrong with QAnon."  Am. Compl. ¶ 23.a.  Implying (or even stating) that Plaintiffs are "supporters and followers" of QAnon is not actionable – it is implying (or stating) the truth.  It is possible that Plaintiffs have decided to reject QAnon now that some of its adherents may be prosecuted for participating in an insurrection.  But in for a penny, in for a pound.  It is simply incorrect to allege that Plaintiffs have never supported QAnon.  The Report is truthful.

### 5.     Plaintiffs Cannot Plead The Requisite Level of Fault

#### a.     Jack Flynn Has Failed To Adequately Plead Actual Malice

In the alternative, the Amended Complaint should be dismissed as to Jack Flynn because

19

Mr. Flynn has failed to state any facts that plausibly allege that CNN acted with subjective knowledge that the challenged statements were false. A public official or figure may not recover damages for a defamatory falsehood unless "he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). Courts have delineated two kinds of "public figure" defamation plaintiffs. A "general purpose public figure" is someone who has "assumed [a] role[] of especial prominence in the affairs of society." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974). A "limited purpose public figure," by contrast, is someone who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Id.* at 351-52. The law is clear that a public figure libel plaintiff bears the burden of proof on actual malice, a burden he must carry by "demonstrat[ing] with clear and convincing evidence that the defendant realized that his statement was false or that he subjectively entertained serious doubts as to the truth of his statement." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511 n.30 (1984). *See also St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) ("There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."); *Major v. Drapeau*, 507 A.2d 938, 941 (R.I. 1986) (same). Allegations of actual malice must pass the "plausibility test" imposed by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft*, 556 U.S. at 662. "A public-figure plaintiff must plead 'plausible grounds' to infer actual malice by alleging 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' actual malice." *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015) (citation omitted). *See also Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377-78 (4th

4835-3161-0863v.1 0026517-000210

Cir. 2012).

**(i)**      **Jack Flynn Is A Limited Purpose Public Figure**

There is no doubt that Mr. Flynn is a limited purpose public figure.  "If the individual has thrust himself into the vortex of [a] public issue or has engage[d] the public's attention in an attempt to influence its outcome, then he or she may, for the limited purpose of that issue, be considered a public figure."  *Major*, 507 A.2d at 941 (citing *Gertz*, 418 U.S. at 352); *Capuano v. Outlet Co.*, 579 A.2d 469 (R.I. 1990) (owners of waste collection company were limited purpose public figures as to controversy over mob-related waste hauling scheme by virtue of their business and their public comments).  Whether a plaintiff is a public figure is a question of law. *DeCarvalho v. daSilva*, 414 A.2d 806, 813 (R.I. 1980).

QAnon is clearly a public controversy.[12]  *See* Bolger Decl. ¶¶ 6-10, Exs. 4-8.  And Mr. Flynn has been anything but silent on this issue: he has used his Twitter feed to advocate for his brother, defend QAnon, to discuss the meaning behind #WWG1WGA and to debunk the most outlandish of the QAnon theories (that John F. Kennedy, Jr. is still alive).  Am. Compl. ¶ 23.a.  Soon after his brother first posted the #TakeTheOath video and he retweeted it, Mr. Flynn commented on – and retweeted others who also commented on – the resulting controversy. *Id.*; Bolger Decl. ¶ 24, Ex. 14.  In fact, he rode *his own participation* in the controversy to a substantial social media following.  His Twitter following grew from approximately 108,000 on July 5, 2020 – when the #TakeTheOath video was first posted to Twitter – to approximately 226,000 on January 8, 2021, when he left Twitter seven months later.[13] Bolger Decl. ¶¶ 14-15, Ex. 10 at 3-4.  *See Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1248 (Cal. 2017), *as modified*

---

[12] *See supra*, Section A.4.a.

[13] For comparison, it took nearly a year for him to gain his first hundred thousand followers.  Bolger Decl. ¶¶ 12-13, Ex. 10 at 1-2.

21

(Apr. 19, 2017) (plaintiff was a public figure where she had "promoted her own status as a celebrity and had [between] 47,145 Twitter followers … and 78,628 Twitter followers"). There is no question that Mr. Flynn is a public figure for the purpose of this lawsuit.

        (ii)     **Plaintiffs Cannot Show That CNN Acted With Malice**

As a limited purpose public figure, Mr. Flynn must therefore plausibly allege actual malice in order to survive a motion to dismiss. "The standard of actual malice is a daunting one." *Howard v. Antilla*, 294 F.3d 244, 252 (1st Cir. 2002) (citation omitted). "Actual malice means knowledge that the statement was false or reckless disregard of whether or not it was true or false," *Major*, 507 A.2d at 940. Reckless disregard requires that a defendant "entertained serious doubts as to truth of [the] publication," *St. Amant*, 390 U.S. at 731, or had a "high degree of awareness of ... probable falsity." *Garrison v. State of La.*, 379 U.S. 64, 74 (1964). A public figure must prove actual malice by "clear and convincing evidence." *Lyons*, 559 A.2d at 1343.

