IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------x
JOHN P. "JACK" FLYNN                  :
LESLIE A. FLYNN                       :
                                      :
        Plaintiffs,                   :
                                      :
v.                                    :        Case 1:21-cv-02587-GHW/SLC
                                      :
                                      :
CABLE NEWS NETWORK, INC.              :
                                      :
        Defendant.                    :
-------------------------------------------------------x
```

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT CNN'S MOTION TO DISMISS

Plaintiffs, John P. "Jack" Flynn and Leslie A. Flynn (the "Flynns"), by counsel, respectfully submit this Memorandum in Opposition to the motion to dismiss pursuant to Rule 12(b)(6) filed by defendant, Cable News Network, Inc. ("CNN") [*ECF No. 104*].

### I.   INTRODUCTION

This action involves a knowingly false and dangerous attribution. In order to impugn the reputations of the Flynns, CNN falsely linked them to a violent domestic extremist group, **QAnon**, whose adherents were among the "most prominent members of the mob" who stormed the United States Capitol in Washington, D.C.

On February 4, 2021, within a month of the storming of the Capitol and during a time when CNN was heavily promoting various narratives about the "dangerous" and "insurrectionist" terrorist group, **QAnon**, CNN published an edited video clearly featuring the Flynns. CNN emblazoned the clip with a chyron that falsely accused the Flynn's of being "**QANON FOLLOWERS**". Not content with cable television, CNN

1

republished the false statements to various social media properties, garnering millions of views.  The Flynns allege that CNN's statements caused substantial damage. [*ECF No. 7 ("Am. Compl."), ¶¶ 1, 3, 4, 6, 8, 15, 16, 18, 21*].

The Flynns – private individuals – commenced this action on March 25, 2021. On May 7, 2021, they filed an amended complaint, alleging claims of defamation and false light invasion of privacy.  CNN moved to dismiss the Flynn's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The matter is before the Court on CNN's motion to dismiss.  The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). [*Am. Compl., ¶¶ 8, 9, 10*].  For the reasons stated below, the Court should deny CNN's motion.

## II.  STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.  The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.*  "While the Federal Rules of Civil Procedure

require more specific pleading in certain cases, defamation cases are not among them."
*Hatfill v. New York Times*, 416 F.3d 320, 329 (4th Cir. 2005).

In considering a motion to dismiss pursuant to Rule 12(b)(6), the District Court construes the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *La Liberte v. Reid*, 966 F.3d 79, 85 (2nd Cir. 2020) (citing *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2nd Cir. 2019) (quoting *Elias v. Rolling Stone, LLC*, 872 F.3d 97, 104 (2nd Cir. 2017))).[1]

## III.  BACKGROUND

### A.    The Parties

The Flynns are citizens of Rhode Island.  They are both private individuals.  Jack Flynn is an executive in the seafood processing and sales business.  He had a Twitter account that he deleted in January 2021 because of Twitter's "censorship of American values and truth."  Leslie Flynn has been a stay-at-home Mom for the past fifteen (15) years.  She worked as a hairstylist and administrative assistant for a dentist.  Jack and Leslie have been married for 23 years.  They raised 4 children.  They have 3 grandkids.

---

[1]    *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2nd Cir. 2010) ("In considering a motion to dismiss . . . pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). **Throughout its memorandum in support of motion to dismiss, CNN completely disregards the factual allegations in the amended complaint and recites its own set of facts**. Rule 12(d) of the Federal Rules of Civil Procedure provides that if, on a motion under Rule 12(b)(6), "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  CNN's memorandum in support of motion to dismiss presents matters outside the pleadings.  [*See, e.g., ECF No. 18*].  The Court should convert the motion to one for summary judgment under Rule 56, and deny the motion without prejudice and allow the parties to develop and submit evidence.

Until they were egregiously defamed by CNN, the Flynns enjoyed an untarnished reputation in the community. [*Am. Compl., ¶ 8, 14*].

CNN, is a Delaware corporation, with a principal place of business in New York. The broadcast and social media posts at issue in this case, identified in the Flynn's amended complaint, were published in New York and disseminated nationally. *See, e.g., Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984) ("[f]alse statements of fact harm both the subject of the falsehood ***and*** the readers of the statement … The tort of libel is generally held to occur wherever the offending material is circulated. Restatement (Second) of Torts § 577A, Comment a (1977). The reputation of the libel victim may suffer harm even in a state in which he has hitherto been anonymous. The communication of the libel may create a negative reputation among the residents of a jurisdiction where the plaintiff's previous reputation was, however small, at least unblemished."). [*Am. Compl., ¶ 9*].

**B.**    **The Fourth of July Barbecue Video**

On July 4, 2020, General Michael T. Flynn ("General Flynn") posted a video to his Twitter account. The video was taken during a Fourth of July barbecue at the Flynns' home in Newport County, Rhode Island. In the video, each member of the Flynn family, including the Plaintiffs in this action, individually took an oath to the United States Constitution, the same oath taken by Members of Congress. After finishing the oath to the United States Constitution, General Flynn stated, "where we go one, we go all". Each family member repeated the phrase, as they had repeated each line of the oath to the Constitution. The entire family then exclaimed, "God Bless America". The Flynn's repetition of the phrase "where we go one we go all" at the July 4, 2020 barbecue did not

signify any kind of support for QAnon. It was not an oath of allegiance to QAnon, or any kind of oath at all. It was a simple, family, July 4 statement of support for each other. [*Am. Compl., ¶ 4 fn. 1*; ¶ *23(a) ("Powell, a former Federal prosecutor, made it crystal clear to CNN in a series of tweets that the oath taken by the Flynn family was not an oath or pledge to QAnon")*].[2]

On July 7, 2020, CNN published the video of the Flynn family's Fourth of July oath. In an accompanying article, CNN noted that General Flynn's Twitter post included the hashtag, **#TakeTheOath**, followed by an American Flag. CNN ***falsely*** claimed this was a "QAnon hashtag".[3] [*Am. Compl., ¶ 4 fn. 2*].

