

21st Floor
1251 Avenue of the Americas
New York, NY 10020

**Katherine M. Bolger**
212.489.8230 tel
212.489.8340 fax

Katebolger@dwt.com

October 18, 2021

**VIA ECF**
Hon. Sarah L. Cave
United States District Court
Daniel Patrick Moynihan United States Courthouse
Southern District of New York
500 Pearl Street, Room 1670
New York, NY 10007-1312

Re:   *Flynn, et ano. v. CNN,* 1:21-Cv-02587 (S.D.N.Y., March 25, 2021)

Dear Magistrate Judge Cave:

We represent Defendant Cable News Network Inc. ("CNN") in the above-referenced action. At the oral argument on CNN's Motion to Dismiss last week, Your Honor offered the parties the opportunity to make additional submissions by October 18, 2021. CNN welcomes the opportunity and submits the following case law and related discussion.

**A.     *Tannerite* applies to this action.**

First, Your Honor asked whether, given that the parties agree for the purpose of this motion that Rhode Island law applies, the decision in *Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media,* LLC, 864 F.3d 236 (2d Cir. 2017) is controlling. As *Tannerite* itself makes clear, it is binding here because, on its face, it deals with "Federal Pleading Standards," and therefore binds this Court, regardless of Rhode Island substantive law. *Id.* at 247. In addition, *Tannerite* establishes that where falsity is an element of state law, "a plaintiff must plead facts demonstrating falsity to prevail on a motion to dismiss the complaint in federal court." *Id*. at 247. Falsity is an element of a defamation claim in Rhode Island. *See Swerdlick v. Koch*, 721 A.2d 849, 859–60 (R.I. 1998) ("A defamation action requires a plaintiff to prove…a false and defamatory statement concerning another"). Thus, the federal pleadings standard, as articulated in *Tannerite*, applies.

*Tannerite* thus requires that Plaintiffs "plead facts that, if proven, would establish that the defendant's statements were not substantially true." 864 F.3d at 247. As a result of this high bar, courts in this circuit dismiss claims for failure to plead material falsity at the 12(b)(6) stage:

DWT.COM

Anchorage | Bellevue | Los Angeles | New York
Portland | San Francisco | Seattle | Washington, D.C.

Hon. Sarah L. Cave
October 18, 2021
Page 2

- *Frascatore v. Blake*, 344 F. Supp. 3d 481, 497 (S.D.N.Y. 2018) (J. Woods) (dismissing defamation claim brought at 12(b)(6) stage where he "d[id] not allege sufficient facts to demonstrate the falsity" of complained-of statements) (citing *Tannerite*, 864 F.3d at 247);

- *DeIuliis v. Engel*, No. 20 CIV. 3252 (NRB), 2021 WL 4443145, at *6 n.4 (S.D.N.Y. Sept. 27, 2021) (applying *Tannerite*, 864 F.3d at 247, at 12(b)(6) stage and noting that "[t]he Second Circuit has conclusively rejected th[e] position [that truth is a question reserved for the trier of fact] and has affirmed dismissal of defamation claims when the substantial truth of the allegedly defamatory statements can be discerned based on the complaint and the documents incorporated in the complaint by reference.");

- *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, No. 20 CIV. 7670 (CM), 2021 WL 3173804, at *4 (S.D.N.Y. July 27, 2021) (dismissing defamation claim at 12(b)(6) stage where, "[e]ven drawing all inferences in [their] favor …, it is clear … that no reasonable factfinder could conclude that the Challenged Statements could have no effect on the mind of the reader different than the effect caused by what [p]laintiffs themselves plead.");

- *Barbash v. STX Fin., LLC*, No. 20CV123 (DLC), 2020 WL 6586155, at *2 (S.D.N.Y. Nov. 10, 2020) (dismissing defamation claim at 12(b)(6) stage where gist of complained-of statements alleging criminal behavior by plaintiff did not materially differ from statements made by plaintiff in transcript of her guilty plea, which was referred to in – but not attached to – plaintiff's complaint, and which defendant submitted as an exhibit to their motion to dismiss);

- *Primiani v. Vintage 185, Inc.*, 18-CV-2237 (ADS)(AYS), 2019 WL 486087, at *3 (E.D.N.Y. Feb. 6, 2019) (dismissing defendants' counterclaim at 12(b)(6) stage where defendants merely alleged that plaintiffs "'posted, or caused to be posted ... false and deceptive [statements] and that the '[statements] are false and defamatory regarding [d]efendants and their business'" while failing to specify which aspects of the statements were false); and

- *Huizenga v. NYP Holdings, Inc.*, No. 17-CV-2113 (LTS)(GWG), 2019 WL 1620743, at *3 (S.D.N.Y. Apr. 16, 2019) (dismissing defamation claim at 12(b)(6) stage where the plaintiff only offered "conclusory assertions that the Articles contain[ed] false statements of fact and involved materially false implications").

