UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------- x

JOHN P. "JACK" FLYNN
LESLIE A. FLYNN,

                     Plaintiffs,

              - against -

CABLE NEWS NETWORK, INC.,

                   Defendant.

----------------------------------------------------------- x

Case: 1:21-cv-02587-GHW-SLC

Hon. Gregory H. Woods

## RESPONSE TO PLAINTIFF'S OBJECTIONS TO
## THE REPORT & RECOMMENDATION OF MAGISTRATE JUDGE CAVE

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................................. 1

    A.    The Parties ................................................................................................. 2

    B.    QAnon and the "#TakeTheOath" Video ................................................... 2

    C.    The Report .................................................................................................. 3

    D.    The Complaint, Amended Complaint, and Related Briefing ..................... 3

    E.    The Magistrate's Report and Recommendation ........................................ 5

ARGUMENT .................................................................................................................................... 6

II.    LEGAL STANDARD FOR ADOPTING THE REPORT AND
RECOMMENDATION ........................................................................................... 6

III.    LEGAL STANDARD ON A RULE 12(B)(6) MOTION ...................................... 7

IV.    THE R&R CORRECTLY RECOMMENDS DISMISSAL OF THE DEFAMATION
CLAIM ..................................................................................................................... 8

    A.    Plaintiffs Cannot Plausibly Allege Material Falsity ................................. 8

    B.    Plaintiffs Failed To Plausibly Plead Negligence .................................... 16

    C.    Plaintiffs Failed To Plausibly Plead Either Defamation *Per Se* Or Special
Damages ................................................................................................... 18

V.    THE R&R CORRECTLY RECOMMENDS DISMISSAL OF THE FALSE LIGHT
CLAIM ................................................................................................................... 20

CONCLUSION ............................................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ace Securities Corp. Home Equity Loan Trust, Series 2007-HE3 ex rel. HSBC*
*Bank USA, Nat. Ass'n v. DB Structured Products, Inc.*,
5 F. Supp. 3d 543 (S.D.N.Y. 2014) ...................................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................7, 8, 10, 17

*Barbash v. STX Fin., LLC*,
No. 20CV123 (DLC), 2020 WL 6586155 (S.D.N.Y. Nov. 10, 2020)...................................10

*Bichler v. Union Bank & Tr. Co. of Grand Rapids*,
745 F.2d 1006 (6th Cir. 1984) ...........................................................................................9

*Bustos v. A & E Television Networks*,
646 F.3d 762 (10th Cir. 2011) ..........................................................................................15

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)........................................................................................7, 12

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991).........................................................................................12, 13

*DeIuliis v. Engel*,
No. 20 CIV. 3252 (NRB), 2021 WL 4443145 (S.D.N.Y. Sept. 27, 2021) .............................10

*Frascatore v. Blake*,
344 F. Supp. 3d 481 (S.D.N.Y. 2018)................................................................................10

*Garrison v. State of La.*,
379 U.S. 64 (1964)............................................................................................................16

*Guccione v. Hustler Mag., Inc.*,
800 F.2d 298 (2d Cir. 1986).............................................................................................10

*Guitar v. Westinghouse Elec. Corp.*,
396 F. Supp. 1042 (S.D.N.Y. 1975)*, aff'd* 538 F.2d 309 (2d Cir. 1976) ...............................15

*In re MBIA, Inc., Securities Litigation*,
700 F. Supp. 2d 566 (S.D.N.Y. 2010)................................................................................8

*J.P.T. Auto., Inc. v. Toyota Motor Sales, U.S.A., Inc.*,
659 F. Supp. 2d 350 (E.D.N.Y. 2009) .........................................................................6, 13

iii

*Kennedy v. Adamo*,
  No. 02CV1776, 2006 WL 3704784 (E.D.N.Y. Sept. 1, 2006) ...................................6

*Koch v. Christie's Int'l PLC*,
  699 F.3d 141 (2d Cir. 2012)...................................................................................7

*L-7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d. Cir. 2011)..................................................................................8

*Pall Corp. v. Entegris, Inc.*,
  249 F.R.D. 48 (E.D.N.Y. 2008)...............................................................................6

*Philadelphia Newspapers, Inc. v. Hepps*,
  475 U.S. 767 (1986).............................................................................................9

*Pizarro v. Bartlett*,
  776 F. Supp. 815 (S.D.N.Y. 1991) .........................................................................6

*RainSoft v. MacFarland*,
  350 F. Supp. 3d 49 (D.R.I. 2018) ..........................................................................9

*Sequin, LLC v. Renk*,
  No. CV 20-62WES, 2021 WL 124250 (D.R.I. Jan. 13, 2021) ...............................19

*Shay v. Walters*,
  702 F.3d 76 (1st Cir. 2012)..................................................................................17

*St. Amant v. Thompson*,
  390 U.S. 727 (1968)............................................................................................16

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
  547 F.3d 406 (2d Cir. 2008).................................................................................7

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
  864 F.3d 236 (2d Cir. 2017).................................................................................9

*United States v. Languerand*,
  No. 21-CR-353 (JDB), 2021 WL 3674731 (D.D.C. Aug. 19, 2021)........................3

*Veilleux v. Nat'l Broad. Co.*,
  206 F.3d 92 (1st Cir. 2000)..................................................................................17

*Wheeler v. Twenty-First Century Fox*,
  322 F. Supp. 3d 445 (S.D.N.Y. 2018)...................................................................14

**State Cases**

*Bray v. Providence J. Co.*,
  220 A.2d 531 (R.I. 1966).......................................................................................9

iv

*Capuano v. Outlet Co.*,
    579 A.2d 469 (R.I. 1990) ................................................................................16

*Elias v. Youngken*,
    493 A.2d 158 (R.I. 1985) ..................................................................................9

*Healey v. New England Newspapers, Inc.*,
    555 A.2d 321 (R.I. 1989) ...........................................................................10, 16

*Jackson v. Mayweather*,
    10 Cal. App. 5th 1240 (Cal. Ct. App. 2017) .....................................................16

*Lovejoy v. Mutual Broadcasting System*,
    220 S.W.2d 308 (Tex. Civ. App. 1948) ......................................................14, 15

