```
          UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF NEW YORK
          ------------------------------:

          JOHN P. "JACK" FLYNN, et al., :

                        Plaintiff, :

              -against-                 : Docket#21-cv-02587

          CABLE NEWS NETWORK, INC.,     :

                                        : New York,NY

                        Defendant.: February 21, 2023

          -----------------------------: CONFERENCE

                       PROCEEDINGS BEFORE

                  THE HONORABLE SARAH L. CAVE

                 UNITED STATES MAGISTRATE JUDGE



          APPEARANCES:

          For Plaintiff:    LAW OFFICE OF STEVEN S. BISS
                            BY:  Steven S. Biss
                            300 West Main Street-Suite 102
                            Charlottesville, VA 22903


          For Defendant:    DAVIS WRIGHT TREMAINE
          CNN               BY:  Katherine M. Bolger
                            1251 Avenue of the Americas
                            New York, New York 10020



          Proceeding recorded by electronic sound recording; Transcript

          produced by transcription service.




             AMM Transcription Service  (631)334-1445
```

APPEARANCES CONTINUED


FOR DEFENDANT              THOMAS & LOCICERO PL
Conflict Counsel           By:  Deanna K. Shullman
CNN                        8461 Lake Worth Road
                           Suite 14
                           Lake Worth, FL  33467

PROCEEDINGS

1              MS. SHULLMAN:  Hello.  It's Deanna

2     Shullman joining for the 4:00 hearing in Flynn

3     versus CNN.

4              MS. BOLGER:  And it's Kate Bolger joining

5     for the same conference.

6              THE COURT:  Good afternoon.  This is

7     Magistrate Judge Cave.  We're here for a conference

8     in Flynn versus CNN; Case Number:  21-cv-2587.

9              May I have the appearances starting with

10    the plaintiffs, please.

11             MR. BISS:  Good afternoon, Your Honor.

12    This is Steve Biss for the plaintiffs.

13             THE COURT:  Okay.  Good afternoon.

14             MS. BOLGER:  And Katherine Bolger from

15    Davis Wright Tremaine on behalf of CNN.  My

16    colleagues, Lindsey and Meena, who do all the hard

17    work in this case, are on the line listening, but

18    will not talk.

19             THE COURT:  Okay.

20             MS. SHULLMAN:  And this is Deanna

21    Shullman.  I'm conflict counsel on one issue for

22    the defendant, CNN, this afternoon with respect to

23    Twitter information.

24             THE COURT:  Okay.  Thank you.

25             All right.  So I have a flurry of letters

AMM Transcription Service   (631)334-1445

PROCEEDINGS

1    from the parties about various discovery issues.  I

2    would like to start, just because they came in, in

3    chronological order, with the defendant, CNN's

4    letter as to the extent to which the plaintiffs

5    have searched various social media and messaging

6    applications.

7            So, Mr. Biss, I guess one -- a few

8    clarifications from the letter that you submitted

9    in response to CNN's letter.  On page 2, you say

10   that the Flynns personally searched all cell phones

11   using the search terms and produced all responsive

12   documents.

13           When the Flynns conducted that search, did

14   they search all of the apps that we're talking

15   about here, Signal, WhatsApp, Telegram, et cetera,

16   or did they just search e-mails and text messages?

17           MR. BISS:  They searched the telephones

18   for text messages.

19           THE COURT:  Okay.  Do you know if they

20   have Signal, WhatsApp, Telegram or any other

21   messaging apps on their phones?

22           MR. BISS:  We separately responded to the

23   Signal, WhatsApp and Telegram requests for

24   information, and there just is none.  There is none

25   at all.  And I asked them -- for instance, on the

AMM Transcription Service  (631)334-1445

PROCEEDINGS

1   Signal, I asked them, are there -- are there

2   documents that you're going to recover if you do a

3   search -- however you do a search of Signal, if you

4   do a search of Signal?  And every single one of

5   them either said, I don't have Signal, or I have

6   Signal and there are no documents.

7        We did the same thing for WhatsApp.  They

8   told me that some of them used WhatsApp when they

9   went on trips abroad because apparently it saves --

10  and I don't know this for a fact, but it saves long

11  distance telephone charges.  But all that is for

12  purely personal things.

13       One of them, Leslie Flynn, uses Instagram

14  to communicate with her girlfriends about tennis

15  and golf and things like that, or they use it to

16  put heart emojis on pictures of babies and things

17  like that.  They have no -- there is no possible --

18  they have all assured me there's no possible use of

19  these apps to communicate regarding any matter

20  related to this case.

21       THE COURT:  Okay.  And when you say that

22  the Flynns told you there were no documents on

23  Signal, do you know what they did to ascertain

24  that?  Did they go to the -- look at the app or did

25  they go to a website or some other source to tell

AMM Transcription Service   (631)334-1445

PROCEEDINGS

1    you that?

2          MR. BISS:  Judge, my understanding is

3    that -- well, I know that they went to the Signal

4    app, and they went through their Signal app to see

5    if there was anything.  And, of course, Signal is

6    one of these applications that auto deletes after a

7    month, and I don't think there's anything you can

8    do to change that.  But they don't have -- that's

9    what they did to search Signal for anything.

10          THE COURT:  Okay.

11          MR. BISS:  There are no documents.  Jack

12   Flynn went one extra step on Signal, and he

13   searched for the telephone number, the 910

14   telephone number that's been raised as an issue.

15   And that telephone number doesn't even show up on

16   Signal.  It doesn't -- there's no hits for even

17   that number.  So that's for him that he went that

18   extra step.

19          THE COURT:  Okay.  And then what about

20   Telegram?  So, obviously, I think there's one issue

21   as to Michael Flynn's Telegram, but do any of the

22   Flynns, the other Flynns, have a Telegram account

23   that they can access?

24          MR. BISS:  I think two of them do, Jack

25   Flynn and Lori Flynn.  And both of them have

AMM Transcription Service  (631)334-1445

PROCEEDINGS

1    certified -- and I would be happy to certify

2    this -- that they only use Telegram to look at

3    General Flynn's Telegram.  That's what they use

4    Telegram for.  They don't use it to communicate

5    with anybody.  They use it to read his posts or

6    articles that he posts.  And he has an active -- a

7    one active Telegram account.  I think I've

8    determined that the other two are actually not his;

9    they're somebody else's, or somebody masquerading

10   as him.  But they -- that's what they confirmed to

11   me specifically with regard to Telegram.

