# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN P. "JACK" FLYNN<br>LESLIE A. FLYNN,<br><br>                Plaintiffs,<br><br>      - against -<br><br>CABLE NEWS NETWORK, INC.,<br><br>                Defendant. | Case: 1:21-cv-02587-AS-SLC<br><br><br><br><br>**ORAL ARGUMENT REQUESTED** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CABLE NEWS NETWORK, INC.'S MOTION FOR SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
Katherine M. Bolger (N.Y. Bar No. 2976868)
Meenakshi Krishnan (*pro hac vice*)
Lindsey B. Cherner (N.Y. Bar No. 5571534)
Sam F. Cate-Gumpert (*pro hac vice*)
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone: (212) 489-8230
katebolger@dwt.com
meenakshikrishnan@dwt.com
lindseycherner@dwt.com
samcategumpert@dwt.com

*Attorneys for Defendant Cable News
Network, Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS .............................................................................. 4

    A.    The Parties ................................................................................... 4

    B.    The QAnon Conspiracy Generally................................................... 5

    C.    "Where We Go One, We Go All" is a QAnon Slogan ......................... 6

    D.    Gen. Flynn and His Family Exploited His Connections to QAnon....... 7

    E.    Jack Promoted QAnon To Benefit The Gen. Flynn Legal Defense Fund ............. 7

    F.    The #TakeTheOath Movement ....................................................... 8

    G.    The Flynns #TakeTheOath ............................................................ 9

    H.    Media Report the Oath Video as Featuring a "QAnon Slogan" .......... 11

    I.    Jack Continues to Promote QAnon................................................. 12

    J.    Leslie Promotes QAnon ................................................................ 13

    K.    Jack and Leslie Host Veronica Wolski ........................................... 13

    L.    CNN's Newsgathering for the Report At Issue ................................ 14

    M.    CNN's Preparation of the Report At Issue ...................................... 15

    N.    The Report ................................................................................. 16

    O.    Procedural History ...................................................................... 18

ARGUMENT .............................................................................................. 19

I.    LESLIE'S CLAIM FAILS BECAUSE THE LAW OF FLORIDA DOES NOT RECOGNIZE FALSE LIGHT................................................................. 19

II.    THE FALSE LIGHT CLAIM FAILS............................................................ 20

    A.    The Report Did Not Publish Any False Facts Implying a Non-Existent Objectionable Association ............................................................. 21

B.      To the Extent the Report Publishes Any Objectionable Association, Plaintiffs Cannot Establish that Association is Materially False ......................................... 27

C.      PLAINTIFFS CANNOT PROVE THAT CNN ACTED WITH ACTUAL MALICE ............................................................................................................ 32

    1.      Jack and Leslie Must Show That CNN Acted With Actual Malice ........ 32

    2.      CNN Did Not Act With Actual Malice .................................................... 33

III.    THE FLYNNS CANNOT PROVE THAT THEIR ALLEGED EMOTIONAL HARM OR MENTAL ANGUISH WAS CAUSED BY THE CNN REPORT ............... 37

CONCLUSION ........................................................................................................... 39

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adelson v. Harris,*
  973 F. Supp. 2d 467 (S.D.N.Y. 2013)........................................................................20

*Adler v. Conde Nast Publ'ns, Inc.,*
  643 F. Supp. 1558 (S.D.N.Y. 1986)..........................................................................34

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986)..................................................................................................33

*Biro v. Conde Nast,*
  807 F.3d 541 (2d Cir. 2015)......................................................................................33

*Brimelow v. New York Times Co.,*
  2020 WL 7405261 (S.D.N.Y. Dec. 16, 2020), *aff'd*, 2021 WL 4901969 (2d Cir. Oct.
  21, 2021) ..................................................................................................................34

*Cantrell v. Forest City Pub. Co.,*
  419 U.S. 245 (1974)..................................................................................................32

*Catalanello v. Kramer,*
  18 F. Supp. 3d 504 (S.D.N.Y. 2014).................................................................19, 20

*Celle v. Filipino Reporter Enters. Inc.,*
  209 F.3d 163 (2d Cir. 2000)......................................................................................30

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986)..................................................................................................19

*Church of Scientology Int'l v. Behar,*
  238 F.3d 168 (2d Cir. 2001)......................................................................................34

*Crall v. Gannett Satellite Info. Network, Inc.,*
  1992 WL 400713 (S.D. Ohio Nov. 6, 1992)............................................................26

*Doe v. Kaiser,*
  2007 WL 2027824 (N.D.N.Y. July 9, 2007) ...........................................................37

*Dongguk Univ. v. Yale Univ.,*
  734 F.3d 113 (2d Cir. 2013)......................................................................................34

*Dukes v. N.Y. City Emples. Ret. Sys.,*
  581 F. App'x 81 (2d Cir. 2014).................................................................................20

*Dunlop–McCullen v. Rogers*,
2002 WL 1205029 (S.D.N.Y. Feb. 21, 2002) ........................................................................33

*Faloona by Fredrickson v. Hustler Magazine, Inc.*
799 F.2d 1000 (5th Cir. 1986), *rehearing denied* 802 F.2d 455 (1986) .....................24, 25, 26

*Flynn v. Cable News Network, Inc.*,
2023 WL 5985196 (M.D. Fla. Mar. 17, 2023) .......................................................................35

*Fudge v. Penthouse Int'l Ltd.*,
1987 U.S. Dist. LEXIS 5468 (D.R.I. June 4, 1987), *aff'd* 840 F.2d 1012 (1st Cir.
1988) ...................................................................................................................21, 25, 26, 37

*Garrison v. State of La.*,
379 U.S. 64 (1964).................................................................................................................34

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974)...............................................................................................................35

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
491 U.S. 657 (1989)..........................................................................................................33, 34

*Henry v. Fox News Network LLC*,
629 F. Supp. 3d 136 (S.D.N.Y. 2022)....................................................................................35

*Home Show Tours, Inc. v. Quad City Virtual, Inc.*,
827 F. Supp. 2d 924 (S.D. Iowa 2011) ..................................................................................38

*Kesner v. Dow Jones & Co.*,
515 F. Supp. 3d 149 (S.D.N.Y. 2021).....................................................................................19

*Kish v. Iowa Cent. Cmty. College*,
142 F. Supp. 2d 1084 (N.D. Iowa 2001)............................................................................22, 37

*Landino v. Mass. Tchrs. Ass'n*,
621 F. Supp. 3d 185 (D. Mass. 2022) ....................................................................................35

*Leidig v. BuzzFeed, Inc.*,
371 F. Supp. 3d 134 (S.D.N.Y. 2019).....................................................................................35

*Lluberes v. Uncommon Prods., Inc.*,
663 F.3d 6 (1st Cir. 2011)......................................................................................................33

*Lue v. JPMorgan Chase & Co.*,
2021 WL 1108558 (S.D.N.Y. Mar. 23, 2021) ........................................................................35

*Masson v. New Yorker Magazine, Inc.*,
501 U.S. 496 (1991)...............................................................................................................28

*Miller v. News Syndicate Co.*,
    445 F.2d 356 (2d Cir.1971).................................................................................34

*Mitchell v. Random House, Inc.*,
    703 F. Supp. 1250 (S.D. Miss. 1988).................................................................24

*Palin v. New York Times Co.*,
    482 F. Supp. 3d 208 (S.D.N.Y. 2020), *modified*, 510 F. Supp. 3d 21 (S.D.N.Y. 2020) .........22

*Pan Am Sys., Inc. v. Atl. Ne. Rails & Ports, Inc.*,
    804 F.3d 59 (1st Cir. 2015)................................................................................28

*Patrick v. Daily Beast Co.*,
    2023 WL 3627836 (E.D. Pa. May 24, 2023) ......................................................31

*Philadelphia Newspapers, Inc. v. Hepps*,
    475 U.S. 767 (1986)...................................................................................22, 28

*Raymen v. United Senior Ass'n, Inc.*,
    409 F. Supp. 2d 15 (D.D.C. 2006) ...................................................................27

*Rosanova v. Playboy Enterprises, Inc.*,
    580 F.2d 859 (5th Cir. 1978) ......................................................................33, 34

*Sankey v. UTGR, Inc.*,
    565 F. Supp. 3d 319 (D.R.I. 2021)....................................................21, 22, 23, 24

*Snyder v. Phelps*,
    562 U.S. 443 (2011)..........................................................................................32

*Socialist Workers Party v. Attorney Gen. of United States*,
    642 F. Supp. 1357 (S.D.N.Y. 1986)..................................................................37

*St. Amant v. Thompson*,
    390 U.S. 727 (1968)..........................................................................................34

*Time, Inc. v. Hill*,
    385 U.S. 374 (1967)...................................................................................21, 32

*U.S. v. Languerand*,
    2021 WL 3674731 (D.D.C. Aug. 19, 2021) .........................................................6

*Valentine v. C.B.S.*,
    698 F.2d 430 (11th Cir. 1983) ..........................................................................35

*Watkins v. Wash. Post*,
    2018 WL 805394 (D. Md. Feb. 9, 2018) ............................................................35

*Wells v. Liddy*,
    186 F.3d 505 (4th Cir. 1999) ........................................................................33

*Zoll v. Jordache Enters.*,
    2001 U.S. Dist. LEXIS 19983 (S.D.N.Y. Dec. 5, 2001) .........................................19

**State Cases**

*Alves v. Hometown Newspapers, Inc.*,
    857 A.2d (R.I. 2004) ........................................................................21, 22, 27

*Branham v. Celadon Trucking Servs., Inc.*,
    744 N.E.2d 514 (Ind. Ct. App. 2001) ................................................................23

*Capuano v. Outlet Co.*,
    579 A.2d 469 (R.I. 1990) ................................................................................33

*Carson v. Palombo*,
    18 N.E.3d 1036 (Ind. Ct. App. 2014) ...........................................................28, 30

*Clements v. WHDH-TV, Inc.*,
    1998 WL 596759 (R.I. Super. Aug. 27, 1998) ......................................................28

*DeCarvalho v. daSilva*,
    414 A.2d 806 (R.I. 1980) ................................................................................33

*Gross v. Pare*,
    185 A.3d 1242 (R.I. 2018) ..............................................................................24

*Hall v. Rogers*,
    490 A.2d 502 (R.I. 1985) ................................................................................34

*Henry v. Media Gen. Operations, Inc.*,
    254 A.3d 822 (R.I. 2021) ................................................................................34

*Jews for Jesus, Inc. v. Rapp.*,
    997 So. 2d 1098 (2008) ..................................................................................20

