# EXHIBIT 117

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
JOHN P. "JACK" FLYNN              :
LESLIE A. FLYNN                   :
                                  :
    Plaintiffs,                   :
                                  :
v.                                :    Case 1:21-cv-02587-GHW/SLC
                                  :
                                  :
CABLE NEWS NETWORK, INC.          :
                                  :
    Defendant.                    :
---------------------------------------------------------x

# PLAINTIFFS' RULE 26(a)(2) EXPERT DISCLOSURE

    Plaintiffs, John P. "Jack" Flynn and Leslie A. Flynn ("Plaintiffs" or the "Flynns"), by counsel, pursuant to Rule 26(a)(2)(A-B) Fed. R. Civ. Pro. ("FRCP") and § IX of the Case Management Plan [*ECF No. 58*], provide the following Expert Disclosure:

    Plaintiffs intend to call Jesse R. Binnall, Esquire, as an expert in tort law and litigation to provide expert testimony under Federal Rules of Evidence 702, 703 and 705 concerning the reasonableness of Plaintiffs' attorney's fees incurred in this action.

    A copy of Mr. Binnall's written report is attached.


DATED:      January 31, 2023


Signature of Counsel on Next Page

1

Respectfully Submitted,

JOHN P. "JACK" FLYNN
LESLIE A. FLYNN

By: /s/ *Steven S. Biss*
 Steven S. Biss (VSB # 32972)
 300 West Main Street, Suite 102
 Charlottesville, Virginia 22903
 Telephone: (804) 501-8272
 Facsimile: (202) 318-4098
 Email: stevenbiss@earthlink.net
 (*Admitted Pro Hac Vice*)

 Anthony C. Carlini, Jr., Esquire
 (New York Bar # 2648374)
 Handel & Carlini, LLP
 1984 Hackensack Road
 Poughkeepsie, NY 12603
 Telephone: (845) 454-2221
 Facsimile: (845) 471-1005
 Email: anthony@handelcarlini.com

 *Counsel for the Plaintiffs*

2

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2023 a copy of the foregoing was served electronically in PDF on counsel for the Defendant.

By: */s/ Steven S. Biss*
Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: stevenbiss@earthlink.net
(*Admitted Pro Hac Vice*)

Anthony C. Carlini, Jr., Esquire
(New York Bar # 2648374)
Handel & Carlini, LLP
1984 Hackensack Road
Poughkeepsie, NY 12603
Telephone: (845) 454-2221
Facsimile: (845) 471-1005
Email: anthony@handelcarlini.com

*Counsel for the Plaintiffs*



**Jesse R. Binnall**
PARTNER

**D:** 571-467-6566
**E:** jesse@binnall.com

January 31, 2023

<u>BY U.S. MAIL AND ELECTRONIC MAIL</u>

Steven S. Biss, Esquire
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
stevenbiss@earthlink.net

Anthony C. Carlini, Jr., Esquire
Handel & Carlini, LLP
1984 Hackensack Road
Poughkeepsie, New York 12603
anthony@handelcarlini.com

Dear Mr. Biss and Mr. Carlini,

      On February 16, 2021, Plaintiffs, John P. "Jack" Flynn and Leslie A. Flynn ("Plaintiffs" or the "Flynns"), signed a contingency fee agreement pursuant to which they contracted to pay Steven S. Biss a retainer of $20,000 plus a contingency fee of twenty percent (20%) of any and all amounts recovered by way of settlement, jury verdict or otherwise, in return for legal services to be performed in contemplated litigation against Cable News Network, Inc. ("CNN").

      In March 2021, the Flynns filed suit against CNN in the United States District Court for the Southern District of New York. The District Court ruled that the Flynns' amended complaint states a claim of false light invasion of privacy under § 9-1-28.2(a)(4) of the Rhode Island General Laws. *See* December 16, 2021 Memorandum Opinion and Order at 12 and August 12, 2022 Memorandum and Opinion at 10, *Flynn v. Cable News Network, Inc.*, No. 1:21-cv-2587 (S.D.N.Y. Oct. 22, 2021).

      Section 9-1-28.1(b) R.I. Gen. Laws provides as follows:

"[t]he court having jurisdiction of an action brought pursuant to this section may award reasonable attorneys' fees and court costs to the prevailing party."

      In their amended complaint, the Flynns seek to recover reasonable attorneys' fees.

*Flynn v. CNN*
*January 31, 2023*
*Page 2 of 10*

Should the Flynns prevail in this action, you have asked me to offer an opinion on whether the attorneys' fees they incurred and agreed to pay are reasonable.

