**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOHN P. "JACK" FLYNN
LESLIE A. FLYNN,

               Plaintiffs,

      - against -

CABLE NEWS NETWORK, INC.,

               Defendant.

Case: 1:21-cv-02587-AS-SLC

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CABLE NEWS
NETWORK, INC.'S MOTION TO EXCLUDE
PLAINTIFFS' EXPERT DR. SOPHIA MOSKALENKO**

DAVIS WRIGHT TREMAINE LLP
Katherine M. Bolger (N.Y. Bar No. 2976868)
Meenakshi Krishnan (*pro hac vice*)
Lindsey B. Cherner (N.Y. Bar No. 5571534)
Sam F. Cate-Gumpert (*pro hac vice*)
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone: (212) 489-8230
katebolger@dwt.com
meenakshikrishnan@dwt.com
lindseycherner@dwt.com
samcategumpert@dwt.com

*Attorneys for Defendant Cable News Network, Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

RELEVANT FACTUAL BACKGROUND .............................................................................. 2

      A.       Dr. Moskalenko's Expert and Rebuttal Reports ................................... 3

      B.       Dr. Moskalenko's Deposition Further Undermines Her Reports .......................... 4

ARGUMENT ............................................................................................................................ 6

I.       DR. MOSKALENKO'S OPINIONS ARE UNREALIABLE AND BASED ON
INADEQUATE METHODOLOGY ................................................................................ 8

II.      DR. MOSKALENKO'S OPINIONS WILL NOT BE HELPFUL TO THE JURY ......... 10

CONCLUSION ......................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abelsayed v. N.Y. Univ.*,
2023 WL 4705999 (S.D.N.Y. July 24, 2023) ...........................................................................7

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002)....................................................................................................8

*Chen-Oster v. Goldman, Sachs & Co.*,
2022 WL 814074 (S.D.N.Y. Mar. 17, 2022) ........................................................................10

*Daniels v. City of New York*,
2018 WL 5919307 (S.D.N.Y. Nov. 13, 2018)........................................................................7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)........................................................................................................ *passim*

*Donnelly v. Ford Motor Co.*,
80 F. Supp. 2d 45 (E.D.N.Y. 1999) ......................................................................................10

*Est. of Jaquez v. City of New York*,
104 F. Supp. 3d 414 (S.D.N.Y. 2015)...................................................................................10

*Gwinn v. Laird Superfood, Inc.*,
2023 WL 5827634 (S.D.N.Y. Sept. 8, 2023)..........................................................................9

*Highland Capital Mgmt., L.P. v. Schneider*,
379 F. Supp. 2d 461 (S.D.N.Y. 2005)...................................................................................10

*In re Zyprexa Prods. Liab. Litig.*,
2009 WL 1357236 (E.D.N.Y. May 12, 2009) ........................................................................9

*Ismael v. Charles*,
2020 WL 4003291 (S.D.N.Y. July 15, 2020) .........................................................................7

*Joffe v. King & Spalding LLP*,
2019 WL 4673554 (S.D.N.Y. Sept. 24, 2019).......................................................................11

*Kewazinga Corp. v. Microsoft Corp.*,
2021 WL 4066597 (S.D.N.Y. Sept. 1, 2021) (Woods, J.) ......................................................7

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999)................................................................................................................7

*Pac. Life Ins. Co. v. Bank of New York Mellon*,
   571 F. Supp. 3d 106 (S.D.N.Y. 2021) ...............................................................7, 8, 9

*Restivo v. Hessemann*,
   846 F.3d 547 (2d Cir. 2017).....................................................................................6

*Riegel v. Medtronic, Inc.*,
   451 F.3d 104 (2d Cir. 2006).....................................................................................8

*Tardif v. City of New York*,
   2022 WL 2195332 (S.D.N.Y. June 17, 2022) ....................................................8, 10

*Town & Country Linen Corp. v. Ingenious Designs LLC*,
   2022 WL 2757643 (S.D.N.Y. July 14, 2022) .........................................................10

*Travelers Indem. Co. v. Northrop Grumman Corp.*,
   2014 WL 464769 (S.D.N.Y. Jan. 28, 2019) ..........................................................10

