of the proceeding would have been different.'" *United States v. Sitzmann*, 893 F.3d 811, 826 (D.C. Cir. 2018) (quoting *Bagley*, 473 U.S. at 682). "The defendant bears the burden of showing a reasonable probability of a different outcome." *United States v. Gale*, 314 F.3d 1, 4 (D.C. Cir. 2003) (citing *Strickler*, 527 U.S. at 291).

**IV.   Analysis**

Mr. Flynn moves to compel the production of alleged *Brady* material under several theories, claiming that newly discovered evidence and the government's suppression of evidence will exonerate him. *See* Def.'s Br., ECF No. 109 at 4, 12. Mr. Flynn contends that "[t]he only way to achieve justice in this case is to provide transparency and the full disclosure of all information relevant to the defense of Mr. Flynn." Def.'s Mot., ECF No. 111 at 9. Mr. Flynn accuses the government of suppressing certain information and alleges improprieties regarding the circumstances leading up to his guilty plea— including allegations of misconduct by the FBI, DOJ, and the Special Counsel's Office—that, in his view, call into question the entire investigation, raise ethical concerns, warrant findings of civil contempt, and demand dismissal. *See* Def.'s Br., ECF No. 109 at 4-17; *see also* Def.'s Reply, ECF No. 134 at 2-5. Mr. Flynn, however, fails to explain how most of the requested information that the government has not already

16

provided to him is relevant and material to his underlying offense—willfully and knowingly making materially false statements and omissions to the FBI, in violation of 18 U.S.C. § 1001(a)(2)—or to his sentencing. *See generally* Def.'s Br., ECF No. 109 at 4-17.

The Court first considers Mr. Flynn's requests and the parties' arguments, then analyzes Mr. Flynn's request for classified information, and concludes that Mr. Flynn has failed to establish a single *Brady* violation. Before turning to the specific requests, the Court will address the ethical concerns with Mr. Flynn's brief and Mr. Flynn's misapplication of *Brady* and its progeny.

### A. Ethical Concerns with Mr. Flynn's Brief

The Court notes that Mr. Flynn's brief in support of his first *Brady* motion lifted verbatim portions from a source without attribution. *Compare* Def.'s Br., ECF No. 109 at 11-12, 15-16, 15 n.21, *with* Brief of the New York Council of Defense Lawyers et al. as Amici Curiae Supporting Petitioner, *Brown v. United States*, 566 U.S. 970 (2012) (No. 11-783), 2012 WL 242906 at *5-6, *8, *12-13, *12 n.6. In a footnote, Mr. Flynn's brief merely provides a hyperlink to the "excellent briefing by Amicus [sic] in support of the Petition for Writ of Certiorari in Brown v. United States." Def.'s Br., ECF No. 109 at 16 n.22.

17

The District of Columbia Rules of Professional Conduct
apply to the proceedings in this Court. *See* LCrR 57.26. Rule
8.4(c) provides that "[i]t is professional misconduct for a
lawyer to . . . [e]ngage in conduct involving dishonesty, fraud,
deceit, or misrepresentation." D.C. Rules of Prof'l Conduct R.
8.4(c); *see In re Ayeni*, 822 A.2d 420, 421 (D.C. 2003) (per
curiam) (lawyer's plagiarized brief violated Rule 8.4(c)).
"[C]itation to authority is absolutely required when language is
borrowed." *United States v. Bowen*, 194 F. App'x 393, 402 n.3
(6th Cir. 2006); *accord* LCrR 47(a). "The [C]ourt expects counsel
to fully comply with this [C]ourt's rules and submit work
product befitting of pleadings [and briefs] in a federal court."
*Kilburn v. Republic of Iran*, 441 F. Supp. 2d 74, 77 n.2 (D.D.C.
2006).

### B. Mr. Flynn Misconstrues *Brady* and its Progeny

Mr. Flynn misconstrues *Brady* and its progeny in two
fundamental ways. First, Mr. Flynn asserts that he was "entitled
to all the *Brady* evidence in the government's possession well
before November 2017." Def.'s Reply, ECF No. 133 at 24. The
government responds that "*Brady* imposes no such requirement for
uncharged individuals." Gov't's Surreply, ECF No. 132 at 2.
Mr. Flynn cites no controlling precedent holding that an
uncharged individual is entitled to *Brady* evidence during an
ongoing criminal investigation. *See* Def.'s Sur-Surreply, ECF No.

135 at 1; *see also* Gov't's Surreply, ECF No. 132 at 2. This Court's Standing *Brady* Order requires the government to produce any evidence in its possession that is favorable to the defendant and material to either the defendant's guilt or punishment, Order, ECF No. 20 at 1-4, notwithstanding Mr. Flynn's waiver of his right to any further discovery or disclosures of information, *see* Plea Agreement, ECF No. 3 at 6 ¶ 9(C). Contrary to Mr. Flynn's assertion, however, "[t]he holding in *Brady v. Maryland* requires disclosure only of evidence that is both favorable to the *accused* and 'material either to guilt or to punishment.'" *Bagley*, 473 U.S. at 674 (quoting *Brady*, 373 U.S. at 87) (emphasis added); *cf. D'Angio v. United States*, No. 3:07-CV-474, 2007 WL 9757556, at *4 (M.D. Pa. Nov. 6, 2007) ("Premature disclosure of *Brady* material could impede and/or frustrate a federal criminal investigation.").[5] Accordingly, the

---

[5] Mr. Flynn cites *United States v. Nelson*, 979 F. Supp. 2d 123, 135-36 (D.D.C. 2013) in which the court held that a guilty plea was not voluntary and knowing because the prosecution suppressed exculpatory evidence before the defendant pled guilty. Def.'s Sur-Surreply, ECF No. 135 at 13-14. Consistent with *Nelson*, this Court's Standing *Brady* Order requires the government to "produc[e], during plea negotiations, any exculpatory evidence in the government's possession." Order, ECF No. 20 at 2-3 (footnote omitted). *Nelson*, however, lends no support to Mr. Flynn's position that he was entitled to *Brady* evidence before he was formally charged in this case. Moreover, Mr. Flynn does not deny that the government provided him with documents before he signed the Plea Agreement, and Mr. Flynn and defense counsel participated in five voluntary interviews with the government in November 2017. *See* Gov't's Surreply, ECF No. 132 at 1-2, 3 n.2; *see generally* Def.'s Sur-Surreply, ECF No. 135 at 13-14.

Court agrees with the government that *Brady* and its progeny does not require the disclosure of exculpatory or impeachment material to an uncharged individual during an ongoing criminal investigation.

Next, Mr. Flynn claims that he is entitled to inculpatory evidence "to evaluate the government's allegations against him and to determine how to proceed." Def.'s Br., ECF No. 109 at 7. Under *Brady*, however, "the Government has no duty to disclose evidence that is neutral, speculative, or inculpatory, or evidence that is available to the defense from other sources." *United States v. Pendleton*, 832 F.3d 934, 940 (8th Cir. 2016); *cf. United States v. Martinez*, 764 F. Supp. 2d 166, 169 (D.D.C. 2011) (observing that "a defendant only has a right to receive from the government exculpatory information, not inculpatory information").

The government's *Brady* obligations are separate and distinct from its obligations under Rule 16 of the Federal Rules of Criminal Procedure, *see* Fed. R. Crim. P. 16, which mandates the disclosure of any evidence that is material to the preparation of a defense. *United States v. Marshall*, 132 F.3d 63, 67 (D.C. Cir. 1998) ("[Rule 16] as written does not compel the conclusion that inculpatory evidence is immune from disclosure."); *cf. United States v. Libby*, 429 F. Supp. 2d 1, 5 (D.D.C. 2006) ("Rule 16 provides for the pre-trial disclosure by

20

the government of [,*inter alia*,] . . . the defendant's oral,

written or recorded statements[.]"). Rule 16 has certain

recognized exceptions, *see United States v. Armstrong*, 517 U.S.

456, 463 (1996) ("[U]nder Rule 16(a)(2), [a defendant] may not

examine Government work product in connection with his case."),

and the Court retains the discretion under Rule 16 to "for good

cause, deny, restrict, or defer discovery or inspection, or

grant other appropriate relief[,]" Fed. R. Crim. P. 16(d)(1).

### C. Mr. Flynn's *Brady* Requests

The Court next considers Mr. Flynn's fifty separate

requests for information in which he seeks multiple documents in

various categories. *See, e.g.*, Def.'s Mot., ECF No. 111 at 3-9;

Def.'s Mot. to Compel Newly Discovered Brady Evid., ECF No. 124

at 1-2; Gov't's Opp'n, ECF No. 122 at 14-17. To evaluate Mr.

Flynn's requests, the Court divides them into six categories,

acknowledging that there is some overlap within certain

categories: (1) information that does not exist; (2) information

that is not within the government's possession; (3) information

that Mr. Flynn concedes he is not entitled to; (4) information

that the government has already provided to Mr. Flynn;

(5) information that is unrelated to the charges against

Mr. Flynn in this case or to his sentencing; and (6) remaining

requests. For ease of reference, the Court has attached an

Appendix to this Memorandum Opinion, which includes the exact

language from Mr. Flynn's requests and the government's responses thereto.