Jack Flynn cannot meet this burden. Plaintiffs allege that CNN "acted with actual malice and reckless disregard for the truth" because it had reviewed Mr. Flynn's Twitter feed and therefore had "no basis for linking … Jack to any domestic violent extremist groups." Am. Compl. ¶ 23.a. This strains credulity, especially since Mr. Flynn's feed (as referenced in the Amended Complaint and detailed above) is replete with support for and defenses of QAnon, its followers, and its slogans. Most damning of all, Jack Flynn's Twitter feed would show the very video of him saying the QAnon Slogan that he now complains of – a video he himself chose to tweet on or around July 4, 2020. Bolger Decl. ¶ 11, Ex. 9. None of the above remotely demonstrates that CNN entertained "serious doubts" about the truth of the statements, *St. Amant*, 390 U.S. at 731, or had a high degree of awareness of their falsity, *Garrison*, 379 U.S. at 74. To the contrary, it demonstrates that Mr. Flynn's support for QAnon was obvious – and that, even if

CNN had reviewed Mr. Flynn's Twitter account prior to airing the Report, it would have had absolutely no reason to doubt the truth of the Report.[14]

### b.    Leslie Flynn Has Failed To Plausibly Allege Negligence

Nor has Leslie Flynn adequately alleged negligence.  Under Rhode Island law, a private figure plaintiff must prove "fault amounting at least to negligence on the part of the publisher." *Healey*, 555 A.2d at 324 (citing Restatement (Second) Torts § 558 (1977)); *see also Capuano*, 579 A.2d at 472.  Negligence requires a showing that the defendant had no "reasonable grounds for believing that the communication was true."  Restatement (Second) of Torts § 580B (1977). Plaintiffs again fail to meet their pleading burden, as they have pled no facts that plausibly allege negligence as to Leslie Flynn.[15]  *See Shay v. Walters*, 702 F.3d 76, 82–83 (1st Cir. 2012) (upholding dismissal based on 12(b)(6) standard, court held that "complaint does not contain any facts suggesting that the defendant acted negligently in publishing the challenged statements"); *Veilleux v. Nat'l Broad. Co.,* 206 F.3d 92, 128 (1st Cir. 2000) (no negligence where potentially misleading statements about long-haul truckers were made based on plaintiff's own admissions prior to broadcast).  As an initial matter, Plaintiffs concede that Ms. Flynn spoke the words "where we go one, we go all."  Am. Comp. ¶ 4.  As discussed above, Plaintiffs also provide substantial evidence that the QAnon Slogan is a core QAnon belief.  *See supra*, Section C.

---

[14] Plaintiffs also allege that CNN's supposed "bias" against the Flynn family, and its failure to ask Plaintiffs for comment prior to airing the Report, are evidence of actual malice.  Am. Compl. ¶ 23.d.  They are incorrect – particularly in light of the fact that Jack Flynn tweeted the video himself.  Bias alone is not enough to establish actual malice.  *Church of Scientology Int'l v. Time Warner, Inc.*, 903 F. Supp. 637, 641 (S.D.N.Y. 1995), *on reconsideration*, 932 F. Supp. 589 (S.D.N.Y. 1996), *and aff'd sub nom. Church of Scientology Int'l v. Behar*, 238 F.3d 168 (2d Cir. 2001); *see also Palin v. New York Times Co.*, 940 F.3d 804, 814 (2d Cir. 2019) ("political opposition alone does not constitute actual malice").  And courts around the country have held that failure to ask for comment is not evidence of actual malice.  *See, e.g.*, *Secord v. Cockburn*, 747 F. Supp. 779, 788 (D.D.C. 1990) (failure of author to apprise plaintiff of contents of book or give him the opportunity to correct errors prior to publication was not evidence of actual malice); *Davis v. Costa-Gavras*, 654 F. Supp. 653, 657 (S.D.N.Y. 1987) (failure to consult with plaintiff prior to making the film did not show actual malice).

[15] For purposes of this motion only, CNN assumes, but by no means concedes, that Ms. Flynn is a private figure.