## C.   <u>Domestic Violence Extremist Group – QANON</u>

According to the Federal Bureau of Investigation ("FBI") and the Department of Homeland Security ("DHS"), "QAnon" is a "domestic violence extremist" ("DVE") group and a "domestic terrorism threat". The *Wall Street Journal* concludes that QAnon is a "far right-wing, loosely organized network and community of believers who embrace a range of unsubstantiated beliefs. These views center on the idea that a cabal of Satan-

---

[2]     In its memorandum, p. 3, CNN completely disregards the allegations in paragraph 4 of the amended complaint, and substitutes its own words. CNN suggests that on July 4, 2020, "General Flynn took part in a QAnon Twitter movement called #TakeTheOath by sharing a video of himself leading his family, including Plaintiffs, in reciting the oath of office given to federal elected officeholders. When the oath is completed, General Flynn said the QAnon Slogan, which the other family members, including Plaintiffs, subsequently repeat."

[3]     In its memorandum, CNN manufactures definitions such as "QAnon Slogan". The amended complaint contains no such definitions, and, in fact, the whole idea of a "QAnon Slogan" or a "QAnon hastag" is expressly disputed and disavowed by the Flynns in the amended complaint. [*See, e.g., Am. Comp., ¶ 4 ("In the piece, O'Sullivan **falsely claimed** that 'where we go one, we go all' was an 'infamous QAnon slogan promoted by Trump's first National Security Advisor Michael Flynn'") (emphasis added)*].

worshipping pedophiles—mainly consisting of what they see as elitist Democrats, politicians, journalists, entertainment moguls and other institutional figures—have long controlled much of the so-called deep state government, which they say sought to undermine [President] Trump, mostly with aid of media and entertainment outlets." On January 6, 2021, adherents of QAnon were among the "most prominent members of the mob" who stormed the United States Capitol in Washington, D.C. https://www.wsj.com/articles/what-is-qanon-what-we-know-about-the-conspiracy-theory-11597694801?mod=article_inline]. CBS News' *60 Minutes* recently represented that the violent "extremist ideology" of the QAnon "movement" has had a "corrosive impact" on the United States. [https://www.cbsnews.com/news/qanon-conspiracy-united-states-60-minutes-2021-02-21/]. [*Am. Compl., ¶ 1*].

In the wake of the January 6 storming of the Capitol, a chorus of left-wing media outlets began to spread false narratives about QAnon, including that General Flynn was the "founder" of QAnon. On January 31, 2021, CNN aired a "Special Report" hosted by Anderson Cooper entitled, "***Inside the QAnon Conspiracy***". CNN called QAnon a "deranged conspiracy cult". CNN stated that some of "Q's conspiracy claims" were "actually based on age-old racist and anti-Semitic beliefs". CNN asserted that QAnon, like the Nazis, promoted "ancient and dark biases and bigotry in World history". CNN stated that QAnon supporters were detached from "reality" and had an utter "disregard" for the facts. CNN alleged that QAnon followers were mentally ill and crazy. CNN concluded that it was "abundantly clear" that QAnon was a "dangerous and violent movement" – a movement that has become "insurrectionist". [*Am. Compl., ¶ 2*].

D.    **The CNN Edited Video And Chyron**

On February 4, 2021, CNN falsely accused the Flynns of being "**QANON FOLLOWERS**". [*Am. Compl., ¶ 3*].   CNN published an "exclusive" report by Donie O'Sullivan ("O'Sullivan"), titled "***CNN Goes Inside A Gathering Of QANON Followers***".   The CNN "exclusive" features an edited video of the Flynns.   In the clip, CNN intentionally edited out the oath to the United States Constitution <u>and</u> omitted the words "God Bless America", fraudulently making it appear and insinuating that the Flynns pledged an oath of allegiance to QAnon.   To emphasize that fact, CNN employed a chyron that identified the Flynns as "**QANON FOLLOWERS**".   CNN's social media posts also prominently featured a photograph or image of the Flynns above the same "**QANON**" chyron. [*Am. Compl., ¶¶ 4, 5*].   The CNN "exclusive" created a public debacle.   The Flynns received notice from a friend that they had been featured on CNN:



CNN's false attributions exposed the Flynns to public scorn, ridicule and contempt, and lowered their esteem in the community, causing insult, embarrassment, humiliation and substantial injury to their reputations.  To their chagrin and dismay, the Flynns have had to explain away CNN's hurtful misstatements, and defend their good standing and reputations in the community. [*Am. Compl., ¶ 6*].

The Flynns allege that CNN "manufactured a relationship and connection between Plaintiffs and QAnon that never existed." [*Am. Compl., ¶ 16*].  They claim that associating them with a "domestic terrorist" group is both materially false [*Id., ¶¶ 6, 18*] and defamatory. [*Id., ¶¶ 18 fn. 4, 19*].  The Flynns further assert that CNN knew its statements were false, and published the statements with actual malice. [*Id., ¶ 23*].

## IV.  DISCUSSION

Freedom of speech is not absolute. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942).  It does not embrace or excuse defamation. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245-246 (2002) ("freedom of speech has its limits; it does not embrace certain categories of speech, including defamation").  Indeed, false and defamatory statements are not entitled to ***any*** constitutional protection. *Chaplinsky*, 315 U.S. at 572 ("There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem.  These included the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words – those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.  It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the

social interest in order and morality."); *id. Herbert v. Lando*, 441 U.S. 153, 171 (1979)

("[s]preading false information in and of itself carries no First Amendment credentials.");

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349-350 (1974) (there is "no constitutional

value in false statements of fact.").

Similarly, "[f]reedom of the press under the First Amendment does not include

absolute license to destroy lives or careers." *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 170

(1967) (Warren, C.J., Concurring).   The press has no "special immunity from the

application of general laws", nor does it have a "special privilege to invade the rights and

liberties of others." *Branzburg v. Hayes*, 408 U.S. 665, 684 (1972).   The press has no

right to "invent facts" or to "comment on the facts so invented" and, thereby, convince

readers that the invented facts are true.   Simply put:

> "[l]iberty of the press is not license, and newspapers have no privilege to publish
> falsehoods or to defame under the guise of giving the news.   It is held that the
> press occupies no better position than private persons publishing the same matter;
> that it is subject to the law, and if it defames it must answer for it."