**B.     This Court need not accept implausible facts as true.**

Your Honor also asked whether you are obligated at the pleading stage to accept as true Plaintiffs' claims that they were not QAnon followers, even in light of the Tweets expressly included in the Complaint and incorporated by reference therein, in which Plaintiffs appear to

Hon. Sarah L. Cave
October 18, 2021
Page 3

align themselves with QAnon. *See, e.g.,* Compl. ¶ 4 (describing Plaintiffs' decision to state "Where We Go One We Go All" in a video that General Flynn tweeted and Jack Flynn subsequently retweeted); *id.* at ¶ 23.a (Jack Flynn tweeting "There is nothing wrong with Qanon. Just people doing their own research and learning independence of thought to find the truth. If it triggers the daylights out of fools like yourself all the better. Don't you get it? It's so simple-Yet complex. Like a meritage wine."); *id.* (Jack Flynn retweeting giant letter Q imposed on American flag with the words "Where We Go One We Go All").   Defendants respectfully submit that the Court is not required to do so.  As the parties discussed at the hearing, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) establishes that the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id*. at 678.  *Iqbal* also establishes that the Court need only accept plausible allegations, and that plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.  Both before and after *Iqbal*, the Second Circuit has been clear that the Court need not accept as true any allegations that are contradicted by documents deemed to be part of the complaint, or materials amenable to judicial notice.

- *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d. Cir. 2011) ("we draw all facts—which we assume to be true unless contradicted by more specific allegations or documentary evidence—from the Complaint and from the exhibits attached thereto.");

- *In re MBIA, Inc., Securities Litigation*, 700 F. Supp. 2d 566, 576 (S.D.N.Y. 2010) (dismissing complaint in part where "[t]he Court need not accept as true any allegations that are contradicted by documents deemed to be part of the complaint, or materials amenable to judicial notice.");

- *Ace Securities Corp. Home Equity Loan Trust, Series 2007-HE3 ex rel. HSBC Bank USA, Nat. Ass'n v. DB Structured Products, Inc*., 5 F. Supp. 3d 543, 551 (S.D.N.Y. 2014) (dismissing complaint in part where "[i]f a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true.");

- *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) (dismissing complaint where documents referenced in the complaint "contradict the allegations of the amended complaint, the documents control and this Court need not accept as true the allegations in the amended complaint."); and

- *Sazerac Co. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994) (dismissing complaint where "allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint.").

Hon. Sarah L. Cave
October 18, 2021
Page 4

### C. This Court may take judicial notice of Tweets.

Your Honor also asked whether it was appropriate to take judicial notice of Tweets other than those included in the Complaint on a motion to dismiss. *See, e.g.,* Bolger Decl. ¶ 11, Ex. 9 (Plaintiff Jack Flynn retweeting the Video showing Plaintiffs reciting the QAnon oath). This Court may do so, because Plaintiffs knew of, relied on, and incorporated by reference their entire Twitter feeds into the Complaint. Compl. ¶ 23. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("a court may consider documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.") (internal quotation marks omitted); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (district court properly considered certain documents related to the purchase of shares, which "plaintiffs had either in [their] possession or had knowledge of and upon which they relied in bringing suit.") Applying this principle, courts take judicial notice of Twitter feeds and other Internet postings:

- *Ganske v. Mensch*, 480 F. Supp. 3d 542, 545 (S.D.N.Y. 2020) (dismissing action after taking judicial notice of tweets other than the one at issue because they related to the same topic and were "part and parcel" of the defendant's decision to post the offending tweet);

- *Boesen v. United Sports Publications, Ltd.*, 20-CV-1552, 2020 WL 6393010, at *5 n.6 (E.D.N.Y. Nov. 2, 2020), *reconsideration denied*, 2020 WL 7625222 (E.D.N.Y. Dec. 22, 2020) (taking judicial notice of Facebook posts where plaintiff "does not contest [their] authenticity … and in fact admits to posting [them]");

- *Wright v. Buzzfeed, Inc.*, 18-cv-02187, 2018 WL 2670642, at *1 n. 1 (C.D. Cal. June 4, 2018) (dismissing complaint and taking judicial notice of Instagram posts to show that plaintiff published allegedly infringed photos months before she registered their copyrights);