*Lyons v. Rhode Island Pub. Employees Council, 94,*
    516 A.2d 1339 (R.I. 1986) ....................................................................16, 18, 19

*Major v. Drapeau*,
    507 A.2d 938 (R.I. 1986) ................................................................................16

*Marcil v. Kells*,
    936 A.2d 208 (R.I. 2007) ...........................................................................9, 18, 19

*Swerdlick v. Koch*,
    721 A.2d 849 (R.I. 1998) ....................................................................10, 19, 20

**Rules**

Federal Rules of Civil Procedure Rule 11 ..................................................................3

Federal Rules of Civil Procedure Rule 12(b)(6).....................................................4, 7

Federal Rules of Civil Procedure Rule 72(b)(2) .........................................................1

**Other Authorities**

Restatement (Second) of Torts § 575 (1977) ...........................................................19

Restatement (Second) of Torts § 580B (1977) ........................................................16

Pursuant to Federal Rule of Civil Procedure 72(b)(2), Defendant Cable News Network, Inc. ("CNN" or "Defendant") respectfully submits this response to Plaintiffs Jack and Leslie Flynn's ("Plaintiffs") objection to Magistrate Judge Cave's Report and Recommendation recommending that this Court dismiss Plaintiffs' Amended Complaint with prejudice.

## INTRODUCTION

On July 5, 2020, Plaintiff Jack Flynn retweeted a video first posted by his brother, General Michael Flynn, of Plaintiffs repeating the Federal oath of office, saying God Bless America and saying the QAnon Slogan "where we go one, we go all." This lawsuit is about a news report on CNN that includes two seconds of the very video that Jack Flynn himself retweeted – only Plaintiffs now allege its publication is false, defamatory, and caused them damage.

Magistrate Judge Cave issued a report and recommendation recommending that this action be dismissed in its entirety because Plaintiffs did not and cannot allege the essential elements of their defamation claim (the "R&R"). Specifically, Magistrate Judge Cave concluded that Plaintiffs failed to plausibly allege that the CNN report at issue here was materially false, because the alleged defamatory implication Plaintiffs ascribe to the CNN report, *i.e.*, that Plaintiffs were QAnon followers, was substantially true. Magistrate Judge Cave also concluded that Plaintiffs had not plausibly alleged that CNN acted negligently in publishing the Report because Plaintiffs' own statements provided CNN with reasonable grounds to conclude that Plaintiffs were QAnon followers. Finally, Magistrate Judge Cave concluded that the Report was not defamatory *per se* and Plaintiffs had not plead special damages as required by Rhode Island law.

In their Opposition to the R&R, Plaintiffs offer no argument that they have not offered

before – they instead urge this Court, as they did before Magistrate Judge Cave, to take as true their implausible allegations that they are not QAnon supporters and that CNN was negligent. But the allegations in the Complaint establish that Plaintiffs publicly liked, tweeted, and retweeted their sympathies for QAnon, going so far, in Jack Flynn's case, as to say QAnon "works for me." Magistrate Judge Cave's R&R was correct and Defendants request that this Court adopt it and dismiss Plaintiffs' Amended Complaint, with prejudice.

## **FACTUAL BACKGROUND**

### A.     **The Parties**

Plaintiffs Jack and Leslie Flynn are residents of Rhode Island. Am. Compl. ¶ 8. Jack Flynn's brother is General Michael Flynn, President Trump's first National Security Advisor. *Id*. ¶¶ 2.  Until January 8, 2021, when he deleted his Twitter account following the Capitol insurrection and former President Trump's banning from Twitter, Jack Flynn maintained an active Twitter presence. *Id.* ¶ 14. Leslie Flynn has also maintained a Twitter presence; her account is still active. *Id*. ¶ 16.

CNN owns and operates numerous news platforms and services, including the television network known as CNN and the website www.cnn.com.

### B.     **QAnon and the "#TakeTheOath" Video**

On July 4, 2020, General Flynn tweeted a video of himself leading his family, including Plaintiffs, in reciting the oath of office given to federal elected officeholders, followed by the words "where we go one, we go all" and "God Bless America." Am. Compl. ¶ 4. Jack Flynn retweeted the video.  Bolger Decl. ¶ 11, Ex. 9.  Several news outlets, including CNN and the *Washington Examiner*, reported on the video, describing "where we go one, we go all" as a "QAnon slogan" in reference to the popular movement that promotes a set of unfounded conspiracy theories. Am. Compl. ¶ 4 n.1; *id.* ¶ 19 n.5 (citing to House Resolution 1094, which

2

condemns QAnon and rejects the conspiracy theories it promotes); *see* Bolger Decl. ¶ 7, Ex. 5. The QAnon Slogan has been incorporated into QAnon "anthems," and is often featured on QAnon merchandise.  Bolger Decl. ¶ 3, Ex. 1.  Abbreviated as "WWG1WGA," it is used as a hashtag in Tweets expressing support for QAnon. *See United States v. Languerand*, No. 21-CR-353 (JDB), 2021 WL 3674731, at *3 (D.D.C. Aug. 19, 2021) ("'Where We Go One, We Go All[' is] a slogan used by adherents of the QAnon conspiracy theory"); Bolger Decl. ¶ 19, Ex. 12. As the articles attached to the Amended Complaint attest, QAnon followers often interact with each other by sharing such content via social media. *See* Am. Comp. ¶ 4 n.1 (citing a *Washington Examiner* article that describes the pervasive use of QAnon-related hashtags on social media); *see* Bolger Decl. ¶ 6, Ex. 4.