12           THE COURT:  Okay.  But are they able -- do

13   they have the capability of messaging on Telegram

14   or not?

15           MR. BISS:  You know, I don't know the

16   answer to that question, Judge, but I could tell

17   you they told me they don't message on Telegram.

18           THE COURT:  Okay.

19           MR. BISS:  And there's a way to search

20   Telegram.  For instance, I have searched myself.  I

21   have personally searched General Flynn's Telegram

22   using all the search terms.  And the -- so I think

23   there's a way you can search on Telegram, but they

24   say they don't -- Lori Flynn and Jack Flynn only

25   use Telegram to look at General Flynn's posts.

PROCEEDINGS

1    That's what they use it for.

2              THE COURT:  Okay.  Well, if that's the

3    case, then a search should be pretty easy for them

4    to do, though.  And if it is just a -- I mean,

5    maybe we can talk about a narrower set of search

6    terms to use, but it should be pretty simple if

7    that -- if the certification that you're willing to

8    make is actually true.

9              So I will -- I'm going to set that to the

10   side for a minute until we talk with CNN's counsel.

11   I just want to go through, sort of, all the issues

12   or make sure that I've gotten all the various

13   sources.

14             Okay.  I think that's it for now.

15             So, Ms. Bolger, if I were to have the

16   Flynns, Jack and Lori, do a search of Telegram, is

17   there a narrower scope of terms that we might be

18   able to focus on?

19             MS. BOLGER:  I'm sure that we could narrow

20   the terms.  The list we sent was broad, and I'm

21   sure I could propose a narrower set of search terms

22   for Telegram.

23             THE COURT:  I mean, I'm thinking, like,

24   five to ten.

25             MS. BOLGER:  Yes, I -- we could do that,

PROCEEDINGS

1    Your Honor.

2              THE COURT:  Okay.  All right.  So --

3              MS. BOLGER:  May I just ask you -- may I

4    just talk to you about Signal?

5              THE COURT:  Sure.

6              MS. BOLGER:  Sure.  I don't know if you

7    ever use Signal, Your Honor, but Signal is a, you

8    know, end-to-end encrypted app that has -- that is

9    ephemeral, but you can set the deletion.  So, you

10   know, if I'm emailing my -- a reporter, they

11   sometimes send me back things on Signal that

12   disappears within 30 seconds.  But if it's more

13   substantive, they can change it to, like, 30

14   minutes or an hour or a day or never disappearing.

15   So it's very much a user-generated app.

16             So in the documents produced by the

17   plaintiffs, we see an actual message in which Jack

18   Flynn, the plaintiff in this action, reaches out to

19   Lori Flynn, the plaintiff in one of the Florida

20   actions and says, Let's talk on Signal to discuss

21   the legal case, right?  Which is a little

22   problematic if that was to hide the communication,

23   which I'm not saying they were, but I, kind of,

24   think I'm entitled to know that.

25             So it is the case that Jack Flynn may say,

AMM Transcription Service   (631)334-1445

PROCEEDINGS

```
 1    I don't have any messages on Signal.  But I would
 2    take the position that he had an obligation to
 3    preserve the messages on Signal because they were
 4    messages in anticipation of this litigation.
 5            So I appreciate that there may not be
 6    messages, but I -- but for both Signal and
 7    WhatsApp, I think I would be entitled to know what
 8    they set their messaging at.  In other words, are
 9    there no messages because they never moved the
10    ephemeral communication from disappears after 30
11    seconds, which they both could have done and should
12    have done for communications in anticipation of the
13    litigation.
14            And we cited that case from Arizona, Your
15    Honor, where the court talked about obligations to
16    preserve Signal.
17            THE COURT:  I understand.
18            Mr. Biss, do you know what your client's
19    setting, deletion-time setting was on Signal?
20            MR. BISS:  No, I don't, but I talked to
21    him about the Instagram.  There is -- it was an
22    Instagram post or message that they exchanged.  And
23    I asked them both independently whether or not they
24    actually used Signal to talk about it.  And they
25    said, no, they used the telephone.  They talked on
```

AMM Transcription Service   (631)334-1445

PROCEEDINGS

1      the telephone.  So they didn't use Signal at all to

2      talk about it.

3                THE COURT:  Okay.

4                MR. BISS:  I mean, that's the answer, and

5      that's what they would say under oath at

6      deposition.

7                THE COURT:  Okay.

8                MS. BOLGER:  I would only add, Your Honor,

9      that that's not what they said in the documents

10     they produced to us.

11               THE COURT:  I know.

12               MS. BOLGER:  And --

13               THE COURT:  I have seen the excerpt, but

14     does Signal -- can you talk on Signal, like, live?

15               MS. BOLGER:  Yes.

16               THE COURT:  Have a live conversation on

17     Signal?

18               MS. BOLGER:  Yes.

19               THE COURT:  And is it recorded in writing,

20     or is it just an oral conversation, like on the

21     phone?

22               MS. BOLGER:  So it is an oral

23     conversation.  So what it is, is it's an end-to-end

24     encrypted conversation so that no one could access

25     what you're talking about.  You can also -- if I

                AMM Transcription Service   (631)334-1445

PROCEEDINGS

1    were to call someone on Signal who didn't set their

2    messages to ephemeral, there would be a record that

3    I made the telephone call, but if there were -- if

4    they were set to ephemeral, there's no record you

5    made the telephone call.

6                THE COURT:  Okay.  All right.  Well, do

7    you have the date scheduled for the Flynns'

8    deposition, Ms. Bolger?

9                MS. BOLGER:  We do.

10               THE COURT:  When will that be?

11               MS. BOLGER:  They are in the coming weeks.

12   I'm sorry.  I don't have the list in front of me,

13   but there are many of them over the spattering of a

14   couple weeks.

15               THE COURT:  All right.  Well, I think the

16   Signal issue is one for follow-up in the

17   deposition.  Certainly, you can ask all these

18   questions about what their settings were and what

19   the -- you know, the text expert that's in your

20   letter from February 16th that refers to having a

21   "call on Signal."  You can certainly ask about

22   that.  But at least, as it's been represented here

23   today, I don't see the basis for a further search,

24   but that's obviously without prejudice to whatever

25   may come up in the deposition.