*Schifano v. Greene Cty. Greyhound Park, Inc.*,
    624 So.2d 178 (Ala. 1993) ..............................................................................23

*Swerdlick* v. Koch,
    721 A.2d, 849 (R.I. 1998) .......................................................................... *passim*

**State Statutes**

R.I. Gen. Laws § 9-1-28.1(a)(4) ............................................................................20

R.I. Gen. L. § 9-1-28.1(a)(4)(i)(A)(B) ....................................................................22

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................19

Local Rule 56.1 ...........................................................................................3, 12

**Constitutional Provisions**

United States Constitution ...................................................................................2

United States Constitution, First Amendment ......................................................30, 35

**Other Authorities**

Restatement (Second) of Torts, § 652E ............................................................20, 21, 32

Restatement (Second) of Torts § 652H(a) (1977)...............................................37

Restatement (Second) of Torts § 652H(b) .........................................................38

## PRELIMINARY STATEMENT

This lawsuit concerns a CNN news report first aired on February 4, 2021 ("the Report"), which Plaintiffs Jack Flynn ("Jack") and Leslie Flynn ("Leslie") claim places them in a false light by falsely associating them with the right-wing conspiracy movement QAnon. Yet Jack and Leslie's own voluntary and repeated public actions have placed them in the *very same* light as the Report. As just one example, in September 2020, a third party publicly posted a picture on Twitter of Jack Flynn (on the right) smiling while holding a sticker that says, "Q SENT ME," an unambiguous reference to the movement's central anonymous online poster calling himself "Q." His brother, retired Lieutenant General Michael Flynn ("Gen. Flynn") is on the left, and his friend is in the middle holding a sticker that reads "CNN SUCKS":



As telling as this picture is, it represents just one moment in a much longer story. As the undisputed record establishes, Jack and his wife Leslie repeatedly and of their own accord associated themselves with QAnon over the course of several years prior to the Report. For this, and many other reasons, their false light claim fails and their lawsuit must be dismissed.

Indeed, beginning in 2018, Jack began publicly associating himself with QAnon by posting QAnon-affiliated hashtags on Twitter in order to fundraise for Gen. Flynn's Legal Defense Fund.

Two years later, Jack and Leslie stepped even further into QAnon's orbit.

On June 24, 2020, Q directed its followers to "take the oath"—that is, to recite the oath of office federal officials take to defend the United States Constitution, followed by the phrase "Where We Go One, We Go All" ("WWG1WGA" or "QAnon Slogan"), a phrase that by then had gained popularity among Q and its followers. Hours later, Twitter users began posting videos of themselves taking the oath and reciting the QAnon Slogan along with the hashtag #TakeTheOath, a direct reference to Q's instructions. A viral #TakeTheOath movement followed.

Within days, Jack joined the chorus of QAnon followers publicly promoting Q's #TakeTheOath challenge, by retweeting numerous posts (often accompanied by Q-related hashtags) showing individuals participating in the #TakeTheOath movement. ███████████
████████████████████████████████████████████
████████████████

Jack and Leslie took the oath in a video that Gen. Flynn first posted and Jack later shared (twice) with his over 100,000 Twitter followers ("Oath Video"):



As the Flynns planned, the Oath Video immediately went viral. The Q community celebrated Gen. Flynn and his family's participation in #TakeTheOath, not least because many QAnon followers considered Gen. Flynn to be a hero. The press covered the #TakeTheOath movement extensively,

and particularly the movement's clear connection to Q or QAnon. Neither Jack nor Leslie took action at the time to refute the connection to QAnon. To the contrary, they left the Oath Video publicly available, and Jack even asked his brother to "repost the oath we took on the 4th." First Amended Complaint ("FAC"), Dkt. 7 ¶ 23a; Defendants' Local Rule 56.1 Statement of Undisputed Material Facts ("SUMF") ¶¶ 51-52, 54. In short, as a result of *their own actions*, both QAnon followers and the wider public associated Jack and Leslie ever more closely with QAnon—precisely the supposed "false light" about which they now complain.

Seven months later on February 4, 2021, CNN published the Report, which focused on a QAnon gathering, "Q Con Live!," in October 2020. During the Report, CNN displayed a banner across the bottom of the screen that read "CNN Goes Inside a Gathering of QAnon Followers" (the "Chyron"), which referenced the Q Con Live! conference that is the focus of the Report. As part of the Report, CNN journalist Donie O'Sullivan discussed former President Donald Trump's refusal to disavow QAnon and Gen. Flynn's public promotion of the QAnon Slogan "Where We Go One, We Go All" in the Oath Video. As a visual to support this statement, the Report includes an approximately two-second clip from the Oath Video. The clip shows Gen. Flynn standing next to Jack, Leslie, and his other family members with their right hands raised as he (and he alone) says, "Where We Go One, We Go All." The Report is not about Jack and Leslie, who are silent and unnamed in the clip. The only way a CNN viewer would know that Jack and Leslie said the words "Where We Go One, We Go All" is if they saw the Oath Video Jack himself shared online.

Nonetheless, despite willingly associating themselves with the movement in the past, Jack and Leslie have now sued CNN for $100 million because they complain that the Report casts them in a false light by purportedly associating them with QAnon, an association they claim is false and objectionable now that the need to fundraise for Gen. Flynn has abated.

To be sure, the Report, which Leslie admits she has never seen, makes no such false, objectionable association, and this alone dooms their claim. There is nothing false or objectionable about Jack or Leslie in the Report at all; in fact, they are not even mentioned by name and are barely visible. But even if Jack and Leslie's strained reading of the Report *were* correct and it did associate them with QAnon, summary judgment should still be granted, because CNN portrayed them in the *exact same way* they chose to portray themselves in public for years in order to raise money for Gen. Flynn's Legal Defense Fund. Those facts cannot support a finding of false light.

Summary judgment is also appropriate for several other reasons. The Report was not published with actual malice (or, in fact, any level of fault). And discovery has shown that any damage Jack and Leslie have allegedly suffered was not caused by the Report but, rather, by their family's association with Gen. Flynn and their own actions. CNN is, therefore, entitled to judgment as a matter of law.

## STATEMENT OF FACTS

### A.   The Parties

At the time of filing the First Amended Complaint, Jack was a citizen of Rhode Island. FAC ¶ 8. Since September 2021, Jack has resided in Florida full-time. SUMF ¶ 1. Leslie alleged in the FAC that she was a citizen of Rhode Island, FAC ¶ 8, ███████████████████ █████████████████████████████████ SUMF ¶ 2. Long before the Report aired, Jack and Leslie's connections to Gen. Flynn alienated them from their community. ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████ *Id.* ¶ 16.

4

CNN owns and operates numerous news platforms and services, including the television network known as CNN and the website www.cnn.com. Declaration of Katherine M. Bolger ("Bolger Decl.") ¶ 1.

**B.     The QAnon Conspiracy Generally**

"QAnon" is an American conspiracy movement that began in 2017. It centers on fabricated claims that a high-ranking government official called "Q Clearance Patriot" or "Q" is leaking top secret information about a Deep State cabal on online forums. Q's posts, called "Q Drops," of which there have been just shy of 5,000, claim that Trump was the only one who could save America. SUMF ¶ 4.

Members of the QAnon movement have a range of beliefs. *Id.* ¶ 5. In fact, Q encouraged his followers to "do their own research" and to use memes (a graphic or image often accompanied by text that is shared online) to spread the word about Q Drops. *Id.* For this reason, posting on social media is central to the QAnon movement, and posting about Q by social media influencers greatly increased the movement's reach. *Id.*

For example, at a QAnon convention in October 2020, a prominent QAnon supporter, Dave Hayes (known as Praying Medic), stated that social media is "where the war is." *Id.* ¶ 6. He emphasized the importance of hashtags to "get a post going, a viral hashtag, you can co-opt the hashtag." *Id.* Another QAnon supporter said, Q "tells us to stay there [on social media], tells us to stay on Twitter, . . . to fight on those platforms." *Id.*

Q also instructed its followers on October 17, 2020, to deny they are QAnon followers, specifically instructing them to claim there is Q, there are Anons, but there is no QAnon. *Id.* ¶ 7. Q also uses language that unites its followers, including catchphrases, such as the "Storm" and the "Great Awakening." *Id.* ¶ 8. Among them is the phrase "Digital Soldiers," which was coined by Gen. Flynn in November 2016 to describe those who post content online, including "memes" "to

get the truth out from . . . censorship[.]" *Id.*

**C.     "Where We Go One, We Go All" is a QAnon Slogan**

No phrase is more associated with QAnon than the QAnon Slogan "Where We Go One, We Go All" and its abbreviation "WWG1WGA." *Id.* ¶¶ 9-12; *U.S. v. Languerand*, 2021 WL 3674731, at *3 (D.D.C. Aug. 19, 2021) ("Where We Go One, We Go All" is "a slogan used by adherents of the QAnon conspiracy theory."). Sharing the phrase, even once, has led to political candidates being labeled as "QAnon believers" or "supporters" both in the mainstream media and by Jack and Leslie's own purported expert. SUMF ¶ 12.

The origin of the phrase WWG1WGA is enmeshed in QAnon lore. It was first used in Q Drop #513, on January 8, 2018. *Id.* ¶ 10. Many QAnon supporters wrongly believe the phrase comes from an engraved bell on President John F. Kennedy's sailboat. It does not. It comes from the 1996 film *White Squall. Id.* The picture of the engraved bell that many QAnon followers claim is from Kennedy's boat is a still photo from that movie, which Q published in Q Drop #3924. *Id.* Jack endorsed this QAnon myth on July 8, 2020, calling for anyone on Twitter with "a photo of Kennedy's Brass Deck Bell" with the phrase to post it. *Id.* ¶ 54; FAC ¶ 23a.

Q has used either "Where We Go One, We Go All" or "WWG1WGA" in 201 posts. SUMF ¶ 11. And it was used extensively by QAnon followers on social media, often with other hashtags like #QAnon. *Id.* In fact, the use of social media by the QAnon movement using #WWG1WGA to spread disinformation was so widespread that following the January 6 Capitol attack, Twitter banned users (including Gen. Flynn ████) who used QAnon-associated phrases. *Id.* The phrase also appeared on clothing, hats, flags, and other merchandise. *Id.*

Despite alleging that "Where We Go One, We Go All" is "a simple, family, July 4 statement of support for each other," FAC ¶ 4 n.1, ████████████████ ████████████████████████████████████████████████ SUMF ¶ 13.