I.  **Qualifications**

My name is Jesse Binnall. I am the Managing Partner of the Binnall Law Group ("BLG") in Alexandria, Virginia. I am part of a team of attorneys that represents clients in complex civil and criminal litigation throughout the country. My practice focuses on: defamation suits; complex business and commercial litigation; First Amendment and civil rights disputes; Title IX litigation against colleges and universities; white collar criminal defense; disputes between government contractors; federal investigations and prosecutions; resisting warrants and subpoenas on privacy grounds; conducting internal investigations for companies and representing individuals in these investigations; political law; and parliamentary procedure and strategic meeting consulting.

My CV is published on BLG's website and may be accessed by clicking the following link: https://www.binnall.com/our-team/jesse-r-binnall/.

I am a member of the Virginia and Idaho State Bars. I am admitted to practice before the following federal courts: the Supreme Court of the United States; United States Court of Appeals for the Fourth Circuit; United States Court of Appeals for the Seventh Circuit; United States Court of Appeals for the Eighth Circuit; United States Court of Appeals for the Eleventh Circuit; United States District Court for the District of Columbia; United States District Court for the District of Idaho; United States District Court for the Southern District of Texas; United States District Court for the Eastern District of Virginia; United States District Court for the Western District of Virginia; United States Bankruptcy Court for the Eastern District of Virginia; United States District Court for the Eastern District of Wisconsin; and United States District Court for the Western District of Wisconsin. I have also been admitted and appeared *pro hac vice* in multiple federal and state courts, including the United States District Court for the District of Montana, the United States District Court for the Southern District of New York, and the New York Supreme Court.

I graduated from George Mason School of Law in 2009. I was the president of the Alumni Association, Antonin Scalia Law School at George Mason University. Currently, I serve as the chair of the Pegasus Placement Committee, American Inns of Court. I am also a member of the Board of Directors of SAVE, a non-profit devoted to assuring fairness and due process in school.

In 2022, I was selected as a "Super Lawyer" by Super Lawyers recognized as a Top Lawyer in the *Washingtonian*.

*Flynn v. CNN*
*January 31, 2023*
*Page 3 of 10*

The news media often asks me to discuss law and technology issues. I have been quoted by the *New York Times*, *Forbes*, *Wired* and *Huffington Post*, and appeared as a guest on many television networks, including Fox Business, Fox News Chanel, Newsmax, and PBS.

In addition to my services as an attorney, I am also the president of Parliamentary Strategies, which is owned by BLG and provides parliamentary procedure and meeting strategy services to clients. I am a certified professional parliamentarian, advising professional associations, political parties, candidates, and others on meeting procedure, bylaw drafting and interpretation, and other parliamentary matters. I also have a niche practice of providing procedural strategic advice to clients who have business to be decided at meetings and conventions. Indeed, I have served four presidential campaigns as a parliamentary procedure strategy consultant.

I have authored or assisted with the publication of the following papers and materials in the last 10 years:

- https://townhall.com/columnists/jesserbinnall/2021/06/28/the-lefts-assault-on-election-integrity-n2591664;
- https://www.binnall.com/insights-news/teaming-agreements-offer-government-contractors-a-way-to-avoid-court-battles/;
- https://www.binnall.com/insights-news/new-threat-paper-wants-to-publish-title-ix-sex-offender-registery/;
- https://www.binnall.com/insights-news/many-title-ix-officers-trample-students-due-process-other-constitutional-rights/;
- https://www.binnall.com/insights-news/doj-intensifies-focus-on-healthcare-fraud/;
- https://www.binnall.com/insights-news/what-is-title-ix-and-how-does-it-affect-your-son-or-daughter/;
- https://www.binnall.com/insights-news/restrictive-covenants-and-blue-pencils-a-shifting-landscape/;
- https://www.binnall.com/insights-news/alternative-dispute-resolution-adr/;
- https://www.binnall.com/insights-news/civil-appeals-supreme-court-virginia/;
- https://www.binnall.com/insights-news/alternative-dispute-resolution-why-mediate/;
- https://www.binnall.com/insights-news/northern-virginia-practice-procedure-calendar-control/;
- https://www.binnall.com/insights-news/civil-rights-and-liberties-sign-regulations/;
- https://www.binnall.com/insights-news/business-and-commercial-disputes-expert-witness/;

- https://www.binnall.com/insights-news/northern-virginia-practice-procedure-motions-practice/.