*United States v. Williams*,
   506 F.3d 151 (2d Cir. 2007).....................................................................................7

*Valelly v. Lynch*,
   2023 WL 2918982 (S.D.N.Y. Apr. 12, 2023)..........................................................7

**State Statutes**

R.I. Gen. Laws § 9-1-28.1...............................................................................................2

**Rules**

Fed. R. Evid.
   403 ............................................................................................................................7
   702............................................................................................................1, 6, 7, 8

Defendant Cable News Network, Inc. ("CNN") respectfully submits this memorandum of law in support of its motion to exclude the proffered expert report, rebuttal expert report, deposition testimony, and any trial testimony of Plaintiffs Jack and Leslie Flynns' (collectively "Plaintiffs" or "Flynns") expert Dr. Sophia Moskalenko ("Dr. Moskalenko"), pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## PRELIMINARY STATEMENT

This is a false light claim brought under Rhode Island law by the Flynns about a CNN news report entitled "CNN Goes Inside a Gathering of QAnon Followers." One of the Plaintiffs' central allegations is that when they filmed themselves on July 4, 2020, saying the federal oath of office and the words "Where We Go One, We Go All" and then posted it to social media (the "Oath Video") they meant it as a statement of "family unity" rather than, as was widely reported in the media, as a part of the QAnon movement. Dr. Moskalenko's opinions are designed to bolster that claim, purporting to conclude that the Flynns were not adherents to QAnon and that their recitation of the QAnon Slogan was not meant as a pledge to QAnon. This Court should grant this motion and exclude Dr. Moskalenko's reports and testimony for several reasons.

*First*, Dr. Moskalenko's opinions are unreliable because her methodology is flawed. Despite testifying that she is aware of and routinely employs certain methodologies to measure beliefs (such as surveys, coding interviews, polling, and case studies), Dr. Moskalenko admits she did not follow any of them in forming her beliefs here. In addition, she admitted she could not "offer a fully 100-percent informed opinion," Declaration of Katherine M. Bolger in Support of Defendant Cable News Network, Inc.'s Motion for Summary Judgment ("Bolger Decl.") Ex. 116 ("Tr.") at 43:7-16, because that she did nothing more than review Plaintiffs' self-selected documents and believe the Plaintiffs' self-serving denials that they are not QAnon followers. She also admitted that "new facts," including more information about the Plaintiffs, could "change

[her] opinion," *id.* at 167:15-21, but admits she did not seek them.  For this reason alone, her opinions are unreliable and should be excluded.

*Second*, Dr. Moskalenko's opinions are more likely to confuse than aid a jury because her conclusions are wholly inconsistent with her prior opinions about issues central to this matter, including both the meaning of the phrase "Where We Go One, We Go All," generally, and whether the Oath Video is properly associated with QAnon.  Because these, and other statements, cannot be reconciled, her testimony is unhelpful.

This Court should strike Dr. Moskalenko's expert and rebuttal reports, deposition testimony, and preclude her testimony at trial.

## RELEVANT FACTUAL BACKGROUND

On May 7, 2021, the Flynns filed an Amended Complaint bringing defamation and false light invasion of privacy claims against CNN under Rhode Island law which arose from a February 4, 2021, segment broadcast by CNN (the "CNN Report") entitled "CNN Goes Inside a Gathering of QAnon Followers."  ECF Doc. No. 7.  The Flynns alleged that the CNN Report accused them of being QAnon followers.  *Id.*  At the motion to dismiss stage, the Court dismissed the Flynns' defamation claim, but permitted the false light claim to proceed to discovery under R.I. Gen. Laws § 9-1-28.1.  ECF Doc. No. 42.

As fully discussed in CNN's concurrently filed motion for summary judgment, the CNN Report did not cast the Flynns in a false light.  It portrayed them in exactly the same way they portrayed themselves in public.  To bolster their claims, the Flynns have proffered the expert opinion of psychologist Dr. Sophia Moskalenko, who has generally opined that the Flynns are not QAnon followers because they deny being so.