### 1. Information that Does Not Exist

Request 5—"[t]he Flynn 302 dated January 19, 2017, mentioned in the Mueller Report," Def.'s Mot., ECF No. 111 at 4— does not exist as the year of 2017 in the relevant portion of the Mueller Report was a typographical error. *See* Gov't's App. A, ECF No. 122-1 at 2 (clarifying that "January 19, 2017" is a typographical error, and that Mr. Flynn's interview took place on January 19, 2018). Mr. Flynn does not dispute the government's response. *See generally* Def.'s Reply, ECF No. 133 at 5-36.

### 2. Information the Government Does Not Possess

Request 13—"[a]n unredacted copy of all of [former FBI Director] James Comey's testimony before any Congressional committees," Def.'s Mot., ECF No. 111 at 5—is not within the government's possession. *See* Gov't's App. A, ECF No. 122-1 at 3. The government responds that to the extent Mr. Flynn seeks unredacted copies of Director Comey's Congressional testimony after he was fired, the government does not possess them. *Id.* Mr. Flynn does not dispute the government's response. *See generally* Def.'s Reply, ECF No. 133 at 5-36.

22

### 3. Information Mr. Flynn Concedes He Is Not Entitled to

Mr. Flynn concedes the government's responses to Request 39—seeking all communications between DOJ officials regarding the FARA registration for Mr. Flynn and FIG, *see* Def.'s Mot., ECF No. 111 at 7—that DOJ's communications are deliberative in nature and former defense counsel possesses his own notes from his interactions with DOJ, *see, e.g.*, Gov't's App. A, ECF No. 122-1 at 6; Def.'s Reply, ECF No. 133 at 15 n.9 (noting that former counsel had an "extensive meeting" and a "follow-up call" with DOJ).

### 4. Information that Has Already Been Provided

#### a. Requests 18 and 20

Mr. Flynn seeks certain alleged "exculpatory" statements in then-Acting Assistant Attorney General Mary McCord's ("Ms. McCord") FD-302s or interviews, and a January 30, 2017 internal DOJ memorandum exonerating him of being an agent of Russia. *E.g.*, Def.'s Mot., ECF No. 111 at 5-6; Def.'s Reply, ECF No. 133 at 14; Def.'s Ex. 1, ECF No. 133-1 at 2. The government responds—and Mr. Flynn does not dispute—that this information has already been provided to him, Gov't's App. A, ECF No. 122-1 at 4; *see generally* Def.'s Reply, ECF No. 133 at 5-36, and the government notes that the information in the internal DOJ document is irrelevant because Mr. Flynn was not charged with

23

being an agent of Russia, Gov't's App. A, ECF No. 122-1 at 4.

Indeed, "*Brady* only requires disclosure of information *unknown*

to the defendant." *United States v. Derr*, 990 F.2d 1330, 1335

(D.C. Cir. 1993) (emphasis added). This information was known to

Mr. Flynn. *See* Gov't's App. A, ECF No. 122-1 at 4. For that

reason alone, Mr. Flynn has failed to demonstrate that he is

entitled to the requested information.

Nonetheless, the government's response to Request 18

indicates that it has not disclosed *all* of the requested

information in Ms. McCord's FD-302s or interviews because

summaries of the relevant FD-302s and interviews were provided

to Mr. Flynn. *See id*. at 4 ("The government has already provided

[Mr. Flynn] with information from [Ms.] McCord's interview

report that could reasonably be construed as favorable and

material to sentencing."). To the extent he seeks information in

addition to what has already been provided, Mr. Flynn has failed

to establish the first component of his *Brady* claim:

favorability. *See Strickler*, 527 U.S. at 281–82.

"Evidence is favorable to the accused under *Brady* if it has

either exculpatory or impeachment value." *United States v.*

*Sitzmann*, 74 F. Supp. 3d 128, 134 (D.D.C. 2014), *aff'd*, 893 F.3d

811 (D.C. Cir. 2018). Without offering a specific legal argument

as to the exculpatory value of such information, Mr. Flynn

appears to request that information and other documents to

defend against an alleged smear campaign that he is a foreign

agent. *See, e.g.*, Def.'s Mot., ECF No. 111 at 5-6; Def.'s Reply,

ECF No. 133 at 14; Def.'s Reply, ECF No. 134 at 3. The

government argues that Requests 18 and 20 are irrelevant,

immaterial, and not favorable to Mr. Flynn, *see* Gov't's Opp'n,

ECF No. 122 at 15; *see also* Gov't's App. A, ECF No. 122-1 at 6,

because "[t]his case does not involve, and the government does

not ask that the Court consider at sentencing, an allegation

that [Mr. Flynn] was 'an agent of Russia'[,]" Gov't's Opp'n, ECF

No. 122 at 4. Mr. Flynn is entitled to evidence that is

"*relevant* to the punishment to be imposed." *California v.

Trombetta*, 467 U.S. 479, 485 (1984) (emphasis added). Because

the Court agrees that the requested information is irrelevant to

Mr. Flynn's underlying offense and it is not favorable to his

guilt or punishment, the Court need not consider the other two

elements. *See Sitzmann*, 74 F. Supp. 3d at 137 (declining to

consider each element where defendant failed to identify the

favorability element).

### b. Requests 6, 9, 10, 30 and 31

Mr. Flynn seeks all of the Strzok-Page text messages,

information concerning those text messages, and information

concerning the destruction of the Strzok-Page cell phones and

eradication of cell phone data. *See* Def.'s Mot., ECF No. 111 at

4-5, 7.[6] Mr. Flynn requests all of Mr. Strzok's unredacted
electronic communications with various individuals and
government employees regarding Mr. Flynn, as well as
applications under the Foreign Intelligence Surveillance Act
("FISA"), 50 U.S.C. § 1801 *et seq.*, "or any surveillance (legal
or illegal) that would have reached Mr. Flynn's communications."
*Id.* at 5. Citing to the IG's three published reports, *see* Def.'s
Br., ECF No. 109 at 12 n.14, 13 n.15, Mr. Flynn seeks all
evidence concerning the IG's notification to the Special Counsel
about the Strzok-Page text messages, the "gaps" in those text
messages, and the destruction of their cell phones, *see* Def.'s
Mot., ECF No. 111 at 5, 7.

　　Mr. Flynn first argues that the government's "belated"
production of the text messages did not comply with its *Brady*

---

[6] In Request 6, Mr. Flynn asserts that the government should
identify "we" in its October 4, 2018 letter to defense counsel.
Def.'s Mot., ECF No. 111 at 4. The government uses "we" to refer
to itself in its opposition brief, and the Court will assume
that "we" refers to "the government." *See* Gov't's Opp'n, ECF No.
122 at 8. "In the Court's view, 'the government' includes any
and all agencies and departments of the Executive Branch of
the government and their subdivisions." *United States v.
Safavian*, 233 F.R.D. 12, 14 (D.D.C. 2005). In Request 10, Mr.
Flynn asserts that "the prosecutors did not produce a single
text message to the defense until March 13, 2018." Def.'s Mot.,
ECF No. 111 at 5. Mr. Flynn ignores that the government informed
him of the Strzok-Page text messages, including their import,
before he signed the Plea Agreement on November 30, 2017, *see*
Gov't's Opp'n, ECF No. 122 at 8, and the fact that defense
counsel raised no issues with that production at the sentencing
hearing on December 18, 2018, *see* Sentencing Hr'g Tr., ECF No.
103 at 10-11.

obligations because that information was not disclosed in time

for him to use it, *see* Def.'s Br., ECF No. 109 at 12; he then

contends that he could not download certain text messages from

the government's hyperlink, Def.'s Reply, ECF No. 133 at 10; and

he goes on to argue that the government's production was "long

after the actual evidence would have made a material difference"

to him, *id*. Mr. Flynn selectively quotes from a batch of the

text messages, *see id*. at 11-17, and he points to one, dated

January 10, 2017, that states: "Sitting with Bill watching CNN.

A TON more out . . . We're discussing whether, now that this is

out, we can use it as a pretext to go interview some people."

*Id*. at 11. According to Mr. Flynn, the government suppressed

that text message, *id*., the word "pretext" means that the entire

investigation of him had no basis, *id*., and Mr. Strzok admitted

that he had "many meetings" with former FBI Deputy Director

Andrew McCabe ("Mr. McCabe") to decide whether to interview Mr.

Flynn, Def.'s Sur-Surreply, ECF No. 135 at 3 n.3.[7] Mr. Flynn

posits that the "belatedly-disclosed Strzok-Page texts" support

---

[7] The Court notes that Mr. Flynn mischaracterizes the "many
meetings" reference in Mr. Strzok's sworn statement (dated July
26, 2017). *See* Def.'s Ex. 5, ECF No. 133-5 at 4. Mr. Strzok, the
then-FBI Deputy Assistant Director in the Counterintelligence
Division, stated: "I have attended *many meetings* with [Mr.]
McCabe regarding *Russian influence investigations*, including
meetings which discussed whether to interview former National
Security Advisor Michael Flynn and if so, what interview
strategies to use." *Id*. (emphasis added).

his new claim that he was "honest with the agents to the best of
his recollection at the time, and the agents knew it." Def.'s
Reply, ECF No. 133 at 27. Mr. Flynn claims that the government
is "still hid[ing] countless" text messages that are
"exculpatory and material." *Id*. at 10.