Plaintiffs *also* allege that CNN reviewed – and had knowledge of – the contents of Ms. Flynn's Twitter feed.  *Id.* ¶ 23.a.  And, as discussed above, Ms. Flynn has at least twice liked Tweets that undeniably express support for QAnon.  *See supra*, Section A.4.b.  Far from showing "actual knowledge" of falsity, these facts suggest that CNN would have had reasonable grounds to believe that Ms. Flynn not only promoted a QAnon slogan but supported and followed the QAnon movement, had it reviewed Ms. Flynn's account prior to airing the Report.  They plainly have not met their burden of establishing the requisite standard of care.

### B.    Plaintiffs Fail To State A Claim For False Light Invasion Of Privacy

Nor can Plaintiffs make out a claim for false light.  Under Rhode Island law, false light is similar to defamation.[16]  *Swerdlick*, 721 A.2d at 859 ("We … address plaintiffs' defamation and false-light claims together because the applicable law is similar").  It requires proof "that a plaintiff be given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position."  *Cullen v. Auclair*, 809 A.2d 1107, 1112 (R.I. 2002); *see also* R.I. Gen. Laws § 9-1-28.1(a)(4); *Alves*, 857 A.2d at 752.  A finding of substantial truth defeats a false light claim.  *Swerdlick*, 721 A.2d at 862 ("defendant's statements … were based on substantially true facts, and thus cannot be relied upon to support an action for false light [or defamation]").  Here, Plaintiffs' false light claim suffers from the same fatal flaws as their claim for defamation *per se*: it is substantially true to state that they followed and supported QAnon.[17] Plaintiffs' false light

---

[16] New York does not recognize false light as a viable cause of action.  *See Freeman v. Johnston*, 192 A.D.2d 250, 253 (1993), *aff'd*, 84 N.Y.2d 52 (1994).

[17] Plaintiffs' false light claim also fails as to Jack Flynn because Plaintiffs have not shown actual malice.  The Supreme Court has held that false light claims involving public figures – such as Jack Flynn, *see supra*, Section A.5.a.i – require a showing of actual malice.  *See Time, Inc. v. Hill*, 385 U.S. 374, 389 (1967) (extending *Sullivan* actual malice standard to claim of false light invasion of privacy involving public figures and officials).  Jack Flynn's Twitter feed precludes a finding of actual malice.  *See supra*, Section A.4.b.

claim must be dismissed for this reason.

### C.   This Court Should Award CNN Costs And Fees Associated With This Motion

CNN alerted Plaintiffs to many of the arguments contained herein in the Rule 11 Letter, including reminding them of the statements that they had made on the Twitter feed.  Bolger Decl. ¶ 4, Ex. 2.  But Plaintiffs persisted in bringing this claim.  CNN should be awarded fees, costs, and expenses for the filing of this motion, pursuant to 28 U.S.C. § 1927 and this Court's inherent authority, because the filing of a plainly frivolous Amended Complaint has multiplied the proceedings unreasonably and vexatiously.  See *Harvey v. Cable News Network, Inc.*, No. CV RDB-20-3068, 2021 WL 1215083, at *5 (D. Md. Mar. 31, 2021), *reconsideration denied*, No. CV RDB-20-3068, 2021 WL 1516009 (D. Md. Apr. 16, 2021) (assessing sanctions against "Plaintiff Harvey and [counsel herein] for unreasonably and vexatiously extending this matter in bad faith"); *Sweetland v. Bank of Am. Corp.,* 241 F. App'x 92, 97 (4th Cir. 2007) (per curiam) (affirming sanctions where counsel "pursued plaintiffs' claims well after he knew that evidentiary support for the allegations would not be forthcoming").  *See also Lokhova v. Halper*, 995 F.3d 134, 149 (4th Cir. 2021) (noting "this is not the first time [Plaintiffs'] attorney['s] litigation conduct has earned reprimand.  His history of unprofessional conduct is long" and citing reprimands).

### CONCLUSION

For the foregoing reasons, Defendant CNN respectfully requests this Court enter an order dismissing the Amended Complaint against it, with prejudice, and for such other and further relief as the Court deems just and proper.

Dated: New York, New York
June 21, 2021

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: ___/s/ Katherine M. Bolger_____
Katherine M. Bolger (N.Y. Bar No. 2976868)
1251 Avenue of the Americas, 21st Floor
New York, NY  10020-1104
(212) 489-8230 Phone
(212) 489-8340 Fax

*Attorneys for Defendant*

TO:     Jeremy Zenilman, Esquire
(N.Y. Bar No. 4862041)
336 East 77th Street #9
New York, New York 10075
Telephone: (516) 650-5821
Email: jzenilman@hotmail.com

Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: stevenbiss@earthlink.net

*Counsel for the Plaintiffs*

4835-3161-0863v.1 0026517-000210