*Williams Printing Co. v. Saunders*, 113 Va. 156, 73 S.E. 472, 477 (1912) (numerous

citations and quotations omitted); *Dexter v. Spear*, 7 F. Cas. 624-625 (1st Cir. 1825)

(Story, J.) ("No man has a right to state of another that which is false and injurious to

him.   A fortiori no man has a right to give it a wider and more mischievous range by

publishing it in a newspaper.   The liberty of speech, or of the press, has nothing to do

with this subject.   They are not endangered by the punishment of libellous publications.

The liberty of speech and the liberty of the press do not authorize malicious and injurious

defamation.   There can be no right in printers, any more than in other persons, to do

wrong.").

The law of defamation protects a basic human interest:  the individual's right to personal security and the uninterrupted enjoyment of his and her reputation.    In *Rosenblatt v. Baer*, the United States Supreme Court emphasized that:

> "'Society has a pervasive and strong interest in preventing and redressing attacks upon reputation.'  The right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty".

383 U.S. 75, 92-93 (1966); *id. Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 11 (1990) ("Since the latter half of the 16th century, the common law has afforded a cause of action for damage to a person's reputation by the publication of false and defamatory statements."); *Fuller v. Edwards*, 180 Va. 191, 198, 22 S.E.2d 26 (1942) ("[o]ne's right to an unimpaired limb and to an unimpaired reputation are, in each instance, absolute and has been since common law governed England.  Indeed, an impaired reputation is at times more disastrous than a broken leg.").[4]

A.    ***COUNT I – Defamation***

Under Rhode Island common law, the elements of a claim of defamation are: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a

---

[4]    In tort cases, where there is an actual conflict of laws, New York law applies the "most significant interest test," which distinguishes between "conduct regulating" and "loss allocating" rules. *Lee v. Bankers Tr. Co.*, 166 F.3d 540, 545 (2nd Cir. 1999).  Discouraging defamation is a conduct-regulating rule. *Id.*  In determining whether a state other than the plaintiff's domicile has a more significant relationship to the case, New York courts "weigh all the factors that might impact on the interests of various states in the litigation to make a choice of law determination," including "'where the plaintiff suffered the greatest injury'; 'where the statements emanated and were broadcast'; 'where the activities to which the allegedly defamatory statements refer took place'; and 'the policy interests of the states whose law might apply.'" *Catalanello v. Kramer*, 18 F. Supp. 3d 504, 512 (S.D.N.Y. 2014) (quoting *Condit v. Dunne*, 317 F. Supp. 2d 344, 353–54 (S.D.N.Y. 2004) (collecting cases)).  Here, Rhode Island has the most significant interest in the litigation.

third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) damages, unless the statement is actionable irrespective of special harm." *Healey v. New England Newspapers, Inc.*, 555 A.2d 321, 324 (R.I. 1989) (internal quotation marks omitted). The "of and concerning" element of defamation is satisfied if the statement leads "the listener to conclude that the speaker is referring to the plaintiff by description, even if the plaintiff is never named or is misnamed." *Budget Terminate & Pest Control, Inc. v. Bousquet*, 811 A.2d 1169, 1172 (R.I. 2002) (quoting *Croixland Properties Limited Partnership v. Corcoran*, 174 F.3d 213, 216 (D.C. Cir. 1999)); *id. Sztulman M.D. v. Donabedian*, 2015 WL 4590840, at * 5 fn. 2 (R.I. Super. 2015) (the of and concerning element of defamation "is satisfied when [an] ordinary [individual] would have reasonably understood [the] statement [to be] about the particular plaintiff even if never referenced by name"). In Rhode Island, a cause of action for defamation is satisfied when the defamed private citizen proves "a false publication that would subject him to hatred, contempt, or ridicule." *Lundgren v. Pawtucket Firefighters Ass'n Local 1261*, 595 A.2d 808, 815 (R.I. 1991) ("In this controversy, there is little doubt that plaintiffs have satisfied the requirements for a claim of defamation. As was mentioned earlier, plaintiffs were referred to as scabs, and the word 'scab' was written on their equipment, across their paychecks, and next to their names. Also there is no question of plaintiffs' being subjected to 'hatred, contempt or ridicule.' The only question that remains is whether plaintiffs were in fact scabs, making truth an absolute defense").

"Words alleged to be defamatory must be read in the context of the publication in which they appear, taken as a whole." *Lyons v. R.I. Pub. Emps. Council 94*, 516 A.2d 1339, 1343 R.I. 1986). The accused publication must be considered in its totality, with

the verbiage construed in its plain and ordinary sense from the point of view of an ordinary reader. The Court's analysis should begin with the message as a whole, looking at the "gist" or "sting" of the communication, and must focus on all the words used, "not merely a particular phrase or sentence." *Froess v. Bulman*, 610 F.Supp. 332, 340 (D. R.I. 1984) (internal quotation marks omitted), *aff'd*, 767 F.3d 905 (1st Cir. 1985). The decisive inquiry, however, "is what the person to whom the communication was published reasonably understood as the meaning intended to be expressed." *Lyons*, 516 A.2d at 1343 (quoting Restatement (Second) Torts § 563, cmt. e, at 164 (1977)).

### 1.   *CNN's Statements Are Of or Concerning The Flynns*

It is axiomatic that "to prevail in defamation litigation, a plaintiff must establish that it was he or she who was libeled or slandered: that the allegedly defamatory communication was about ('of and concerning') him or her". Robert D. Sack, Sack on Defamation § 2:9 (4th ed. 2012). It is also well settled that:

> "[i]t is unnecessary for an article [or statement] to name a person in order for it to be 'of and concerning' that person. If it can be shown either that the implication of the article was that the plaintiff was the person meant or that he or she was understood to be the person spoken about in light of the existence of extrinsic facts not stated in the article, then it is 'of and concerning' the plaintiff as though the plaintiff was specifically named."

Robert D. Sack, Sack on Defamation § 2:9.1 (4th ed 2012) (citing *DeBlasio v. North Shore Univ. Hosp.*,213 A.D.2d 584, 624 N.Y.S.2d 263 (2nd Dep't 1995)). "It is not necessary that all the world should understand the libel; it is sufficient if those who knew the plaintiff can make out that he is the person meant". *Stern v. News Corp.*, 2010 WL 5158635, at * 5 (S.D.N.Y. 2010).