- *Young v. Greystar Real Estate Partners, LLC*, 18-cv-02149, 2019 WL 4169889, at *2 (S.D. Cal. Sept. 3, 2019) (dismissing complaint and taking judicial notice of Instagram and Facebook posts because the complaint specifically described the posts);

- *Knievel v. ESPN, Inc.*, 223 F. Supp. 2d 1173, 1176 (D. Mont. 2002) (dismissing complaint and taking into consideration the contents of the website "at the center of Plaintiff's allegations," when the website "is mentioned in the complaint and copies of some of the pictures are attached to the complaint"); and

Hon. Sarah L. Cave
October 18, 2021
Page 5

- *Condit v. Dunne*, 317 F. Supp. 2d 344, 357 (S.D.N.Y. 2004) (taking judicial notice of several articles and transcripts that were referenced and quoted – but not included – in the plaintiff's complaint, because "[t]hey aid the Court in its determination of whether plaintiff states a claim for relief, and by including them in its considerations the Court creates no unfairness to either party.")

### D. Plaintiff have not pleaded material falsity.

At the hearing, the parties also discussed the Plaintiffs' requirement to plead the substantial truth of the alleged defamatory statements. CNN continues to argue that Plaintiffs have not plausibly alleged that the Report accuses Plaintiffs of being QAnon followers because the Report is not susceptible of that defamatory meaning of them when it is viewed as a whole. *Budget Termite & Pest Control, Inc. v. Bousquet*, 811 A.2d 1169, 1172 (R.I. 2002) ("If the words have no personal application to the plaintiff, they are not actionable by him."). To the extent, however, that the Court accepts that the Report conveys that or any other defamatory meaning about Plaintiffs, *Tannerite* required Plaintiffs to plead facts that plausibly allege that they can establish that this allegation is materially false. *Tannerite*, 864 F.3d at 247. *See* Motion at 14-16; Reply at 7-9; Sections B and C, *supra*.

Substantial, not just literal, truth defeats a defamation claim. *See Swerdlick v. Koch*, 721 A.2d 849, 860 (R.I. 1998) ("While some of defendant's accounts of plaintiffs' business activities may have been exaggerated or slightly off the mark factually, these statements were substantially true and thus not defamatory."); *Guccione v. Hustler Mag., Inc.,* 800 F.2d 298, 301 (2d Cir. 1986) ("If the statement at issue in this case was substantially true, the claim of libel was legally insufficient and the complaint should have been dismissed, regardless of any impact the statement might have had on [plaintiffs'] reputation.") "The test is whether the statement, as it was published, had a different effect on the mind of the reader than the actual literal truth." *Id.* at 301-02(citation omitted); *see Healey v. New England Newspapers, Inc.*, 555 A.2d 321, 325 (R.I. 1989) (stating that as long as the "gist or the sting of the publication is true, the publication is not false").

Here, it is evident from their Twitter feeds that Plaintiffs are QAnon sympathizers. *See* Bolger Decl. ¶ 18, Ex. 12 (Jack Flynn sharing by retweeting: "Qanon is not violent or conspiracy. We are every day people seeking truth. I am a family man. I am educated, and run my own business. I work hard, and spend my spare time with my family. I enjoy golf and reading. Qanon's share and tell your story."). Legally, that is enough to establish the substantial truth that they are QAnon "followers." This case is, in fact, just like *Lovejoy v. Mutual Broadcasting System*, 220 S.W.2d 308 (Tex. Civ. App. 1948). The plaintiff in *Lovejoy* had written two letters during World War II to a radio host expressing his admiration for the German people and claiming that the Germans and Japanese were no different morally than the English during that country's rise to empire. *Id.* at 312. The host took issue with the plaintiff's position in a subsequent broadcast, which led "those listening … to believe that [the] plaintiff was a Nazi

Hon. Sarah L. Cave
October 18, 2021
Page 6

and Hitler sympathizer." *Id.* at 312-13.  Taking judicial notice of "the fact that aside from Germany, Japan and Italy, the views of plaintiff in regard to the German people resident in the Empire of Germany and prosecuting a war against the Allies, were not those of the civilized world," the court held that the broadcast was substantially true, since the letters "evidence[d] … sympathetic leaning toward" the Nazi Party and were "susceptible of the interpretation that there was some sympathy for the German people through whom the Nazi party was functioning" – even though the letters did not mention the Nazi Party, or its belief system.  *Id.* at 312, 314.  In short, the Court held that speaking support for Germany was enough to make the plaintiff a Nazi sympathizer – just as here, it is clearly true that Plaintiffs support QAnon.