C.     **The Report**

On February 8, 2021, as part of the program "Don Lemon Tonight," CNN aired a news segment (the "Report") about a QAnon gathering in Arizona two weeks before the January 6, 2021 attack on the U.S. Capitol. Am. Compl. ¶ 4; Bolger Decl. ¶ 3, Ex. 1. A chyron bearing the title of the Report ("CNN Goes Inside A Gathering of QAnon Followers") remains at the bottom of the screen during the Report.  *Id.* In addition to footage of the gathering and photos of the QAnon Slogan, abbreviated as "#WWG1WGA," printed, with the letter "Q," on large flags, the Report includes a brief clip of General Flynn's July 4 video showing General Flynn speaking the phrase (the "Clip"). *Id.* Plaintiffs, who are not named, are also visible in the Clip, which lasts less than two seconds, but are not shown speaking.  *Id.*

D.     **The Complaint, Amended Complaint, and Related Briefing**

On March 25, 2021, Plaintiffs brought this action, alleging defamation *per se* and false light invasion of privacy based on the use of the Clip in the Report.  Dkt. No. 1. On April 15, 2021, CNN sent counsel for Plaintiffs a letter pursuant to Rule 11 demanding that the Complaint

3

be withdrawn, on the grounds that the Complaint had no basis in fact, and that it asserted

frivolous arguments without legal support. Bolger Decl. ¶ 4, Ex. 2. The letter listed numerous

Tweets posted or liked by Plaintiffs that evidenced Plaintiffs' support for QAnon and informed

Plaintiffs that the Tweets clearly demonstrated that Plaintiffs were supportive of the QAnon

movement and they would be unable to prove the falsity of the Report.  On April 29, 2021,

counsel responded, stating that he would file and serve an Amended Complaint that, per counsel,

would "address the concerns" raised by CNN.  Bolger Decl. ¶ 5, Ex. 3.

 Plaintiffs filed and served their Amended Complaint on May 7, 2021, again alleging one

count of defamation *per se* and one count of false light invasion of privacy. Dkt. No. 7. The

Amended Complaint did not address CNN's concerns.  Instead, it made the same allegation: that

CNN had falsely accused Plaintiffs of being QAnon followers. Am. Compl. ¶ 3.  Plaintiffs also

relied on Jack and Leslie Flynn's respective Twitter accounts for the argument that CNN had

acted with negligent intent in broadcasting the Report. *Id*. ¶¶ 22, 23.a.[1]

 On June 21, 2021, CNN moved to dismiss under Rule 12(b)(6) (the "Motion"), arguing

that the Report was not of and concerning Plaintiffs and was not susceptible of defamatory

meaning, that Plaintiffs had failed to plausibly plead defamation *per se*, and that the Report was

substantially true (and therefore not actionable). Dkt. 17.  In conjunction with the Motion, CNN

submitted screenshots of several Tweets posted, retweeted, or liked by Plaintiffs.  *See* Bolger

Decl. ¶¶ 11, 17-24, Exs. 9, 12-14.  CNN argued that the presence of these Tweets on Plaintiffs'

Twitter feeds demonstrated the truth of the alleged defamatory meaning (that Plaintiffs were

QAnon followers), and that CNN could not have acted with negligence, let alone actual malice in

---

[1] Plaintiffs also claimed in the Amended Complaint that CNN's letter established that it had reviewed Plaintiffs'
Twitter feeds prior to the airing the Report – despite it being clear from CNN's letter that it was based on review of
the feeds after receiving a copy of the Complaint. Bolger Decl. ¶ 4, Ex. 2.

airing the Report. Mot. at 19-24.

On July 6, 2021, Plaintiffs responded to the Motion. Dkt. No. 23. CNN replied on July 13, 2021, Dkt. No. 26, and oral arguments were held on October 14, 2021. Following the hearing, Magistrate Judge Cave offered the parties the opportunity to make letter submissions, which the parties made on October 18, 2021. Dkt. Nos. 35 and 36.

### E.    The Magistrate's Report and Recommendation

On October 22, 2021, Magistrate Judge Cave issued her Report and Recommendation (the "R&R"), *see* Dkt. No. 38, recommending that this Court hold, *inter alia*, that the Report was of and concerning Plaintiffs, and was susceptible of the meaning alleged by Plaintiffs (namely, that Plaintiffs were QAnon "followers"), *see* R&R at 26-29, 33, but that the Report was also substantially true and therefore not actionable. *Id.* at 29-33.  Magistrate Judge Cave placed particular emphasis on the Tweets that were either included in or integral to Plaintiffs' Amended Complaint, noting that they reflected that Plaintiffs met several dictionary definitions of the term "follower." *Id.* at 30-32. And she emphasized that Plaintiffs' use of the slogan "where we go one, we go all" (in the #TakeTheOath Video and in Tweets) meant that they could not plausibly claim that Jack Flynn "'did not use QAnon slogans or code language.'" *Id.* at 32 (citing Am. Compl. ¶ 23.a). She also recommended that this Court hold that Plaintiffs had not plausibly pleaded (nor could they, in light of their many Q-supportive Tweets) that CNN had acted with negligence. *Id.* at 33-36. Magistrate Judge Cave further recommended that this Court hold that, because Plaintiffs had failed to plead actual economic damages, they had failed to allege special harm under Rhode Island law, and had also failed to assert a claim for defamation *per se*. R&R at 36-38. In light of her findings on truth and negligence, the Magistrate recommend that this Court dismiss Plaintiff's Amended Complaint (including Plaintiffs' false light claim) with prejudice. *Id.* at 39-41.

5

**ARGUMENT**

This Court should adopt Magistrate Judge Cave's R&R and dismiss this case in its

entirety.  Plaintiffs have, by their own conduct, expressed their support for the QAnon

movement.  They cannot, therefore, plausibly allege that the Report was false and or that

Defendants were negligent in distributing it.

II.    **LEGAL STANDARD FOR ADOPTING THE REPORT AND RECOMMENDATION**

When a party raises an objection to a magistrate judge's report, the Court must conduct

a *de novo* review of any contested sections of the report. *See Pizarro v. Bartlett*, 776 F. Supp.

815, 817 (S.D.N.Y. 1991). But if a party "makes only conclusory or general objections, or

simply reiterates his original arguments, the Court reviews the [magistrate judge report and

recommendation] only for clear error." *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48, 51 (E.D.N.Y.

2008). Furthermore, even in a *de novo* review of a party's specific objections, the court

ordinarily will not consider "arguments, case law and/or evidentiary material which could have

been, but [were] not, presented to the magistrate judge in the first instance." *Kennedy v. Adamo*,

No. 02CV1776, 2006 WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006); *J.P.T. Auto., Inc. v. Toyota

Motor Sales, U.S.A., Inc.*, 659 F. Supp. 2d 350, 352–53 (E.D.N.Y. 2009).

Here, though they are ostensibly objecting to Magistrate Judge Cave's findings, Plaintiffs

make *exactly* the same arguments as they did in their prior briefing, sometimes using the very

same language.  For this reason, the Court should only review the R&R for clear error.