                AMM Transcription Service   (631)334-1445

PROCEEDINGS

1          But with respect to Telegram, I will order

2     Jack and Lori Flynn to do a search of Telegram

3     using the five to ten search terms that defendants

4     are going to provide.

5          And then as to WhatsApp, Ms. Bolger, do

6     you want to respond to anything on that?

7          MS. BOLGER:  The same, Your Honor.  My

8     concern about Mr. Biss' representation even now

9     about WhatsApp is that he is relying on his

10    client's assertion that they never use it for

11    matters associated with this lawsuit.  But I

12    haven't even heard once that they searched it,

13    right, or that Mr. Biss searched it.  I just -- it

14    feels like what I'm getting -- and it was very

15    helpful to have this call -- would be helpful to

16    have this call to clarify it, is what he's saying

17    is, well, he's telling me they wouldn't use it for

18    that.  But I don't think that's sufficient.  I

19    think he has to or, certainly, they have to

20    actually sit down and search them.  And I just

21    don't have a sense of whether that's happened.

22         I will add that WhatsApp is -- also will

23    have the ability to be ephemeral, so I would want

24    to know what those requirements were as well.

25         THE COURT:  Okay.  Well, can we do the

PROCEEDINGS

1   same?  Just to verify the certification that Mr.

2   Biss has made, the same five to ten search terms

3   that we're going to use for Telegram, do the same

4   thing for Jack and Lori Flynn as to WhatsApp.  And

5   if it is, in fact, the case that they dispute them

6   for anything other than what is involved in this

7   case, then it should be a pretty easy search to do.

8          Okay, Mr. Biss?

9          MR. BISS:  Yeah, that's okay, Judge.  And

10  I would just add one thing, Telegram is public.

11          THE COURT:  Yeah.

12          MR. BISS:  They can -- I mean, anybody can

13  search it, but I will run the search myself.

14          THE COURT:  Okay.  All right.  Very good.

15  Thank you.

16          So Telegram and WhatsApp, we're going to

17  do a supplemental search on those.  Okay.

18          And then, Ms. Bolger, as to your letter,

19  you know, you make some reference about messages or

20  documents that may have been deleted.  I understand

21  that you're just preserving your rights on that.

22  There's nothing I need to decide today about that?

23          MS. BOLGER:  No.  That's right, Your

24  Honor, we are preserving our rights.  So we also --

25  we included it so you didn't think we were just

AMM Transcription Service  (631)334-1445

PROCEEDINGS

1    suspicious people.  We were trying to explain to

2    you why we thought we -- why we're asking these

3    questions.

4              THE COURT:  I understand.  Okay.

5              So shall we turn to the plaintiffs' motion

6    to compel with respect to Anderson Cooper?

7              So, Mr. Biss, has Donie O'Sullivan's

8    deposition been taken yet?

9              MR. BISS:  No, Your Honor.  It is Monday,

10   the 27th.

11             THE COURT:  Monday.  Okay.  So I assume

12   you're planning to ask him, among other things,

13   about whether he had any communications with Mr.

14   Cooper about the Flynns, right?

15             MR. BISS:  Yeah, I'm going to ask him

16   about that.  I mean, he -- the questions to

17   Mr. Cooper are different.

18             THE COURT:  Okay.  Well -- but I -- you

19   know, I think it's a -- what's changed since the

20   two prior times that I said that I didn't see any

21   connection between Mr. Cooper and the Flynns or the

22   report in this particular case?

23             MR. BISS:  Well, Judge, nothing in that

24   regard has changed.  The issue still is with regard

25   to CNN's position on the QAnon belief system and

PROCEEDINGS

1    what is part of the QAnon belief system.

2            Judge Woods has ruled that a QAnon

3    follower means somebody who is an adherent to the

4    belief system.  And the court has given some

5    examples in its August 12th order as to what

6    aspects of that belief system are.

7            Mr. Anderson -- Mr. Cooper, rather,

8    published two extensive reports in which he talked

9    about other aspects of the QAnon belief system.

10   And I want to examine him on his knowledge of what

11   the QAnon belief system consists of, in addition to

12   the idea that there is a cabal of Satan-worshiping

13   pedophiles who control the U.S. government.  That's

14   apparently the central view of -- the central tenet

15   of the QAnon belief system.

16           Mr. Anderson, in his reports, has also

17   said that another significant aspect of the QAnon

18   belief system is that -- is the racist and bigotry

19   component of the QAnon belief system.  And I think

20   I'm entitled to ask him as a witness, you know,

21   whether those are parts of the QAnon belief system

22   and whether there are other aspects of the QAnon

23   belief system.

24           THE COURT:  Well -- but is Mr. Cooper an

25   expert in the QAnon belief system?

PROCEEDINGS

1            MR. BISS:  Well, he holds himself out as
2     an expert.  I mean, it depends, right?  He
3     certainly has more knowledge than I do about what
4     the QAnon belief system is.  And he has -- he
5     represents himself to readers as an expert.  That's
6     what he does.  People think that he's an expert.  I
7     think that he knows what he's talking about.
8            THE COURT:  Well, there's probably a lot
9     of people who would represent themselves as knowing
10    a lot about the QAnon belief system, but I'm still
11    not seeing, you know, under <u>The New York Times</u>
12    <u>versus Sullivan</u> standard, which is still the
13    standard that governs this court, the state of mind
14    --  "The state of mind required for actual malice
15    has to relate to the persons in the organization
16    having responsibility for the publication."
17            And what's been -- what has not been shown
18    to me, either on the prior two occasions or today,
19    is that Mr. Cooper had any responsibility for the
20    publication that's at -- the report that's at issue
21    in this case.  I'm not disputing what you're
22    representing, Mr. Biss, but I am just -- in terms
23    of the standard for taking his deposition in this
24    case, I don't believe that it has been met.
25            Ms. Bolger, do you want to say anything on