**D.      Gen. Flynn and His Family Exploited His Connections to QAnon**

Gen. Flynn is one of the most high-profile and influential figures in the QAnon movement, second only to Trump. *Id.* ¶ 14. Gen. Flynn's prosecution for lying to the FBI galvanized support from QAnon followers, ███████████████████████████████████████████ *Id.* ¶ 15. Q referenced Gen. Flynn in scores of Q Drops, and members of the Q movement show their support for Gen. Flynn by adding three stars to their Twitter handle (meant to signify his rank as a three-star general); creating, sharing, and liking memes featuring him; and using hashtags like #ClearFlynnNow and #IStandWithFlynn, in conjunction with #WWG1WGA and #QAnon. *Id.* Jack and Leslie did these things too. *Id.* ¶¶ 24-26, 67, 75. Because of the frequency of the Gen. Flynn references in Q Drops and the fervency of support for Gen. Flynn among Q's followers, many suspected Gen. Flynn was himself Q. *Id.* ¶ 17.

**E.      Jack Promoted QAnon To Benefit The Gen. Flynn Legal Defense Fund**



████████████████████████████████████████████████████
████████████████████████████████ *Id.* ¶ 18. ████████████
████████████████████████ *Id.* ¶ 19. And as early as 2018 and well before July 4, 2020, Jack began retweeting "Where We Go One, We Go All" and WWG1WGA along with other QAnon-associated terms ████████████████████████████████████████ *Id.* ¶¶ 20-21. ████████████████████████████████████ *Id.* ¶¶ 21-22. ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████ *Id.* ¶ 23.

As a result, throughout 2018 to 2020, Jack used the "#WWG1WGA" hashtag ███████ ████████████████████████████████████ *Id.* ¶ 24. As just one example, in October 2018 he retweeted "#WWG1W[G]A," "#AllInForGenFlynnFriday" and a

link to the Legal Defense Fund's website. Other examples are listed at SUMF ¶ 24. ████

██████████████████████████████████████████████████████████

*Id.* ¶ 25.

Jack also shared or retweeted QAnon-related content that generally promoted Gen. Flynn. For example, in September 2019, Jack retweeted a Twitter user who quoted from a Q Drop "libel laws end of MSM [Mainstream Media]" and screenshots of several different Q Drops along with the hashtag "#QAnon." *Id.* ¶ 26. In July 2020, Jack retweeted a meme containing a photograph of Gen. Flynn, the text "Where We Go One, We Go All," and quoting from two Q Drops referencing Gen. Flynn. *Id.* ¶ 27. Leslie Flynn also liked a Twitter user's post that included an image of Gen. Flynn along with "Hurricane Michael Flynn," "#WWG1WGA," and "Q." *Id.* ¶ 68.

## F.    The #TakeTheOath Movement

On June 24, 2020, 20 minutes after the D.C. Circuit Court of Appeals (temporarily) ordered Judge Sullivan to dismiss the charges against Gen. Flynn, Q posted "The People's General. Soon" followed by three stars. *Id.* ¶ 28. Two hours later, Q posted Drop #4510, *id.*:



QAnon followers then began filming themselves reciting the oath and posting the video along with #TakeTheOath, #QAnon, and #Qdrop. *Id.* ¶ 29. On June 25, 2020, there were 76,600 tweets with #TakeTheOath, many of which included QAnon iconography, used #WWG1WGA, and showed

the speaker with Q shirts or flags when they took the oath. *Id.* On June 27, 2020, Gen. Flynn changed the text of his Twitter profile to include #TakeTheOath, along with a U.S. flag emoji. *Id.* ¶ 30.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ a tweet by a user with the name "BrittanyWWG1WGA", using the hashtags #TakeTheOath, #qanon, #wwg1wga, before concluding with "God bless the United States of America." *Id.* ¶ 31. ██████████████████

████████████████████████████████████████████████████ a different tweet with the hashtags #TakeTheOath and #WWG1WGA and the phrase "God Bless America." *Id.* ¶ 32. ██████████████████████████████████████████ *Id.*

## G.     The Flynns #TakeTheOath

████████████████████████████████████████████████████████████

████████████████████ *Id.* ¶ 33. In fact, on July 1, 2020, Jack retweeted a tweet by his sister, Barbara, which said, "So Proud To #TakeTheOath To Defend Our Constitution!" and "Digital Soldiers On The Move! #WWG1WGA God Bless America!" alongside a video of herself participating in #TakeTheOath, and tagging Jack, Gen. Flynn, Lori, Sidney Powell ("Powell"), and Trump, among others. *Id.* ¶ 34. Jack also retweeted a #TakeTheOath tweet and video posted by another user. *Id.* ¶ 35.

The Flynn family—including Gen. Flynn, Jack, Leslie, Lori, Joe (Gen. Flynn and Jack's brother), and Valerie (Joe's wife)—decided to join the #TakeTheOath movement on the Fourth of July, 2020. ██████████████████████████████████████████████

██████████████████████████████████████████ *Id.* ¶ 36.

████████████████████████████████████████████ not only were Jack and Leslie

aware of the #TakeTheOath movement, *see id.* ¶¶ 34, 37, ████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████ *Id.* ¶ 37. The only other people present were

Powell and her son, Wilson. *Id.* Once the Flynns lined up, Wilson filmed Jack, Leslie, and their

family raising their right hands and reciting the federal oath of office and adding "Where We Go

One, We Go All" at the end, just like the Q Drop instructed. *Id.* █████████████████

██████████████████████████████ *Id.* The Flynns also added the words "God

Bless America," as did other QAnon followers who included those words in their #TakeTheOath

Twitter posts, like Barbara, @WgaBrittany, and @CourtSalinas, ██████████████████

████████████████ *Id.* ¶¶ 32, 34, 37. The Flynns then filmed the Oath Video twice because

"someone said they could resay it better." *Id.* ¶ 38.

Just as planned, Gen. Flynn published the Oath Video on Twitter ████████████████

████ *Id.* ¶ 39. ████████████████████████████████████████████

████████████████████████████████████████████████████████████

*Id.* ¶¶ 40-41. ████████████████████████████████████████████

███████████████████████████████ *Id.* ¶ 41 ██

████████████████████████████████████████████████████████████

████████████████ *Id.* ████████████████████████████████████████

████████████████████████ *Id.* ████████████████████████████████

████████████████████ *Id.*

And ride it did. It has been viewed more than 2.4 million times, retweeted 18.9 thousand

times, and liked 56.5 thousand times. *Id.* ¶ 42. Jack quote tweeted General Flynn's tweet to his

approximately 108,000 followers and added the words "WWG1WGA." *Id.* Jack also retweeted

Gen. Flynn's tweet. *Id.* Between July 4 and July 5, 2020, Jack continued to retweet strangers' #TakeTheOath posts on Twitter, some with the hashtag "#WWG1WGA"; ███████████████ ████████████████████████████████████████████ *Id.* ¶ 44. Similarly, Jack retweeted a Twitter user who commented that "Taking the oath standing with @GenFlynn, [Leslie's] dress [which had pro-Trump slogans] did steal the limelight" along with "#WWG1WGA." *Id.* The Flynns even fundraised for the Legal Defense Fund off the Oath Video. *Id.* ¶ 43.

For those within the QAnon movement, Gen. Flynn, Jack, Leslie, and their family's participation in #TakeTheOath was seen as public validation of QAnon, particularly because it was "close in time to this Q Drop." *Id.* ¶ 47.

## H.   Media Report the Oath Video as Featuring a "QAnon Slogan"

The Oath Video set off a media firestorm. Media entities across the political spectrum reported that the Flynns took a "QAnon oath" and described WWG1WGA as a "QAnon slogan." *Id.* ¶ 49. In total, at least 45 news articles and countless social media posts, many of which were accompanied by stills of the Oath Video, referenced Gen. Flynn taking the QAnon Oath. *Id.* Even Jack and Leslie's purported expert wrote, "Gen. Flynn himself pledged allegiance to QAnon on July 4, 2020, in which he added the phrase to the standard oath of office 'Where we go one we go all.' Flynn then posted the video to Facebook, Twitter, and other platforms ensuring that his oath of allegiance went viral." *Id.*



*Id.* ¶ 51.

*Id.* But no member of the Flynn family removed the video from Twitter. ███████████ ██████████████ *Id.*

On the contrary, Jack defended his decision to say and post the oath, posting a Twitter

thread asking his brother to repost it and repeating the QAnon myth about the Kennedy Bell. *Id.* ¶ 54; FAC ¶ 23a.

The Oath Video remained on Twitter until January 8, 2021, when Gen. Flynn's Twitter account was suspended because it was among those "primarily dedicated to sharing QAnon content." SUMF ¶ 52. ██████████████████████████████████████████████████████ *Id.* When Gen. Flynn's account was reinstated on January 6, 2023, the Oath Video remained. *Id.* It is available for viewing to this day. *Id.*

## I.      Jack Continues to Promote QAnon

Even after the widespread media coverage associating the Oath Video with QAnon, ████ ████████████████████████████████████████████████ Jack retweeted a post containing a photo prominently featuring the letter "Q" along with the hashtag "#WWG1WGA." *Id.* ¶ 53. And Jack's posts only increased after August 19, 2020, when Trump praised QAnon supporters by saying, "I heard that these are people that love our country" and that they "like me very much." *Id.* ¶ 58. Among scores of posts by Jack, which are referenced in paragraphs 53-63 of the Rule 56.1 statement, there are:

- An August 20, 2020, tweet: "There is nothing wrong with QAnon. Just People doing their own research and learning independence of thought to find the truth. If it triggers the daylights out of fools like yourself all the better . . . Don't you get it?? It's so simple ~Yet complex. Like a meritage wine." *Id.* ¶ 56.

- An August 21, 2020, tweet explicitly linking QAnon and the #WWG1WGA slogan: "I don't know who or what Q is so there's that. But no ones hurting each other it's civilized encouraging people to learn independently supports trump and the constitution. So. WTF. #WWG1WGA." *Id.* ¶ 59.

- An August 21, 2020, retweet that "Qanon is not violent or conspiracy. We are every day people seeking truth . . ." and urging "QAnons [to] share and tell your story." *Id.* ¶ 60.