Over the course of my career, I have litigated numerous attorney's fee petitions. I have not testified as an expert at trial or by deposition in any case in the previous four years.

## II. Facts and Data Considered

In offering the opinions in this report, I reviewed and considered (a) the parties' pleadings, including CNN's motion to dismiss the Flynn's amended complaint and motion for reconsideration, and the Flynn's oppositions to those motions; (b) the District Court's memorandum opinions and orders; (c) the parties' Rule 26(a) disclosures, discovery requests and responses; and (d) Rule 45 subpoenas to various third parties. I am aware that the party and third-party responses to requests for production of documents and subpoenas, including social media data and files, are extremely voluminous. I have discussed the amount of time spent on this matter with Plaintiffs' counsel. I have not reviewed the documents nor the produced data and files. Upon further review of billing records, I will supplement this report.

I also consider the procedural posture of the case, and my knowledge of the work that remains, for instance:  (a) closure of fact discovery; (b) depositions; (c) one or both parties filing dispositive motions once discovery closes; (d) substantial trial preparation; and (e) a lengthy trial. And even with a final judgment, one party may potentially appeal.

No exhibits will be used to summarize or support my opinions.

The documents provided to me by Plaintiffs' counsel (Mr. Biss) allowed me a full and fair opportunity to examine the issues and to render my opinions stated in this report. This report is submitted pursuant to Rule 26(a)(2)(A) ad (B) of the Federal Rules of Civil Procedure.

I render all opinions based upon my knowledge, belief and experience, and to a reasonable degree of professional certainty.

## III. Statement of Opinions and The Bases and Reasons

### A. *False Light*

Under Rhode Island law, every person has "[t]he right to be secure from publicity that reasonably places another in a false light before the public." 9 R.I. Gen. Laws § 9-1-28.1(a)(4). To recover for a violation of that right, a plaintiff must establish that "[t]here has been some publication of a false or fictitious fact which implies an association which does not exist; [and] [t]he association which has been published or implied would be objectionable to the ordinary reasonable man under the circumstances." *Id.*

"[I]t is the responsibility of the court to determine as a matter of law whether a statement portrays an individual in a false light under § 9–1–28.1(a)(4)." *Flynn v. CNN*, 2021 WL 5964129, at * 4 (S.D.N.Y. 2021) (quoting *Cullen v. Auclair*, 809 A.2d 1107, 1112 (R.I. 2002)). "Unlike defamation, a false-light action requires that a plaintiff be given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position." *Id.* (quoting *Swerdlick v. Koch*, 721 A.2d 849, 861 (R.I. 1998)). "Furthermore, a plaintiff properly states a cause of action for false light when 'there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position.'" *Id.* (quoting *Swerdlick*, 721 A.2d 849, 861-862 (R.I. 1998)).

Under § 9-1-28.1, a party (in this case CNN) is liable if that party subjects any person or causes any person to be subjected to a violation of a right to privacy as defined by the statutes. "That liability is strict." *Manocchia v. Narragansett Television*, 1995 WL 937020, at * 6 (R.I. Super. 1996).

### B. *The Contingent Fee Is Reasonable*

The Flynns signed a written contract with counsel. That contract, which includes a contingent fee, is valid and enforceable.

Under Rule 1.5(c) of the Rhode Island Disciplinary Rules of Professional Conduct ("DRPC") and the facts of this case, a fee contingent on the outcome of the matter for which the service is rendered is permitted.

In this case, the contingent fee agreement is in a writing signed by the clients. The agreement states the method by which the fee is to be determined, including the percentage that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement clearly notifies the client of any expenses for which the client will be liable whether or not the client is the prevailing party.

DRPC Rule 1.5(a) states that a lawyer "shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." The factors to be considered in determining the reasonableness of a fee include the following:

- the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

- the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

- the fee customarily charged in the locality for similar legal services;

- the amount involved and the results obtained;

- the time limitations imposed by the client or by the circumstances;

- the nature and length of the professional relationship with the client;

- the experience, reputation, and ability of the lawyer or lawyers performing the services; and

- whether the fee is fixed or contingent.

Based upon my consideration of the above eight factors, the attorney's fees incurred by the Flynns ($20,000, plus a 20% contingent fee) are reasonable.

First, this case has and will require an enormous amount of the time and labor. The case involves novel and difficult questions of fact and law, including what or who is a "QAnon follower". In denying CNN's motion for reconsideration, the District Court accepted the Flynns' definition and rejected CNN's position concerning what it means to be a "QAnon follower."