A.     **Dr. Moskalenko's Expert and Rebuttal Reports**

On June 5, 2023, the Flynns served the Report of Dr. Moskalenko, a purported expert "on violent extremism and the psychology of radicalization." Bolger Decl. Ex. 114 ("Report") at 4. Dr. Moskalenko has never testified as an expert at trial or by deposition in any case in the previous four years. Report at 7; Tr. at 339:16-20. Dr. Moskalenko includes her credentials and qualifications in her Report, one of which is her publications discussing QAnon, including a book which she co-authored entitled *Pastels and Pedophiles: Inside the Mind of QAnon* (Bolger Decl. Ex. 8 ("Book")).[1] Notably, in her Book, Dr. Moskalenko relied favorably upon the CNN Report at-issue in this action. Tr. at 49:5-13.

Despite this, in her Report, Dr. Moskalenko purports to opine that, "[i]n light of the District Court's rulings" at the motion to dismiss stage: (1) the Flynns were not "QAnon followers" on February 4, 2021; and (2) in the full context of the July 4, 2020, backyard barbeque, recitation of the phrase "Where We Go One, We Go All," was not intended to signify support for QAnon. Report at 4. Dr. Moskalenko explains that in reaching that conclusion, she relied on a limited amount of data hand-selected by the Flynns. But she did not identify or produce those materials, even when asked by CNN's counsel to produce them. Tr. at 30:17-21; 41:1-4.

As to her first opinion, while Dr. Moskalenko concedes the importance of social media to QAnon as it is a "movement that exists almost entirely online," (Report at 8), she nonetheless admits that she has not reviewed the "voluminous social media data/files" produced by the Plaintiffs. *Id.* at 7. She then opines that she "did not find evidence that the Flynns were QAnon followers." *Id.* at 11.

---

[1] CNN's request for leave to file the hardcopy Book conventionally was granted on October 23, 2023. ECF Doc. No. 176.

As to her second opinion, Dr. Moskalenko admits in her Report that "it is impossible to determine the Flynn[s'] intentions behind reciting the words 'where we go one we go all' at their backyard barbeque," but claimed to "see no evidence that their recitation of those words was meant as a pledge to QAnon."  Report at 12.  At the same time she conceded—as she must—that "[a] believer in QAnon conspiracy theories and a follower of QAnon content online, such as Q drops, would recognize the pledge the Flynns recited at their backyard barbeque as including QAnon content."  *Id.*  But she "[took] Jack Flynn's word for it" that his recitation of it was not a pledge to QAnon.  *Id.* at 163:7-9.  Thus, she concluded that "[i]n the absence of evidence of the Flynns' beliefs in QAnon conspiracy theories, the only parsimonious interpretation of the intentions behind their utterance is their desire to express patriotism and family unity, not their allegiance to QAnon."  Report at 12.

Dr. Moskalenko served a Rebuttal Report on June 20, 2023 (Bolger Decl. Ex. 115 "Rebuttal").  Her Rebuttal Report makes a number of baseless assertions, but, in relevant part, she claims that "[t]here are a number of well-validated ways to measure beliefs.  Perhaps the most common way to measure beliefs is through *a public opinion poll or a survey*."  Rebuttal at 9 (emphasis in original).  She also claims that another way to quantitatively assess beliefs in QAnon is through structured or semi-structured interviews.  *Id.* at 11.  Nonetheless, Dr. Moskalenko admits to having done neither as it relates to the Flynns.

### B.   Dr. Moskalenko's Deposition Further Undermines Her Reports

In her deposition, Dr. Moskalenko confirmed that there were certain methodologies she routinely employed in measuring beliefs, such as surveys, interviews, polling, and case studies.  Tr. at 30:23-32:3.  But she admitted she employed none of these methods in rendering her opinions about the Flynns' beliefs.  *Id.* at 35:17-20; 43:5-16; 120:17-19; 181:2-7.  She did not conduct any surveys as part of her work in this case.  *Id.* at 35:17-20; 120:13-19.  Nor did she design a survey

or interview the Flynns (or anyone else) to assess the Flynns' beliefs. *Id.* at 43:5-11; 182:9-184:19; 330:23-332:4.  Instead, she equated reading the Flynns' deposition transcripts to conducting and coding their interviews, despite the fact that she was not the person designing or asking the questions. *Id.* at 182:19-184:6; 325:8-11.