The government disagrees. The government notes—and
Mr. Flynn does not challenge—that it "informed [him] about the
existence of the text messages and their import on November 30,
2017" before Mr. Flynn signed the Plea Agreement and pled guilty
on December 1, 2017, and it "later informed [him] that it had
learned there were additional text messages that it did not have
access to at that time[.]" Gov't's Surreply, ECF No. 132 at 9
n.6; *see generally* Def.'s Sur-Surreply, ECF No. 135 at 1-17. On
March 13, 2018, the government produced to Mr. Flynn certain
Strzok-Page text messages after this Court entered the Standing
*Brady* Order and the Protective Order in this case. *See* Gov't's
App. A, ECF No. 122-1 at 3; *see also* Def.'s Mot., ECF No. 111 at
5. Neither does Mr. Flynn dispute that the government provided
him with hard-copy text messages when it became known that those
documents were inaccessible at the hyperlink, *see* Gov't's
Surreply, ECF No. 132 at 9 n.6, nor does Mr. Flynn deny the
government's representation that the text messages are
impeaching of Mr. Strzok rather than exculpatory as to Mr.
Flynn, *see* Gov't's Opp'n, ECF No. 122 at 17. The government

represents that the "CNN" reference in the January 10, 2017 text message concerns a "discussion to conduct interviews based on the public release of a report from Christopher Steele." Gov't's Surreply, ECF No. 132 at 9; *cf.* Mueller Report, ECF No. 79-6 at 14 ("On January 10, 2017, the media reported that [then-FBI Director] Comey had briefed the President-Elect on the Steele reporting[.]").

The Court is not persuaded by Mr. Flynn's arguments. Although there is no exact deadline for the production of *Brady* material, it is a "longstanding constitutional principle that as long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." *United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001).[8] And *Brady* does not extend to information that is not

---

[8] Mr. Flynn relies on *United States v. Pasha*, 797 F.3d 1122, 1139 (D.C. Cir. 2015) and *United States v. Quinn*, 537 F. Supp. 2d 99, 108 (D.D.C. 2008) to support his position that the government failed to produce *Brady* evidence in time for him to use it. *See, e.g.*, Def.'s Reply, ECF No. 133 at 23-24. *Pasha* and *Quinn* are factually distinguishable from this case. In *Quinn*, the court found that the government's actions violated *Brady* for the nondisclosure of information before and after trial that "went to the heart of [the defendant's] defense," 537 F. Supp. 2d at 109, which included failing to: (1) inform the defense that a potential government witness lied about material matters during an investigation; (2) disclose that the government did not intend to call the potential witness as a witness because he was the target of an investigation; and (3) inform the defense about its ongoing plea negotiations with the potential witness before sentencing, *id.* at 108. In *Pasha*, the United States Court of

29

within the government's possession, *see United States v.*
*Pollack*, 534 F.2d 964, 975 (D.C. Cir. 1976), or information that
the government is not aware of, *see United States v. Turner*, 104
F.3d 217, 220 (8th Cir. 1997). Here, the government maintains
that, before the parties entered into the Plea Agreement, it
disclosed to Mr. Flynn the existence of, but not the actual,
Strzok-Page electronic communications of which it was aware at
that time and responded to former defense counsel's questions
regarding those communications. *See, e.g.*, Gov't's Opp'n, ECF
No. 122 at 6; Gov't's App. A, ECF No. 122-1 at 3; Def.'s Ex. 1,
ECF No. 133-1 at 3 (stating that "[l]ate afternoon [on November
30, 2017], prosecutors ma[d]e [a] last minute telephonic
disclosure of electronic communications" and "[Mr.] Flynn
sign[ed] [the] [P]lea [A]greement"). The government provided Mr.
Flynn with the Strzok-Page text messages in its possession in

---

Appeals for the District of Columbia Circuit ("D.C. Circuit")
upheld the district court's finding that there was a *Brady*
violation where "[t]he prosecutor waited over eight months until
the eve of *trial* to reveal [*Brady* evidence]." 797 F.3d at 1133
(emphasis added). The prosecutor in that case "acknowledged to
the District Court that he had violated [DOJ] policy to provide
*Brady* information as soon as he became aware of it." *Id.* at
1127. Nothing of the kind has been acknowledged in this case.
Further, Mr. Flynn does not dispute that the government provided
him with *Brady* material, relevant documents, and information
before and on November 30, 2017. *See* Gov't's Surreply, ECF No.
132 at 3 n.2; *see also* Def.'s Sur-Surreply, ECF No. 135 at 1.
The government made additional productions before Mr. Flynn
reaffirmed his guilty plea in December 2018. *See* Def.'s Ex. 15,
ECF No. 133-15 at 1; *see also* Gov't's Notice of Disc.
Correspondence, ECF No. 123 at 1-2.

March 2018 and October 2018, and at the December 18, 2018
sentencing hearing, both Mr. Flynn and former defense counsel
stated that they had no "concerns that potential *Brady* material
or other relevant material was not provided to [Mr. Flynn]."
Sentencing Hr'g Tr., ECF No. 103 at 10.

Mr. Flynn argues that information in the Strzok-Page text
messages is exculpatory. *See* Def.'s Reply, ECF No. 133 at 10.
Assuming, without deciding, that the Strzok-Page text messages
contain exculpatory material, Mr. Flynn must establish the other
two elements: suppression and materiality. *See United States v.
Pettiford*, 627 F.3d 1223, 1227 (D.C. Cir. 2010)*.* Mr. Flynn
cannot demonstrate that the government suppressed the allegedly
exculpatory material in the Strzok-Page text messages if he had
access to them. *See United States v. Ballestas*, 795 F.3d 138,
150 (D.C. Cir. 2015) ("Because [the petitioner] had access to
[the *Brady* material] 'in time to make effective use of it,' he
[could not have] show[n] that the government suppressed the
document.") (citation omitted). It is uncontested that Mr. Flynn
and former defense counsel were aware of the existence and
import of the text messages before he accepted the plea offer
and before he pled guilty before Judge Contreras. *See* Gov't's
Surreply, ECF No. 132 at 9 n.6. It is also undisputed that Mr.
Flynn confirmed his plea of guilty before he, along with former
defense counsel, confirmed to this Court that they had no

31

"concerns that potential *Brady* material or other relevant
material was not provided to [Mr. Flynn]." Sentencing Hr'g Tr.,
ECF No. 103 at 10. Moreover, assuming, *arguendo*, that the text
messages were exculpatory and suppressed, Mr. Flynn cannot
overcome the materiality threshold for the reasons explained
below. *See Strickler*, 527 U.S. at 296 (concluding that
petitioner "satisfied two of the three components of a
constitutional violation under *Brady*," but petitioner failed to
demonstrate that "there [was] a reasonable probability that his
conviction or sentence would have been different had [those]
materials been disclosed").

Mr. Flynn pled guilty to the underlying offense with
knowledge of: (1) the import of the Strzok-Page text messages,
*see* Gov't's Surreply, ECF No. 132 at 9 n.6; and (2) the IG's
reports concerning the text messages, which were released before
Mr. Flynn's original sentencing hearing in 2018, *see* Def.'s Br.,
ECF No. 109 at 12 n.14. Prior to Mr. Flynn's acceptance of the
Plea Agreement, the government informed Mr. Flynn that Mr.
Strzok said that Mr. Flynn had a "sure demeanor and did not give
any indicators of deception during the interview" and "both
interviewing agents had the impression *at the time* that [Mr.
Flynn] was not lying or did not think he was lying." Gov't's
Opp'n, ECF No. 122 at 16 (emphasis added). Those impressions,
however, do not "exonerate" Mr. Flynn of his crime in this case.

32

*See, e.g.*, Def.'s Ex. 1, ECF No. 133-1 at 1 (Mr. Strzok
described to Ms. Page that Mr. Flynn was "denying it all" during
the January 24, 2017 interview); Def.'s Ex. 12 (Ms. Page's FD-
302), ECF No. 133-12 at 1 (stating that "[i]dications of
deception by [Mr.] Flynn in [the interviewing agents']
interaction with [Mr. Flynn] had been hard to see"); *id.* at 2
(stating that Mr. Strzok's text "'denying it all' pertained to
[Mr.] Flynn's response to questions in his interview as to
whether his conversation with the Russian Ambassador pertained
to sanctions").

The government points out—and Mr. Flynn does not dispute—
that he made false statements to the FBI about his conversations
with the Russian Ambassador, and those same false statements
were repeated to the Vice President of the United States, the
White House Chief of Staff, the White House Press Secretary, and
*The Washington Post*. *See* Gov't's Surreply, ECF No. 132 at 7-8;
*see generally* Def.'s Sur-Surreply, ECF No. 135 at 1-17. As noted
by the government, those high-ranking government officials then
repeated Mr. Flynn's false statements on national television.
Gov't's Surreply, ECF No. 132 at 8-9; *cf.* Def.'s Reply, ECF No.
133 at 14-15. Furthermore, Mr. Flynn received the government's
productions of the actual Strzok-Page text messages after the
entry of the Standing *Brady* Order and before he reaffirmed his
guilty plea to this Court on December 18, 2018. Mr. Flynn

maintained his guilty plea following the government's
disclosures. *See* Gov't's App. A, ECF No. 122-1 at 3. The Court
therefore finds that Mr. Flynn has failed to demonstrate there
is a reasonable probability that, had the government disclosed
the actual Strzok-Page text messages prior to the parties
entering into the Plea Agreement, the disclosure would have led
to a different result. Accordingly, Mr. Flynn has failed to
establish all three elements of a *Brady* violation as to these
requests.