Here, the Flynns allege in paragraph 16 of the amended complaint that "CNN made, published and republished false factual statements of or concerning Plaintiffs".

The Flynns assert that (a) they were featured in an edited video with the prominent chyron that identified them as "**QANON FOLLOWERS**", (b) the Flynns' image was also displayed in CNN's social media posts published to millions above a banner that identified the Flynns as "**QANON FOLLOWERS**", and, (c) as alleged in paragraph 6 of the amended complaint, at least one of the Flynn's friends knew that CNN's false statements referred to the Flynns because that person texted the picture displayed by CNN to Leslie Flynn.  Viewed in the light most favorable, CNN's statements were "of or concerning" the Flynn's.  The motion to dismiss should be DENIED.

### 2.   *CNN's Statements Are Defamatory*

"A false statement is defamatory if, 'in the context of the publication in which [it] appear[s],' and according to its 'plain and ordinary meaning in the community in which [it is] published,' the statement 'tends to degrade [the plaintiff] in society or bring [the plaintiff] into public hatred and contempt.'" *Swerdlick v. Koch*, 721 A.2d 849, 860 (R.I. 1998) (quoting *Elias v. Youngken*, 493 A,2d 159, 161 (R.I. 1985) (quoting *Reid v. Providence Journal Co.*, 20 R.I. 120, 124-125, 37 A. 637 (1897))); *compare Qureshi v. St. Barnabas Hosp. Ctr.*, 430 F/Supp.2d 279, 287 (S.D.N.Y. 2006) (defamatory statements are those which "tend to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society.").

It is universally recognized that words or conduct falsely implying an association or connection between the plaintiff and a violent extremist group, like **QAnon**, is defamatory. *See, e.g., Boulger v. Woods*, 917 F.3d 471, 483 (6th Cir. 2019) (the tweet at issue was reasonably susceptible to a defamatory meaning—that "Woods was asserting

Boulger was the woman giving the Nazi salute"); *Liberty Lobby, Inc. v. Anderson*, 1991 WL 186998, at * 9 (D. D.C. 1991) ("The Court finds that the implication that Carto emulates Hitler in appearance or action is defamatory and that the record could support a reasonable jury finding that the defendants published these allegations with actual malice"); *Lovejoy v. Mutual Broadcasting System*, 220 S.W.2d 308, 314 (Tex. App. 1948) (statement that "plaintiff was a Nazi and Hitler sympathizer" if untrue was "libelous per se"); *Goldberg v. CBS*, 205 N.Y.S.2d 611, 613 (N.Y. Sup. 1960) (plaintiff suffered damages by reason of "involuntary defamation by implication" after being associated with a rigged game show); *Van Wiginton v. Pulitzer Pub. Co.*, 218 F. 795, 796-797 (8th Cir. 1914) ("When the picture of one person is used as that of another, whose character, conduct, or relations are made the subject of a publication, the imputation is that the original of the picture is the person mentioned in the text.  In this case the imputation was that the plaintiff was the daughter of a convicted murderer, the circumstances of whose crime and defense were as set forth in the published article … In the law of libel the social standing of a person is regarded as of value, and damage is implied from a false and unprivileged publication which tends to impair it, to make him contemptible or ridiculous, or to deprive him of the confidence, good will, or esteem of his fellow men.  In determining whether the false imputation tends to impair the social standing of a person, or to affect injuriously his opportunities of social intercourse, the customs and standards of society are to be regarded.  In other words, society is to be taken as it is, with its recognized prejudices, without determining whether they are well founded in reason or justice.  For example, all reasonable persons would agree that grave injury might be done by falsely and widely publishing of a young woman of good

character that she was the illegitimate daughter of dissolute, criminal parents, though the social prejudice excited against her personally could not be sustained in reason"); *see also MacElree v. Philadelphia Newspapers, Inc.*, 544 Pa. 117, 674 A.2d 1050 (Pa. 1996) (in reading the statement that plaintiff was "David Duke of Chester County running for office by attacking Lincoln", a "reasonable person could conclude that this was an accusation that appellant was abusing his power as the district attorney, an elected office, to further racism and his own political aspirations").

In *Bustos v. A&E Television Networks*, the defendant aired a cable television program called, *Gangland: Aryan Brotherhood*, that paired images of the plaintiff, a prisoner, with a "stentorian narrator who described the Aryan Brotherhood prison gang, its white-supremacist views, and its violent history." The plaintiff complained that "this in-all-ways-unsolicited television appearance has caused him an acre of difficulty. He says the program's suggestion that he is a member of the Aryan Brotherhood has devastated his popularity around the jail … Mr. Bustos … has received death threats and for his own safety can't be transferred to a less restrictive form of custody." "The district court agreed that the show effectively called him a member of the Aryan Brotherhood, and that the statement was defamatory, but it entered summary judgment against Mr. Bustos all the same. This because, the court found, the statement was *substantially* true—and a substantially true statement isn't actionable in defamation." 646 F.3d 762, (10th Cir. 2011) (Gorushc, J.); *see id. Allen v. Beirich*, 2019 WL 5962676, at * 6 (D. Md. 2019) (plaintiff did not dispute the underlying factual assertions – namely, his ties to a white supremacist group); *see Partridge v. State*, 173 A.D.3d 86, 100 N.Y.S.3d 730, 737 (2019) (finding defamation by implication when the placement of a

photo by State Police of the claimant imparted the viewer with a reasonable belief that the claimant had committed sex crimes against children and that the State Police endorsed that belief).