At the hearing, the Court suggested that the Plaintiffs' Tweets supporting QAnon did not undercut Plaintiffs' ability to argue that the Report was materially false, because the decision in *Bustos* implied that one needed to do more than just make statements to be a QAnon "follower". *See Bustos v. A & E Television Networks*, 646 F.3d 762, 767 (10th Cir. 2011).  In fact, as the very Articles included by reference in Plaintiffs' complaint make clear, tweeting support for QAnon *is* commonly understood to be the way individuals show they are followers of QAnon. For instance, Plaintiffs cite to a *Washington Examiner* article to show that the #TakeTheOath video posted by General Flynn and Jack Flynn did not relate to QAnon.  Am. Compl. ¶ 4 n.1.  In addition to stating that #TaketheOath does relate to QAnon, the article connects the #WWG1WGA hashtag to QAnon-related "corners of social media," where its use is "pervasive." *See* Bolger Decl. ¶ 6, Ex. 4.  The article also notes that "QAnon supporters are typically pro-Trump, emphasize their patriotism for the U.S., [and] meet and talk online using a variety of hashtags and memes." And it describes how Jo Rae Perkins, a Senate nominee in Oregon, expressed support for QAnon by using hashtags like "'#DigitalSoldiers' and '#WWG1WGA'" and posting a video on Twitter of herself taking the same oath taken by Plaintiffs.  Plaintiffs also cite, with approval, an article published by *Politico*, which noted that Twitter determined QAnon followers by identifying users that "share QAnon content." *See* Am. Compl. ¶ 21 n.4; Bolger Decl. ¶ 10, Ex. 8.  The article also described how General Michael Flynn reciprocated the support he received from QAnon followers by "tweeting out QAnon memes as well as the QAnon slogan: Where we go one, we go all, or the hashtag #WWG1WGA." *Id.*  The articles Plaintiffs attach to the Complaint establish that QAnon is publicly understood as a digital movement – and tweeting out its memes and slogans, as Plaintiffs did here, *is* how you act as a QAnon sympathizer.

**E.     Special damages are economic loss.**

Finally, at the hearing, we discussed the requirement that under Rhode Island law, "when a defamation plaintiff does not allege special or actual pecuniary damages, its claim must meet the higher bar of *per se* defamation to be viable." *Sequin, LLC v. Renk*, No. CV 20-62WES, 2021 WL 124250, at *8 (D.R.I. Jan. 13, 2021), *report and recommendation adopted*, No. CV 20-062 WES, 2021 WL 391519 (D.R.I. Feb. 4, 2021), citing *Nassa v. Hook-SupeRx, Inc.*, 790 A.2d

Hon. Sarah L. Cave
October 18, 2021
Page 7

368, 374 (R.I. 2002).  And your Honor asked Plaintiffs' counsel if emotional damages or "death threats" are special damages.  The answer is that they are not.  Rhode Island limits "special damages" to economic loss. *Sequin*, 2021 WL 124250, at *10 ; *see* Restatement (Second) of Torts § 575 (1977) ("Special harm … is the loss of something having economic or pecuniary value"); *accord Marcil v. Kells*, 936 A.2d 208, 213 (R.I. 2007) ("special harm" presumed if allegedly defamatory statement "is calculated to cause injury to one in his profession or business"); *Swerdlick*, 721 A.2d at 861 (special damages were not shown where no evidence was provided that statements affected plaintiff's business); *Lyons v. Rhode Island Public Employees Council 94*, 516 A.2d 1339, 1342 (R.I. 1986) (plaintiff most prove damages unless statement is actionable irrespective of special harm) (citing Restatement (Second) *Torts* § 558 (1977)).  Special damages must be pleaded with particularity; boilerplate recitals are "not enough for plausibility." *Sequin*, 2021 WL 124250 at *10; *see also* Robert D. Sack, *Sack on Defamation: Libel, Slander, and Related Problems* § 10:3.2 (5th ed. 2017).  Here, Plaintiffs allege that they have suffered reputational harm (such as receiving threats) and have incurred emotional harm, but those types of damages are not the economic injuries that are required to plead special damages.

   Thank you for your consideration of these additional materials.

                Respectfully submitted,

                Davis Wright Tremaine LLP

                */s/ Katherine M. Bolger*

                Katherine M. Bolger

cc:  Counsel of Record (via ECF)