Ultimately, however, the standard of review makes no difference here. Magistrate Judge Cave's

well-reasoned recommendation is plainly correct and should be adopted under either standard.

### III.    LEGAL STANDARD ON A RULE 12(B)(6) MOTION

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted); *Koch v. Christie's Int'l PLC,* 699 F.3d 141, 145 (2d Cir. 2012). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the Court must accept factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.*

In addition, while courts generally may not consider material outside the complaint on a motion to dismiss, "a court may consider documents attached to the complaint as an exhibit or incorporated in it by reference, ... or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (noting further that "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."). Courts also may rely on a document where the complaint "relies heavily upon its terms and effect" rendering it "integral to the complaint." *Id.* at 153. Finally, courts may rely on "matters of which judicial notice may be taken." *Id.*; *see also Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (judicial notice of documents is also permissible for the purpose of establishing that the information was publicly available, rather than for their truth.).

Importantly here, both before and after *Iqbal*, the Second Circuit has been clear that "the Court need not accept as true any allegations that are contradicted by documents deemed to be part of the complaint." *In re Yukos Oil Co. Sec. Litig.*, No. 04 CIV. 5243 (WHP), 2006 WL 3026024, at *12 (S.D.N.Y. Oct. 25, 2006); *see L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d. Cir. 2011) ("we draw all facts—which we assume to be true unless contradicted by more specific allegations or documentary evidence—from the Complaint and from the exhibits attached thereto."); *Ace Securities Corp. Home Equity Loan Trust, Series 2007-HE3 ex rel. HSBC Bank USA, Nat. Ass'n v. DB Structured Products, Inc*., 5 F. Supp. 3d 543, 551 (S.D.N.Y. 2014) (dismissing complaint in part where "[i]f a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true.").  Similarly, the Court need not accept as true allegations that are contradicted by documents of which the Court can take judicial notice. *See*, *e.g.*, R&R at 32 (citing *Tsinberg v. City of New York*, No. 20 Civ. 749 (PAE), 2021 WL 1146942, at *5 (S.D.N.Y. Mar. 25, 2021)); *In re Yukos Oil*, 2006 WL 3026024 at *12; ("the Court need not accept as true any allegations that are contradicted by … materials amenable to judicial notice"); *In re MBIA, Inc., Securities Litigation*, 700 F. Supp. 2d 566, 576 (S.D.N.Y. 2010) (same).

In this case, Magistrate Judge Cave properly applied the *Iqbal* plausibility standard to recommend dismissing this action.

## IV.    THE R&R CORRECTLY RECOMMENDS DISMISSAL OF THE DEFAMATION CLAIM

### A.    Plaintiffs Cannot Plausibly Allege Material Falsity

4886-2448-6403v.3 0026517-000210

First, Magistrate Judge Cave accepted Plaintiffs' allegation that the Report accused them of being QAnon "followers"[2] and then correctly concluded that this alleged defamatory meaning was substantially true based on Plaintiffs Tweets and retweets as included in Plaintiffs' complaint and incorporated documents. R&R at 31. Here, Plaintiffs ask this Court to reverse that ruling, claiming the Magistrate is required to accept as true, no matter how implausible, the allegations in the Amended Complaint that they are *not* QAnon followers. *See* Obj. at 6. Plaintiffs' argument defies both settled law and common sense, however, and should be rejected.

"Where a newspaper publishes speech of public concern, a … plaintiff cannot recover damages without also showing that the statements at issue are false." *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 767-68 (1986). *See also RainSoft v. MacFarland*, 350 F. Supp. 3d 49, 59 (D.R.I. 2018) (a plaintiff must show that a statement regarding an issue of public concern has a defamatory meaning that is "materially false.") And, as Magistrate Judge Cave noted, the Second Circuit made clear in *Tannerite Sports, LLC v. NBCUniversal News Grp.* that, "when falsity is an element of a state defamation claim … federal courts have required plaintiffs to plead facts that, if proven, would allow a reasonable person to consider the statement false." 864

---

[2] Defendants respectfully disagree with this conclusion because the Report was not susceptible of the defamatory meaning alleged by Plaintiffs. *See Elias v. Youngken*, 493 A.2d 158, 161 (R.I. 1985). Plaintiffs asserted that the Report characterized them as followers of a 'dangerous', 'violent', 'racist', 'extremist', 'insurrectionist', 'domestic terrorism' movement – QAnon." Am. Compl. ¶ 3.  But none of those terms appeared in Report at issue, and courts are to consider only the actual words published, not a plaintiff's unsupportable characterization of those words. *See Bichler v. Union Bank & Tr. Co. of Grand Rapids*, 745 F.2d 1006, 1009 n.1 (6th Cir. 1984) (declining to consider allegedly defamatory statement that was not included in broadcast at issue); Motion at 10. That those terms appeared in *other* CNN telecasts is immaterial, especially Plaintiffs provided no evidence that anyone understood the Report to convey the meaning Plaintiffs alleged. *See Marcil v. Kells*, 936 A.2d 208, 214-15 (R.I. 2007); Motion at 10-11.  Plaintiffs also claimed that they were defamed by the juxtaposition between the chyron that appears through the entirety of the Report, the Report's narration, and the inclusion of the Clip containing Plaintiffs. Am. Compl. ¶¶ 4, 16. But any defamatory meaning that might flow from a headline (or chyron) when read in isolation is tempered by the remaining content in the complained-of publication. *See, e.g., Bray v. Providence J. Co.*, 220 A.2d 531, 534 (R.I. 1966).  Here, the content to the Report makes clear that the chyron (and, specifically, the words "QAnon followers") referred to the attendees of the gathering in Arizona that the reporter attended, and not the July 4th family event seen in the #TakeTheOath video. Motion at 11. For this reason, Defendants respectfully disagree with Magistrate Judge's order and ask that it not be adopted on this point.