AMM Transcription Service   (631)334-1445

PROCEEDINGS

```
 1    that point?
 2              MS. BOLGER:  No, I don't, Your Honor.
 3    The -- I think that's the point we're making.  We
 4    can make others, but that's the one that wins, I
 5    think.
 6              THE COURT:  All right.  So, Mr. Biss, I'm
 7    going to deny a request -- your motion to compel
 8    Mr. Cooper's deposition at this time, but as I've
 9    said before, if after taking Mr. O'Sullivan's
10    deposition, or if there's some other evidence that
11    connects Mr. Cooper under The New York Times versus
12    Sullivan standard to having "responsibility for the
13    publication" at issue in this case, you can renew
14    your application.  But at this time, I don't -- I
15    find that the standard for a deposition has not
16    been met.  Okay.
17              Ms. Shullman, do you want to talk about
18    Twitter?
19              MS. SHULLMAN:  I do.  Thank you, Your
20    Honor.
21              I first want to say that I inadvertently
22    left two handles for Mary Flynn O'Neill off of my
23    letter.  And I apologize for that sloppiness, but
24    Mr. Biss is aware of them as recently as February
25    15th, when I identified them in an e-mail to him.
```

PROCEEDINGS

1              Last -- when we met in October, I had a
2     very brief appearance before Your Honor, where you
3     compelled Mr. Biss to have his clients who were
4     either parties to the Florida litigation, this
5     litigation or subpoenaed non-parties to produce and
6     provide Stored Communications Act consents.
7              Mr. Biss did that, but in transmitting
8     those consents to us, he indicated -- though he
9     supplied a consent for Valerie Flynn, one of the
10    plaintiffs in the Florida cases, he indicated that
11    Valerie Flynn actually was not associated with the
12    handle that CNN believes to be associated with her.
13             Of course, I felt compelled to disclose
14    that to Twitter.  I didn't want to misrepresent
15    anything and present them what could be, really, an
16    errant SCA Consent.
17             That, among other things, sort of,
18    prompted Twitter to indicate that it will need to
19    do its own independent verification of the identity
20    of the people who hold these handles.  But in the
21    process of that, Twitter has repeatedly indicated
22    to me that Mr. Biss' clients have the ability to do
23    this themselves.  And I have repeatedly asked
24    Mr. Biss to do that, and he has said various things
25    from "pound sand" to "this is all I'm going to do."

AMM Transcription Service  (631)334-1445

PROCEEDINGS

1          So, you know, I have -- I am currently

2    faced with two options; I pay Twitter, or my client

3    pays Twitter $12,000 under Rule 45 for its cost of

4    compliance with my subpoena.  Or the path of least

5    resistance to me seems to be to direct Mr. Biss to

6    follow the download procedures and actually

7    download the data for the eight handles that are

8    still at issue in this case, a feat I know he can

9    accomplish because, as Footnote 2 indicates in my

10   letter, he has done that on occasion and supplied

11   the data.

12          So I am, sort of -- that's where I am.  I

13   pay 12 grand for data that Mr. Biss can get, or Mr.

14   Biss gets it.

15          THE COURT:  What did Twitter say about the

16   -- sorry.  If you're not speaking, please -- if

17   there's someone on this line who's not speaking,

18   please mute your line.  It's difficult for us to

19   hear the participants.

20          Thank you.

21          What did Twitter say about the extent of

22   their access or their ability to access?  I guess

23   I'm not sure of the technical...

24          MS. SHULLMAN:  The process that Twitter

25   would use, Your Honor, is they would ping these

AMM Transcription Service   (631)334-1445

PROCEEDINGS

1    handles, the eight handles that are still at issue,

2    and they would attempt to verify, for example, that

3    @GenFlynn is actually associated with General

4    Michael Flynn, and obtain their consent directly

5    because, given Mr. Biss' representations about

6    Valerie Flynn's account, they are not assured that

7    the consents we have supplied them actually match

8    the people who hold the accounts.

9              So they will attempt to ping them.  That

10   attempt is only as good as the information in

11   Twitter's files; meaning if General Flynn has

12   supplied a fake e-mail address or phone number or

13   other contact information, they will be

14   unsuccessful -- or does not otherwise respond --

15             THE COURT:  Right.

16             MS. SHULLMAN:  -- they will be

17   unsuccessful in that attempt and, therefore, they

18   will not produce the information.

19             THE COURT:  And when you say "ping,"

20   that's like another way of authenticating either

21   through an e-mail or sending it to the cell phone

22   that's associated with the account?

23             MS. SHULLMAN:  Yes.  Your Honor, I think I

24   hear shuffling, so I think I heard what you said.

25             Yes, what they are attempting to do is

AMM Transcription Service   (631)334-1445

PROCEEDINGS

1    reach either the e-mail address or phone number

2    associated with the Twitter account they have for

3    these various handles, one or both of these pieces

4    of information.  Candidly, for one of the accounts,

5    they don't have an e-mail address or a phone

6    number, but Twitter will not -- because of the

7    Stored Communications Act, Twitter will not tell me

8    which account that is.

9              THE COURT:  Okay.

10             MS. SHULLMAN:  So I would have to get that

11   by omission when they don't produce those records.

12             THE COURT:  And the basis that you have

13   for believing that the eight Twitter handles are

14   actually for the Flynns is that you have copies --

15   seen Tweets from these handles that make you

16   think -- again, if I could just pause -- and before

17   you respond, Ms. Shullman -- if you're not speaking

18   on this call, please mute your line right now.

19   You're making it virtually impossible for me --

20   sir, please mute your line.  You're making it

21   impossible for us to conduct this conference.  If

22   you don't comply, we'll disconnect you from this

23   call.

24             Okay.  Go ahead, Ms. Shullman.

25             MS. SHULLMAN:  Sure.  The only one that's

AMM Transcription Service  (631)334-1445

PROCEEDINGS

1    actually -- that Mr. Biss disputes is associated

2    with the plaintiffs or non-parties that have been

3    subpoenaed is Valerie Flynn's, but he did provide

4    an SCA Consent to it -- for it.

5         THE COURT:  Okay.

6         MS. SHULLMAN:  And so that is what is --

7    so if Mr. Biss is going to do this himself, as my

8    Footnote 3 indicates, I will take, for now, his

9    representation that Ms. Flynn is not associated

10   with that handle.  And I will -- we will ask Ms.