- On or around August 21, 2020, a retweet containing: a "breakdown" of "QAnon vs. Antifa" that compared the "mission," "weapons," "tactics," and "beliefs" of each movement, demonstrating the unique centrality of social media to QAnon. *Id.* ¶ 61. Under QAnon, the "weapons" listed include "memes"; the "tactics" include "social media info dissemination"; and the "beliefs" include "WWG1WGA (Unity)" and "[t]he media is corrupt." *Id.*

- An August 22, 2020, quote tweet of a post containing: a meme with a U.S. flag, a giant black "Q," and the phrase "Where We Go One We Go All" along with "We are with you Jack!" *Id.* ¶ 63. Jack added, "If this means you believe in the constitution and equal justice under the law then this works for me." *Id.*

**J.     Leslie Promotes QAnon**

Leslie also engaged with QAnon content on social media, including "liking" several tweets,

 *Id.* ¶ 67. ████████████████████

████████████████ she:

- liked tweets using #WWG1WGA and # Q; posting "You've been Q'd for this one" along with the hashtags #WWG1WGA, #WWG1WGAWorldwide, #TheGreatAwakening, and #Q;

- posted "You have been Q'd. Change we can believe in. Q." and the hashtags #WWG1WGA, #TheGreatAwakening, #QAnon, #WWG1WGAWORLDWIDE; and

- liked tweets containing "TAKE THE OATH Gen. Flynn" and the hashtag #WWG1WGA.

*Id.*

**K.     Jack and Leslie Host Veronica Wolski**



████ *Id.* ¶ 69. ████████████████████████ *Id.*

████████████████████████████ *Id.* ¶ 70. While Wolski was visiting,

Jack took the photo on page one of this memo and Jack and Leslie posed for other pictures with

Wolski while she wore clothes emblazoned with "Q." *Id.*



████████████████ he nonetheless retweeted her posts on Twitter wearing a "Q" hat

and discussing her visit with the Flynns. *Id.* ¶ 71. ████████████████

████████████████████ *Id.*

In September 2020, Jack received correspondence asking if he was a QAnon believer. *Id.*

¶ 73. On September 10, 2020, Jack received an email from a "General Flynn supporter" who reached out to him online asking, "So you and the whole family believe in Q anon?" and stating that Joe Flynn "led [her] to believe that Q was okay and it was 'involved.'" *Id.* Jack privately expressed some skepticism in an email about QAnon but acknowledged that he "most certainly ask[s] about it and get[s] a reaction from others," and that he had been "digging into it because so many people follow [us] that are 'Q's.'" *Id.* Although privately acknowledging in "a personal email" that Q's "existence and foundation is hog wash," ██████████████████████████

██████████████████ *Id.*

Instead, despite any purported internal qualms, Jack continued to publicly tweet favorably about QAnon to promote the Legal Defense Fund. *Id.* ¶ 74. For example, on October 23, 2020, while the Legal Defense Fund link remained in his bio and his pinned tweet, Jack retweeted a post from a user with display name "w.w.g.1.w.g.a" tagging Jack and Gen. Flynn and containing a screenshot of Q Drop #1440. *Id.* And, in December 2020, Jack retweeted a post promoting clothing sales with the QAnon Slogan "WWG1WGA" and the phrase #FightLikeAFlynn that "benefits the [Legal] Defense Fund" on a website called The Shirt Show. *Id.* ¶ 75. ██████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████ *Id.* ¶¶ 75-76. The connection between this QAnon merchandise and the Legal Defense Fund was widely reported on prior to the Report, including by Jack and Leslie's purported expert. *Id.* ¶ 76.

## L.    CNN's Newsgathering for the Report At Issue

The connections between the Flynn family and QAnon were known to CNN journalist Donie O'Sullivan before he created the Report at issue. O'Sullivan has followed QAnon for several years, publishing numerous articles and television packages on the movement. *Id.* ¶ 77. O'Sullivan was also aware of Q Drop #4510, the #TakeTheOath movement, the Oath Video, and CNN's and

other outlets' prior reporting on the Flynns' Oath Video. *Id.*

On October 17, 2020, O'Sullivan attended a QAnon convention called Q Con Live! in Scottsdale, Arizona. *Id.* ¶ 78. While there, O'Sullivan saw and heard repeated exclamations of "Where We Go One, We Go All"; saw the Q Con Live! attendees' positive response to Trump's refusal to disavow QAnon at the NBC town hall; observed the importance of social media to QAnon; and witnessed Q Con Live! speakers' favorable references to Gen. Flynn. *Id.*

## M.    CNN's Preparation of the Report At Issue

Following O'Sullivan's reporting for CNN on the Capitol riot, he realized that some of the individuals who had attended Q Con Live! also participated in the riot. *Id.* ¶ 79. A few weeks later, in early February 2021, O'Sullivan pitched a television news package to CNN's nightly news show, CNN Tonight. In the reporting, O'Sullivan hoped to use his reporting from Q Con Live! and shed new light on the relationship between QAnon and Trump and his enablers. *Id.*

After CNN Tonight accepted the pitch, O'Sullivan began writing the script and determining which elements, such as video, would be featured. *Id.* ¶ 80. By the morning of February 4, 2021, O'Sullivan had prepared a draft script that included a two-second clip from the Oath Video showing Gen. Flynn reciting the words, "Where We Go One, We Go All." *Id.* The editor assigned to the Report cut those clips based on O'Sullivan's script. *Id.*

O'Sullivan chose to include the Oath Video clip because it was newsworthy that a mainstream political figure like Gen. Flynn had promoted the same "Where We Go One, We Go All" slogan used at Q Con Live!. *Id.* ¶ 81. O'Sullivan sent the final script for review to, among others, Fuzz Hogan at the Row, CNN's editorial oversight department, and Emma Lacey-Bordeaux at Standards and Practices, CNN's department dedicated to ensuring content is consistent with ethical and professional standards. *Id.* ¶ 82. The script was approved by Hogan, who confirmed the Report was factually accurate, and Lacey-Bordeaux. *Id.* Neither Hogan nor Lacey-Bordeaux

flagged the portion of the Report in which the Oath Video appeared as problematic, and they believed the Report to be fair and accurate. *Id*. O'Sullivan supervised the physical assembly of the Report, and saw and approved the complete Report prior to airing. *Id.*

After the Report's script was finalized, the Chyron, or a banner that appears on the lower third of the screen, reading "CNN Goes Inside a Gathering of QAnon Followers," was added soon before the Report aired. *Id.* ¶ 83. O'Sullivan did not create the Chyron, but as a matter of standard practice, the CNN show airing the news package would have prepared the Chyron, and CNN often runs chyrons during the entirety of news reports. *Id.* Here, the Chyron's words were the exact same as those in the Report. *Id.* Pulling the text of the Chyron from the script of the news package is one of the common ways that chyrons are created. *Id.* O'Sullivan, Lacey-Bordeaux, and Hogan have since reviewed the Chyron, and they believe that it fairly and accurately reflects the Report because of the Report's overall focus on Q Con Live!, and that it does not call Jack or Leslie QAnon followers. *Id.*

O'Sullivan, Lacey-Bordeaux, and Hogan believed at the time it was published, and believe now, that the Report was fair and accurate. *Id.* ¶ 84. They believe that the Report did not depart from the Row's editorial standards, CNN's ethical and professional standards and practices, or the standards of care associated with responsible journalism. *Id.*

The Report aired for the first time on CNN Tonight at 10:45 PM ET on February 4, 2021, and later aired four other times: a CNN Tonight replay at 2:48 AM on February 5, 2021; on CNN Newsroom at 3:49 PM on February 5, 2021; on New Day Saturday at 7:33 AM on February 6, 2021; and on CNN Newsroom at 3:30 PM on February 6, 2021. *Id.* ¶ 85.

### N.   The Report

The Report, which is approximately three minutes and 50 seconds, is largely composed of footage of O'Sullivan's attendance at Q Con Live!. *Id.* ¶ 86. The Chyron remains at the bottom of

the screen during the entirety of the Report, including O'Sullivan's interview with Don Lemon on air after the Report concludes. *Id.* The Report opens with several statements at Q Con Live! criticizing the mainstream media, before flashing to footage of O'Sullivan wearing a mask at Q Con Live!. *Id.* Within the first 20 seconds of the Report, O'Sullivan explains that the footage was from "this gathering of QAnon followers in Arizona just two weeks before November's election." *Id.* The Report then shows the QAnon Shaman at Q Con Live! followed by an image of him at the January 6 attack. *Id.* Next, the Report features J.T. Wilde playing his song "Where We Go One, We Go All" at Q Con Live!; O'Sullivan then describes that phrase as an "infamous QAnon slogan promoted by Trump's first national security adviser, Michael Flynn" that was also "played as an anthem at this meeting of Trump supporters [Q Con Live!]." *Id.* During O'Sullivan's explanation, the Report shows photos of the phrase in full, abbreviated as "#WWG1WGA," and printed, with the letter "Q," on large flags, followed by a clip of Gen. Flynn with Trump at a campaign rally. *Id.* O'Sullivan's statement is then followed with a two-second clip of the Oath Video, showing Gen. Flynn reciting, "Where We Go One, We Go All." *Id.* Jack and Leslie, who are not named, are also visible in the clip, but are not shown speaking any words. *Id.* The Report does not describe QAnon as a "cult," nor does it mention anything about a high-ranking government insider known as Q exposing a cabal of Satan-worshiping pedophiles which controls the government. *Id.* The Report also shows Q Con Live! attendees cheering Trump's refusal to disavow QAnon during a town hall with journalist Savannah Guthrie. *Id.* ¶ 87. The Report also identified prominent figures in the QAnon movement and closes with O'Sullivan's interview with Travis View, the host of a QAnon podcast, and a final shot of J.T. Wilde singing "Where We Go One, We Go All." *Id.*

███████████████████████████████████████████████████████████ *Id.*

¶ 88. ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ *Id.* In her initial

disclosures, Leslie claimed to have first learned of the Report in March 2021 from her friend,

Maryellen Sullivan Kelly. █████████████████████████████████████████████████

████████████████, although now she admits she has deleted that message. *Id.* ¶ 88 & n.1.

Only after filing this lawsuit did Jack make any attempt to distance himself from QAnon.

████████████████████████████████████████████████████████████████

████████████████████████████████████ *Id.* ¶ 66.

## O.   Procedural History

On March 25, 2021, Jack and Leslie sued CNN in this Court, bringing claims for

defamation *per se* and false light invasion of privacy based on the allegation that the Report falsely

accused them of being a "QAnon follower." *Id.* ¶ 92. On May 7, 2021, Jack and Leslie filed the

FAC, again alleging defamation *per se* and false light invasion of privacy. *Id.* ¶ 93. On June 21,

2021, CNN moved to dismiss the FAC. *Id.* ¶ 94.