There are very few attorneys in the country with the skills requisite to properly perform the legal services in a high-profile, false light case such as this. Mr. Biss is one of those lawyers. He is lead counsel for the plaintiffs in multiple high-profile defamation/false light cases across the country, including *Nunes v. Lizza*; *Nunes v. WP Company*; *Nunes v. NBCUniversal*; *1AP v. Abramson*; *1AP v. Riggleman*; *Straka v. NBCUniversal* and *Burke v. Recurrent Ventures*.

Second, it was likely and apparent to the Flynns at the commencement of the litigation that the acceptance of this particular engagement would preclude Mr. Biss from other employment. It was obvious at the outset that high-profile litigation against a large media defendant, heavily defended with unlimited resources, would limit Mr. Biss ability to take on additional clients.

Third, the hybrid fee is one that is customarily charged in Rhode Island, New York, Virginia and elsewhere for similar legal services. The contingent fee is below market for high-profile privacy tort claims, where counsel usually charges thirty-three and one-third percent (33.3333%).

Fourth, as evidenced by the Flynns' Rule 26(a)(1) disclosures, the amount in controversy, measured by, *inter alia*, the breadth of the publication, is substantial. In light of recent comparative jury verdicts, including *Gibson Bakery*, *Moore* and *Alex Jones*, if the Flynns' prevail they will not only clear their name, but the jury could award substantial compensation. Because of the reputational harm at stake in defamation cases, the range of possible damages awarded by a jury is very wide, making the risk associated with accepting such a case on a contingency high as a result makes this particular fee arrangement beyond fair and very favorable to the client, especially considering the amount of time and effort expended by the attorneys here.

Fifth, the time limitations imposed by the client and circumstances are substantial. This case has taken almost two years to prosecute. Thousands of hours have been put in by Mr. Biss to date. Ultimately, Mr. Biss projects that he will devote well over twenty thousand (20,000) hours to the litigation.

Sixth, the nature and length of the professional relationship with the client strongly suggests that the contingent fee is reasonable. This is Mr. Biss' first time representing the Flynns. Very few, if any, clients have the financial resources to contract with counsel on an hourly basis in this type of case. The Flynns are no exception. Mr. Biss bears the economic risk in this case in the event that the jury returns a verdict for CNN. If there is no recovery, the Flynns owe no legal fees.

Seventh, Mr. Biss is a very successful plaintiff's defamation lawyer and is recognized throughout the country. He has the experience, reputation, and ability to take on cases against media defendants such as CNN. The contingent fee is a fair allocation of risk between the Flynns and counsel.

Finally, the hybrid fee is reasonable because it provides the Flynns access to the courthouse with an experienced trial attorney, and it caps their legal fees.

C. *In re Abrams*

I am familiar with the applicable decisional authority governing fee petitions in contingency fee cases, including the leading decision from the Fourth Circuit Court of Appeals, *In re Abrams*, 605 F.3d 238 (4th Cir. 2010).

The fact that the actual number of hours reasonably devoted to this case by Mr. Biss multiplied by his reasonable rate ($475/hour) may be less than the agreed contingent fee does not require a downward revision of the contingent fee.

In *Abrams*, for instance, the attorneys devoted "a thousand hours" to the case. The fee agreement called for "thirty-three percent of any gross recovery, plus litigation

expenses". Pursuant to the fee agreement, the attorneys were entitled to a fee of $6,000,000.00.

The District Court reduced the lawyers' compensation from $6 million to $600,000, or from thirty-three percent down to three percent of the settlement. The Court reached this number by taking what it termed counsel's "pure speculation" as to the number of hours worked and multiplying it by a $300 per hour rate that the Court believed was "a high hourly rate for a similarly-situated lawyer."

The Fourth Circuit reversed. The Fourth Circuit observed that even in cases "where the fee request is based on a private fee agreement," the Court in reviewing the fee for reasonableness should consider the following eleven (11) factors:

> "(1) the time and labor required in the case, (2) the novelty and difficulty of the questions presented, (3) the skill required to perform the necessary legal services, (4) the preclusion of other employment by the lawyer due to acceptance of the case, (5) the customary fee for similar work, (6) the contingency of a fee, (7) the time pressures imposed in the case, (8) the award involved and the results obtained, (9) the experience, reputation, and ability of the lawyer, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship between the lawyer and the client, and (12) the fee awards made in similar cases."