Dr. Moskalenko also did not rely on any industry or third-party data in her evaluation process.  And when asked why she was offering a "parsimonious interpretation," she testified:

> A: Because I didn't have a chance to interview Jack and Leslie Flynn.  I didn't know them personally.  **I didn't have all the information available in the universe to support or not support my opinion.  And, so, I cannot offer a fully 100-percent informed opinion.**  Parsimonious opinion is the only one available to me, based on the availability of information to make it.

*Id.* at 43:5-16 (emphasis added).

She also testified that her opinions were shaped by what the Flynns provided to her, specifically testifying she simply relied on Plaintiffs' own assertions that they are not QAnon supporters and only reviewed pleadings, some deposition transcripts, and exhibits provided to her by Plaintiffs' counsel. *Id.* at 24:15-28:19.  She did not review or request any documents produced by CNN or any other party in this matter. *Id.* at 38:9-39:23.  Dr. Moskalenko also admitted to having several gaps in her knowledge, including that she "ha[s] not reviewed probably a vast majority of Jack Flynn's digital footprint" because she has "only reviewed exhibits that Mr. Biss provided to me." Tr. at 166:17-167:4.

Dr. Moskalenko's deposition testimony is also replete with testimony undercutting her opinion that "the Flynns were not adherents to the QAnon belief system."  Report at 11.  For instance, she agreed that because "QAnon is a la carte," there is no "formula for how you indicate QAnon belief."  Tr. at 203:9-15.  She agreed that "'Where We Go One, We Go All' is a key catch phrase in the QAnon movement," and admitted she was "aware [that the QAnon Oath] came from

Q-drop." *Id.* at 185:10-12; 309:13-17.  She also agreed that the Flynns were "affiliated" with QAnon by the media reports on the Oath Video in early July 2020.  *Id.* at 218:19-219:17.  Dr. Moskalenko further agreed that Jack Flynn "used QAnon hashtags, shared material directly referencing Q-drops, and, in particular, 'Where We Go One, We Go All,' or its abbreviation, 'WWG1WGA,'" and that these QAnon references, hashtags, and phrases "are part of his Twitter feed." *Id.* at 283:18-284:11; 288:5-20.  Finally, when asked whether "holding a sign that said, 'Q sent me' would be an indication that you were signaling that you were part of the Q community," something which Jack Flynn did, she agreed.  *Id.* at 66:16-20.  Nonetheless, Dr. Moskalenko determined that, after her limited review of materials selectively provided to her by the Flynns, she simply felt that Jack and Leslie "were not adherents to the QAnon belief system" because it was the "more reasonable" explanation to her—not because she employed any testable methodology to reach that opinion.  Report at 11; Tr. at 248:16-249:18.

## ARGUMENT

This Court should exclude Dr. Moskalenko's opinions.  Federal Rule of Evidence 702, which governs the admissibility of expert testimony, provides that a witness who is qualified as an expert may testify if:

> "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case."

*Id.*  Rule 702 "assigns to district courts the gatekeeper function" in ensuring that any and all expert testimony is "not only relevant, but reliable."  *Restivo v. Hessemann*, 846 F.3d 547, 575 (2d Cir.

2017) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). "This 'gatekeeping' function applies whether the expert testimony is based on scientific, technical, or 'other specialized' knowledge." *Pac. Life Ins. Co. v. Bank of New York Mellon*, 571 F. Supp. 3d 106, 112 (S.D.N.Y. 2021) (citation omitted). The Court must ensure that an expert, "whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Ismael v. Charles*, 2020 WL 4003291, at *14 (S.D.N.Y. July 15, 2020) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

When applying Rule 702, courts in this Circuit frequently distill *Daubert* down to a three-part test that requires the proponent of expert evidence to show "that (1) the expert is qualified; (2) the proposed opinion is based on reliable data and methodology; and (3) the proposed testimony would be helpful to the trier of fact." *Abelsayed v. N.Y. Univ.*, 2023 WL 4705999, at *4 (S.D.N.Y. July 24, 2023) (quoting *Valelly v. Lynch*, 2023 WL 2918982, at *4 (S.D.N.Y. Apr. 12, 2023)). The proponent of expert testimony has the burden of establishing "by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied." *Kewazinga Corp. v. Microsoft Corp.*, 2021 WL 4066597, at *1 (S.D.N.Y. Sept. 1, 2021) (Woods, J.) (quoting *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007)).