### c. Requests 2, 19, 40, a-g, and i

Mr. Flynn requests the disclosure of the FBI's discussions
about conducting the January 24, 2017 interview, the debriefings
from the interviewing FBI agents after the interview, the
interviewing agents' notes from the interview, and other
information pertaining to the interview and investigation. *See*
Def.'s Mot., ECF No. 111 at 4, 6, 8-9. Specifically, Request 2
seeks "[t]he original draft of Mr. Flynn's 302 and 1A-file, and
any FBI document that identifies everyone who had possession of
it (parts of which may have been leaked to the press, but the
full original has never been produced)." *Id.* at 4. Request 19
seeks "[a]ny [Ms.] Yates 302s or other notes that concern Mr.
Flynn, including treatment of her meetings with FBI Agents on
January 24 and 25, 2017, her meetings with anyone in the White
House, and the draft 302 of the Flynn interview on January 24

34

she reviewed or was read into." *Id.* at 6. Request 40 seeks "[u]nredacted notes of the [REDACTED] and [Mr.] Strzok from the interview of Mr. Flynn on January 24, 2017." *Id.* at 8. Finally, Mr. Flynn requests "the unredacted 302 reports and any notes or recordings in any form of the following meetings or interviews":

> a. [Mr.] McCabe, regarding Mr. Flynn, his calls with Ambassador Kislyak, members of the White House discussing those, and his discussions, planning session, and debriefing session with agents before and after the Flynn interview on January 24, 2017.

> b. Recordings, notes, and memoranda by any and all persons who participated in the planning session for the interview of Mr. Flynn, at which it was decided that the agents would not inform him that it was an actual interview or that he was under investigation—so as to keep him "relaxed.". (These persons include David Bowdich, Jen Boone, [REDACTED], [Mr.] Strzok, [Ms.] Page, Trish Andersen, and [Mr.] McCabe.)

> c. Recordings, notes, and memoranda by any and all persons who participated in the debriefing sessions following the interview of Mr. Flynn, including [REDACTED], [Mr.] Strzok, Jon Moffa, [Mr.] McCabe, Bill Priestap, David Bowdich, [REDACTED], Trish Andersen, and James Comey.

> d. Former Principal Associate Deputy Attorney General Matthew Axelrod regarding Mr. Flynn.

> e. [Ms.] McCord regarding the FBI's decision not to give Mr. Flynn a Title 18, Section 1001 warning, and the decision not to re-interview him despite the general practice of the FBI to give subjects that opportunity.

> f. [Ms.] Yates, regarding her opinion that the January 24, 2017, surprise interview of Mr. Flynn was problematic and her lack of clarity of the FBI's purpose in investigating Mr.

Flynn.

g. White House and transition officials
regarding Mr. Flynn's conversations with
Ambassador Kislyak.

\*    \*    \*

i. The entire report of the SCO's interview of
James Comey, provided *in camera* to the Court,
but only summarized to defense counsel in the
SCO's letter of December 14, 2018.

*Id*. at 8-9. Mr. Flynn requests this information to "defeat the
factual basis for the plea." Def.'s Reply, ECF No. 133 at 27.

The government responds that Mr. Flynn has already received
the relevant information about the pre-interview discussions and
the post-interview debriefs, including: (1) the interviewing
agents' interview reports; (2) Mr. McCabe's memorandum
describing his telephone conversation with Mr. Flynn on January
24, 2017; (3) the interviewing agents' notes; (4) drafts of the
January 24, 2017 interview reports in its possession; and
(5) summaries of the interviews from the FBI and DOJ officials
who participated in the discussions and debriefs. *E.g.*, Gov't's
Opp'n, ECF No. 122 at 15; Gov't's App. A, ECF No. 122-1 at 2, 4,
6-7. The government argues that any communications between the
FBI and DOJ before and after Mr. Flynn's January 24, 2017 FBI
interview has no bearing on his false statements to the FBI, and
the discussions are not favorable and material to sentencing.
Gov't's Opp'n, ECF No. 122 at 16. The Court agrees.

With respect to Request 2, the government has provided Mr.
Flynn with "the January 24 interview report, all drafts of the
interview report, and the handwritten notes of the interviewing
agents" and the "reports of interviews with the second
interviewing agent, who attest[ed] to the accuracy of the final
January 24 interview report." Gov't's App. A, ECF No. 122-1 at
2. As to Request 19, the government has already provided Mr.
Flynn with "information from [Ms.] Yates' interview report that
could reasonably be construed as favorable and material to
sentencing" and "all drafts in its possession of the January 24
interview." *Id.* at 4. The only exception to the government's
disclosures with regard to Request 19 is the information
pertaining to Ms. Yates' meetings with persons in the White
House, which is irrelevant to Mr. Flynn's charges in this case
or his sentencing. *Id.* Indeed, the Supreme Court has held that
"the Constitution, in respect to a defendant's awareness of
relevant circumstances, does not require complete knowledge of
the relevant circumstances." *Ruiz*, 536 U.S. at 630.

With respect to Request 40, the government has provided Mr.
Flynn with "the interviewing agents' handwritten notes of the
January 24 interview," and "[t]he limited redactions of those
notes do not refer to information that would be favorable and
material to sentencing." Gov't's App. A, ECF No. 122-1 at 6. As
to Requests a through f and Request i, the government has

37

provided Mr. Flynn with: (a) "information from interviews with
[Mr.] McCabe that could reasonably be construed as favorable and
material to sentencing"; (b) "information that could reasonably
be construed as favorable and material to sentencing about such
pre-interview discussions, including the language quoted in the
request"; (c) "information about such post-interview debriefings
that could reasonably be construed as favorable and material to
sentencing"; (d) "information from former [Principal] Associate
Deputy Attorney General Matthew Axelrod's interview report that
could reasonably be construed as favorable and material to
sentencing"; (e) "information from [Ms.] McCord's interview
report that could reasonably be construed as favorable and
material to sentencing, including the information quoted in the
request"; (f) "information from [Ms.] Yates' interview report
that could reasonably be construed as favorable and material to
sentencing, including the information quoted in the request";
and (i) "information from the interview of Director Comey dated
November 15, 2017, that could reasonably be construed as
favorable and material to sentencing." *Id.* at 6-7.

Based on an *in camera* review of the government's sealed
submissions to the Court on December 14, 2018, *see, e.g.*, Min.
Order of Dec. 17, 2018; Gov't's Opp'n, ECF No. 122 at 16 n.8;
Gov't's Notice of Disc. Correspondence, ECF No. 123 at 3, the
Court agrees with the government that the requested information

38

in Requests a through f and Request i has already been provided

to Mr. Flynn in the form of appropriate summaries, *see* Gov't's

App. A, ECF No. 122-1 at 6-7. As to Request g, which seeks the

unredacted FD-302s and notes or recordings of the White House

and transition officials regarding Mr. Flynn's conversations

with the Russian Ambassador, the Court agrees with the

government that to the extent it exists the requested

information is inculpatory and not helpful to Mr. Flynn. *See id.*

at 7.

Unsatisfied with the government's productions, Mr. Flynn

advances several arguments. Mr. Flynn contends that the

interviewing FBI agents' "characterizations" of his statements

in the January 24, 2017 "ambush interview" and their interview

notes "do not support the factual basis" for Mr. Flynn's guilty

plea. Def.'s Reply, ECF No. 133 at 26.[9] He argues that the

interviewing FBI agents' handwritten notes "differ materially

from the 302s" and "there were material alterations to the 302s

---

[9] Mr. Flynn's argument—that Mr. Strzok's handwritten notes do not
appear to have been taken contemporaneously during the January
24, 2017 FBI interview because he was the FBI agent handling the
interview and his notes are more detailed than the other
interviewing agent's notes—is moot. *See* Def.'s Reply, ECF No.
133 at 26-29. The government confirmed that it previously
misidentified the authorship of the agents' handwritten notes
from the January 24, 2017 FBI interview. Gov't's Notice of Disc.
Correspondence, ECF No. 136 at 1. Accordingly, the Court finds
as moot Mr. Flynn's request for Mr. Strzok's handwriting
samples. *See* Def.'s Reply, ECF No. 133 at 29; *see also* Def.'s
Sur-Surreply, ECF No. 135 at 6-7.

to set up the 'false statements'[.]" *Id.* at 20. Acknowledging
that the government provided defense counsel with redacted notes
and summaries of the FBI's interviews, Mr. Flynn contends that
the summaries of certain documents are "insufficient," Def.'s
Br., ECF No. 109 at 13, because the redacted notes and summaries
cannot replace the "actual documents, notes, 302s, and A-1
files" and "other actual documents, notes, emails, texts or
other materials that are exculpatory or might lead to
exculpatory evidence," *id.* at 16. Mr. Flynn further argues that
the interviewing FBI agents' "notes do not even match each
other" and "[t]he notes do not say that he made any false
statements at all." Def.'s Sur-Surreply, ECF No. 135 at 8.

 Mr. Flynn speculates that the government is suppressing the
"original 302" of the January 24, 2017 interview, Def.'s Reply,
ECF No. 133 at 28; he claims that the lead prosecutor "made it
sound like there was only one 302," *id.* at 29; and he makes a
separate request for the FBI to search for the "original 302" in
one of the FBI's databases, *id.* at 28-30. In Mr. Flynn's view,
the "original 302"—if it exists—may reveal that the interviewing
FBI agents wrote in the report "their impressions that [Mr.]
Flynn was being truthful." *Id.* at 28. Mr. Flynn claims that the
FBI destroyed the "original 302" to the extent that it was
stored in the FBI's files. *Id.* at 30. Comparing draft FD-302s of
Mr. Flynn's January 24, 2017 interview to the final version, Mr.