The Flynn's clearly allege that their appearance in CNN's edited video and in CNN's social media post, accompanied by the chyron and banner, is reasonably susceptible of a defamatory meaning because CNN intentionally associates the Flynn's with **QAnon**.  [*Am. Compl., ¶¶ 4, 5, 19 fn. 5, 21 fn. 6, 23(b)*].  CNN's edited video clip falsely states or implies that the Flynns participated in promoting an "infamous" QAnon slogan.  They did not.  They deny that.  CNN's social media post, which CNN largely ignores in its motion, again focuses indiscriminately on the Flynns:



Accusing the Flynns of being "**QANON FOLLOWERS**", even for a few seconds, is no different than accusing them of being Nazi sympathizers. It is common knowledge that Nazis, white supremacists, and adherents of **QAnon** are violent extremists. That is the connection that CNN intended and did make in the minds of viewers. To imply that a person is a Nazi sympathizer or a "**QANON FOLLOWER**" is the same thing. It is an egregious thing to say about a businessman, like Jack Flynn, especially in light of the January 6, 2021 storming of the United States Capitol.

### 3.     *CNN's Statements Are Defamatory Per Se*

The Rhode Island Supreme Court has explained that "a statement is defamatory *per se* if it charges improper conduct, lack of skill, or integrity in one's profession or business, and is of such a nature that it is calculated to cause injury to one in his profession or business." *Marcil v. Kells*, 936 A.2d 208, 213 (R.I. 2007). In Rhode Island, it is well-established that "summary judgment is a proper vehicle for a trial justice to determine whether a particular statement is defamatory *per se.*" *Kevorkian v. Glass*, 774 A.2d 22, 24 (R.I. 2001).

In Count I, the Flynns state a claim of defamation *per se*. In paragraph 19 of the amended complaint, the Flynns allege that CNN's statements "accuse and impute to Plaintiffs an unfitness to perform the duties of an office or employment for profit, including being members of a dangerous, violent, insurrectionist, domestic terrorist organization. CNN exposed the Flynns to threats of bodily and emotional harm from persons hell-bent on exposing 'QAnon'. CNN exposed Jack to the hazard of losing his job, and rendered him odious and unfit or less fit to fulfill the duties of General Manager of an international seafood business." [*Am. Compl., ¶ 19*]. CNN's false accusation that

the Flynns are connected to a violent extremist group is a "matter incompatible with [any] business, trade, profession, or office".   A "**QANON FOLLOWER**", like a white supremacist or Nazi sympathizer, creates enterprise risk for any employer.  By linking the Flynns to **QAnon** – the extremist group who stormed the Capitol – CNN insinuates that the Flynns are prone to violence, lack good judgment and harbor extremist views – none of which are qualities of good business people.   Whether CNN's statements are defamatory *per se* is an issue for the trier of fact. *See Martin Wilson Pub. Co.*, 497 A.2d 322, 331 (R.I. 1985) ("the sting of the libel, it is asserted, is that the newspaper essentially reported the existence in Shannock of false, defamatory rumors circulating about town connecting Martin with a rash of incendiary fires, despite the fact that the newspaper had no belief in the underlying truth of such rumors … [A] trier of fact might properly determine that the article in question was defamatory per se and unprivileged"). The Flynns claim that CNN's false and defamatory statements, *inter alia*, caused "special damages and pecuniary loss", including "career damage, loss of future earnings, impaired and diminished earning capacity." [*Id., ¶ 21*].

Because the Flynn's have alleged that CNN's statements are libelous *per se* and, additionally, because they have also alleged special damages, CNN's motion to dismiss should be DENIED. *Conejo v. Am. Fed'n of Gov't Emps., AFL-CIO*, 377 F.Supp.3d 16, 32 (D. D.C. 2019) (allegations that plaintiff "suffered and continues to suffer career damage, loss of consideration for career advancement, personal and professional embarrassment and humiliation, and emotional pain and suffering" "met the pleading standard for the purposes of overcoming a motion to dismiss."); *see also Hood v. Dun & Bradstreet, Inc.*, 486 F.2d 25, 33 (5ᵗʰ Cir. 1973) (plaintiff's complaint specifically alleged

that he "suffered special damages of incurring pecuniary loss in terms of total hours expended in removing from the minds of certain business associates the harmful effect of the false statements").

      a.      *The Flynns Sufficiently Allege General Damages*

Under Rhode Island tort law, an award of damages in a defamation claim "may be based upon mental anguish and humiliation experienced as a result of the defamatory statements." *Chrabaszcz v. Johnson School Committee*, 474 F.Supp.2d 298, 320 (D. R.I. 2007) (citing *Bosler v. Sugarman*, 440 A.2d 129, 132 (R.I. 1982)); *see Healey*, 555 A.2d ay 326-327.   Although a plaintiff cannot rest on an unsubstantiated allegation of injury to his or her reputation, where evidence demonstrates mental anguish, suffering, or humiliation "as a reaction to the statements made by defendant," it will be sufficient to allow the defamation claim to go to a jury. *Bosler*, 440 A.2d at 133.

Here, the Flynns' amended complaint clearly and emphatically alleges that they suffered significant mental anguish and humiliation stemming from the public accusation by CNN that the Flynns were part of a domestic violence extremist group. [*Am. Compl., ¶¶ 6, 21, 24*].  As in *Chrabaszcz*, even if the Court finds that CNN's statements were not defamatory *per se*, the Flynns have alleged general damages upon which relief can and should be granted by a jury.

      4.      *CNN's Statements Are Materially False*

As to the element of falsity, "[t]he common law of libel takes but one approach ... regardless of the form of the communication. It overlooks minor inaccuracies and concentrates upon substantial truth." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-517 (1991).   "Minor inaccuracies do not amount to falsity so long as the

substance, the gist, the sting, of the libelous charge be justified." *Id.*   Therefore, "[a] statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* at 517.