F.3d 236, 247 (2d Cir. 2017); *see* R&R at 6. Since falsity is an element of defamation claim in

Rhode Island, *see Swerdlick v. Koch*, 721 A.2d 849, 859–60 (R.I. 1998), the *Tannerite* federal

pleadings standard applies. Plaintiffs were, therefore, required to *plausibly* plead sufficient facts

that, if proven, would show that the Report was materially false. *See* R&R at 16. The plausibility

standard is "a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Iqbal*, 556 U.S. at 678.[3]

      Here, Magistrate Judge Cave correctly concluded the Complaint itself and documents

referenced therein render implausible Plaintiffs' claims that they are not QAnon followers.

Substantial, not literal, truth defeats a defamation claim. *See Swerdlick*, 721 A.2d at 860 ("While

some of defendant's accounts of plaintiffs' business activities may have been exaggerated or

slightly off the mark factually, these statements were substantially true and thus not

defamatory."); *Guccione v. Hustler Mag., Inc.,* 800 F.2d 298, 301 (2d Cir. 1986) ("If the

statement at issue in this case was substantially true, the claim of libel was legally insufficient

and the complaint should have been dismissed, regardless of any impact the statement might

have had on [plaintiffs'] reputation.") And, in determining whether a statement is true, "[t]he test

is whether the statement, as it was published, had a different effect on the mind of the reader than

the actual literal truth." *Id.* at 301-02 (citation omitted); *see Healey v. New England Newspapers,*

---

[3] For all these reasons, since the *Tannerite* decision, this Court has routinely dismissed defamation claims at the pleading stage for failure to plead material falsity. *See Frascatore v. Blake*, 344 F. Supp. 3d 481, 497 (S.D.N.Y. 2018) (J. Woods) (applying *Tannerite* and dismissing defamation claim where he "d[id] not allege sufficient facts to demonstrate the falsity" of complained-of statements); *Deluliis v. Engel*, No. 20 CIV. 3252 (NRB), 2021 WL 4443145, at *6 n.4 (S.D.N.Y. Sept. 27, 2021) (applying *Tannerite* and noting that "[t]he Second Circuit … has affirmed dismissal of defamation claims when the substantial truth of the allegedly defamatory statements can be discerned based on the complaint and the documents incorporated in the complaint by reference."); *Barbash v. STX Fin., LLC*, No. 20CV123 (DLC), 2020 WL 6586155, at *2-3 (S.D.N.Y. Nov. 10, 2020) (dismissing defamation claim at 12(b)(6) stage where gist of complained-of statements alleging criminal behavior by plaintiff did not materially differ from statements made by plaintiff in transcript of her guilty plea, which was referred to in – but not attached to – plaintiff's complaint, and which defendant submitted as an exhibit to their motion to dismiss).

*Inc.*, 555 A.2d 321, 325 (R.I. 1989) (stating that as long as the "gist or the sting of the publication is true, the publication is not false").

In this case, Magistrate Judge Cave correctly concluded that the very allegations in the Complaint confirm the substantial truth of the alleged defamatory meaning that Plaintiffs are QAnon followers, because Plaintiffs *pleaded* their public support of QAnon.  For example, Plaintiffs describe the Flynn family reciting the Oath of Office and saying the QAnon phrase "where we go one, we go all." Am. Compl. ¶ 4.  The connection between the phrase "where we go one, we go all" and QAnon "is a matter of public record." R&R at 32 (citing *Languerand*, 2021 WL 3674731 at *3 n.8). As a result, by pleading that they both took Oath and published it online, Plaintiffs have admitted they publicly aligned themselves with QAnon.  On this basis alone, they cannot plausibly allege that it false that they are QAnon followers.

But that's not all – the Amended Complaint contains many other examples. Plaintiffs included a Tweet in which Jack Flynn says "What's wrong with the statement: Where We Go 1 We go All? ANYONE?? #WWG1WGA." Am. Compl. ¶ 4.  Plaintiffs also reproduced a Tweet in which Jack Flynn states "There is nothing wrong with QAnon. Just people doing their own research and learning independence of thought to find the truth. If it triggers the daylights out of fools like yourself all the better. Don't you get it? It's so simple-Yet complex. Like a meritage wine." In another reproduced post, Jack Flynn tweeted "I was told today that QAnons are dangerous people to be aligned with. That there is actually 'no plan'. True or not, most people seem pretty normal to me who support the idea of Q. I advocate for Constitution and the Bill of Rights. If Q does too ~ No harm no foul." Am. Compl. ¶ 23.a. Finally, Plaintiffs include the following Tweet in which Jack Flynn expressly says that QAnon "works for" him:



The very Tweets Plaintiffs include in their Amended Complaint, therefore, preclude them from plausibly alleging facts that establish the material falsity of the alleged defamatory meaning that Jack Flynn is a QAnon follower.

So too do the other Tweets posted, retweeted, or liked by Plaintiffs that are annexed to the Bolger Affidavit. Initially, Magistrate Judge Cave correctly concluded – and Plaintiffs do not dispute – that Plaintiffs "invited the Court to consider" their Twitter feeds as a whole because Plaintiffs incorporated their entire Twitter feeds by reference by alleging that Defendants had prepublication knowledge of their contents. R&R at 22, 33 (citing, *inter alia*, *Ganske v. Mensch*, 480 F. Supp. 3d 542, 547 (S.D.N.Y. 2020)); Am. Compl. ¶ 23. *See Chambers* , 282 F.3d at 153; *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (district court properly considered certain documents related to the purchase of shares, which "plaintiffs had either in [their] possession or had knowledge of and upon which they relied in bringing suit."). And when Plaintiffs Twitter feeds are take into account, it is clear Plaintiffs are precluded from plausibly alleging material falsity.  First, Jack Flynn's Twitter feed included the video of the Flynns speaking the QAnon Slogan.  Bolger Decl. ¶ 11, Ex. 9.  And there is another Tweet, in which, at the request of an individual by the name of @oficialpatriot, Jack Flynn shared by

12

retweeting: "Qanon is not violent or conspiracy. We are every day people seeking truth. I am a family man. I am educated, and run my own business. I work hard, and spend my spare time with my family. I enjoy golf and reading. Qanon's share and tell your story."  Bolger Decl. ¶ 18, Ex. 12.  Jack Flynn's Twitter feed also includes an image of his brother, General Flynn, and the words "The Great Awakening", a known QAnon slogan.  Bolger Decl. ¶ 17, Ex. 12.  Similarly, Leslie Flynn liked a Tweet saying "You've been Q'd for this one", which shows an image of Presidents Kennedy and Trump, and another with an image of General Flynn next to the phrases "Do It, Q" and #WWGIWGA.   Bolger Decl. ¶¶ 22-23, Ex. 13.  In short, as Magistrate Judge Cave correctly concluded, Plaintiffs complaint and the documents incorporated by reference therein preclude Plaintiffs from plausibly alleging that it is false to state that they were QAnon followers.