11   Flynn at her deposition in April, you know,

12   questions and, obviously, come back if we find

13   otherwise.  But for now, I would accept that

14   representation if he's going to do it himself.

15        THE COURT:  All right.  Mr. Biss?

16        MR. BISS:  Judge, obviously, I don't like

17   the insinuation from counsel that the Flynns are

18   supplying bogus telephone numbers to Twitter and

19   e-mails to Twitter.  The Court may or may not have

20   a general knowledge of the fact that General Flynn

21   used Twitter and had millions of followers and used

22   it for years.  And it was Twitter that adopted a

23   policy that purged all these people off the

24   platform.

25        So in the beginning, Ms. Shullman sent me

AMM Transcription Service   (631)334-1445

PROCEEDINGS

1     a request to download all this information with

2     about a page or half of a page of instructions for

3     how to do it.  We weren't happy doing work for CNN.

4     I wasn't happy about it, but we did it.  And so we

5     did -- we followed the download instructions for

6     every account.  We followed it to a T.  And for --

7     I will use General Flynn as an example.

8            General Flynn got back a notice from

9     Twitter, an anonymous notice because Twitter is not

10    personal; they just send you anonymous notice

11    saying, we're not going to do it.  And I produced

12    all -- I produced screenshots of those notices for

13    all the accounts that I was unable to download

14    information.  The accounts that I was able to

15    download information for, we downloaded it and we

16    produced it to them.  And I notified them for other

17    accounts that we couldn't do it because Twitter

18    wouldn't let us do it.  I notified them that we

19    couldn't obtain the information; they were going to

20    have to get it from Twitter.

21           In addition to that, Your Honor ordered us

22    to sign and submit the consents, the SCA -- the

23    Stored Communications Act consents.  We did that

24    for everyone.  And on the Valerie Flynn one,

25    Valerie Flynn brought to my attention this wasn't

PROCEEDINGS

```
 1    her account and she was concerned.  And so I
 2    conveyed to Ms. Shulman that her -- Valerie's
 3    concern, Ms. Flynn's concern, was that Twitter was
 4    going to be accessing someone else's account
 5    because somebody set up this account.
 6                THE COURT:  Right.
 7                MR. BISS:  So, needless to say, I signed
 8    the consent and submitted it anyway, and --
 9    feeling like that's their problem, they can deal
10    with that because Twitter can figure out
11    immediately if it's Valerie Flynn or not Valerie
12    Flynn.
13                THE COURT:  Right.
14                MR. BISS:  They have access under the
15    Stored Communications Act to non-content
16    information, which would be the identity of the
17    account holder, and content information, which is
18    probably what CNN is looking for.
19                We did everything, Judge, that they asked
20    us to do, every single, single thing.  If there's
21    any line to be pinged, it should be this number,
22    Valerie Flynn.  They have the signed Stored
23    Communications Act consents for General Flynn and
24    everybody else.  Go get the -- we said, look, get
25    the -- have at the documents.  You're welcome to
```

AMM Transcription Service   (631)334-1445

PROCEEDINGS

1    every single thing you could look at on Twitter

2    that General Flynn or any other Flynn has ever

3    published.  And guess what?  None of it is ever

4    going to show that they're QAnon followers.  And so

5    that's why we have no reticence whatsoever.

6            And with regard to this Valerie Flynn

7    account, ping that line.  If they want to ping it

8    and see if it ever comes back, I can assure you

9    it's not going to be Valerie Flynn that says that

10   it's my account because she -- we have been over

11   this.  We have been over this quite a few times.

12           THE COURT:  Okay.  So which were the

13   accounts or the handles that you were able to

14   download and produce, Mr. Biss?

15           MR. BISS:  If Your Honor will just give me

16   one second, I can confirm that.

17           So the information that we were able to

18   download and produce was...

19           MS. SHULLMAN:  Mr. Biss, I have it in

20   Footnote 2 to my letter, if you want to take a look

21   at that and see if that's correct.

22           MR. BISS:  Sure.  That is what I -- thank

23   you.  That's what I was looking for, actually.

24           Okay.  So in Footnote 2, Judge, of

25   Ms. Shullman's letter, she identifies four


AMM Transcription Service   (631)334-1445

PROCEEDINGS

```
1      accounts.  And it is -- there was actually five,
2      but she identifies four.  The ones we produced --
3      we were able to download and produce were LoriFlynn
4      and JackFlynn1.  This is -- there are two Jack
5      Flynn accounts.
6                 THE COURT:  Okay.
7                 MR. BISS:  There's GoJackFlynn, which was
8      his original Twitter.  And when they canceled that
9      account, he set up another account called
10     GoJackFlynn1.  So there's two GoJackFlynns.
11     GoJackFlynn1, we were able to produce.
12                THE COURT:  Okay.
13                MR. BISS:  Lflynn1998, I think that's
14     Leslie Flynn.  And then Joe Flynn 64,  JFlynn064,
15     we produced that.  And I believe we also produced
16     JosephFFlynn1.  The files were massive, and so --
17     and it took me months to look at the Joe Flynn
18     accounts.  But I believe it's those five accounts
19     that we produced and the others that are identified
20     in the body of page 1 of Ms. Shullman's letter.
21                We notified them we couldn't produce the
22     documents for those accounts because Twitter said
23     we can't give you the information because the
24     accounts have been closed or terminated or whatever
25     the -- whatever -- I don't have the screenshot in
```

PROCEEDINGS

1    front of me, but words to that effect.

2              THE COURT:  Okay.

3              MR. BISS:  So I --

4              THE COURT:  And you provided those -- you

5    said you provided those screenshots to

6    Ms. Shullman?

7              MR. BISS:  I think I provided all of the

8    screenshots, but I would be happy to do that.  I

9    mean, we kept screenshots for all the accounts

10   where Twitter advised us we couldn't -- they would

11   not or could not produce any information.

12             THE COURT:  I see.  Okay.

13             Ms. Shullman, do you have those

14   screenshots or an example of one of them?

15             MS. SHULLMAN:  I do not, Your Honor.  And

16   on JosephJFlynn1, as my footnote indicates, Mr.

17   Biss has represented that he has that material for

18   months, but to date, he has not produced

19   JosephJFlynn1's information.

20             The only screenshot he shared with us,

21   which he also authorized me to share with Twitter

22   during this meet-and-confer process with Twitter,

23   was one for one of Mary Flynn O'Neill's accounts.