On October 22, 2021, Magistrate Judge Cave issued a report and recommendation

("R&R") recommending dismissal with prejudice of Jack and Leslie's defamation *per se* and false

light claims. *Id.* ¶ 95. She did so because "given their own statements sharing and following the

opinions of QAnon," Jack and Leslie cannot "plausibly allege" that the Report "implie[d] an

association which does not exist," and therefore did not adequately plead that claim. *Id.*

On December 16, 2021, this Court issued a memorandum opinion and order adopting the

R&R in part and rejecting it in part. *Id.* ¶ 97. This Court dismissed Jack and Leslie's defamation

*per se* claim but held that their false light claim was adequately pleaded. *Id.*[1]

---

[1] On February 9, 2022, and March 3, 2022, respectively, Valerie Flynn (the wife of Jack's brother
Joe) and Lori Flynn (Gen. Flynn's wife) sued CNN in the Middle District of Florida, bringing
claims for defamation *per se* and defamation-by-implication based on the allegation that the Report
falsely accused them of being "QAnon followers" (the "MDFL Actions"). *Id.* ¶ 100.

On August 12, 2022, this Court granted in part and denied in part CNN's motion for partial reconsideration, holding that at the pleading stage, Jack and Leslie had plausibly alleged falsity for purposes of their false light claim. *Id.* ¶ 101. The Court "[took] no position on whether, at a later stage in the case, a factfinder may discredit" Jack and Leslie's allegations that the Oath Video, and their recitation of the QAnon Slogan, were signs of family unity. *Id.* On reconsideration, the Court also voided the portion of its December 16, 2021, Order holding that Jack and Leslie plausibly alleged CNN's negligence for purposes of their defamation claim. *Id.* Discovery proceeded and this motion follows. *Id.*

## ARGUMENT

Jack and Leslie's claims require the Court to ignore evidence of the obvious in favor of allegations and implications that defy logic. This Court should grant summary judgment because Jack and Leslie have failed to carry their burden to establish each element of their claim. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## I.   LESLIE'S CLAIM FAILS BECAUSE THE LAW OF FLORIDA DOES NOT RECOGNIZE FALSE LIGHT

Leslie's false light claim fails because Florida law applies to her claim, and Florida does not recognize the tort of false light. In tort cases seeking damages for harm to reputation, New York courts apply the substantive law of "the 'jurisdiction [that] has the greatest interest in regulating behavior within its borders'—usually the state where the tort occurred," which is often "as simple as identifying the plaintiff's domicile." *Kesner v. Dow Jones & Co.*, 515 F. Supp. 3d 149, 168 (S.D.N.Y. 2021) (citing *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (1993)); *see also Catalanello v. Kramer*, 18 F. Supp. 3d 504, 512-13 (S.D.N.Y. 2014) (applying the law of plaintiff's domicile to false light and defamation claims because it has "the strongest interest in the outcome of the litigation"); *Zoll v. Jordache Enters.*, 2001 U.S. Dist. LEXIS 19983, at *5

(S.D.N.Y. Dec. 5, 2001). In a multistate false light case, like this one, the "'presumptive' rule [is] that the law of plaintiff's domicile applies," unless some other state has a more significant relationship to the issue or the parties. *Catalanello*, 18 F. Supp. 3d at 512-13; *Adelson v. Harris*, 973 F. Supp. 2d 467, 477 (S.D.N.Y. 2013) (same for defamation cases).

At the motion to dismiss stage, the Court accepted as true Leslie's allegation that she was domiciled in Rhode Island, FAC ¶ 8, and on this basis alone applied Rhode Island law. Discovery has shown this to be false. ███████████████████████ "[T]o determine domicile, courts examine physical presence and intent to remain in that place indefinitely." *Dukes v. N.Y. City Emples. Ret. Sys.*, 581 F. App'x 81, 82 (2d Cir. 2014). ████████████████████████████

████████████████████████████████████████████████ SUMF ¶ 2.

████████████████████████████████████████████████████

████████████████████████████ *Id.* Florida law, therefore, applies to Leslie's claim.

Florida, however, does not recognize the false light tort. *Jews for Jesus, Inc. v. Rapp.*, 997 So. 2d 1098, 1100 (2008). For this reason alone, Leslie's false light claim cannot survive and this Court need not look any further to dismiss it.

## II.   THE FALSE LIGHT CLAIM FAILS

Even if Rhode Island's false light law applied, the claims would still fail. To prevail, Jack and Leslie must show that "[t]here has been some publication of a false or fictitious fact which implies an association which does not exist," and that association must be "objectionable." R.I. Gen. Laws § 9-1-28.1(a)(4). Moreover, the association must be "given unreasonable and *highly objectionable* publicity [and] . . . attribute[] to [them] characteristics, conduct or beliefs that are false, and so [are] placed before the public in a false position." *Swerdlick v. Koch*, 721 A.2d, 849, 861 (R.I. 1998) (emphasis added); *see also* Restatement (Second) of Torts § 652E (1977)

(requiring that the alleged false light be "highly offensive to a reasonable person").[2] That "highly objectionable" association must amount to "'such a *major misrepresentation* of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable [person] in his [or her] position.'" *Alves v. Hometown Newspapers, Inc.,* 857 A.2d, 743, 752 (R.I. 2004) (quoting *Swerdlick*, 721 A.2d at 861-62 and Restatement (Second) of Torts § 652E, cmt. c at 396) (emphasis added).

Jack and Leslie must also show that CNN acted with actual malice, *Time, Inc. v. Hill*, 385 U.S. 374, 388 (1967), and that they were damaged by CNN's publication of the Report. *See Fudge*, 840 F.2d at 1018–19; Restatement (Second) of Torts § 652E, cmt. b (1976). Jack and Leslie cannot do so here.

### A.   The Report Did Not Publish Any False Facts Implying a Non-Existent Objectionable Association

Most fundamentally, ███████████████████████████████████ the Report does not publish a false fact implying a highly objectionable association that does not exist.

At the outset, Jack and Leslie allege that Report placed them in a false light by "associating [them] with QAnon—a domestic violence extremist group." FAC ¶ 96. To the extent Jack and Leslie attempt to claim that the Court's motion to dismiss opinion either established the Report's meaning as a matter of law or defined the claimed false light association was calling them "QAnon followers," those contentions are incorrect. This Court's findings, at the motion to dismiss stage, simply accepted Jack and Leslie's allegations as true, *see* Dkt. 42 at 8 (noting that whether "the

---

[2] In interpreting Rhode Island's false light statute, courts routinely cite to the Restatement for guidance. *See, e.g.*, *Fudge v. Penthouse Int'l Ltd.*, 1987 U.S. Dist. LEXIS 5468 (D.R.I. June 4, 1987), *aff'd* 840 F.2d 1012, 1018 (1st Cir. 1988) (citing *Restatement (Second) of Torts* § 652E, comment e (1976)) and "look for analogies to . . . defamation, for it is widely recognized that claims for defamation and false light have much in common." *Id.*; *see also Restatement (Second) of Torts* § 652E, cmt. b; *Sankey v. UTGR, Inc.*, 565 F. Supp. 3d 319, 323 (D.R.I. 2021).

Flynns were QAnon followers . . . is a highly fact-intensive inquiry"), including several that have now been disproven, such as that the QAnon Slogan was a statement of family unity (it was not, *see* SUMF ¶¶ 13, 44), that #TakeTheOath is not a QAnon-related hashtag (it is, *see id.* ¶¶ 28-32, 34), and that the Report includes footage of Jack and Leslie speaking (it does not, *see id.* ¶ 86). This Court can now revisit all issues in the case with the benefit of full discovery, and the evidence now shows that those allegations are not supported. *Palin v. New York Times Co.*, 482 F. Supp. 3d 208, 215 (S.D.N.Y. 2020), *modified*, 510 F. Supp. 3d 21 (S.D.N.Y. 2020) (prior findings at the motion to dismiss stage do not preclude later findings at summary judgment); *Kish v. Iowa Cent. Cmty. College*, 142 F. Supp. 2d 1084, 1100 (N.D. Iowa 2001) (at summary judgment stage, false light plaintiff "failed . .  to go beyond the pleadings" to create genuine issue of material fact on elements of claim). And as the full undisputed record confirms, the Report did not publish any false fact implying a highly objectionable association as to Jack and Leslie.

*First*, the Report did not publish any false or fictitious facts, which is a prerequisite for a successful false light claim. *Sankey*, 565 F. Supp. 3d at 323 (quoting R.I. Gen. L. § 9-1-28.1(a)(4)(i)(A)(B)); *see also Swerdlick*, 721 A.2d at 861 ("a false-light action requires that a plaintiff be 'given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false'") (quoting Restatement (Second) of Torts § 652E cmt. b at 395); *see generally Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 768-69 (1986) ("where a newspaper publishes speech of public concern, a . . . plaintiff cannot recover damages without also showing that the statements at issue are false."); *Alves*, 857 A.2d at 752 (quoting *Swerdlick*, 721 A.2d at 861-62 and Restatement (Second) of Torts § 652E, cmt. c at 396) (requiring plaintiff to prove a "major misrepresentation").

The only thing the Report *actually* says about Jack and Leslie is taken *directly* from the

Oath Video they filmed, published, and republished themselves. There is no question that is true. The only portion of O'Sullivan's narration in the Report referencing the Oath Video states that Gen. Flynn "promoted" the QAnon Slogan. SUMF ¶ 86. And there is no question that statement is literally true. Gen. Flynn filmed the QAnon Oath and posted it to Twitter as part of #TakeTheOath. And scores of articles—and Jack and Leslie's own purported expert's book— reported on his closeness to QAnon. In fact, he is associated so closely with QAnon that many thought he himself was Q. *See* SUMF ¶¶ 14-17. To the extent that the Report even publishes any fact about Jack and Leslie at all, it shows an undisputedly and literally truthful fact that they stood near Gen. Flynn by the fire outside his home and raised their right hands while Gen. Flynn recited the phrase, "Where We Go One, We Go All." *Id.* ¶ 86. And, finally, to signal to the viewer that the Oath Video is something that CNN did not itself create, the Report has a "font" (or a credit) that appears on the Oath Video clip that says "Twitter/Michael Flynn/July 2020." *Id.*

In this way, this case is just like *Sankey*. There, the plaintiff sued her former employer for, *inter alia*, false light, based on the employer's decision to provide law enforcement with a security video of the plaintiff allegedly putting drugs into her purse. 565 F. Supp. 3d at 322. The plaintiff asserted that the employer's actions constituted the publication of a false fact because the criminal charges against her were ultimately dropped and because an arbitrator found that the video alone did not constitute probable cause for her termination. *Id.* The court disagreed, making clear that there could be "no dispute that [the employer's] decision to provide State Police with the surveillance video was not . . . a false . . . statement," not least because the plaintiff admitted that the video was entirely accurate. *Id.* at 324; *see also Schifano v. Greene Cty. Greyhound Park, Inc.*, 624 So.2d 178, 179-180 (Ala. 1993) (false light claim based on advertisement that included photo of plaintiffs at dog track failed because plaintiffs did, in fact, frequent dog track); *Branham v.*

*Celadon Trucking Servs., Inc.*, 744 N.E.2d 514, 524-25 (Ind. Ct. App. 2001) (granting motion for summary judgment on false light claim based on photo showing defendant posing in sexually suggestive position next to the plaintiff because the photograph was accurate, not false); *Mitchell v. Random House, Inc.*, 703 F. Supp. 1250, 1259 (S.D. Miss. 1988) (false light claim failed where plaintiff admitted that assertion at issue was true). A court "cannot logically conclude that any publication . . . was false or fictitious" where the "plaintiff himself acknowledged that the events upon which his [false light] claim is premised actually occurred." *Gross v. Pare*, 185 A.3d 1242, 1247 (R.I. 2018), *as corrected* (Aug. 16, 2018).