*Abrams*, 605 F.3d at 244 (quoting *Allen v. U.S.*, 606 F.2d 432, 436 fn. 1 (4th Cir. 1979)). The Fourth Circuit found that:

> "[t]he district court here neglected to consider several critically important factors in its analysis. For example, it failed to adequately address the contingency of the fee (factor 6), the award involved and the results obtained (factor 8), and the fee awards made in similar cases (factor 12). We consider these factors in turn … The chief error in the district court's analysis was its failure to recognize the significance of the contingency fee in this case. The court obviously knew that a contingency fee was involved, but it did not give that fact the weight it was due in the decisional calculus … Fixing a lodestar fee in this contingency case was error and threatens to nullify the considerable advantages of contingency arrangements. As an initial matter, contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation. Sadly, a plaintiff sometimes has little to offer a lawyer other than his personal plight … Ignoring reasonable contingent fee agreements or automatically reducing them would impair claimants' ability to secure representation."

*Flynn v. CNN*
*January 31, 2023*
*Page 9 of 10*

The *Abrams* Court went on to explain that:

> "The facts of this case illustrate precisely the type of situation in which a contingency fee may be the only way an individual can protect his interests. Yet the district court's analysis made no mention of the role that contingent compensation played in providing the Pellegrins with access to court. Mark Pellegrin's father and guardian, Jerry, faced a tough financial situation. His son was horribly injured, and he certainly did not have the estimated $17 million needed over a lifetime of care. At the same time, neither did he have the resources to retain lawyers on an hourly basis to pursue a large insurance company in court, especially after National Union denied any coverage at all. The money to solve the problems was available in National Union's $21 million insurance policies, but it could only be obtained if someone else was willing to front the funds for attorneys and fees. The contingency agreement was, as the saying goes, the key to the courthouse door that allowed Jerry Pellegrin to retain the attorneys who eventually provided for his son's ongoing needs. The district court erred in failing to consider the access to the legal system that contingency fees like the ones herein provide."

The *Abrams* Court also held that the district court failed to consider

> "the related point that contingency fee agreements transfer a significant portion of the risk of loss to the attorneys taking a case. Access to the courts would be difficult to achieve without compensating attorneys for that risk. The risks a lawyer assumes are not dissimilar to those undertaken, for example, by a realtor on commission, who accepts the possibility of no sale as well as the potential reward of a quick transaction. In addition, it may be necessary to provide a greater return than an hourly fee offers to induce lawyers to take on representation for which they might never be paid, and it makes sense to arrange these fees as a percentage of any recovery … Because the district court's ruling failed to recognize that contingency fees provide attorneys due consideration for the risk they undertake, it reduced counsel's fee to a level that few attorneys would have accepted at the outset of litigation, when success was by no means assured and the size of any settlement or judgment was unpredictable."[1]

Finally, the *Abrams* Court held that the district court did not properly analyze the success achieved for the client and the "customary fee" for the work performed. With regard

---

[1] *Compare Kondash v. Citizens Bank, National Association*, 2020 WL 7641785, at * 3 (D. R.I. 2020) ("Class Counsel accepted this case on a purely contingent basis, exposing himself, his small firm and his local counsel to the hazards of investing substantial time and treasure over a protracted period (to the exclusion of other work) with no return").

*Flynn v. CNN*
January 31, 2023
Page 10 of 10

to the latter factor, the proper question involved "whether thirty-three percent was an acceptable fee for the contingency-based personal injury work performed by Pellegrin's counsel." *Abrams*, 605 F.3d at 245-249.

After the Fourth Circuit reversed, the District Court in *Abrams* awarded the full contingent fee. See *Pellegrin v. National Union Fire Ins. Co.*, 598 F.Supp.2d 724 (E.D.N.C. 2009), ECF No. 53.

Like *Abrams*, the contingent fee in this case is reasonable. Counsel for the Flynns, in accepting the case for a modest retainer of $20,000 and a contingent fee, bore the entire economic risk of loss. The Flynns succeeded in defeating CNN's motion to dismiss. The egregiousness of CNN's actions, CNN's refusal to retract, and the fact that it took complex litigation to vindicate the Flynns' rights and interests are also important factors in determining the reasonableness of the fee in this case.

My discounted billing rate is $650 per hour. Plaintiffs have agreed to pay that much for my trial preparation and testimony.

## CONCLUSION

Should the Flynn's prevail in this action, the attorney's fees they contracted to pay counsel, including 20% of the principal amount awarded by the jury, are reasonable.

Sincerely,