Finally, as with all other evidence, expert testimony is also subject to Federal Rule of Evidence 403, and courts retain discretion to "determine whether the expert acted reasonably in making assumptions of fact upon which he would base his testimony." *Daniels v. City of New York*, 2018 WL 5919307, at *4 (S.D.N.Y. Nov. 13, 2018). The Flynns cannot carry this burden.

# I.  DR. MOSKALENKO'S OPINIONS ARE UNREALIABLE AND BASED ON INADEQUATE METHODOLOGY

First, Dr. Moskalenko's opinions fall significantly short of the required standards of reliability.  In determining the reliability of an expert's methodology, a court must ensure that the expert's testimony both "rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597.  "[A]n expert opinion requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion."  *Pac. Life Ins. Co.*, 571 F. Supp. 3d at 113 (quoting *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006)); *see also Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) (court must "rigorous[ly] examin[e]" the "the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand").  *Tardif v. City of New York*, 2022 WL 2195332, at *2 (S.D.N.Y. June 17, 2022) (quoting *Amorgianos*, 303 F.3d at 265) (a court should consider whether the testimony is "grounded on sufficient facts or data" and the "product of reliable principles and methods," and whether the expert has "applied the principles and methods reliably to the *facts of the case*.") (emphasis added).  Dr. Moskalenko's proffered expert opinion fails on all these grounds.

Specifically, Dr. Moskalenko in her Rebuttal Report identifies two methodologies to measure QAnon belief: (1) "through a public opinion poll or a survey"; and (2) "through structured or semi-structured interviews . . .  [which] are then coded for markers of belief."  Rebuttal at 9, 11.  But she employed *none* of these methodologies in rendering her proffered opinions that the Flynns do not support QAnon.  Tr. at 35:17-20; 43:5-11; 119:21-120:19; 182:9-184:19; 330:23-332:4.  Because she admits that she did not use her own suggested methodology to measure the Flynns QAnon beliefs, her opinion must be excluded pursuant to Federal Rules of Evidence Rule 702 and *Daubert*.  In fact, Dr. Moskalenko admitted that her opinions were unreliable because she said she

"didn't have all the information available in the universe to support or not support [her] opinion. And, so, [she] cannot offer a fully 100-percent informed opinion." *Id.* at 43:5-16. This Court need not look any further to strike Dr. Moskalenko's Report.

For the same reason, Dr. Moskalenko's opinions are not testable. *Gwinn v. Laird Superfood, Inc.*, 2023 WL 5827634, at *4 (S.D.N.Y. Sept. 8, 2023) (excluding expert who fell short of the necessary intellectual rigor by failing to provide "academic or scientific support for the method he employed"). It boils down to an assertion that she believes the Flynns when they say they are not QAnon supporters.

Finally, her opinions are unreliable because they are based on speculation. *See Pac. Life Ins. Co.*, 571 F. Supp. 3d at 113 (expert testimony must rest on "knowledge," a "term that connotes more than subjective belief or unsupported speculation") (citation omitted); *In re Zyprexa Prods. Liab. Litig.*, 2009 WL 1357236, at *2 (E.D.N.Y. May 12, 2009) ("Subjective or intuitive guesswork, as well as testimony that is insufficiently connected to the facts of the case, are grounds for rejection of a proffered expert's testimony."). Dr. Moskalenko admits she:

- did not evaluate the Flynns' social media content beyond what was provided to her by the Flynns' counsel;

- did not seek any objective support for any opinions she reached (*i.e.*, no interviews, no third-party publications, no surveys, no industry practices); and

- did not refer to or append any exhibits to her Reports, despite CNN's counsel's request for the production of all documents she relied upon in reaching her opinions. Tr. at 30:17-21; 42:1-4.

Finally, she admitted that further information would change her opinions (*Id.* at 167:15-21) but did not seek it out.