Flynn claims that the FBI manipulated the FD-302 because "substantive changes" were made after reports that Mr. Flynn discussed sanctions with the Russian Ambassador "contrary to what Vice President Pence had said on television previously." *Id.* at 14-15. Mr. Flynn points to the Strzok-Page text messages the night of February 10, 2017 and Ms. Page's edits to certain portions of the draft FD-302 that were "material." Def.'s Sur-Surreply, ECF No. 135 at 8-9.

To the extent Mr. Flynn has not already been provided with the requested information and to the extent the information exists, the Court is not persuaded that Mr. Flynn's arguments demonstrate that he is entitled to the requested information. For starters, the Court agrees with the government that there were no material changes in the interview reports, and that those reports track the interviewing FBI agents' notes. *See, e.g.*, Gov't's Surreply, ECF No. 132 at 4; Def.'s Reply, ECF No. 133 at 20. Mr. Flynn ignores that FBI agents rely on their *notes* and *memory* to draft the interview reports after the completion of an interview. *See United States v. DeLeon*, 323 F. Supp. 3d 1285, 1290 n.4 (D.N.M. 2018) (discussing the drafting process for FD-302s). While handwritten notes may contain verbatim statements, the notes of FBI agents are not verbatim transcripts of the interview. *United States v. Forbes*, No. CRIM.302CR264AHN, 2007 WL 141952, at *3 (D. Conn. Jan. 17, 2007). And persuasive

41

authority holds that the government's production of summaries of
notes and other documents does not constitute a *Brady* violation.
*See, e.g.*, *United States v. Grunewald*, 987 F.2d 531, 535 (8th
Cir. 1993) (finding no Jencks Act or *Brady* violations where the
government produced summaries of handwritten notes instead of
the actual notes); *United States v. Van Brandy*, 726 F.2d 548,
551 (9th Cir. 1984) (holding that the government fulfilled its
*Brady* obligations by producing summaries of the FBI's file
because *Brady* "does not extend to an unfettered access to the
files").

     As an initial matter, the Court notes that the government
has provided Mr. Flynn with the relevant FD-302s and notes
rather than summaries of them. *See, e.g.*, Gov't's Surreply, ECF
No. 132 at 6-7; Gov't's Opp'n, ECF No. 122 at 10, 15; Gov't's
App. A, ECF No. 122-1 at 2; Gov't's Notice of Disc.
Correspondence, ECF No. 123 at 1-3. And the government states
that it will provide Mr. Flynn with the FD-302s of his post-
January 24, 2017 interviews. Gov't's Opp'n, ECF No. 122 at 4
n.1. Having carefully reviewed the interviewing FBI agents'
notes, the draft interview reports, the final version of the FD-
302, and the statements contained therein, the Court agrees with
the government that those documents are "consistent and clear
that [Mr. Flynn] made multiple false statements to the [FBI]
agents about his communications with the Russian Ambassador on

January 24, 2017." Gov't's Surreply, ECF No. 132 at 4-5. The
Court rejects Mr. Flynn's request for additional information
regarding the drafting process for the FD-302s and a search for
the "original 302," *see* Def.'s Sur-Surreply, ECF No. 135 at 8-
10, because the interviewing FBI agents' notes, the draft
interview reports, the final version of the FD-302, and Mr.
Flynn's own admissions of his false statements make clear that
Mr. Flynn made those false statements. Perhaps realizing that
his various arguments would not prevail, Mr. Flynn argues that
his false statements were not material. Def.'s Reply, ECF No.
133 at 31-32. The Court will address the remaining arguments in
turn.

> i. **Mr. Flynn's False Statements Regarding His
>    Request to the Russian Ambassador That Russia
>    Refrain From Escalating the Situation in
>    Response to the U.S. Sanctions**

As to Mr. Flynn's first set of false statements, *see* SOF,
ECF No. 4 at 2-3 ¶ 3, the interviewing FBI agents' handwritten
notes, draft interview reports, and the final FD-302 confirm
that Mr. Flynn falsely stated that he had no recollection about
his request to the Russian Ambassador to refrain from escalating
the situation in response to U.S. sanctions, and that Mr. Flynn
falsely stated that he did not have a long conversation about

that issue.[10] The final version of the FD-302, in relevant part, provides:

> The interviewing agents asked FLYNN if he
> recalled any conversation with KISLYAK in
> which the expulsions were discussed, where
> FLYNN might have encouraged KISLYAK not to
> escalate the situation, to keep the Russian
> response reciprocal, or not to engage in a
> "tit-for-tat." FLYNN responded, "Not really.
> I don't remember. It wasn't, 'Don't do
> anything.'" The U.S. Government's response was
> a total surprise to FLYNN. FLYNN did not know
> about the Persona Non-Grata (PNG) action until
> it was in the media.

> \* \* \*

> The interviewing agents asked FLYNN if he
> recalled any conversation with KISLYAK in
> which KISLYAK told him the Government of
> Russia had taken into account the incoming
> administration's position about the
> expulsions, or where KISLYAK said the
> Government of Russia had responded, or chosen
> to modulate their response, in any way to the
> U.S.'s actions as a result of a request by the
> incoming administration. FLYNN stated it was
> possible that he talked to KISLYAK on the
> issue, but if he did, he did not remember doing
> so.

> \* \* \*

---

[10] The government attached as exhibits to its surreply brief the drafts of the FD-302 from Mr. Flynn's January 24, 2017 FBI interview. Gov't's Ex. 3, ECF No. 132-3 at 2-16. Each draft FD-302 is identified by the unique document numbers on each page: (1) the first draft FD-302 is numbered DOJSCO-700022293 through DOJSCO-700022297, *id*. at 2-6; (2) the second draft FD-302 is numbered DOJSCO-700022303 through DOJSCO-700022307, *id*. at 7-11; and (3) the third draft FD-302 is numbered DOJSCO-700022308 through DOJSCO-700022312, *id*. at 12-16. Mr. Flynn attached the final FD-302 as an exhibit to his reply brief. Def.'s Ex. 11, ECF No. 133-11 at 10-14.

> FLYNN reflected and stated he did not think he
> would have had a conversation with KISLYAK
> about the matter, as he did not know the
> expulsions were coming. FLYNN stated he did
> not have a long drawn out discussion with
> KISLYAK where he would have asked him to
> "don't do something."

Def.'s Ex. 11, ECF No. 133-11 at 14. The interviewing FBI

agents' handwritten notes and draft interview reports provide

ample support for the final FD-302's description of Mr. Flynn's

false statements. *See, e.g.*, Gov't's Ex. 1 (Other FBI Agent's

Notes), ECF No. 132-1 at 4 ("Ø recollection? Not really, I don't

remember. Hey don't do anything"; "Ø long drawn out about don't

do something"); Gov't's Ex. 2 (Mr. Strzok's Notes), ECF No. 132-

2 at 5 ("Spoke on 29th"; "Expectations"; "Surprise"; "No

recollection of that"); Gov't's Ex. 3 (Draft FD-302s), ECF No.

132-3 at 5-6 ("FLYNN was asked . . . if he recalled any

conversation with KISLYAK in which the expulsions were

discussed, where FLYNN might have encouraged KISLYAK to not

escalate the situation, to keep the Russian response reciprocal,

to not engage in a 'tit-for-tat.' FLYNN responded, 'Not really.

I don't remember. It wasn't, 'Don't do anything.' The U.S.

Government response was a total surprise to FLYNN. FLYNN didn't

know about the Persona Non-Grata (PNGs) action it [sic] until it

was in the media."); *id.* at 11 ("FLYNN stated it was possible

that he talked to KISLYAK on the issue, but if he did, he did

not remember doing so"; "FLYNN stated he did not have a long

drawn out discussion with KISLYAK where he would have asked him
to 'don't do something.'"); *id*. at 16 (same).

Mr. Flynn points to an inconsistency between the final FD-
302 and the interviewing FBI agents' notes, *see* Def.'s Reply,
ECF No. 133 at 30-31, as to whether Mr. Flynn remembered making
calls to the Russian Ambassador during his vacation in the
Dominican Republic in late December 2016. *Compare* Def.'s Ex. 11
(Final FD-302), ECF No. 133-11 at 14 ("FLYNN remembered making
four to five calls that day about this issue, but that the
Dominican Republic was a difficult place to make a call as he
kept having connectivity issues."), *with* Gov't's Ex. 1 (Other
FBI Agent's Notes), ECF No. 132-1 at 4 ("I Ø remember making 4-5
calls"; "If I did lousy place to call.") *and* Gov't's Ex. 2 (Mr.
Strzok's Notes), ECF No. 132-2 at 5 ("4-5 calls that day? If so,
don't remember. If so, lousy place to make phone calls").
However, any inconsistency is inconsequential because the SOF
excludes any references to Mr. Flynn's memory of the four or
five calls made from the Dominican Republic. *See generally* SOF,
ECF No. 4 at 1-5.