The Flynns allege that CNN's statements are materially false. [*Am. Compl., ¶ 18*]. In paragraph 6 of their amended complaint, the Flynns state that they are "not followers or supporters of any extremist or terrorist groups, including QAnon.   CNN falsely attributed to Plaintiffs associations that never existed, actions Plaintiffs never took, including an oath of allegiance or pledge to QAnon, and views Plaintiffs never held." The Flynns allege that CNN misrepresented that the Flynns were followers and supporters of **QAnon**.   CNN misrepresented that the Flynns held beliefs they never held and did things, like promote the "QAnon Slogan", that they never did.   CNN's false attributions are material *per se*. *See, e.g., Pan Am. Systems, Inc. v. Atlantic Northeast Rails and Ports, Inc.*, 804 F.3d 59, 73 (1st Cir. 2015) ("All that is left to do then is compare the challenged defamatory comment … with what we take as true at this stage of the case (that plaintiffs never lost railcars carrying hazardous materials, even temporarily).   And having done this, we conclude that a sensible juror could find that a more precise explication of the TIH issue would have improved plaintiffs' public reputation—meaning we must vacate the grant of summary judgment on this article."); *see also Tholen v. Assist America, Inc.*, 970 F.3d 979, 985 (8th Cir. 2020) (where defendant attributed wrongdoing to plaintiff, "there is a factual dispute over whether the challenged statements in the case study are materially false"); *Desmond v. News and Observer Publishing Company*, 375 N.C. 21, 846 S.E.2d 647, 676 (N.C. 2020) ("Where … defendants publish a statement claiming that Tobin expressed that same statement of

opinion, this statement attributing an opinion critical of plaintiff to an expert in her field is an actionable assertion of fact.  In such an instance, 'the sting' is in the attribution alone—the false *assertion of fact* that an expert in plaintiff's field holds an *opinion* critical of plaintiff"); *Murphy v. Boston Globe, Inc.*, 449 Mass. 42, 865 N.E.2d 746, 758 (Mass. 2007) ("The jury were warranted in finding that the portion of the story quoting the plaintiff as saying, 'She is [fourteen].  She got raped.  Tell her to get over it,' would lead one to believe the judge was indifferent, and even callous, to crime victims who appeared before him, and especially demeaning to the rape victim.  The difference between the statement attributed to the plaintiff in the Herald articles, and the statement that Crowley testified he told Wedge the plaintiff had made, cannot, as matter of law, be characterized as a minor discrepancy"); *see also Weyrich v. New Republic, Inc.*, 235 F.3d 617, (D.C. Cir. 2001) ("If indeed the story is fabricated, we cannot say that it is not reasonably capable of any defamatory meaning—it arguably makes appellant appear highly volatile, irrational, unsound and otherwise "odious, infamous, or ridiculous.").

In its memorandum, p. 15, CNN argues that "Plaintiffs may want us to think that they said the QAnon Slogan because they were feeling poetic or having a great fondness for 1990s sailing movies, but the truth is that they said it and then publicized their having done so on Jack Flynn's Twitter feed."  **CNN completely disregards the Flynns' amended complaint**.  In paragraph 4, footnote 1, the Flynns explain why they recited the Oath to the United States Constitution and why they repeated "where we go one, we go all":

> "Plaintiffs' repetition of the phrase at the July 4, 2020 barbecue did not signify any kind of support for QAnon.  It was not an oath of allegiance to QAnon, or any kind of oath at all.  It was a simple, family, July 4 statement of support for each other."

[*see also Am. Compl.,* ¶ *23(a) ("In reviewing Jack's retweets, CNN also reviewed the tweets of General Flynn's attorney, Sidney Powell, Esquire ("Powell").  Powell was at the barbecue on July 4, 2020.  Powell, a former Federal prosecutor, made it crystal clear to CNN in a series of tweets that the oath taken by the Flynn family was not an oath or pledge to QAnon.")*].

It is not true that the Flynns[5] followed and supported **QAnon**.  In fact, the exact opposite is alleged in the amended complaint.  In paragraph 23, Plaintiffs offer numerous tweets by Jack Flynn which demonstrate that he did not support **QAnon**, and that CNN knew it.  CNN ignores the Flynns' allegations.  CNN argues in footnote 8 to its memorandum that Jack Flynn's embrace of the Constitution and equal justice under the law and the "dangerous, extremist, racist, anti-Semitic and violent beliefs espoused by QAnon" are "sadly, not mutually exclusive".  This is wrong as a general principal, and it demonstrates the lengths to which CNN goes to ignore the Flynn's allegations.  Instead of accepting the allegations in the amended complaint as true, CNN avers that the Flynns promoted "their use of the QAnon Slogan in the #TaketheOath video".  The fact that CNN resorts to calling the Fourth of July video the "#TaketheOath video" shows the Court that the facts are disputed.

Contrary to CNN's argument in its memorandum, p. 25, none of the retweets by Jack Flynn in Exhibit 12 or 13 to CNN's memorandum express "undeniable support" for QAnon, and, in any case, this is a factual matter that cannot be resolved on a motion to dismiss.  The amended complaint makes clear that "CNN knew that Jack regularly

---

[5]     There is no evidence that all that Leslie Flynn was a "**QANON FOLLOWER**", and CNN cite in its memorandum.

retweeted users who supported the United States of America and its Constitution and Laws, who supported President Trump, the Republican Party and Conservative causes, and, most importantly, who supported General Flynn in his legal battle for freedom and against corruption.  Jack did not use QAnon slogans or code language or retweet users because they had a 'Q' in their handle.  Like the tweets, the Flynns allege that Jack Flynn's hashtags largely tracked developments in General Flynn's legal case, Flynn family resolve, and the 2020 Presidential Election – not QAnon. [*Am. Compl., ¶ 23(a)*].

CNN ignores the amended complaint.  The Flynns allege material falsity.  Their allegations at this stage of the proceeding must be accepted as true.

### 5.      *CNN Published The Statements With Actual Malice*

To evaluate the significance of defamatory statements made about private individuals, such as the Flynns, the Court turns to the United States Supreme Court's decision in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974). In *Gertz,* the Supreme Court held that the states could define the appropriate standard of liability for defamatory statements made about private individuals, "so long as they do not impose liability without fault." 418 U.S. at 346-347.  Prior to *Gertz,* the common law of defamation permitted recovery without evidence of actual loss, because injury was presumed to follow from the false and damaging publication. *See Andoscia v. Coady*, 210 A.2d 581, 584 (R.I. 1965).  In *DeCarvalho v. DaSilva,* the Rhode Island Supreme Court summarized the *Gertz* standard as follows:

> "... recovery must be limited on the ordinary negligence standard to actual damages incurred.  In the event that exemplary damages are to be awarded, then the 'actual malice' element must be shown by clear and convincing evidence."