In response, Plaintiffs make several unconvincing objections. Plaintiffs first argue that the Tweets attached to the Complaint and incorporated therein cannot be read as expressing support for QAnon because in truth Plaintiffs do not support the more violent fringes of the QAnon movement. For example, Plaintiffs concede that Jack Flynn retweeted a Twitter user asking "Qanon's [sic] [to] share and tell your story," Obj. at 7 n.4, but claim he only did so "to thank the person for his support of General Flynn." *Id.* This argument is absurd. The Tweet does not mention General Flynn; all it says is that QAnon is not violent or a conspiracy, and ask fellow "QAnon's" to share the post – which is just what Jack Flynn did by retweeting it. [4] And even if that Tweet was somehow about General Flynn, it does not change all the other times

---

[4] That the Magistrate mistakenly stated that Jack Flynn tweeted (rather than retweeted) the post is immaterial. *See* R&R at 31; Motion at 18; Bolger Decl. ¶ 18, Ex. 12 (correctly noting that Jack Flynn retweeted the post). The salient point is that Plaintiffs concede that Jack Flynn did precisely what the user asked "QAnon's" to do: share the post on his own feed. Moreover, Plaintiffs newly concocted explanation for the retweet appeared *nowhere* in their Opposition, nor was it raised at the hearing.  They cannot raise it now. *See J.P.T. Auto., Inc.*, 659 F. Supp. 2d at 352–53.

Plaintiffs expressed sympathy for QAnon both by retweeting the video of themselves saying the QAnon Slogan, Bolger Decl. ¶ 11, Ex. 9, and liking, retweeting and replying to QAnon memes. *See*, *e.g.,* Bolger Decl. 19, Ex. 3.  Plaintiffs have publicly aligned themselves with QAnon. They cannot now claim it is false and defamatory when CNN makes the same association. As Magistrate Judge Cave stated, "having said, in their own words, that QAnon's principles 'work for them' …, the Flynns cannot turn around and characterize CNN's making the same statement as defamatory."

In this way, this case is like *Lovejoy v. Mutual Broadcasting System*, 220 S.W.2d 308 (Tex. Civ. App. 1948); *see* R&R at 33. The plaintiff in *Lovejoy* had written two letters during World War II to a radio host expressing his admiration for the German people and claiming that the Germans and Japanese were no different morally than the English during that country's rise to empire. *Lovejoy*, 220 S.W.2d at 312. The host took issue with the plaintiff's position in a subsequent broadcast, which led "those listening … to believe that [the] plaintiff was a Nazi and Hitler sympathizer." *Id.* at 312-13. Taking judicial notice of "the fact that aside from Germany, Japan and Italy, the views of plaintiff in regard to the German people resident in the Empire of Germany and prosecuting a war against the Allies, were not those of the civilized world," the court held that the broadcast was substantially true, since the letters "evidence[d] … sympathetic leaning toward" the Nazi Party and were "susceptible of the interpretation that there was some sympathy for the German people through whom the Nazi party was functioning" – even though the letters did not mention the Nazi Party, or its belief system. *Id.* at 312, 314. In short, the Court held that the plaintiff's own words and support for Germany were enough to make the plaintiff a Nazi sympathizer. *See also Wheeler v. Twenty-First Century Fox*, 322 F. Supp. 3d 445, 454 (S.D.N.Y. 2018) (finding that plaintiff failed to state a claim for defamation based on statement

that was "not materially different" from plaintiff's own statement in television interview); *Guitar v. Westinghouse Elec. Corp.*, 396 F. Supp. 1042, 1050 (S.D.N.Y. 1975) (holding that plaintiff failed to state a libel claim based on "quotes" that "c[a]me substantially from the book" that she had written and statements she had made "in public meetings")*, aff'd* 538 F.2d 309 (2d Cir. 1976).[5] Here, as in *Lovejoy*, Plaintiffs' own words establish that they are QAnon sympathizers.

Plaintiffs next try to stave off dismissal by making the false claim that Leslie Flynn did like any Tweets about QAnon. Obj. at 7-8. Plaintiffs are misstating the record, even going so far as to manipulate an image that they include in their Objection. As is visible in Exhibit 13 annexed to the Bolger Affidavit and discussed above, Leslie Flynn liked two Tweets replete with QAnon hashtags and imagery – which indisputably demonstrates her endorsement of QAnon as a movement. *See* Bolger Decl. ¶¶ 22-23 , Ex. 13.

The Complaint and incorporated documents establish that the Flynns have repeatedly and publicly aligned themselves with QAnon. They have not, therefore, plausibly alleged that the

---

[5] Plaintiffs also emphasize that during oral argument, Magistrate Judge Cave suggested that the Plaintiffs' Tweets supporting QAnon did not undercut Plaintiffs' ability to argue that the Report was materially false, because the decision in *Bustos* implied that one needed to do more than just make statements to be a QAnon "follower." *See Bustos v. A & E Television Networks*, 646 F.3d 762, 767 (10th Cir. 2011). In fact, as the very Articles included by reference in Plaintiffs' complaint make clear, tweeting support for QAnon *is* commonly understood to be the way individuals show they are followers of QAnon. For instance, Plaintiffs cite to a *Washington Examiner* article to show that the #TakeTheOath video posted by General Flynn and Jack Flynn did not relate to QAnon. Am. Compl. ¶ 4 n.1. In addition to stating that #TaketheOath does relate to QAnon, the article connects the #WWG1WGA hashtag to QAnon-related "corners of social media," where its use is "pervasive." *See* Bolger Decl. ¶ 6, Ex. 4. The article also notes that "QAnon supporters are typically pro-Trump, emphasize their patriotism for the U.S., [and] meet and talk online using a variety of hashtags and memes." And it describes how Jo Rae Perkins, a Senate nominee in Oregon, expressed support for QAnon by using hashtags like "'#DigitalSoldiers' and '#WWG1WGA'" and posting a video on Twitter of herself taking the same oath taken by Plaintiffs. Plaintiffs also cite, with approval, an article published by *Politico*, which noted that Twitter determined QAnon followers by identifying users that "share QAnon content." *See* Am. Compl. ¶ 21 n.4; Bolger Decl. ¶ 10, Ex. 8. The article also described how General Michael Flynn reciprocated the support he received from QAnon followers by "tweeting out QAnon memes as well as the QAnon slogan: Where we go one, we go all, or the hashtag #WWG1WGA." *Id.* The articles Plaintiffs attach to the Complaint establish that QAnon is publicly understood as a digital movement – and tweeting out its memes and slogans, as Plaintiffs did here, *is* how you act as a QAnon sympathizer.

alleged defamatory implication that they are QAnon followers is materially false This Court should adopt Magistrate Judge Cave's R&R and dismiss the Amended Complaint.