24   That's one of the two that I left off my letter

25   accidentally.

          AMM Transcription Service  (631)334-1445

PROCEEDINGS

1          And in response to that, Twitter indicated

2     to me -- and I sent a message to Mr. Biss -- that

3     it would be willing to -- if he would be willing to

4     attempt to download their data, Twitter would be

5     willing to assist Mr. Biss in the process, should

6     he run into any problems.

7          There is one caveat.  If that account --

8     rather than suspend it, if the user deactivated the

9     account, it would be impossible for Mr. Biss or

10    Twitter to download it.  But Twitter tells me --

11    and, again, I don't want to resolve credibility

12    determinations between Mr. Biss' representations

13    and Twitter's because I'm not really in a position

14    to do that.  But Twitter tells me none of these

15    accounts that are listed in my letter show any

16    efforts to download their data.

17         So, you know, I don't know who's telling

18    me the truth and who isn't, but I know that there

19    are eight handles for which I haven't supplied any

20    information that Twitter tells me unless the

21    account is deactivated, is available.  And if it

22    was deactivated, it is a question of when because

23    these folks were subpoenaed last July.  And so if

24    they deactivated their Twitter accounts after that

25    point, you know, it is possible we have a

50

PROCEEDINGS

1    spoliation issue.  But I don't know that until they

2    give me the information about when they deactivated

3    their accounts or supply the information.

4              MR. BISS:  Judge, may I be heard very

5    briefly?

6              THE COURT:  Yes.  Go ahead.

7              MR. BISS:  There's no deactivation of any

8    accounts.  There's no spoliation issues at all.

9    And it is -- they haven't deactivated any accounts.

10   They've already gone through this procedure once,

11   and Twitter says they didn't go through the

12   procedure.  Twitter is wrong.  And I don't know

13   what the purpose would be to force us to go through

14   this procedure again when we signed the Stored

15   Communications Act consents.  They have our signed

16   consents.  They can just get the documents and turn

17   them over.

18             THE COURT:  So what I would ask, because

19   it sounds like you have them handy, Mr. Biss, is to

20   provide the screenshots showing the attempts to

21   access the -- and download the Twitter accounts

22   that are in Ms. Shullman's letter.

23             And then, you know, I think where we are,

24   Ms. Shullman, is that you have to go back to

25   Twitter.  You know, I'm taking Mr. Biss'

          AMM Transcription Service  (631)334-1445

PROCEEDINGS

1    representation about what the screenshots or what

2    the error messages say.

3         And then the other point that Ms. Shullman

4    raised, Mr. Biss, is the JosephJFlynn1 data.  Is

5    that one that you have been able to download?

6         MR. BISS:  I'm pretty sure it -- there are

7    two files.  There are -- and I'm pretty sure one of

8    them is for JFlynn064, and the other one is for the

9    JosephFlynn1, the other account.  There are two

10   massive downloaded files, and I think he downloaded

11   both of them.

12        THE COURT:  Okay.  So can you produce that

13   data, the JosephJFlynn1?

14        MR. BISS:  I've produced it.

15        THE COURT:  You did produce it?

16        MR. BISS:  Yes.

17        THE COURT:  Okay.

18        MS. SHULLMAN:  That does not comport with

19   my understanding, Your Honor, but, you know, we

20   will double and triple check our files.  I do not

21   believe we received that.

22        But, Mr. Biss, I presume, if I tell you we

23   didn't receive it, that you would just simply

24   resend it to us.

25        MR. BISS:  Yes, I would be happy to do

PROCEEDINGS

1    that.  I will send you both files.

2                    THE COURT:  Great.  Okay.

3                    MS. SHULLMAN:  And, Your Honor, with

4    respect to his screenshots that he's going to send

5    us about, you know, the failed efforts to download

6    this data, if I may have any ruling without

7    prejudice to come back because, again, I'm stuck in

8    the spot where Twitter is telling me it's going to

9    cost $12,000 to comply, and, you know, if he sends

10   me consents that aren't as he represents them, or I

11   can -- you know, again, with the Mary Flynn one,

12   Twitter's response was, we will help Mr. Biss

13   download this data, and he just simply refused to

14   do it himself.

15                   So it seems at odds that I would have to

16   pay Twitter to do it when Twitter says that the

17   error message for at least Mary Flynn was caused by

18   them doing it wrong, trying to download it wrong.

19                   THE COURT:  Sorry.  Who is Mary Flynn in

20   the family structure?

21                   MS. SHULLMAN:  She is a non-party to this,

22   and she has two Twitter handles.  Those are the two

23   that I, unfortunately, left off my letter.  I'm not

24   actually sure what her relationship is to the other

25   Flynns, but she is a subpoenaed non-party.  She was

                 AMM Transcription Service  (631)334-1445

PROCEEDINGS

1    subpoenaed for this data in July of last year.

2              THE COURT:  Okay.  So is Mary Flynn

3    O'Neill's Twitter one that you've tried to download

4    and gotten an error message or not?

5              MR. BISS:  Yes.  Yes, it is.

6              THE COURT:  Okay.  All right.

7              MR. BISS:  And that was a screenshot

8    example that I gave.  I have other screenshot

9    examples.

10             THE COURT:  Okay.  So if you could provide

11   to Ms. Shullman all the screenshots of the attempts

12   that you made and then the download of what you've

13   been able to get for Joseph, JFlynn1.

14             And then, yeah, Ms. Shullman, obviously,

15   it is without prejudice.  I know you're doing your

16   best with negotiating with Twitter, and will -- you

17   know, I'm hoping that we can just, sort of, reserve

18   all cost-shifting now until we get to the end of

19   fact discovery.  Okay?

20             MS. SHULLMAN:  Okay.  Thank you, Your

21   Honor.

22             THE COURT:  You're welcome.  All right.

23             And then, I guess, the last issue that I

24   had -- and then I will hear from the parties if

25   there's anything I missed -- was the defendant's

          AMM Transcription Service   (631)334-1445

PROCEEDINGS

1    letter regarding expert discovery.

2            So back -- I think when I saw you before

3    Thanksgiving, we had pushed fact discovery out

4    until April 17th.  And I said something to the

5    effect of -- that everything else would be shifted

6    accordingly.