As in *Sankey*, Jack and Leslie cannot dispute, ████████████████, that the Report as actually published is literally true: ████████████████████████████████ they took the QAnon Oath, and Jack posted it on Twitter. The Report does nothing more than show exactly that. CNN published no false fact about Jack and Leslie.

*Second*, when viewed in its totality, the Report does not unreasonably or in a highly objectionable manner state or imply that Jack and Leslie are associated with QAnon, or even that they attended Q Con Live! or said the QAnon Oath. In fact, the Report does not mention either of them at all. Rather, the Report's discussion of "Where We Go One, We Go All" refers *only* to Trump and Gen. Flynn, and the Report shows *only* Gen. Flynn speaking the phrase. *Id*. As such, CNN viewers could only know that Jack and Leslie also said, "Where We Go One, We Go All," if they watched the entire Oath Video published *by the Flynns*. *Id*. ¶¶ 37-42.

A pair of false light cases involving allegedly objectionable associations with adult magazines are instructive. In *Faloona by Fredrickson v. Hustler Magazine, Inc.*, the plaintiffs, a mother and her daughters, voluntarily posed for nude photographs to be used for textbooks about human sexuality. 799 F.2d 1000, 1002 (5th Cir. 1986), *rehearing denied* 802 F.2d 455 (1986).

24

*Hustler Magazine* subsequently published a book review of the textbooks, which were illustrated by two of the nude photographs featuring the plaintiffs. *Id.* The plaintiffs then sued for false light among other torts, alleging that the inclusion of the photographs in adult magazines was objectionable because it insinuated that they were "willing to appear naked in *Hustler* and that they endorse[d] and support[ed] the magazine." *Id.* at 1006. The court disagreed, noting that the context in which the photographs appeared was critical—not only had the photographs been widely published elsewhere, but they were merely reproduced to illustrate the book review, and their inclusion did not imply that the plaintiffs agreed to pose nude for, or even generally approved of, *Hustler*. *Id.* at 1007.

Similarly, in *Fudge,* the plaintiffs were students who were photographed by their local paper giving the thumbs-down sign in disapproval of their school's decision separating girls during recess. Penthouse magazine published the photograph and a news item about the school's decision under the headline "Little Amazons Attack Boys." 840 F.2d at 1014. The students sued Penthouse, alleging the article placed them in a false light because it associated them with the magazine by implying that they consented to the story's publication and endorsed the magazine's editorial viewpoint. *Id.* at 1014, 1019. The First Circuit disagreed, noting that the full context of the article negated any possible objectionable association. Not only did the offending content appear in a section of the magazine that was clearly described "as a compendium of items culled from the nation's press" and was labeled as having been taken from the local paper, but the magazine's own editorial comment about the story was easily distinguishable from the story itself, in part because it appeared in a different typeface. *Id.* at 1019. Per the court, "there was absolutely no room for the implication that Penthouse had in any way dealt with plaintiffs, or they with Penthouse." *Id.* Here, as in *Faloona* and *Fudge*, CNN simply republished what Jack previously distributed and the clip

of the Oath Video was properly fonted to Gen. Flynn's Twitter feed.

To the extent that Jack and Leslie argue the Report creates an unreasonable and highly objectionable association between them and QAnon purely because of the Chyron that is shown throughout the entirety of the Report, that argument also fails. ███████████████

████████████████████████████████████████████████

████████████████████████████████████████████████ SUMF

¶ 88. And, as in *Faloona* and *Fudge*, the full context of the Report demonstrates that the Chyron does not describe—or even refer to—Jack and Leslie at all. *See Crall v. Gannett Satellite Info. Network, Inc.*, 1992 WL 400713, at *3 (S.D. Ohio Nov. 6, 1992) (chyron may be "temper[ed]" by the full telecast, clarifying it "in such a way that no [viewer] could reasonably believe [the proffered] meaning"). Instead, the Chyron explicitly (and undeniably) refers to Q Con Live!, because within the first 20 seconds of the Report, O'Sullivan explains—using the same words as the Chyron—that the footage was from "*this gathering of QAnon followers in Arizona just two weeks before November's election.*" SUMF ¶ 86 (emphasis added). And the clip of the Oath Video is fonted to Gen. Flynn's Twitter, demonstrating that it is from a different source than the Q Con Live! videos. *Id.*

The fact that the Chyron remains onscreen for the entirety of the Report further underscores the absence of any false association between Jack and Leslie and QAnon followers, or even QAnon. If the mere publication of the Chyron were enough to falsely state that someone was a QAnon follower, and therefore falsely associated with QAnon, then CNN's audience would equally falsely associate every individual who appeared onscreen—including Trump, O'Sullivan, Savannah Guthrie, Don Lemon, and View—with QAnon:



*Id.* ¶ 86; *see also Raymen v. United Senior Ass'n, Inc.*, 409 F. Supp. 2d 15, 22, 26 (D.D.C. 2006) (dismissing false light claim brought by couple whose photograph was included in an advertisement critiquing AARP's alleged opposition to the Iraq War, because "a reasonable person [would not think plaintiffs were] . . . unpatriotic American citizens who do not support the United States military . . . simply because their image was used in one portion of the advertisement").

In sum, CNN published no false fact implying a highly objectionable association that did not exist. ██████████████████████████████████████████████████████████████ that they filmed the Oath Video, or that Jack posted it on Twitter. If it was not a false fact published with a highly objectionable association when Jack and Leslie actively participated and published the Oath Video, it cannot be one when CNN republished it and correctly fonted it. This Court need look no further to dismiss the claim.

**B.      To the Extent the Report Publishes Any Objectionable Association, Plaintiffs Cannot Establish that Association is Materially False**

Even if this Court concludes that the Report did associate Jack and Leslie with QAnon, summary judgment remains appropriate because the Report is not a "major misrepresentation" of the activities of either Jack and Leslie, and therefore Jack and Leslie cannot meet their burden of proving material falsity. *Alves*, 857 A.2d at 752. In fact, the purportedly "false" light Jack and Leslie now complain of is accurate and is the very same light in which they have cast themselves, both before and after the Report aired. Courts routinely grant motions for summary judgment for this very reason. *E.g.*, *Swerdlick*, 721 A.2d at 862 (affirming summary judgment for defendant on

false light claim based on substantial truth of statements at issue); *Clements v. WHDH-TV, Inc.*, 1998 WL 596759, at *4 (R.I. Super. Aug. 27, 1998) (granting summary judgment for defendant on false light claim on substantial truth grounds).

A false light plaintiff has the constitutional burden of proving that speech of public concern, which the Report unquestionably is, *see infra*, Section IV.A, is materially false. *See Philadelphia Newspapers*, 475 U.S. at 776-77; *see also Pan Am Sys., Inc. v. Atl. Ne. Rails & Ports, Inc.*, 804 F.3d 59, 68-69 (1st Cir. 2015). Importantly, a statement need not be literally true for the defendant to prevail. Where a statement is "based on *substantially true* facts, [it] cannot be relied upon to support an action for false light." *Swerdlick*, 721 A.2d at 862 (emphasis added). Statements are substantially true even if they admit of "[m]inor inaccuracies[,] . . . so long as the substance, the gist, the sting, of the libelous charge be justified." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) (quotation marks omitted). Even statements that are "sometimes overstated or slightly off the mark in one factual detail or another" are not actionable if "they [are] not capable of creating false public impressions" concerning the plaintiff. *Swerdlick*, 721 A.2d at 862. Where a plaintiff's activities "cast [them] in essentially the same light as [the defendant's purported] statements," they cannot prove material falsity and their false light claim must be dismissed. *Carson v. Palombo*, 18 N.E.3d 1036, 1048-49 (Ind. Ct. App. 2014) (citation omitted).

Jack and Leslie cannot meet their burden. It is undisputed that, for years, Jack and Leslie sought the benefits of QAnon, ████████████████████████████████████ ████████████████████████████████████ SUMF ¶¶ 18-27, 43, 75-76. ████████████████ ████████████████████████████████████ participated in the #TakeTheOath movement, and used retweets and likes of QAnon hashtags, imagery, and memes ████████████████████ ████████████. *Id.* ¶¶ 18-27, 33-47, 53-76. This activity indelibly aligned the Flynn family and

Jack and Leslie specifically with QAnon in the public eye. Specifically, it is undisputed that:

- In the days before July 4, Jack and Leslie were aware of the #TakeTheOath movement. ███████████ tweets with #QAnon and #WWG1WGA, while Jack ████████ ████████████████ helped fuel its early virality by sharing other #TakeTheOath tweets. SUMF ¶¶ 31-37.

- Jack and Leslie took part in filming the Oath Video, which included "Where We Go One, We Go All" at the end, just like the Q Drop instructed. And they did so *twice* because "someone said they could resay it better." *Id.* ¶¶ 37-38.

- ████████████████████████████ Jack not only shared Gen. Flynn's tweet with the Oath Video multiple times, but he also retweeted several strangers' #TakeTheOath posts. *Id.* ¶¶ 39-42, 44-45.

- Even though there was substantial media coverage associating #TakeTheOath with QAnon and aligning the Flynns with QAnon as a result, Jack never deleted his tweets promoting the Oath Video, ████████████████████████. *Id.* ¶¶ 49, 51-52.