Put simply, Dr. Moskalenko entirely failed to use any methodology, despite admitting she was aware of one, in determining whether the Flynns were QAnon supporters. Where, as here, there is "simply too great an analytical gap between the data and the opinion proffered," and the opinion is "connected to the [facts] only by the *ipse dixit* of the expert," exclusion is required. *Tardif*, 2022 WL 2195332, at *2; *see also Est. of Jaquez v. City of New York*, 104 F. Supp. 3d 414, 431 (S.D.N.Y. 2015) (purely speculative, "conclusory," and "classic *ipse dixit*" expert opinion must be excluded).

## II.  DR. MOSKALENKO'S OPINIONS WILL NOT BE HELPFUL TO THE JURY

Dr. Moskalenko's opinions should also be excluded as unhelpful. Expert testimony must be helpful to the jury by providing a substantiated framework through which the jury is better able to understand the implications of the fact evidence being presented to it. Such testimony is unhelpful to a jury if it is irrelevant to the facts of the case or if it offers nothing more than "the expert['s] understanding[] of the law and the parties' factual narratives." *Town & Country Linen Corp. v. Ingenious Designs LLC*,  2022 WL 2757643, at *3 (S.D.N.Y. July 14, 2022); *Chen-Oster v. Goldman, Sachs & Co.*, 2022 WL 814074, at *3 (S.D.N.Y. Mar. 17, 2022). As a corollary, the opinion must also fit the facts of the case, otherwise it is also subject to exclusion. *Daubert*, 509 U.S. at 591; *see also Donnelly v. Ford Motor Co.*, 80 F. Supp. 2d 45, 52 (E.D.N.Y. 1999) (excluding expert's opinion where "it [did] not fit the facts of th[e] case").

Where an expert becomes a "vehicle for a factual narrative that simply accumulates and puts together pieces of a factual story" it must be stricken because "mere narration fails to fulfill *Daubert's* most basic requirements." *Travelers Indem. Co. v. Northrop Grumman Corp.*, 2014 WL 464769, at *3 (S.D.N.Y. Jan. 28, 2019); *see also Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 468-69 (S.D.N.Y. 2005) (holding that "[t]o the extent that [the expert] is simply rehashing otherwise admissible evidence about which he has no personal knowledge . . .

10

[it] is inadmissible" because "an expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence").  And here, Dr. Moskalenko was explicit that the sole basis for her testimony was the information the Flynn family provided to her. Her opinion, therefore, is provided for the sole purpose of approving the factual narrative advanced by the Flynns about the truth of the statements.  In such a circumstance, *Daubert* forbids Dr. Moskalenko from testifying for the simple reason that her testimony would merely put an expert's seal of approval on a party's fact evidence and unfairly bolster it.  Instead, the Flynns can argue it to the jury if they get there during counsel's closing argument.

Finally, Dr. Moskalenko's opinions are unhelpful because they are confusing.  *Joffe v. King & Spalding LLP*, 2019 WL 4673554, at *18 (S.D.N.Y. Sept. 24, 2019) (granting motion to exclude where proffered expert opinion was "only minimally probative and likely to be highly distracting and confusing to the jury").  Specifically, her testimony, prior writings, and Report take wholly inconsistent positions on core conclusions that would only confuse and not assist the jury.

Perhaps the most blatant contradiction in Dr. Moskalenko's proffered expert opinion is her conflicting characterizations of the Oath Video.  In her Book, she states that "General Flynn himself ***pledged allegiance to QAnon*** on July 4, 2020, in which he added the phrase to the standard oath of office 'Where we go one, we go all.'  Flynn then posted the video to Facebook, Twitter, and other platforms ensuring that his oath of allegiance went viral."  Book at 20-21 (emphasis added).  That is *exactly* the same video and the same behavior Jack engaged in (Leslie did not post a video but did everything else).  Yet, in her Report, she claims that when Jack and Leslie recited the same oath standing next to General Flynn she "see[s] no evidence that their recitation of those words was meant as a pledge to QAnon."  Report at 12.  When asked at her deposition what was the difference between what General Flynn and Jack Flynn did, such that former's actions could

be pledging allegiance to QAnon and the latter's actions not a pledge at all—all she could articulate was that she took "Jack Flynn's word for it." Tr. at 163:7-13.