Accordingly, the Court finds that the notes, draft FD-302s,
and final FD-302 are both consistent and clear that Mr. Flynn
made false statements to the FBI about his communications with
the Russian Ambassador regarding his request that Russia refrain
from escalating the situation in response to the U.S. sanctions

against Russia.

###        ii. **Mr. Flynn's False Statements Regarding His Request That Countries Vote Against or Delay a U.N. Security Council Resolution**

As to Mr. Flynn's second set of false statements, *see* SOF, ECF No. 4 at 4-5 ¶ 4, the handwritten notes, draft FD-302s, and the final FD-302 confirm that Mr. Flynn falsely stated that he did not request certain countries to take any action on Egypt's resolution on Israeli settlements to the U.N. Security Council, that he only asked the countries for their respective positions, and that the Russian Ambassador never described Russia's response to Mr. Flynn's request regarding the resolution. The final FD-302, in pertinent part, states:

> The interviewing agents asked FLYNN if he recalled any discussions with KISLYAK about a United Nations (UN) vote surrounding the issue of Israeli settlements. FLYNN quickly responded, "Yes, good reminder." On the 22nd of December, FLYNN called a litany of countries to include Israel, the UK, Senegal, Egypt, maybe France and maybe Russia/KISLYAK.
>
>         * * *
>
> FLYNN stated he conducted these calls to attempt to get a sense of where countries stood on the UN vote, specifically, whether they intended to vote or abstain. The interviewing agents asked FLYNN if he made any request of KISLYAK to vote in a particular way or take any action. FLYNN stated he did not.
>
>         * * *
>
> FLYNN stated his calls were about asking where countries would stand on a vote, not any

47

> requests of, "hey if you do this." The
> interviewing agents asked FLYNN if he made any
> comment to KISLYAK about voting in a certain
> manner, or slowing down the vote, or if
> KISLYAK described any Russian response to a
> request by FLYNN. FLYNN answered, "No." FLYNN
> stated the conversations were along the lines
> of where do you stand, and what's your
> position. FLYNN heard through other channels
> that Egypt did not like the vote, and believed
> the Egyptians of their own accord delayed the
> vote a day.

Def.'s Ex. 11, ECF No. 133-11 at 12-13. Mr. Flynn's false

statements, as described in the final FD-302, are supported by

the interviewing FBI agents' notes and the draft FD-302s. *See,*

*e.g.*, Gov't's Ex. 1 (Other FBI Agent's Notes), ECF No. 132-1 at

3 ("UN Vote – Settlements. Yes good reminder. Yeah so 22nd

December. Litany Countries get sense where stood on that vote.

UK. Senegal. Egypt, Israel, maybe France. Maybe Kislyak."); *id*.

("Get a sense abstain, veto. This very"; "More where they stand.

I Ø believe we would change anything"; "Only US Abstain. US.

Wasn't hey if you do this it will be that kind of thing, hey

where do you stand;" "Ø please consider voting this way?"; "No.

Where do you stand? What's position."); Gov't's Ex. 2 (Mr.

Strzok's Notes), ECF No. 132-2 at 4 ("That's a good reminder";

"22 Dec UN"; "Egypt"; "Israel"; "Senegal"; "France"; "Called a

bunch"; "UK"; "Don't know if called K maybe I did"; "14 total 5

+ x Need to abstain"; "What is your position"; "No: hey if you

do this"; "Any vote this way, slow down"; "No"; "Appreciate you

reminding me that was another convo"); Gov't's Ex. 3 (Draft FD-
302s), ECF No. 132-3 at 4-5, 9-10, 14-15 (substantially
similar). The Court therefore finds that the notes, draft FD-
302s, and final FD-302 provide ample support that Mr. Flynn made
false statements to the FBI about his communications with the
Russian Ambassador regarding his request that foreign officials
vote against or delay the U.N. Security Council resolution.

### iii. Mr. Flynn's False Statements Were Material

Mr. Flynn argues that his false statements to the FBI were
not "material" for two reasons. *See* Def.'s Reply, ECF No. 133 at
31-32. First, Mr. Flynn contends that his conversations with the
Russian Ambassador were unrelated to the FBI's investigation
into Russia's efforts to interfere in the 2016 presidential
election because the interviewing FBI agents did not ask him a
single question about election interference or any coordination
between Russia and the Trump campaign. *See id*. Next, Mr. Flynn
argues that the FBI had recordings and transcripts of his
conversations with the Russian Ambassador, arguing that the FBI
"knew exactly what was said" and "nothing impeded [the FBI's]
purported investigation." Def.'s Sur-Surreply, ECF No. 135 at
12. The government responds that Mr. Flynn's false statements
were "absolutely material" because his false statements "went to
the heart" of the FBI's "counterintelligence investigation into
whether individuals associated with the campaign of then-

candidate Donald J. Trump were coordinating with the Russian government in its activities to interfere with the 2016 presidential election." Gov't's Surreply, ECF No. 132 at 10.

Mr. Flynn advances these new arguments without citation to any legal authority. *See* Def.'s Reply, ECF No. 133 at 31-32; *see also* Def.'s Sur-Surreply, ECF No. 135 at 11-12. Although Mr. Flynn's arguments were raised for the first time in his reply brief, *see* Gov't's Notice of Claims Raised for the First Time in Reply, ECF No. 131 at 1-3, the Court will consider them because the government had the opportunity to address them in its Surreply, *see Permapost Prod., Inc. v. McHugh*, 55 F. Supp. 3d 14, 18 n.1 (D.D.C. 2014) (considering additional arguments raised in reply and surreply briefs). Mr. Flynn's first argument fails to appreciate the FBI's strategic decisions and investigative techniques. *Cf. United States v. VanMeter*, 278 F.3d 1156, 1159 (10th Cir. 2002) (FBI uses "a variety of conventional investigation techniques" to "unearth[] numerous leads"). Mr. Flynn's second argument is foreclosed by D.C. Circuit precedent. *See United States v. Moore*, 612 F.3d 698, 701 (D.C. Cir. 2010) (holding that "a statement is material if it has a natural tendency to influence, or is capable of influencing, either a discrete decision or any other function of the agency to which it was addressed").

Mr. Flynn has a fundamental misunderstanding of the law of

materiality under 18 U.S.C. § 1001(a)(2), which requires a false statement to be "material." *United States v. Stone*, 394 F. Supp. 3d 1, 12 (D.D.C. 2019) (materiality is a necessary element to establish a violation of the false statements statute). The Supreme Court has instructed that "[t]he statement must have 'a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed.'" *United States v. Gaudin*, 515 U.S. 506, 509 (1995) (quoting *Kungys v. United States*, 485 U.S. 759, 770 (1988)); *accord United States v. Diggs,* 613 F.2d 988, 999 (D.C. Cir. 1979) ("Proof of actual reliance on the statement is not required; the Government need only make a reasonable showing of its potential effects."). But "a statement need not actually influence an agency in order to be material." *Moore*, 612 F.3d at 701.

As a matter of law, the government need not prove that Mr. Flynn's false statements impeded the FBI's investigation in order to establish the materiality element. *See id*. at 702 (holding that defendant's false statement "was capable of affecting the Postal Service's general function of tracking packages and identifying the recipients of packages entrusted to it" and defendant's false information "could have impeded the ability of the Postal Service to investigate the trafficking of narcotics through the mails"). And Mr. Flynn's multiple false

statements were material regardless of the interviewing FBI
agents' knowledge of any recordings and transcripts of his
conversations with the Russian Ambassador—the existence or non-
existence of which have neither been confirmed nor denied by the
government, *see* Gov't's App. A, ECF No. 122-1 at 5—and whether
the FBI had knowledge of Mr. Flynn's exact words during those
conversations. *See United States v. Safavian*, 649 F.3d 688, 691
(D.C. Cir. 2011) (rejecting defendant's argument that his false
statements were not material where the interviewing FBI agent
"knew, based upon his knowledge of the case file, that the
incriminating statements were false when [the defendant] uttered
them").

Mr. Flynn's other argument—that his false statements about
his conversations with the Russian Ambassador were not related
to the investigation into Russia's efforts to interfere in the
election—is unavailing. "Application of § 1001 does not require
judges to function as amateur sleuths, inquiring whether
information specifically requested and unquestionably relevant
to the department's or agency's charge would really be enough to
alert a reasonably clever investigator that wrongdoing was
afoot." *United States v. Hansen*, 772 F.2d 940, 950 (D.C. Cir.
1985). Here, Mr. Flynn's false statements to the FBI about his
conversations with the Russian Ambassador were relevant to the
FBI's inquiry. *See* SOF at 1 ¶ 1. It is undisputed that the FBI

had already opened the investigation to, among other things, investigate the "nature of any links between individuals associated with the [Trump] Campaign and Russia" at the time of Mr. Flynn's January 24, 2017 interview. *Id*. A "lie distorting an investigation already in progress" could impact the FBI's decision to act and follow leads. *Hansen*, 772 F.2d at 949; *accord United States v. Stadd*, 636 F.3d 630, 639 (D.C. Cir. 2011) (defendant's false statements were material because the truth "would have raised red flags that would have led [the agency's ethics advisor] to inquire further"). As Judge Amy Berman Jackson has noted, "it is axiomatic that the FBI is not precluded from following leads and, if warranted, opening a new investigation based on those leads when they uncover information in the course of a different investigation." *Kelley v. FBI*, 67 F. Supp. 3d 240, 287 n.35 (D.D.C. 2014). The Court therefore finds that Mr. Flynn's false statements were material within the meaning of 18 U.S.C. § 1001(a)(2).