414 A.2d 806, 813.

In paragraph 22 of their amended complaint, the Flynns allege that CNN negligently[6] published the statements, and, in support of their claim for punitive damages, the Flynns allege multiple independent bases upon which a jury could find actual malice, including:

● CNN fabricated the statement that the Flynns were "**QANON FOLLOWERS**". *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) ("The finder of fact must determine whether the publication was indeed made in good faith.  Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call.  Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation.  Likewise, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports"); *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 153 (1967) (deliberate falsification constitutes actual malice); *Hudnall v. Sellner*, 800 F.2d 377, 382 (4th Cir. 1986) (evidence supported finding of actual malice where the legitimate inference drawn from testimony was that defendant "knowingly concocted the accusations out of whole cloth"), *cert. denied,* 479 U.S. 1069 (1987); *ExpertConnect, LLC v. Fowler*, 2020 WL 3961004, at 3 (S.D.N.Y. 2020) (plaintiff alleged that the defendants "'engaged in a concerted effort to deliberately disparage the business reputations of Fowler, Parmar, and Strafluence with false

---

[6]    A private-figure plaintiff must show that a media defendant failed "to act reasonably in checking on the truth or falsity ... of the communication before publishing it." *Mandel v. Boston Phoenix, Inc.*, 456 F.3d 198, 209 (1st Cir. 2006) (quotation and citation omitted).  CNN failed to investigate and misrepresented that Leslie Flynn was a "**QANON FOLLOWER**".  Reasonableness is a fact issue.  The unconditional branding of Leslie Flynn as an extremist was, at least, negligent.

statements' that they had committed a serious crime and were under investigation.  These statements were made 'with full knowledge of their falsity' because '[t]here has never been any criminal action commenced against Fowler or Parmar, no investigation of any sort and, to be sure, no allegations of criminal conduct.'"); *Watson v. NY Doe 1*, 2020 WL 635843, at * 7 (S.D.N.Y. 2020) ("This is a case where the alleged false statements were allegedly based on the direct knowledge of the alleged defamer that the plaintiff alleges is false.  A fair inference from the Complaint is that NY Doe 2 knew that the plaintiff did not rape her but falsely made that accusation.  Those circumstances are sufficient to infer actual or constitutional malice on the part of NY Doe 2 because she is alleged to have firsthand knowledge of whether the plaintiff did or did not rape her."); *see id. Miller v. Watkins*, 2021 WL 924843, at * 18 (Tex App. 2021) ("If Miller indeed fabricated her allegations, then she by definition entertained serious doubts about them and had a high degree of awareness of the statements' falsity");  *Schermerhorn v. Rosenberg*, 73 A.D.2d 276, 426 N.Y.S.2d 274, 285 (1980) ("we hold that the publication of Senator Beatty's defamatory charge, itself fabricated by the defendants [a newspaper and its reporter] and known by them to be false, supports the libel award on the third cause of action").

●      At a time when it was heavily promoting a narrative about violent DVE QAnon, CNN deliberately altered the video posted by General Flynn to his Twitter account in order to falsely associate the Flynns with the QAnon domestic terrorists and extremists, and, thereby, convey a defamatory meaning as to Plaintiffs. [*Am. Compl., ¶ 23(b)*].

●     In the wake of the storming of the Capitol, CNN's statements were intentionally extreme and outrageous.  CNN knew that publication would cause a media frenzy.  CNN deliberately and recklessly conveyed a false narrative about Plaintiffs to sensationalize the news. *Tomblin v. WCHS-TV8*, 2011 WL 1789770, at * 5 (4th Cir. 2011) (unpublished) ("on the question of whether WCHS-TV8 deliberately or recklessly conveyed a false message to sensationalize the news and thus to provide factual support for a finding of malice, there are disputed facts").

●     As an agent of the Democratic Party, CNN chose to target the Flynn family.  CNN chose to manufacture and publish false and scandalous statements and use insulting words that were unnecessarily strong and that constitute violent, abusive, hateful, sensational language and *ad hominem* attacks, disproportionate to any occasion. The words chosen by CNN evinces its ill-will, spite and actual malice. *Celle*, 209 F.3d at 186 ("Plaintiff introduced sufficient circumstantial evidence to establish clearly and convincingly that defendant Pelayo entertained serious doubts about the truth of the headline 'US judge finds Celle 'negligent.'' This conclusion is based in part on evidence indicating ill will and personal animosity between Celle and Pelayo at the time of publication"); *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 315 fn 19 (5th Cir. 1995) ("[E]vidence of ill will can often bolster an inference of actual malice."); *id.* *AdvanFort Co. v. Maritime Executive, LLC*, 2015 WL 4603090, at * 8 (E.D. Va. 2015) ("If, in fact, TME knew of the bad blood between Plaintiffs and Defendant Cartner, it would have indeed had obvious reason to doubt Cartner's veracity and the accuracy of his statements given the blatantly hostile and sarcastic tone of the Article.").

●        CNN abandoned all journalistic standards and integrity, including CNN's own standards and code of ethics, in writing, editing, and publishing the false narrative. CNN did not seek the truth or report it.  They betrayed the truth to sensationalize the news for self-glory, profit and politics.  Rather than minimize harm to Plaintiffs, CNN set out to inflict maximum pain and suffering on Plaintiffs in order to harm Plaintiffs' reputations and belittle and besmirch General Flynn.  CNN never once considered the long-term implications or the extended reach and permanence of the false accusation that Plaintiffs were affiliated with a domestic violence extremist group.  CNN did not care.  It intended to hurt Plaintiffs. [*Am. Compl., ¶ 23(e)*].

●        CNN manufactured false statements as part of a preconceived story that the Flynns were **QAnon** supporters. *Eramo v. Rolling Stone, LLC*, 2016 WL 5234688, at * 5 (W.D. Va. 2016) ("evidence that a defendant conceived a story line in advance of an investigation and then consciously set out to make the evidence conform to the preconceived story is evidence of actual malice, and may often prove to be quite powerful evidence.") (quoting *Harris v. City of Seattle*, 152 Fed.Appx. 565, 568 (9th Cir. 2005)).

●        CNN excessively republished the false statements out of a desire to injure the Flynns. *Goldwater v. Ginzburg*, 414 F.2d 324, 337 (2nd Cir. 1969, *cert. denied*, 396 U.S. 1049 (1970) (stating that repetition is one factor that may be probative of actual malice).