### B.      Plaintiffs Failed To Plausibly Plead Negligence

Plaintiffs next object to Magistrate Judges Cave's conclusion that they have failed to plausibly allege negligence because the "Flynns have not alleged, and cannot allege, that CNN lacked reasonable grounds for believing the truth of the statement that they were QAnon followers".[6] Their arguments are unconvincing.

Under Rhode Island law, a private figure plaintiff must prove "fault amounting at least to negligence on the part of the publisher." *Healey*, 555 A.2d at 324 (citing Restatement (Second) Torts § 558 (1977)); see also *Capuano v. Outlet Co.*, 579 A.2d 469, 472-73 (R.I. 1990). Negligence requires a showing that the defendant had no "reasonable grounds for believing that the communication was true." Restatement (Second) of Torts § 580B (1977). Thus, a defamation plaintiff must plead sufficient facts to plausibly support the conclusion that a defendant had no

---

[6] Defendants disagree with the Magistrate's conclusion that Jack Flynn is a private figure, and reasserts that Jack Flynn, at least, was required, and failed, to plead actual malice. "If the individual has thrust himself into the vortex of [a] public issue or has engage[d] the public's attention in an attempt to influence its outcome, then he or she may, for the limited purpose of that issue, be considered a public figure." *Major v. Drapeau*, 507 A.2d 938, 941 (R.I. 1986) (*citing Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352 (1974)). As is evident from the documentary evidence CNN has submitted, Jack Flynn successfully sought the public's attention for his participation, with his family, in the #TakeTheOath video; his already-significant Twitter following more than doubled after he retweeted his brother's post containing the video, going from approximately 108,000 on July 5, 2020 to approximately 226,000 on January 8, 2021, when he left Twitter. Bolger Decl. ¶¶ 14-15, Ex. 10 at 3-4. *See Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1248 (Cal. Ct. App. 2017), as modified (Apr. 19, 2017) (plaintiff was a public figure where she had "promoted her own status as a celebrity and had [between] 47,145 Twitter followers … and 78,628 Twitter followers").

Because Jack Flynn was a limited-purpose public figure, he was required to plead actual malice and failed to do so. "Actual malice means knowledge that the statement was false or reckless disregard of whether or not it was true or false," *Major*, 507 A.2d at 940. Reckless disregard requires that a defendant "entertained serious doubts as to truth of [the] publication," *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968), or had a "high degree of awareness of ... probable falsity." *Garrison v. State of La.*, 379 U.S. 64, 74 (1964). A public figure must prove actual malice by "clear and convincing evidence*." Lyons v. Rhode Island Pub. Employees Council,* 516 A.2d 1339, 1343 (R.I. 1986). Here, not only is Mr. Flynn's feed replete with support for and defenses of QAnon, its followers, and its slogans, but it contains a video of him saying the QAnon Slogan, which he himself chose to tweet on or around July 4, 2020. Bolger Decl. ¶ 11, Ex. 9. The above demonstrates that CNN had absolutely no reason to doubt the truth of the Report.

reasonable grounds for believing the truth of the allegedly false and defamatory statement. *See Shay v. Walters*, 702 F.3d 76, 82–83 (1st Cir. 2012) (upholding dismissal based on 12(b)(6) standard, court held that "complaint does not contain any facts suggesting that the defendant acted negligently in publishing the challenged statements"); *accord Veilleux v. Nat'l Broad. Co.*, 206 F.3d 92, 128 (1st Cir. 2000) (no negligence where potentially misleading statements about long-haul truckers were made based on plaintiff's own admissions prior to broadcast).

Here, as Magistrate Judge Cave correctly concluded, Plaintiffs failed to allege that CNN lacked reasonable grounds to believe they were QAnon followers, principally because Plaintiffs' own actions (including their statements, Tweets, and interactions with others' Tweets described above) "establish that they meet the dictionary definition of a follower of QAnon." R&R at 35; *see*, *supra*, Section IV.A.  As Magistrate Judge Cave put it, "in fact, that 'independent evidence' does corroborate that the Flynns followed – both literally and figuratively – the opinions and ideas of QAnon."  Plaintiffs, therefore, have not alleged, because they cannot, that CNN had any reason to doubt that Plaintiffs were QAnon followers and so have not plausibly alleged that Defendants were negligent in publishing the Report.

In response, Plaintiffs argue that the Magistrate Judge Cave erred in not accepting as true the boilerplate allegations in the Complaint that CNN was negligent because if it had reviewed that Plaintiffs' Twitter feed, CNN would have known they were not QAnon followers. Obj. at 9. But, as discussed above, to properly plead allegations under the *Iqbal* standard, Plaintiffs are required to make *plausible* allegations.  *Iqbal*, 556 U.S. at 678. And it is simply not plausible that CNN could have discovered that Plaintiffs were not QAnon followers by reviewing their Twitter

feeds, because the Twitter feeds establish that *they were*, *in fact,* QAnon followers.[7] Plaintiffs have not plausibly alleged negligence.