7            You know, we didn't specifically set those

8    dates because we were trying to get to the end of

9    that discovery, but there also seemed to be some

10   ambiguity about whether there would or would not be

11   experts.

12           So, Ms. Bolger, this -- it came up in your

13   letter.  Do you want to speak to this issue?

14           MS. BOLGER:  Sure.  It's very

15   straightforward, Your Honor.  The original Rule 26

16   report had a discovery cutoff of December 16, 2023,

17   and then an expert discovery cutoff of February 6,

18   2023.  And I confess, Your Honor, at the hearing in

19   November, you said that we would move the discovery

20   deadline to April, and then you said that we would

21   move everything accordingly.  And I honestly

22   thought that meant everything else and the schedule

23   would be moved accordingly.

24           We -- as you know, there's pending cases

25   in the Middle District of Florida, and expert

AMM Transcription Service  (631)334-1445

PROCEEDINGS

1   reports are due there on March 3rd.  But we asked

2   them to extend it, thinking that we would try and

3   get everything all on the same schedule.  And when

4   we asked the court in the Middle District of

5   Florida to do that, Mr. Flynn told the court in the

6   Middle District that we had blown our deadline,

7   that we had already given up our right to do expert

8   reports.

9          And we just don't think did, Your Honor.

10  We think that your November order punted on other

11  dates, which it -- because we were trying to get

12  through the end of discovery.  If we got it wrong,

13  gosh, it was a good-faith misunderstanding, and we

14  would ask that we have the chance to be able to

15  file expert reports.  I -- there's a case on very

16  similar facts called Melendez versus Greiner, which

17  is 2003 Westlaw 22434101.

18         What we would propose, Your Honor, is not

19  long.  And we would say we would do -- this is what

20  we proposed in the Middle District, and what we

21  would propose here is that we do our opening expert

22  report on April 24th.  And then -- or each party

23  does their opening by April 24th, and then there's

24  a rebuttal by May 8th, and then there would just be

25  a cutoff of May 18th.

AMM Transcription Service   (631)334-1445

56

PROCEEDINGS

1           THE COURT:  Mr. Biss?

2           MR. BISS:  So two responses, Your Honor.

3      The -- number one is they submitted the transcript,

4      I believe, as an exhibit in one of the letters.  In

5      the hearing that we had on November 23, the

6      discussion was clearly about extending the deadline

7      for fact discovery, and you said "related matters."

8      And what you meant by "related matters" clearly was

9      the discovery -- the deadlines for document

10     requests, the deadline for interrogatories,

11     depositions and things like that.

12          There's no reference whatsoever in the

13     transcript to extending the expert deadline in any

14     way, shape or form.  And that was February 6th.

15          We complied with your order.  We

16     designated an expert, and we produced his report.

17     And the expert is on the issue of the

18     reasonableness of the attorneys' fees under the

19     Rhode Island statute.  But there's no good cause

20     here at all.  There's no good cause to extend the

21     deadline for an expert.  And the best evidence, as

22     it were, of lack of good cause is they can't even

23     tell you what kind of expert they need.  There's

24     not -- there is no identification in this case or

25     in Florida of what subject matter an expert might

              AMM Transcription Service   (631)334-1445

57
PROCEEDINGS

1    be tested -- might be -- on what subject matter an

2    expert would be needed.  None.

3           So it's kind of, like, extending a

4    deadline without any -- you know, without

5    any showing of any need to do so.  So that's why we

6    oppose the extension of an expert -- of the expert

7    deadline.

8           THE COURT:  Well, I can tell you what I

9    meant when I said "we'll move everything else

10   accordingly," and that's every other date after the

11   end of fact discovery, which included expert

12   discovery and expert depositions and the, you know,

13   deadlines for summary judgment and deadlines for

14   settlement conference and everything else.  That's

15   what I meant.

16          And so it -- and it also just doesn't make

17   sense to have experts before fact discovery is

18   over.  That is -- there is no schedule that I have

19   ever entered since becoming a Magistrate Judge that

20   had expert discovery ending before fact discovery.

21          And so it just doesn't make sense that the

22   February 6th deadline remained in place after what

23   I said at the conference on November 23rd, which

24   was that we were -- I -- "extension of the fact

25   discovery deadline, and we'll move everything else

                  AMM Transcription Service   (631)334-1445

PROCEEDINGS

1    accordingly."  I said that twice.  I used the
2    language "other deadlines accordingly."
3            And so that's certainly what I meant, was
4    everything coming after April -- after fact
5    discovery.  So I apologize if there was any
6    confusion about that by the fact that we only -- in
7    the order that followed that conference, we only
8    adjusted the fact discovery deadline to April 17th
9    and the letter confirming its completion on April
10   24th.  But -- and, you know, if you think that
11   you've been prejudiced, Mr. Biss, you can
12   certainly, you know, supplement your expert
13   reports.  You know, if we are setting a new
14   deadline of April 24th, you're certainly entitled
15   to supplement your expert reports.  Or if there's
16   another expert that you want to offer, there's
17   certainly no prejudice to you, I don't think, by
18   setting the schedule that Ms. Bolger described.
19   Although, you know, I'm happy to have you speak
20   to -- if you think that the schedule she proposed
21   is unreasonable, we can talk about that.  But,
22   certainly, expert discovery was intended to follow
23   fact discovery.
24           Is the schedule that Ms. Bolger proposed,
25   Mr. Biss, reasonable to you, or do you want to make

PROCEEDINGS

```
 1    any changes?
 2            MR. BISS:  No.  I think -- Your Honor,
 3    again, I think the schedule is reasonable that she
 4    proposed.  And I would acknowledge to you
 5    forthright, I can't -- I am not claiming prejudice
 6    of any kind.
 7            THE COURT:  Okay.  All right.
 8            MR. BISS:  So...
 9            THE COURT:  Okay.  All right.  And so
10    we're still on target to complete fact discovery by
11    April 17th?
12            Do you think that's achievable, Mr. Biss?
13            MR. BISS:  Well, I do.  We've got all the
14    depositions that Ms. Bolger wanted to schedule.
15    They've all been scheduled.  There's dates.
16    They're all set.  We took the first one today.
17    There was one issue that I would like to raise and
18    get Your Honor's guidance on it going forward on
19    that, but they've all been set.  I think we can hit
20    it.  I mean, that's my view.
21            THE COURT:  Okay.  Ms. Bolger?
22            MS. BOLGER:  I -- at the moment, I don't
23    see a reason not to, but, you know, we're certainly
24    trying our level best, and we have been actually
25    working to comply with each other's schedule and
```

PROCEEDINGS

1    have scheduled a lot of them.