On their own, these actions sufficiently align Jack and Leslie with the QAnon movement such that it is impossible for Jack and Leslie to establish that the light in which they claim the Report placed them was materially false. But there is far more. Both Jack and Leslie have aligned themselves with QAnon since (in Jack's case) 2018—and continued to do so *after* the Oath Video was made:

- Jack capitalized on QAnon for Gen. Flynn's Legal Defense Fund, promoting QAnon merchandise, using QAnon phrases like "WWG1WGA," and sharing posts friendly to QAnon to ████████████████████████ ████████████ *Id.* ¶¶ 18-25, 43, 75-76.

- Leslie repeatedly engaged with QAnon content on social media before and after the July 4 barbecue, liking tweets associating General Flynn with QAnon, using "WWG1WGA" along with other QAnon hashtags, memes, and phrases. *Id.* ¶¶ 67-68.

- Jack went a step further, routinely retweeting *and* posting his own QAnon-associated content on social media. *Id.* ¶¶ 23-27, 53-66, 74-75. Indeed, even after the widespread media coverage emphasizing the association between the Oath Video, WWG1WGA, and QAnon, Jack continued to post tweets that subscribed to QAnon lore stating, "[t]here is nothing wrong with QAnon." *Id.* ¶ 56.

- In September 2020, after the Oath Video, ████████████████████████

███████████████████████████ and during that visit, Jack took a photo, holding a sticker saying "Q SENT ME." *Id.* ¶¶ 69-71.

In the face of this extensive public record, Jack and Leslie will never be able to establish that any statement associating them with QAnon in the Report places them in a false light.[3]

This case is just like *Carson.* There, the plaintiff, whose ex-husband was granted custody of their children, sued over a statement that characterized her as "an angry ex-wife whose kids have been taken from her for god known reason." 18 N.E.3d at 1039, 1048. But, the court held this statement did not cast the plaintiff in a false light because it described her "in substantially the same terms" she had repeatedly and publicly used to refer to herself, including in statements claiming that her children "have been kidnapped out of [her] life" and that she had been "abuse[d], devalue[d], discredit[ed], and discard[ed]." *Id.* at 1048.

To the extent that Jack and Leslie seek to argue that they, themselves, did not believe in the core QAnon beliefs, and therefore CNN placed them in a false light by juxtaposing an Oath Video clip with the words "QAnon Followers," this argument is unconvincing. Regardless of what Jack and Leslie felt in their hearts and minds, or even what they said in private, they made public statements and took public actions that led QAnon followers, the media, and their own expert to link them to QAnon. And apparently they did so largely to take money from QAnon followers to support their brother. This Court should not allow them to exploit the QAnon movement to their benefit and then disclaim the association as soon as it becomes inconvenient particularly where,

---

[3] The only evidence they have to the contrary are their own self-serving denials, which the Court should disregard for two reasons. First, it is common, Q-approved strategy for QAnon followers to use Q-related catchphrases and iconography while also disclaiming knowledge—or even the existence—of Q. SUMF ¶¶ 5, 7. Second, a plaintiff's self-serving *ipse dixits* are insufficient to establish falsity. *See Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 188 (2d Cir. 2000) ("[w]hile a bland cryptic claim of falsity supported by the credibility of a witness might be sufficient to establish a proposition in other civil cases, the First Amendment demands more.").

as here, they made no public statement disavowing QAnon.

On the contrary, Jack and Leslie aligned themselves QAnon far more comprehensively than other individuals who have been deemed QAnon followers. For example, in 2020, *Media Matters* published an article titled "Here are the QAnon supporters running for Congress in 2020," which detailed the QAnon-supportive actions of 107 former congressional candidates. Derrick Grayson made the list for "tweet[ing] the QAnon slogan and its spinoff hashtag, #wwg1wgaworldwide," and Philanise White made the list for "tweet[ing] the QAnon slogan more than once," including in tweets soliciting donations to her campaign. SUMF ¶ 12. Others, like Theresa Raborn and Johnny Teague, made the list for simply retweeting the Flynns' Oath Video— in which Jack and Leslie *actually took part. Id.* If these acts are sufficient to classify these politicians as full-blown "QAnon supporters," then the fact that Jack and Leslie have done all of them (and more) is more than enough to associate them with QAnon.

A recent case involving a QAnon-connected judge is directly on point. In *Patrick v. Daily Beast Co.*, the court rejected the judge's claim that a *Daily Beast* headline falsely called her "QAnon-linked." 2023 WL 3627836, at *3 (E.D. Pa. May 24, 2023). The court held that "[t]he fact that [the judge] denied a Q[A]non link does not negate her interview with a Q[A]non supporter or that she was listed as a speaker for a Q[A]non-affiliated conference." *Id.* Moreover, the court explained that even if "the headline wasn't the most fair" when weighing her denial against her interview and appearance on a conference list (even though she claimed she did not attend the conference), this still did not support a "finding of falsity." *Id.*

If the single interview and conference appearance outweighed the judge's vehement denials in *Patrick*, Jack and Leslie cannot hope to show that the gist of the purported association is materially false. Jack and Leslie's own, highly public actions cast them "in essentially the same

light" as, they claim, the Report does. Their false light claim fails.

### C. PLAINTIFFS CANNOT PROVE THAT CNN ACTED WITH ACTUAL MALICE

#### 1. Jack and Leslie Must Show That CNN Acted With Actual Malice

This Court should also grant summary judgment because Jack and Leslie cannot carry their burden, as they must, of demonstrating that CNN acted with actual malice in airing the Report. The Supreme Court has held that a showing of actual malice is constitutionally required for false light claims directed at speech on matters of public concern. *See Time, Inc.*, 385 U.S. at 387-88 ("We hold that the constitutional protections for speech and press preclude [redress for false light claims on] matters of public interest in the absence of proof that the defendant published the report with knowledge of its falsity or in reckless disregard of the truth."); Restatement (Second) of Torts § 652E cmt. d (1977) (providing "that liability for invasion of privacy for placing the plaintiff in a false light may exist if the defendant acted with knowledge of the falsity of the statement or in reckless disregard as to truth or falsity"); *Cantrell v. Forest City Pub. Co.*, 419 U.S. 245, 249 (1974) (applying actual malice standard to private figure's false light claim). *Cf. Snyder v. Phelps*, 562 U.S. 443, 451-59 (2011) (emphasizing that speech about matters of public concern is "at the heart of the First Amendment's protection" and barring claim for intentional infliction of emotional distress based speech involving public issues).

Here, the only claim is for false light and the speech at issue undisputedly concerns a matter of public interest. It is about the increasing prominence of QAnon in American politics, as evidenced by the decision of Gen. Flynn to "promote" the QAnon Slogan. *See Snyder*, 562 U.S. at 453 ("[s]peech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community[] or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the

public") (internal quotations and citation omitted). Jack and Leslie must, therefore, demonstrate that CNN aired the Report with actual malice.[4] They cannot do so.

### 2. CNN Did Not Act With Actual Malice

To carry the "heavy, and often insurmountable burden" of establishing by clear and convincing evidence that CNN acted with actual malice in placing them in a false light, *Lluberes v. Uncommon Prods., Inc.*, 663 F.3d 6, 14 (1st Cir. 2011); *Dunlop–McCullen v. Rogers*, 2002 WL 1205029, at *7 (S.D.N.Y. Feb. 21, 2002), Jack and Leslie must establish that the challenged statement was made with "knowledge that the statements were false or with reckless disregard as to their falsity." *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (citation omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986) (standard must be applied on a summary judgment motion). The standard, thus, is not satisfied "merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989). Rather, reckless disregard requires that a defendant "entertained serious

---

[4] Jack and Leslie must also prove actual malice because they are limited public figures. *See DeCarvalho v. daSilva*, 414 A.2d 806, 813 (R.I. 1980). Limited public figures are those who have "[voluntarily] injected themselves or [are] drawn into [a] public controversy." *Capuano v. Outlet Co.*, 579 A.2d 469, 473 (R.I. 1990); *see also Wells v. Liddy*, 186 F.3d 505, 540 (4th Cir. 1999) (an individual may become a public figure where he or she "has pursued a course of conduct from which it was reasonably foreseeable, at the time of the conduct, that public interest would arise.") Here, Jack and Leslie's enthusiastic participation in the Oath Video drew them into several public controversies, including the relationship between QAnon and U.S. politics, including Trump and General Flynn; Q's June 24, 2020, instruction to "take the oath;" and the viral #TakeTheOath movement that ensued online immediately following Q's June 24th directive. And Jack and Leslie were indisputably aware public interest would arise based on the Flynn family's Oath Video. ███ ████████████████████████████████████████████████████████████████ they voluntarily and publicly took part in Q's "take the oath" directive. SUMF ¶¶ 31-37. They also knew that Gen. Flynn—their brother and brother-in-law—was a public figure and the subject of a great deal of news reporting, and were not only aware that the Oath Video was going to be posted to Twitter ███████████████████████████ *Id.* ¶¶ 39-43. As expected, there was substantial coverage of both #TakeTheOath and the Flynn family's promotion of and participation in it. *Id.* ¶ 51. In sum, Jack and Leslie are limited public figures because they "voluntarily engaged in a course that was bound to invite attention and comment." *Rosanova v. Playboy Enterprises, Inc.*, 580 F.2d 859, 861 (5th Cir. 1978) (citation omitted).

doubts as to truth of [the] publication," *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968), or had a "high degree of awareness of . . . probable falsity." *Garrison v. State of La.*, 379 U.S. 64, 74 (1964); s*ee also Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173-4 (2d Cir. 2001) (constitutional malice standard measures "the speaker's subjective doubts about the truth of the publication"). It is a wholly subjective standard. *Id.*

As such, even proof of "highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers" will not establish actual malice. *Harte-Hanks*, 491 U.S. at 664-65 & n.5; *Brimelow v. New York Times Co.,* 2020 WL 7405261, at *8 (S.D.N.Y. Dec. 16, 2020), *aff'd*, 2021 WL 4901969 (2d Cir. Oct. 21, 2021) ("deviation from normal journalistic standards does not constitute actual malice"); *Henry v. Media Gen. Operations, Inc.*, 254 A.3d 822, 842 (R.I. 2021) (similar). Moreover, a publisher's reliance on "reliable" sources demonstrates his lack of subjective belief of falsity. *Miller v. News Syndicate Co.*, 445 F.2d 356, 358 (2d Cir.1971) (where reporters' false statements in an article were based on reliable sources, the defendants could "hardly be accused of gross negligence, much less actual malice."); *see also Hall v. Rogers*, 490 A.2d 502, 506 (R.I. 1985) (newspaper's reliance on reliable source precluded finding of actual malice); *Adler v. Conde Nast Publ'ns, Inc.*, 643 F. Supp. 1558, 1566 (S.D.N.Y. 1986) (publication's reliance on "wholly plausible factual representations of writers whom they have reason to believe are professional [and] reliable" precluded finding of actual malice). There can be no subjective awareness of probable falsity where, as here, "the publisher's allegations are supported by a multitude of prior reports upon which the publisher reasonably relied."[5] *Rosanova*, 580 F.2d at 862. Here, each and

---

[5] In fact, CNN's reliance on reliable sources precludes a finding of *negligence*, further dooming Jack and Leslie's claim. *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 124 (2d Cir. 2013) (a media outlet has exercised due care where it relies on "reliable sources" for its information without

every CNN decisionmaker testified that they believed the Report was true. There is *no* evidence in the record—let alone clear and convincing evidence—to contradict this sworn testimony. SUMF ¶¶ 82-84.