Dr. Moskalenko is similarly contradictory when opining about the meaning of the phrase, "Where We Go One, We Go All." In her Book, she refers to the phrase and its abbreviation "WWG1WGA" as "*the QAnon pledge*" or the "*Q slogan[]*." Book at 93, 160 (emphasis added). The Book explains that "QAnon influencers on social media . . . have disseminated the falsehood that 'where we go one, we go all' (WWG1WGA) is inscribed on the bell on John F. Kennedy's sailboat. They even have a screenshot. This is blatantly untrue. In fact, the image is a still from the film White Squall (1996), starring Jeff Bridges." *Id.* at 186. Dr. Moskalenko even goes so far as to debunk this QAnon theory in her Book, stating that "[t]here is no inscription on the bell (in fact there is no bell). We checked." *Id.* at 21.

Despite this thorough explanation in her Book, however, Dr. Moskalenko's Report claims, in direct contradiction, that "[t]he words 'where we go one, we go all' make no reference to QAnon or to any QAnon-associated beliefs," in concluding that the Flynns used the phrase for reasons unrelated to QAnon. Report at 12. She goes so far as to minimize the phrase's ties to QAnon by claiming in her Report that it is "a catchy phrase with a nice ring to it" and "a call to unity and mutual support." *Id.* Yet, in her deposition, she testified that, as of July 4, 2020, and indeed up until the night before her deposition, she admitted that she was unaware of any usage of the phrase "Where We Go One, We Go All" outside of the QAnon movement. Tr. at 129:8-130:11.

Dr. Moskalenko further acknowledges in her Book that General Flynn was affiliated with and profited from QAnon supporters, most notably through fundraising for his legal defense fund. She observed that "[t]he reason why people might suspect that General Flynn was involved with Q is because by 2019, *most QAnon-related posts* on the encrypted Telegram, the right-wing social

media platform Parler, or on other sites **included a (now disabled) link to Flynn's legal defense fund**." Book at 20 (emphasis added).  Further, she identified General Flynn as an "influencer and high profile conspiracist" who "**made a lot of money selling Q-branded items** . . . ."  *Id.* at 44-45 (emphasis added).  Yet, her Report completely ignores these crucial facts, omitting them entirely from her analysis.  When asked at her deposition why they were not included in the Report, she testified that she had a "limited" dataset and never asked to see any additional documents or information (Tr. at 183:21-184:6), including documents concerning the Flynn family selling Q-branded merchandise with profits benefitting General Flynn's legal defense fund.

Dr. Moskalenko's opinions here contradict the opinions she has previously publicly avowed.  They are too distracting and confusing to be helpful and this Court should exclude them on this basis, as well.

## CONCLUSION

For the foregoing reasons, CNN requests that the Court enter an order excluding the proffered expert report, rebuttal expert report, deposition testimony, and any trial testimony of Dr. Moskalenko from being considered at summary judgment and at trial.

Dated: New York, New York
     October 27, 2023                         Respectfully submitted,


                                              DAVIS WRIGHT TREMAINE LLP

                                              By: */s/ Katherine M. Bolger*
                                              Katherine M. Bolger (N.Y. Bar No. 2976868)
                                              Meenakshi Krishnan (*pro hac vice*)
                                              Lindsey B. Cherner (N.Y. Bar No. 5571534)
                                              Sam F. Cate-Gumpert (*pro hac vice*)
                                              1251 Avenue of the Americas, 21st Floor
                                              New York, NY 10020
                                              Telephone: (212) 489-8230

katebolger@dwt.com
meenakshikrishnan@dwt.com
lindseycherner@dwt.com
samcategumpert@dwt.com

*Attorneys for Defendant Cable News Network, Inc.*

14

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on the 27th day of October, 2023, the foregoing was filed electronically through the Court's CM/ECF system.  Notice of this filing will be sent by operation of the Court's CM/EF system to all parties of record.

<u>*/s/ Katherine M. Bolger*</u>
Katherine M. Bolger