### d. Requests 7, 12, and 14

Request 7 seeks "[a]ll documents, reports, correspondence, and memoranda, including any National Security letter or FISA application, concerning any earlier investigation of Mr. Flynn, and the basis for it." Def.'s Mot., ECF No. 111 at 4. Request 12 seeks "[u]nredacted copies of all memos created by or other communications from James Comey that mention or deal with any

investigation, surveillance, FISA applications, interviews, or use of a confidential human source or 'OCONUS lures' against Mr. Flynn." *Id.* at 5; *see* Def.'s Reply, ECF No. 134 at 2 (defining "OCONUS lures" as "'outside continental U.S.' persons tasked by American intelligence . . . to spy on Americans or lure them into contacts with Russians"). Request 14 seeks the "Comey 302 for November 15, 2017, and all Comey 302s that bear on or mention Mr. Flynn." Def.'s Mot., ECF No. 111 at 5.

The government responds—and Mr. Flynn does not deny—that it has already provided Mr. Flynn with the information in Requests 7, 12, and 14 that "could reasonably be construed as favorable and material to sentencing." Gov't's App. A, ECF No. 122-1 at 2-3. And Mr. Flynn attaches the "Relevant Comey Memos," Def.'s Reply, ECF No. 133 at 4, as exhibits to his reply brief, *see* Def.'s Ex. 3, ECF No. 133-3 at 1-4. The Court therefore finds that Mr. Flynn has failed to demonstrate that he is entitled to the requested information in Requests 7, 12, and 14 to the extent it has not already been provided to him.

### e. Request 22

Request 22 seeks "[a]ny and all evidence that during a senior-attended FBI meeting or video conference, [Mr.] McCabe said 'First we f[**]k Flynn, then we f[**]k Trump,' or words to that effect." Def.'s Mot., ECF No. 111 at 6. The government responds that this request falls into the "already provided"

category because the government has "provided extensive evidence to [Mr. Flynn] disproving this allegation, including statements from both interviewing agents." Gov't's App. A, ECF No. 122-1 at 4. And the government contends that it is unaware of evidence that Mr. McCabe made the alleged statements. Gov't's Opp'n, ECF No. 122 at 9. Mr. Flynn does not challenge the government's evidence, and his exhibits to his reply brief refute the alleged statements. *See, e.g.*, Def.'s Ex. 12, ECF No. 133-12 at 1 (Ms. Page: "At no point in time did [Mr.] McCabe say 'F[**]k [Mr.] Flynn.'"); Def.'s Ex. 133-5 at 3 (Mr. Strzok: "[M]y impression of the [alleged statements] is that it is ludicrous."). Because the Court agrees that the government has already provided Mr. Flynn with information to disprove the alleged statements, the Court therefore finds that Mr. Flynn has not established that he is entitled to the information in Request 22, to the extent it has not already been provided to him.

### f. Request 33

Request 33 seeks "*Brady* or *Giglio* material newly discovered by the government (and by the [IG] in his separate investigations) in the last two years." Def.'s Mot., ECF No. 111 at 7. Mr. Flynn does not explain how this requested information is non-duplicative of the *Brady* motions themselves. *See id*. The government responds that it has already provided Mr. Flynn with the information requested in Request 33. Gov't's App. A, ECF

122-1 at 5. The Court therefore finds that Mr. Flynn has failed
to demonstrate that he is entitled to the requested information
in Request 33 to the extent it has not already been provided to
him.

### g. Request h

Request h—seeking the unredacted FD-302s, notes, or
recordings of the meetings or interviews with "Michael Boston,
Phil Oakley, Carl Pilgrim, Graham Miller, regarding [FIG] and
Mr. Flynn, and Brian McCauley, regarding Mr. Flynn's desire to
file FIG's FARA registration 'the right way' with the DOJ,"
Def.'s Mot., ECF No. 111 at 9—falls within the "already
provided" category. Although it is undisputed that the
government did not bring criminal charges against Mr. Flynn for
willfully failing to register under FARA, *see, e.g.*, Gov't's
App. A, ECF No. 122-1 at 7; Def.'s Reply, ECF No. 133 at 21, the
government responds that it "had previously provided information
from the interview reports of the listed persons pertaining to
[Mr. Flynn's] desire to register 'the right way' with the DOJ"
and that "[t]he only listed person who made such a statement was
Brian McCauley," Gov't's App. A, ECF No. 122-1 at 7. Mr. Flynn
does not deny the government's response to this request. *See
generally* Def.'s Reply, ECF No. 133 at 21. The Court therefore
finds that Mr. Flynn has not satisfied his burden of
demonstrating that he is entitled to the requested information

in Request h to the extent it has not already been provided to
him.

### 5. Information that Is Unrelated to the Charges Against Mr. Flynn or to His Sentencing

#### a. Requests 8, 15, 16, and Mr. Flynn's *Brady* Motion, ECF No. 124

In Requests 8, 15, 16, and Mr. Flynn's motion for newly-
discovered *Brady* evidence, ECF No. 124, Mr. Flynn seeks
information, including documents and communications, regarding:
(1) human resources or "OCONUS lures against Mr. Flynn since his
departure as the Director of the United States Defense
Intelligence Agency ("DIA") in 2014; (2) "[n]otes and documents
of any kind dealing with any briefings that Mr. Flynn provided
to DIA after he left the government"; (3) information "about
Joseph Mifsud's [("Mr. Mifsud")] presence and involvement in
engaging or reporting on Mr. Flynn" and Mr. Mifsud's presence at
a dinner in Russia in December 2015; and (4) data and metadata
in Mr. Mifsud's two Blackberry devices. *E.g.*, Def.'s Mot., ECF
No. 111 at 4-5; Def.'s Suppl., ECF No. 116 at 1; Def.'s Mot. to
Compel Newly Discovered Brady Evid., ECF No. 124 at 1-2. The
government responds that this case "does not involve conduct or
communications before July 2016." Gov't's Opp'n, ECF No. 122 at
4. The government contends that these requests—concerning Mr.
Mifsud, documents about Mr. Flynn's briefings to DIA, and the
human resources or "OCONUS lures" since Mr. Flynn's tenure at

DIA—cover topics that are irrelevant and unrelated to either Mr. Flynn's false statements to the FBI on January 24, 2017 or to his punishment. *See* Gov't's App. A, ECF No. 122-1 at 31; *see also* Gov't's Opp'n, ECF No. 130 at 1-2.

For his part, Mr. Flynn argues that his requests for information about the DIA briefings and debriefings will "exonerate him of being any kind of foreign agent." Def.'s Reply, ECF No. 133 at 34. Mr. Flynn asserts that the reference to "OCONUS lures" in the Strzok-Page text messages means that there is some evidence that Mr. Mifsud was one of the people outside the United States used to either "spy on Americans or lure them into contacts with Russia . . . ." Def.'s Reply, ECF No. 134 at 2. That theory, however, has no relation to Mr. Flynn's false statements or his sentencing, and Mr. Flynn does not explain how it satisfies the favorability element. *See* Def.'s Reply, ECF No. 134 at 2; *see also* Def.'s Reply, ECF No. 133 at 19 n.12. Rather, Mr. Flynn attacks the impetus of the criminal investigation, arguing that Mr. Mifsud's devices "may" provide evidence that the government "concoct[ed] a pretext" to investigate Mr. Flynn. Def.'s Reply, ECF No. 134 at 3.

The government argues that "[Mr.] Mifsud is connected to the criminal activity of George Papadopoul[o]s," a person who pled guilty to lying to the FBI about his interactions with Mr. Mifsud. Gov't's Opp'n, ECF No. 130 at 2 (citing SOF, *United*

*States v. Papadopoulos*, Crim. Action No. 17-182 (D.D.C. Oct. 5, 2017), ECF No. 19). The government points out that the Mueller Report contains no references connecting Mr. Flynn and Mr. Mifsud. Gov't's Opp'n, ECF No. 130 at 2. By not responding to those points, Mr. Flynn has conceded them. *See* Def.'s Reply, ECF No. 134 at 1-4. Nonetheless, the Court agrees with the government that those requests are unrelated to Mr. Flynn's false statements and sentencing and are outside of the relevant time period in this case. And Mr. Flynn has failed to demonstrate that the DIA information is favorable to his false statements. *See Sitzmann*, 74 F. Supp. 3d at 134-35.

The Court therefore finds that Mr. Flynn has failed to establish the requisite elements of a *Brady* claim as to Requests 8, 15, 16, and Mr. Flynn's *Brady* motion, ECF No. 124.[11]

---

[11] The Court rejects Mr. Flynn's argument that the government's August 16, 2019 production—a total of 330 pages of documents provided in response to a Congressional inquiry and as a courtesy to Mr. Flynn—constitutes a *Brady* violation. *See* Def.'s Mot., ECF No. 111 at 2-3; *see also* Gov't's Notice of Disc. Correspondence, ECF No. 123 at 2. Mr. Flynn contends that the government withheld this production, which shows the renewal of his security clearance and that he passed a polygraph test in 2016. Def.'s Mot., ECF No. 111 at 3. According to the government, the production consisted of Mr. Flynn's "questionnaires to obtain a security clearance and Department of Defense directives, and included no new information that was relevant to the defendant's false statements to the FBI on January 24, 2017." Gov't's Opp'n, ECF No. 122 at 11. Mr. Flynn does not challenge the government's representations. *See generally* Def.'s Reply, ECF No. 133 at 5-36. The Court agrees with the government that such information is irrelevant to Mr. Flynn's false statements in this case and his sentencing.