6.      _Jack Flynn Is A Private Individual_

Jack Flynn[7] is not a limited purpose public figure.  In *Gertz,* a case decided after a full trial on the merits, the Supreme Court of the United States identified two categories of public figures to whom the *New York Times* standard applies.  The first category is the "general purpose" public figure – an individual who has achieved "such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts."  The second, more common, type of public figure is the "limited purpose" public figure.  The *Gertz* Court described this type as a person who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.  In either case such persons assume special prominence in the resolution of public questions." 418 U.S. at 351.  In *Gertz,*  the Supreme Court found that the plaintiff was _not_ a public figure.  The evidence showed that the plaintiff had long been active in community and professional affairs.  He served as an officer of local civic groups and of various professional organizations.  He published several books and articles on legal subjects.  Although he was consequently well known in some circles, he had achieved no general fame or notoriety in the community.  None of the prospective jurors called at the trial had ever heard of petitioner prior to this litigation, and respondent offered no proof that this response was atypical of the local population.  The Supreme Court rejected the argument that "a citizen's participation in community and professional affairs rendered him a public figure for all purposes.  Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life.  It is

---

[7]      CNN conceded that Leslie Flynn is a private individual.

preferable to reduce the public-figure question to a more meaningful context by looking

to the nature and extent of an individual's participation in the particular controversy

giving rise to the defamation.

> In this context it is plain that petitioner was not a public figure. He played a
> minimal role at the coroner's inquest, and his participation related solely to his
> representation of a private client. He took no part in the criminal prosecution of
> Officer Nuccio. Moreover, he never discussed either the criminal or civil
> litigation with the press and was never quoted as having done so. He plainly did
> not thrust himself into the vortex of this public issue, nor did he engage the
> public's attention in an attempt to influence its outcome."

*Gertz*, 418 U.S. at 351-352.

Jack Flynn does not qualify as either general purpose or a limited purpose public

figure. He was thrust into the post-January 6, 2021 controversy about QAnon – the

controversy reported on by CNN – by CNN's reckless accusations. *See Hutchison v.*

*Proxmire*, 443 U.S. 111, 135 (1979) ("Clearly, those charged with defamation cannot, by

their own conduct, create their own defense by making the claimant a public figure.")

(citations omitted). The fact that Jack Flynn occasionally used Twitter in 2020 does not

prove that he is a limited purpose public figure. Contrary to CNN's suggestion, Jack

Flynn did not defend QAnon and did not "debunk the most outlandish of the QAnon

theories (that John F. Kennedy, Jr. is still alive)." Again, CNN ignores the amended

complaint.

**B.**     ***COUNT II – False Light Invasion of Privacy***

Rhode Island law also creates a cause of action for false light, which may be

asserted by individuals like the Flynns. R.I. Gen. Laws § 9-1-28.1(a)(4) provides that,

"every person in this state shall have a right to privacy which shall be defined to include

... [t]he right to be secure from publicity that reasonably places another in a false light

before the public" ... [through] "some publication of a false or fictitious fact which implies an association which does not exist." Distinct from defamation, false light requires proof "that a plaintiff be given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position." *Cullen v. Auclair*, 809 A.2d 1107, 1112 (R.I. 2002). For a plaintiff properly to state a cause of action for false light, he or she must prove that "there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable [person] in his [or her] position." *Alves v. Hometown Newspapers, Inc.*, 857 A.2d 743, 752 (R.I. 2004).

The Flynns have been branded as followers of a violent extremist group. This is as outrageous as if CNN had called them Neo-Nazi's or white supremacists. The Flynns' false light claim survives for the same reason that there defamation claim survives.

**C.**     ***The Court Should Deny CNN's Request for Fees And Costs***

After receiving a Rule 11 letter from counsel for CNN, the Flynns duly addressed the arguments raised by CNN, and in good faith amended their pleading by right. Contrary to CNN's suggestion, the Flynns' amended complaint is hardly "frivolous". The filing of an amended complaint pursuant to Rule 15(a)(1)(A) does not and did not unreasonably or vexatiously multiply these proceedings. *DeBauche v. Trani*, 191 F.3d 499, 511-512 (4th Cir. 1999) ("the filing of a single complaint cannot be held to have multiplied the proceedings unreasonably and vexatiously.").

## CONCLUSION AND REQUEST FOR RELIEF

For the reasons stated above, Plaintiffs, John P. "Jack" Flynn and Leslie A. Flynn, respectfully request the Court to deny CNN's motion to dismiss.

DATED:        July 6, 2021

Respectfully Submitted,

JOHN P. "JACK" FLYNN
LESLIE A. FLYNN

By:    */s/ Steven S. Biss*
        Steven S. Biss (VSB # 32972)
        300 West Main Street, Suite 102
        Charlottesville, Virginia 22903
        Telephone:    (804) 501-8272
        Facsimile:      (202) 318-4098
        Email:          stevenbiss@earthlink.net
        (*Admitted Pro Hac Vice*)

        Anthony C. Carlini, Jr., Esquire
        (New York Bar # 2648374)
        Handel & Carlini, LLP
        1984 Hackensack Road
        Poughkeepsie, NY 12603
        Telephone:  (845) 454-2221
        Facsimile:  (845) 471-1005
        Email: anthony@handelcarlini.com

        *Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2021 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendant and all interested parties receiving notices via CM/ECF.

By: *  /s/ Steven S. Biss*
      Steven S. Biss (VSB # 32972)
      300 West Main Street, Suite 102
      Charlottesville, Virginia 22903
      Telephone:    (804) 501-8272
      Facsimile:    (202) 318-4098
      Email:        stevenbiss@earthlink.net
      (*Admitted Pro Hac Vice*)

      Anthony C. Carlini, Jr., Esquire
      (New York Bar # 2648374)
      Handel & Carlini, LLP
      1984 Hackensack Road
      Poughkeepsie, NY 12603
      Telephone:  (845) 454-2221
      Facsimile:  (845) 471-1005
      Email: anthony@handelcarlini.com

      *Counsel for the Plaintiffs*