### C.    Plaintiffs Failed To Plausibly Plead Either Defamation *Per Se* Or Special Damages

Plaintiffs next challenge Magistrate Judge Cave's conclusion that the Report did not constitute defamation *per se* and that the Flynn's had failed to plead special damages. In Rhode Island, recovery for defamation requires that the plaintiff plead special damages unless a challenged statement is defamatory *per se*. *Lyons*, 516 A.2d at 1342. To be actionable as defamatory *per se*, "the false statement must impute to the other: (1) a 'criminal offense,' (2) a 'loathsome disease,' (3) a 'matter incompatible with his business, trade, profession, or office,' or (4) a 'serious sexual misconduct.'" *Marcil*, 936 A.2d at 212. And the law is clear: "the disparaging words must affect the plaintiff in some way that is peculiarly harmful to one engaged in his trade or profession; disparagement of a general character, equally discreditable to all persons, is not enough unless the particular quality is peculiarly valuable to the plaintiff[']s business or profession." *Id.* at 213.

Here, Plaintiffs allege that the defamatory statement is that they are QAnon followers "prone to violence, lack good judgment and harbor extremist views."  But this allegedly defamatory meaning (even if it could be gleaned from the Report, which it cannot) does not relate to Jack Flynn's job at a seafood business or Leslie Flynn's job as a stay-at-home parent. The Flynns simply have not plausibly alleged harm to their business dealings. In the Objection, Plaintiffs seek to avoid this outcome by citing (as they did in their Opposition) three cases from

---

[7] In the Opposition, Plaintiffs state that "Leslie Flynn ***never*** 'liked Tweets' that express support for QAnon." Obj. at 10. This statement is simply false. As discussed above, CNN submitted two tweets in support of its Motion to Dismiss that appear in the "Likes" section of her Twitter profile – meaning that she "liked" them. *See* Bolger Decl. ¶¶ 22-23, Ex. 13.

states other than Rhode Island. *See* Obj. at 10-11; Opp. at 18. But, as Magistrate Judge Cave

noted in her R&R, out-of-state cases "do[] not alter the Court's conclusion that a *Rhode Island*

court would not deem CNN's statements to fall under one of the established categories of

defamation *per se*," R&R at 38 n.8 (emphasis added). Plaintiff has not plausibly alleged

defamation *per se* under Rhode Island law.

Nor has Plaintiff alleged special damages. Under Rhode Island law, "when a defamation

plaintiff does not allege special or actual pecuniary damages, its claim must meet the higher bar

of *per se* defamation to be viable." *Sequin, LLC v. Renk, No*. CV 20-62WES, 2021 WL 124250,

at *8 (D.R.I. Jan. 13, 2021), *report and recommendation adopted*, No. CV 20-062 WES, 2021

WL 391519 (D.R.I. Feb. 4, 2021), *citing Nassa v. Hook-SupeRx, Inc*., 790 A.2d 368, 374 (R.I.

2002). Rhode Island limits "special damages" to economic loss; allegations of emotional

damages or "death threats" are not sufficient. *Sequin*, 2021 WL 124250, at *10 ; *see* Restatement

(Second) of Torts § 575 (1977) ("Special harm … is the loss of something having economic or

pecuniary value"); *accord Marcil*, 936 A.2d at 213 ("special harm" presumed if allegedly

defamatory statement "is calculated to cause injury to one in his profession or business");

*Swerdlick*, 721 A.2d at 861 (special damages were not shown where no evidence was provided

that statements affected plaintiff's business); *Lyons*, 516 A.2d at 1342  (plaintiff most prove

damages unless statement is actionable irrespective of special harm) (citing Restatement

(Second) Torts § 558 (1977)). Special damages must be pleaded with particularity; boilerplate

recitals are "not enough for plausibility." *Sequin*, 2021 WL 124250 at *10.

Here, Plaintiffs have simply failed to plead those damages. The Complaint contains no

allegation of specific harm. On the contrary, all that Plaintiffs alleged are "career damage, loss of

future earnings, impaired and diminished earning capacity." These claims are insufficient. Magistrate Judge Cave's R&R is correct, and should be adopted.[8]

## V.     THE R&R CORRECTLY RECOMMENDS DISMISSAL OF THE FALSE LIGHT CLAIM

Finally, Plaintiffs object to Magistrate Judge Cave's conclusion that "[h]aving found that the Flynns failed to plausibly allege that CNN made a substantially false, defamatory statement, the Court similarly concludes that they have not adequately alleged a false light claim."  R&R at 40.  But this conclusion, too, is correct. Under Rhode Island law, false light is similar to defamation. *Swerdlick*, 721 A.2d at 859 ("We … address plaintiffs' defamation and false-light claims together because the applicable law is similar"). And like defamation, a finding of substantial truth defeats a false light claim. *Id*. at 862 ("defendant's statements … were based on substantially true facts, and thus cannot be relied upon to support an action for false light [or defamation]"). Because the Magistrate's R&R correctly determined that Plaintiffs did not – and cannot – state a claim for defamation, it also correctly determined that Plaintiffs false light claim failed. In the light of the above, the Magistrate's conclusion was correct.

## <u>CONCLUSION</u>

For the foregoing reasons, CNN respectfully requests that this Court adopt Magistrate Judge Cave's Report and Recommendation in full.

Dated: New York, New York
          November 12, 2021

                              Respectfully submitted,

                              DAVIS WRIGHT TREMAINE LLP

                              By: */s/ Katherine M. Bolger*

---

[8] Plaintiffs also claim to have adequately pleaded general damages. Obj. at 12-13. But pleading general damages cannot save Plaintiffs' claim. *Swerdlick*, 721 A.2d at 861.

Katherine M. Bolger (N.Y. Bar No. 2976868)
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone:     (212) 489-8230
Facsimile:     (212) 489-8340

Sam F. Cate-Gumpert (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa Street, Suite 2400
Los Angeles, CA 90017
Telephone:     (213) 633-6800
Facsimile:     (213) 633-6899

*Attorneys for Defendant*

TO:     Anthony C. Carlini , Jr. (N.Y. Bar No. 2649374)
        Handel & Carlini, LLP
        1984 New Hackensack Road
        Poughkeepsie, NY 12603
        Telephone: (845) 454-2221
        Email: anthony@handelcarlini.com

        Steven S. Biss (Virginia Bar No. 32972)
        300 West Main Street, Suite 102
        Charlottesville, VA 22903
        Telephone: (804) 501-8272
        Facsimile: (202) 318-4098
        Email: stevenbiss@earthlink.net

        *Counsel for the Plaintiffs*

21