2            THE COURT:  Okay.  Well, I think, if I'm

3    not mistaken, I have another status check-in with

4    you on March 21st.  So, hopefully, we'll see that

5    we're staying on target.

6            MS. BOLGER:  Okay.

7            THE COURT:  So, Mr. Biss, was there --

8    there was another issue you wanted to raise?

9            MR. BISS:  Yes, Your Honor, very briefly.

10   So it has to do with the depositions and -- so,

11   today, we took the deposition -- or Ms. Bolger took

12   the deposition -- I asked some questions -- of a

13   witness by the name of J.T. Wilde.  And during the

14   deposition, Ms. Bolger showed him some documents

15   that had been -- not been disclosed in discovery.

16         And the -- I did broad requests for

17   production of documents.  I did seven waves of

18   requests for production of documents.  The

19   documents are relevant to -- or are covered by one

20   or more of those requests.  And I was somewhat

21   bothered that they're using documents in a

22   deposition that they didn't produce in discovery.

23         And Ms. Bolger's position was that, well,

24   they're available on the Internet and they're not

25   in CNN's possession; therefore, I don't have to --

AMM Transcription Service  (631)334-1445

PROCEEDINGS

1    I can just show up at a deposition and use the

2    documents.

3         I just want some guidance on that.  I

4    mean, again, I feel like not only -- I feel like

5    it's a violation of the discovery responsibility to

6    produce documents and to give the opposing party a

7    fair opportunity to at least review documents

8    that -- with a potential witness that might be used

9    at a deposition.  And so I just need some guidance

10   on that.  If I'm wrong, I'm wrong, and that's the

11   way it goes.  You know, I will be doubly sharp next

12   time.

13        THE COURT:  Okay.  So what was the

14   document that was shown to Mr. Wilde?

15        MR. BISS:  There were --

16        MS. BOLGER:  Your Honor, I -- if I can

17   tell you, they were -- the documents that were

18   shown to J.T. Wilde were documents I found in

19   preparing for the depositions that were all

20   public-facing documents off the Internet; in other

21   words, they were my work product.  They were not

22   CNN's, right?

23        So, as I was telling Mr. Biss, if these

24   documents were in CNN's possession, custody and

25   control, I agree they would have been responsive

AMM Transcription Service  (631)334-1445

PROCEEDINGS

1    and we would have produced them, but these are not

2    from there.  These are my documents that I found

3    doing the research.  And I think there's a case in

4    New York called the Bey versus City of New York

5    case.  And what the court says there is that -- the

6    plaintiff made the argument that Mr. Biss is making

7    here, and the court disagreed, saying that when

8    documents are publicly available, then they -- then

9    you are entitled to use them if they were not

10   documents you had an obligation to produce.

11          MR. BISS:  So, Your Honor, I requested in

12   discovery all documents that would show that Leslie

13   Flynn is a QAnon follower.  And they didn't produce

14   any documents.  And what I'm concerned about is

15   when they get to the party depositions, they're

16   going to go on the Internet on the Wayback machine

17   or somewhere on the Internet, and they're going to

18   find a document, and they're going to start

19   cross-examining her based on that document.

20          And I just think that's fundamentally

21   unfair in terms of how we prosecute these cases.  I

22   mean, if they have documents, they should be

23   disclosing them in discovery because that's the

24   only way that you can prepare for a deposition;

25   otherwise, you know, they could -- you know, they

PROCEEDINGS

1    could just sandbag me at the deposition with

2    documents that they find in a --

3         THE COURT:  We never disclose deposition

4    exhibits to each other before a deposition unless

5    the parties otherwise agree.  So you're not

6    entitled to her work product of which documents she

7    may or may not show a witness.  You're right; as

8    long as they are -- if they are documents that are

9    in CNN's possession, custody or control, they need

10   to have been produced in discovery.  But if it's

11   general, publicly available information, I'm

12   assuming from some Internet source or library or

13   whatever, there's nothing that requires her to

14   disclose that to you ahead of the deposition.

15        And, you know, same for you, you know.

16   You can show Mr. O'Sullivan something that you

17   found on the Internet, and you're not required to

18   show that to Ms. Bolger before his deposition, or

19   for any other CNN witness for that matter.  So it's

20   fair for both of you that you're not required to

21   disclose your work product of publicly available

22   information before a deposition.  So that's my

23   ruling on that issue.

24        MR. BISS:  Okay.

25        THE COURT:  Anything else on your side,

AMM Transcription Service  (631)334-1445

PROCEEDINGS

1    Mr. Biss?

2              MR. BISS:  No, Your Honor.

3              THE COURT:  All right.  Ms. Bolger?

4              MS. BOLGER:  No, Your Honor.

5              THE COURT:  Ms. Shullman?

6              MS. SHULLMAN:  No.  Thank you, Your Honor.

7              THE COURT:  All right.  Thank you very

8    much, everyone.  We will -- you will see an order

9    from us shortly.  Have a good evening.

10             MR. BISS:  Thank you, Your Honor.

11             MS. BOLGER:  Thank you.

12             MS. SHULLMAN:  Thank you.

13

14                         0o0

15

16

17

18

19

20

21

22

23

24

25

PROCEEDINGS

1

2

3                 C E R T I F I C A T E

4

5        I, Adrienne M. Mignano, certify that the

6    foregoing transcript of proceedings in the case of

7    Flynn v. Cable News Network; Docket #21-CV-02587 was

8    prepared using digital transcription software and is

9    a true and accurate record of the proceedings.

10

11

12   Signature   *Adrienne M. Mignano*
                 _____

13              ADRIENNE M. MIGNANO, RPR

14

15   Date:        February 23, 2023

16

17

18

19

20

21

22

23

24

25

           AMM Transcription Service   (631)334-1445