Initially, in light of the close affinity between defamation-by-implication and false light claims, Jack and Leslie are required to make "an especially rigorous showing" that "the language may be reasonably read to impart a false innuendo," and "that the author intends or endorses the defamatory inference." *Leidig v. BuzzFeed, Inc.*, 371 F. Supp. 3d 134, 143 (S.D.N.Y. 2019) (*citing Biro v. Conde Nast*, 883 F. Supp. 2d 441, 465-66 (S.D.N.Y. 2012)), *aff'd*, 788 F. App'x 76 (2d Cir. 2019) (internal quotation marks omitted); *see Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136, 151 (S.D.N.Y. 2022) (holding that a false light claim is "analogous to a claim for defamation by implication."); *Flynn v. Cable News Network, Inc.*, 2023 WL 5985196, at *6 (M.D. Fla. Mar. 17, 2023) (concluding false light tort is "largely duplicative of defamation by implication"). Here, as discussed above, the Report does not impart the alleged false, objectionable association. But more than that, there is no evidence that anyone at CNN intended to make any comment on Jack or Leslie at all. On the contrary, O'Sullivan testified that the reason he included the small portion of the Oath Video that is included in the Report was because it was newsworthy that Trump and people in his orbit, including Gen. Flynn, had said, "Where We Go One, We Go

---

otherwise acting negligently); *Watkins v. Wash. Post*, 2018 WL 805394, at *7 (D. Md. Feb. 9, 2018) ("[R]eporters are not negligent . . . when relying on other reputable sources."); *Landino v. Mass. Tchrs. Ass'n*, 621 F. Supp. 3d 185, 193 (D. Mass. 2022) (no negligence where defendant relied on a "trusted and reliable source of information"); *see generally Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974) (holding that the First Amendment precludes imposing liability without fault for defamation and related claims like false light). So too do the reasonable precautions CNN took to verify the Report's accuracy. *Lue v. JPMorgan Chase & Co.*, 2021 WL 1108558, at *6 (S.D.N.Y. Mar. 23, 2021) (where a media organization "ma[kes] an effort to check the accuracy" of the publication, it will not be found negligent); *Valentine v. C.B.S.*, 698 F.2d 430, 431-32 (11th Cir. 1983) (media defendant not negligent where it takes "reasonable precautions to ensure [a report's] accuracy"); SUMF ¶¶ 77, 82-84.

All." SUMF ¶ 81. For that reason, O'Sullivan showed *only* Flynn taking the Oath and fonted the short clip to Gen. Flynn's Twitter feed. *Id.* ¶ 86. That he chose *not* to include the other Flynns saying the oath is further proof that he did not intend to comment on them. Hogan likewise swore that "the Report was not about Jack or Leslie. It did not allege that Jack or Leslie, or any other member of the Flynn family, had committed any wrongdoing." SUMF ¶ 83. And Lacey-Bordeaux said "the Report is not about Jack or Leslie, nor does it reference them by name or even include them reciting the oath." *Id.* Because there is no evidence that CNN intended to say anything about Jack and Leslie Flynn, Plaintiffs have not carried their burden of establishing actual malice by clear and convincing evidence.

In addition, the record establishes that CNN believed the Report to be true and no one at CNN believed they falsified anything. CNN was aware of public reporting that Jack and Leslie had participated in, and in Jack's case posted, the Oath Video and other behavior that bolstered the truth of the Report. Specifically, O'Sullivan was aware, for example, that there was a viral #TakeTheOath movement wherein members of the public posted videos of themselves on Twitter taking the oath of office and reciting the QAnon Slogan. He was aware that Jack and Leslie voluntarily participated in that movement by reciting the oath and QAnon Slogan in a recorded video. He knew that Gen. Flynn had published that video on Twitter and the media commented on the Flynns' participation in the #TakeTheOath movement, specifically accusing them of promoting QAnon. SUMF ¶¶ 77-78, 81-84. And O'Sullivan knew that, while Jack and Leslie made no public comment at the time denying these accusations, and took no legal action against any publisher, Powell's statements on their behalf denying the Oath Video was associated with QAnon were themselves infused with the QAnon myth that the phrase came from Kennedy's bells. SUMF ¶ 77. O'Sullivan also knew that Jack, General Flynn and their family had used QAnon to fundraise for

the Legal Defense Fund. *Id.* O'Sullivan was also aware of the *Media Matters* article that designated certain political candidates as QAnon simply because they shared #WWG1WGA. *Id.* Hogan and Lacey-Bordeaux were also aware that "Where We Go One, We Go All" was associated with QAnon and that it was widely reported that Gen. Flynn and his family had taken a QAnon oath in July 2020. *Id.* ¶ 82. And CNN diligently fonted the Oath Video to Gen. Flynn's Twitter to identify its source. *Id.* ¶ 86.

Accordingly, even if CNN could be said to have intended any implication about Jack and Leslie, CNN plainly lacked any subjective belief that the Report contained any false statement, let alone created any false and objectionable association between Jack and Leslie and QAnon. This undisputed fact precludes a finding of actual malice. CNN is entitled to summary judgment.

## III. THE FLYNNS CANNOT PROVE THAT THEIR ALLEGED EMOTIONAL HARM OR MENTAL ANGUISH WAS CAUSED BY THE CNN REPORT

Finally, Jack and Leslie cannot meet their burden to prove that their alleged damages— emotional, mental, or otherwise—were actually caused by CNN's Report. *See Fudge*, 1987 U.S. Dist. LEXIS 5468 at *8; *Swerdlick*, 721 A.2d at 859 (addressing "defamation and false-light claims together because the applicable law is similar" both of which require proof of damages).

While there is little guidance governing damages for false light claims, the Restatement is clear that a plaintiff's recovery is limited to "damages for the harm to his [or her] reputation *from the position in which he [or she] is placed*," Restatement (Second) of Torts § 652H(a) (1977) (emphasis added); *Socialist Workers Party v. Attorney Gen. of United States*, 642 F. Supp. 1357, 1422 (S.D.N.Y. 1986) (citing the Restatement (Second) of Torts § 652H(a)); *see also Doe v. Kaiser*, 2007 WL 2027824, at *5 (N.D.N.Y. July 9, 2007) (same). In other words, recovery cannot rest on speculative harm untethered to the actual statements published. *See generally Kish*, 142 F. Supp. 2d at 1100 (granting summary judgment on false light claim, in part, where plaintiff's damages

were speculative, admitting he had "no 'hard facts'" proving his alleged damages).

Jack and Leslie will never be able to show, as they are required to do, that the CNN Report—as opposed to their own actions in participating and publishing the Oath Video—is the proximate cause of their damage. *Home Show Tours, Inc. v. Quad City Virtual, Inc.*, 827 F. Supp. 2d 924, 945 (S.D. Iowa 2011) (holding plaintiff failed to show that it "was damaged by those statements," an essential element for a false light claim); Restatement (Second) of Torts § 652H(b) (accord). The Flynns' connection to QAnon was made directly by the media after the Oath Video was first published, and long before the Report aired. In addition, Gen. Flynn's prosecution tarnished the Flynn family's reputation. ███████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████ SUMF ¶ 16. In light of these reputational harms that long predated the Report, Jack and Leslie will never be able to show that it was the Report that damaged them.

Jack and Leslie also have not proven the existence of any non-speculative injuries. ███████

███████████████████████████████████████████████████████ *Id.* ¶¶ 89, 91. ██████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████ *Id.* ¶ 89.

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████ *Id.* ¶

90. ████████████████████████████████████████

████████████████████████████████████████

████████████████ *Id.* ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████ *Id.* ████████████

████████████████████████████████████ *Id.* ████████

████████████████████████████████████████

████████████████████████████ *Id.* Thus, these alleged emotional and

mental anguish damages are purely speculative and not compensable.

Finally, despite originally claiming they were entitled to actual and special damages in their

FAC ¶ 29, Jack and Leslie have since disclaimed these categories of damages. ████████████

████████████████████████████████████████ SUMF ¶

91. ████████████████████████████████ *Id.*

In truth, Jack and Leslie brought this lawsuit not because they suffered damages caused by

the Report, but because they think, as Wolski's sticker stated, "CNN SUCKS." *Id.* ¶ 70; *see also*

*id.* ¶ 64 (tweeting #banCNN in August 2020); *id.* ¶ 70 (joking about "CNN SUCKS" stickers in

August 2020); *id.* ¶ 65 (████████████████████████████████████████

██████████████). CNN is entitled to judgment as a matter of law.

## CONCLUSION

For all the foregoing reasons, CNN respectfully requests that this Court grant its motion

for summary judgment and dismiss all claims against it.

Dated: New York, New York
October 27, 2023

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: _/s/ Katherine M. Bolger_
Katherine M. Bolger (N.Y. Bar No. 2976868)
Meenakshi Krishnan (*pro hac vice*)
Lindsey B. Cherner (N.Y. Bar No. 5571534)
Sam F. Cate-Gumpert (*pro hac vice*)
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone: (212) 489-8230
katebolger@dwt.com
meenakshikrishnan@dwt.com
lindseycherner@dwt.com
samcategumpert@dwt.com

*Attorneys for Defendant Cable News Network, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 27th day of October, 2023, the foregoing was filed electronically through the Court's CM/ECF system. Notice of this filing will be sent by operation of the Court's CM/EF system to all parties of record. The conventionally filed exhibits will be served by overnight mail to the following counsel of record:

Jason C. Greaves
Binnall Law Group, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314

Jared J. Roberts
Binnall Law Group, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314

Anthony C. Carlini, Jr.
Handel & Carlini, LLP
1984 New Hackensack Road
Poughkeepsie, NY 12603

*/s/ Katherine M. Bolger*
Katherine M. Bolger