**b. Requests 1, 3, 4, 11, 17, 21, 25, 28, and 35**

Mr. Flynn requests certain information regarding the circumstances that led to his January 24, 2017 FBI interview, the events surrounding his prosecution, and any earlier investigations into him. *See* Def.'s Mot., ECF No. 111 at 3-7. Specifically, Request 1 seeks a letter from the British Embassy to the National Security team for the incoming Trump Administration after the November 2016 election that allegedly discredits reporting by former British intelligence officer Christopher Steele ("Mr. Steele"). *Id.* at 3-4; *see also* Def.'s Reply, ECF No. 133 at 35 (arguing that the letter "undermines the entire 'Russian-collusion' fable that [the then-FBI Director and other government officials] used to justify their unlawful conduct").[12] Request 3 seeks "[a]ll documents, notes, information, FBI 302s, or testimony regarding Nellie Ohr's research on Mr. Flynn and any information about transmitting it to the DOJ, CIA, or FBI." *Id.* at 4; *see* Def.'s Suppl., ECF No.

---

[12] "The word 'collusion' does not even appear in the [then-Acting Attorney General's] Appointment Order, and the Special Counsel was tasked with taking over the existing investigation, 'including' 'any links and/**or** coordination.'" *United States v. Manafort*, 312 F. Supp. 3d 60, 72 (D.D.C. 2018) (citation omitted); *cf.* Mueller Report, ECF No. 79-1 at 10 ("[C]ollusion is not a specific offense or theory of liability found in the United States Code, nor is it a term of art in federal criminal law."). The Special Counsel identified several links between the Russian government and the Trump campaign. Mueller Report, ECF No. 79-1 at 9.

116 at 1 ("Any drafts, electronic communications ('ECs'),
emails, and texts related to Nellie Ohr's research on Mr. Flynn,
and all CIA cables on the topic as well."). Request 4 seeks
"[a]ll payments, notes, memos, correspondence, and instructions
by and between the FBI, CIA, or DOD with Stefan Halper—going
back as far as 2014—regarding [Mr.] Flynn," and several other
individuals. Def.'s Mot., ECF No. 111 at 4; *see also* Def.'s
Suppl., ECF No. 116 at 1.

Request 11 seeks "[a]ll evidence of press contacts between
the Special Counsel Office, including Andrew Weissmann, Ms.
Ahmad, and Mr. Van Grack from the departure of [Mr.] Strzok from
[the] Special Counsel team until December 8, 2017, regarding Mr.
Flynn." Def.'s Mot., ECF No. 111 at 5. Request 17 seeks "[a]ll
notes, memoranda, 302s, and other information about the McCabe-
Strzok meeting or meetings with Vice President-Elect or Vice
President Pence . . . ." *Id*. Request 21 seeks "[a]ll information
provided by Kathleen Kavalec at the Department of State to the
FBI regarding [Mr.] Steele prior to the first FISA application."
*Id*. at 6. Request 25 seeks "[a]ll documents, notes, information,
FBI 302s, or testimony regarding any debriefing that Bruce Ohr
gave to anyone in the FBI or Department of Justice regarding
[Mr.] Steele." *Id*. Request 28 seeks "[i]nformation identifying
reporters paid by Fusion GPS and/or the Penn Quarter group to
push 'Russia Collusion,' communications regarding any stories

61

about Mr. Flynn, and any testimony or statements about how the reporters were used by the government regarding Mr. Flynn." *Id.* Request 35 seeks "[a]ll FBI 302s, notes, memoranda of James Clapper regarding Mr. Flynn, and the cell phone and home phone records of Mr. Clapper and David Ignatius between December 5, 2016, and February 24, 2017." *Id.* at 7.

The government responds—and the Court agrees—that each request is not relevant to Mr. Flynn's false statements during his January 24, 2017 FBI interview or to his sentencing. Gov't's App. A, ECF No. 122-1 at 2-5. Mr. Flynn fails to make out a *Brady* claim for the requested information regarding any earlier investigations, the circumstances that led to the January 24, 2017 FBI interview, or the events surrounding his prosecution because Mr. Flynn fails to establish the favorability element. Even assuming, *arguendo*, that the information regarding the circumstances that led to Mr. Flynn's January 24, 2017 FBI interview, the events surrounding his prosecution, and any earlier investigations were both exculpatory and suppressed, Mr. Flynn bears the burden of showing a reasonable probability of a different outcome. *Strickler*, 527 U.S. at 291. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682 ("A 'reasonable probability' is a probability sufficient to

undermine confidence in the outcome."). Mr. Flynn cannot overcome this hurdle.

Mr. Flynn appears to seek this information to: (1) support his claims of government misconduct; and (2) cast doubt on the legal basis for the FBI's investigation. *See* Def.'s Reply, ECF No. 133 at 19, 19 n.13, 34-35. Mr. Flynn also asserts, without support, that the Special Counsel's Office was "manipulating or controlling the press to their advantage to extort the plea." Def.'s Br., ECF No. 109 at 4. Regardless of Mr. Flynn's new theories, he pled guilty twice to the crime, and he fails to demonstrate that the disclosure of the requested information would have impacted his decision to plead guilty.

To be sure, Mr. Flynn was aware of the circumstances of the January 24, 2017 interview, and the allegations of misconduct against the FBI officials before he entered his guilty pleas. Sentencing Hr'g Tr., ECF No. 103 at 8-9. Mr. Flynn did not challenge those circumstances, and he stated, under oath, that he was aware that lying to the FBI was a crime. *Id*. In response to this Court's questions, Mr. Flynn maintained his guilty plea. *Id*. at 9-10. None of Mr. Flynn's arguments demonstrate that prejudice ensued. *See Strickler*, 527 U.S. at 291. The Court therefore finds that there was no reasonable probability that Mr. Flynn would not have pled guilty had he received the requested information in Requests 1, 3, 4, 11, 17, 21, 25, 28,

and 35.

### c. Requests 24, 26, and 27

Mr. Flynn seeks all FISA applications relating to him and
the "Russia matter," and other information concerning the FISA
applications since 2015. Def.'s Mot., ECF No. 111 at 6. Request
24 seeks "[a]ll information that underlies the several FISA
applications, including any information showing that any of the
assertions in the applications were false, unverified, or
unverifiable." *Id*. Request 26 seeks "[t]estimony, interviews,
302s, notes of interviews of all persons who signed FISA
applications regarding Mr. Flynn or anyone that would have
reached Mr. Flynn's communications, without regard to whether
those applications were approved or rejected." *Id*. Request 27
seeks "[a]ll FISA applications since 2015 related to the Russia
matter, whether approved or rejected, which involve Mr. Flynn or
reached his communications with anyone." *Id*.

The government responds that Requests 24, 26, and 27 are
overly broad, Gov't's App. A, ECF No. 122-1 at 4-5, and the
requested information regarding the FISA applications do not
"pertain to information that would be favorable and material to
sentencing." *Id*. Mr. Flynn fails to offer a specific response to
the government's arguments; instead, he posits that "the FBI and
DOJ had no legal basis to obtain a FISA warrant against Carter
Page or to investigate Mr. Flynn." Def.'s Reply, ECF No. 133 at

19.[13] Mr. Flynn has tailored numerous requests under the theory
that his crime should not be viewed in a "vacuum" because his
"improper interview," the interviewing FBI agents' conduct, and
the "broader landscape" of the "unjust prosecution are all
relevant to Mr. Flynn's alleged guilt." *Id.* at 26.

Mr. Flynn hypothesizes that the government has suppressed
evidence that could support his Fourth Amendment defenses, *id.*,
citing Judge Rosemary Collyer's redacted opinion in a separate
proceeding, Def.'s Mot., ECF No. 109 at 8. Under Mr. Flynn's
theory, "[i]nformation was obtained against [him] either through
the illegal FISA warrant on Carter Page, baseless National
Security Letters, an undisclosed FISA warrant, or the abuses of
the [National Security Agency ("NSA")] database documented in
the heavily redacted opinion of Judge Rosemary Collyer." Def.'s
Reply, ECF No. 133 at 19 n.13. Mr. Flynn contends that there

---

[13] Mr. Page was a foreign policy advisor to then-candidate Trump,
and the Special Counsel investigated Mr. Page as part of the
investigation into Russia's interference in the 2016 election.
*See* Mueller Report, ECF No. 79-2 at 1, 30. As Judge Mehta has
observed, the President declassified "information concerning the
'Dossier'—the 35-page compilation of memoranda prepared by [Mr.]
Steele concerning Russian efforts to influence the 2016
presidential election and alleged ties between Russia and then
candidate Trump." *James Madison Project v. Dep't of Justice*, 320
F. Supp. 3d 143, 145 (D.D.C. 2018); *see id.* at 147 (stating a
Congressman revealed that "in October 2016, the FBI relied in
part on portions of the Dossier's contents to secure a [FISA]
warrant as to [Mr.] Page"). In his reply brief, Mr. Flynn
provides two pages of the Dossier that mentions him, Mr. Page,
and other individuals. *See* Def.'s Ex. 7, ECF No. 133-7 at 1-2.